ADAMS, J.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, etc., | ) ) ) | CASE NO. 4:08CV0160 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) ) | MEMORANDUM OF OPINION AND ORDER |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, etc., et al., | ) ) ) | [RESOLVING DOC. 75] |
| Defendants. | ) | |

This securities fraud class action is before the Court upon Lead Plaintiff Ohio Public Employees Retirement System's ("OPERS") Motion to Partially Lift the PSLRA Discovery Stay (Doc. 75). The Court has reviewed the memorandum in support, declaration of Melanie S. Corwin ("Corwin") in support (Doc. 76), defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac" ) memorandum in opposition (Doc. 85), defendants Richard F. Syron, Patricia L. Cook, Anthony S. Piszel, and Eugene M. McQuade's (the "Individual Defendants") memorandum in opposition (Doc. 86), reply memorandum (Doc. 89), second Corwin declaration in support (Doc. 90), Freddie Mac's surreply (Doc. 95), Lead Plaintiff's notice of supplemental authority (Doc. 97), and Freddie Mac's notice of supplemental authority (Doc. 99). The Court has also considered the letter, dated February 2, 2010, from Edward J. DeMarco, Acting Director of intervenor Federal Housing Finance Agency ("FHFA") to Chairmen and Ranking Members of Congress (Doc. 111-4), the oral arguments of counsel offered during the Motion Hearing held on February 4, 2010, Lead Plaintiff's memorandum in response to FHFA's newly-presented

argument (Doc. 111), and Freddie Mac's response to what Congressman Henry A. Waxman previously stated (Doc. 112).  For the reasons that follow, the Court will deny the motion.

The value of Freddie Mac's common stock fell abruptly in 2007 amidst the deterioration of the U.S. housing and subprime and alternative mortgage market.  Second Amended Complaint ("SAC") (Doc. 56) at ¶¶ 118-19.  Lead Plaintiff brings this action on behalf of all purchasers of Freddie Mac common stock during the period from August 1, 2006 through and including November 20, 2007 (the "Class Period") who were damaged thereby, except for the defendants and certain of their related parties as described in the SAC.  *Id.* at ¶ 8.  Lead Plaintiff seeks redress for defendants' alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  Freddie Mac is the publicly-traded government-sponsored enterprise chartered by Congress in 1970 to promote homeownership by providing liquidity, stability and affordability to the home mortgage market.  *Id.* at ¶ 1.  The Individual Defendants are the four former most senior officers at Freddie Mac.

On September 6, 2008, the Director of FHFA appointed FHFA as Conservator of Freddie Mac.  The Conservator, acting on behalf of Freddie Mac, and the U.S. Department of the Treasury ("Treasury") entered into a Senior Preferred Stock Purchase Agreement ("Purchase Agreement") on September 7, 2008.  Under the Purchase Agreement, as amended in December 2009, Treasury made a commitment to provide up to $200 billion in funding from taxpayer money under specified conditions.  The $200 billion cap on Treasury's funding commitment will increase as necessary to accommodate any cumulative reduction in Freddie Mac's net worth during 2010, 2011 and 2012.  *See* Form 10-K/A dated April 12, 2010, filed by Freddie Mac with

the Securities and Exchange Commission ("SEC"), at 52.[1] "Freddie Mac continues to rely heavily on Federal bailout funds to continue operations." Doc. 89 at 4. To date Freddie Mac has received $50.7 billion from Treasury under the Purchase Agreement to rectify its quarterly net worth deficits. *See* Form 10-K/A dated April 12, 2010, at 52; *see also* letter from Acting Director DeMarco, at 3 ("Since the establishment of the conservatorship[ ], . . . Freddie Mac has realized losses of $63 billion. These losses have exhausted the value of [Freddie Mac's] shareholder equity . . . These calls on taxpayer funds are troubling to all of us."). Freddie Mac concedes that it relies on taxpayer funds to continue operating:

> We are dependent upon the continued support of Treasury and FHFA in order to continue operating our business. We also receive substantial support from the Federal Reserve. *Our ability to access funds from Treasury under the Purchase Agreement is critical to keeping us solvent and avoiding the appointment of a receiver by FHFA under statutory mandatory receivership provisions.*

Form 10-K/A dated March 4, 2010, filed by Freddie Mac with the SEC, at 31 (emphasis added).

Defendants filed a Motion to Dismiss the SAC with Prejudice (Doc. 63), which triggered an automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). As a general rule, discovery is not allowed during the pendency of a motion to dismiss because the purpose of such motion "is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).

---

[1] Lead Plaintiff correctly alleges that Freddie Mac was exempt from the SEC's registration and reporting requirements during the Class Period. Doc. 56 at ¶ 181. According to its website: "[p]rior to Freddie Mac's voluntary registration of its common stock with the SEC on July 18, 2008, Freddie Mac did not file financial reports with the SEC and instead prepared Annual Information Statements and Information Statement Supplements in lieu of Forms 10-K, 10-Q and 8-K."
http://www.freddiemac.com/investors/sec_filings/index.html; *see also* Transcript of Motion Hearing (Doc. 108) at 29-31; Doc. 112-3.

Lead Plaintiff now moves the Court for an order partially lifting the discovery stay solely to obtain a closed universe of materials (approximately 400,000 documents) the defendants have already provided, or will provide, to U.S. governmental entities[2] that are investigating the same alleged fraud by the defendants that is plead by the Lead Plaintiff in this action. Lead Plaintiff has agreed to bear the costs of copying the materials. *See* Doc. 108 at 7. Plaintiffs in a parallel class action against some of the same defendants, which is pending in the U.S. District Court for the Southern District of New York, *Kuriakose v. Federal Home Loan Mortg. Co.*, filed a motion seeking a similar order from U.S. District Judge John F. Keenan. On December 7, 2009, Judge Keenan denied the motion in a thorough and well-reasoned Opinion and Order. 674 F.Supp.2d 483, No. 08-cv-7281 (JFK), 2009 WL 4609591 (S.D.N.Y. Dec. 7, 2009).

Congress enacted the PSLRA to prevent the filing of "strike suits" -- abusive class actions which are brought with the hope that the expense of litigation may force defendants to settle despite the actions' lack of merit. In Congress's view, such actions "unnecessarily increase the cost of raising capital and chill corporate disclosure." S. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683. In particular, the PSLRA authorizes a stay of discovery pending resolution of any motion to dismiss. Section 78u-4(b)(3)(B), 15 U.S.C. provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is

---

[2] The SEC, the U.S. Attorney's Offices for the Southern District of New York and the Eastern District of Virginia, and the U.S. House of Representatives Committee on Oversight and Government Reform (the "House Committee"). According to Congressman Waxman, Chairman the House Committee, "[t]he documents make clear that . . . Freddie Mac knew what [it was] doing. [Its] own risk managers raised warning after warning about the dangers of investing heavily in the subprime and alternative mortgage market. But these warnings were ignored." Opening Statement of Congressman Waxman, "The Role of Fannie Mae and Freddie Mac in the Financial Crisis," dated December 9, 2008 (Doc. 76-1), at 5.

4

> necessary to preserve evidence or to prevent *undue prejudice* to that party (emphasis added).

Two exceptions, therefore, justify a lift of the stay: the need to preserve evidence and the need to prevent undue prejudice to the plaintiff. *Id.* There is no dispute that the documents are particularized. Moreover, the Lead Plaintiff is not concerned that the evidence in the case at bar may be destroyed. *See* Doc. 108 at 8 and 22. The critical issue then is whether failure to disclose the documents would cause undue prejudice to the Lead Plaintiff. Courts have granted motions to discover documents previously produced to government agencies after finding it necessary to prevent undue prejudice to the plaintiff. *See In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 305 (S.D.N.Y. 2002); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (Gwin, J.) (allowing some limited discovery of materials already provided to government entities).

In *Frank v. Dana Corp.*, Case No. 3:05CV7393, 2007 WL 1748887 (N.D. Ohio June 18, 2007) (Carr, C.J.), the court denied a motion to vacate the stay of discovery in a securities class action where the plaintiffs wanted to obtain documents already assembled and produced to the SEC in an ongoing investigation into the defendant's accounting practices. In finding that discovery was not necessary to prevent undue prejudice, the Court stated:

> Where there has been no risk that PSLRA plaintiffs will be frozen out of discovery negotiations, and the case is otherwise "garden variety," discovery of documents provided to the SEC has generally not been allowed. The decision in *Ross v. Abercrombie & Fitch*, 2006 WL 2869588, *3 (S.D.Ohio), exemplifies this view:
>> [T]his appears to the Court to be a "garden variety" case where the only thing which has happened, apart from ordinary litigation activities, is that the SEC has opened a formal investigation and requested that documents be produced to it . . . that is simply not

5

> > the type of circumstance leading to undue prejudice to the
> > plaintiffs.
> 
> That appears to be the situation here.

*Dana*, 2007 WL 1748887, at *4-5.  The case at bar, however, isn't a garden variety case by any means.

The Southern District of New York has defined "undue prejudice" in the context of the PSLRA discovery stay to mean "improper or unfair treatment amounting to something less than irreparable harm." *Kuriakose*, 2009 WL 4609591, at * 4 (citations omitted).  "Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings." *In re Bank of America Corp. Sec., Derivative, and Employment Retirement Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *2  (S.D.N.Y. Nov. 16, 2009) (granting the Lead Plaintiffs' motion to lift the stay on discovery as to documents already produced in related matters) (citing *In re Worldcom*, 234 F.Supp.2d at 305; *In re Labranche Sec. Litig.*, 333 F.Supp.2d 178, 182 (S.D.N.Y. 2004)) .

The undue prejudice argued by the Lead Plaintiff is the "documents are documents that help a class of people."  Doc. 108 at 14.  According to Stanley M. Chesley, one of the lead counsel for Lead Plaintiff,

> if we are able to find one, two, or four documents to support our arguments on the
> motion to dismiss, that's the prejudice.  We don't have one piece of paper from
> the defendants.  And yet we are supposed to argue scienter, we are supposed to

6

>
> argue and win on -- and a key issue in this case, Your Honor, I believe, will be scienter.

*Id.* at 14-15.  In other words, the prejudice to the Lead Plaintiff is that it may be unable to prove its case without production of the documents.

The Court finds that lifting the stay so the Lead Plaintiff can have documents that it doesn't have now and maybe bolster its opposition to a motion to dismiss can't be undue prejudice under the statute.  *See SG Cowen Sec. Corp. v. U.S. Dist. Court for Northern Dist. of CA*, 189 F.3d 909, 913 (9th Cir. 1999) ("Thus, as a matter of law, failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under § 78u-4(b)(3)(B)."). Moreover, "[c]ontrary to Plaintiffs' assertion, courts do not routinely lift the PSLRA discovery stay when the requested documents have already been provided to government investigators." *Kuriakose* 2009 WL 4609591 at * 3 (citations omitted).

Unlike *In re Worldcom*, *supra*, there are no ongoing settlement discussions in the case at bar.  *See* Doc. 108 at 14, 48, and 52.  So, the Lead Plaintiff would not be unfairly disadvantaged in pursuing settlement strategies without access to the documents.  In *Worldcom*, the court ordered the PSLRA plaintiffs to participate with the bankrupt defendant in coordinated settlement negotiations along with the ERISA plaintiffs in related litigation.  The ERISA plaintiffs, unrestricted by the requirements of the PSLRA, were in the process of obtaining discovery.  The court found that because all of the investigations and proceedings concerning WorldCom were "moving apace," without access to the documents already made available to the government agencies the PSLRA plaintiffs would have been at a "severe [ ] disadvantage[ ]" in

7

the settlement discussions that were occurring "in a rapidly shifting landscape" if they were denied access to the documents they requested. 234 F.Supp.2d at 305-06.

Furthermore, mere speculation regarding the possibility that Freddie Mac might, at some indeterminate time in the future, be placed into receivership by FHFA does not advance the within motion of the Lead Plaintiff.[3] *See Kuriakose*, 2009 WL 4609591, at *5 ("There may be doubts regarding Freddie Mac's ongoing viability, but the prospect of prejudice from the contingent risks to the defendant's long-term business viability is insufficient to lift the stay."). As the court stressed in a securities case involving one of the largest bankruptcies in U.S. history: "Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is 'necessary . . . to prevent undue prejudice,' [ ] that would otherwise result." *In re Refco, Inc.*, No. 05 CIV. 8626 (GEL), 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006) (distinguishing *In re Worldcom*, *supra*, and denying motion to lift stay to obtain documents produced to government regulators in case in which there was a bankruptcy examiner appointed for the defendant).

Although the Court respects the argument of the Lead Plaintiff to the contrary, it finds that the Lead Plaintiff has not met its burden of showing exceptional circumstances that render it

---

[3] Under the [Federal Housing Finance Regulatory] Reform Act [of 2008], FHFA must place [Freddie Mac] into receivership if FHFA determines in writing that our assets are and have been less than our obligations for a period of 60 days. FHFA notified us that the measurement period for any mandatory receivership determination with respect to our assets and obligations would commence no earlier than the SEC public filing deadline for our quarterly or annual financial statements and would continue for 60 calendar days after that date. FHFA advised us that, if, during that 60-day period, we receive funds from Treasury in an amount at least equal to the deficiency amount under the Purchase Agreement, the Director of FHFA will not make a mandatory receivership determination.

Form 10-K/A dated March 4, 2010, at 66.

necessary to lift the stay on discovery in the case at bar.  The Court concludes that maintaining the discovery stay furthers the purpose of the PSLRA to limit discovery pending resolution of a motion to dismiss.  Accordingly,

Lead Plaintiff's Motion to Partially Lift the PSLRA Discovery Stay (Doc. 75) is DENIED.


IT IS SO ORDERED.


| | |
|---|---|
| _April 22, 2010_ | _/s/ John R. Adams_ |
| Date | John R. Adams |
| | U.S. District Judge |