| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, On Behalf of Itself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY S. PISZEL AND EUGENE M. McQUADE,<br><br>Defendants. | CIVIL ACTION NO. 4:08-CV-00160<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR.<br><br>**DECLARATION OF EMILY E. RENSHAW, ESQ.** |

I, EMILY E. RENSHAW, declare as follows:

1. I am over eighteen years of age and have personal knowledge of the facts set forth herein.

2. I am an associate at the law firm of Morgan, Lewis & Bockius LLP, attorneys for Defendant, Federal Home Loan Mortgage Corporation ("Freddie Mac"), in connection with the above-captioned litigation. I am fully familiar with the facts and circumstances recited herein. I submit this declaration in support of Defendants' Opposition to Lead Plaintiff's Motion to Substitute Expert on the Issue of Market Efficiency, filed concurrently herewith.

3. Attached as Exhibit A is a true and correct copy of Exhibit B to the September 6, 2013 Declaration of attorney Amy L. Rudd in Gulf Coast Shippers, Ltd. P'Ship v. DHL Express (USA), Inc., No. 09-cv-00221 (D. Utah), which is a copy of the Transcript of Proceedings held in that matter on October 14, 2011.

4. Attached as Exhibit B is a true and correct copy of the Declaration of Dr. Greg Hallman in Support of Opposition to Plaintiffs' Motion to Deny DHL Express (USA), Inc.'s Request to Replace Expert Witness in Gulf Coast Shippers, Ltd. P'Ship v. DHL Express (USA), Inc., No. 09-cv-00221 (D. Utah) (Sept. 6, 2013).

5. Attached as Exhibit C is a true and correct copy of the Expert Report of Dr. Greg Hallman in this matter, dated August 16, 2012 (ECF No. No. 199-10).

6. Attached as Exhibit D are excerpts from a true and correct copy of the transcript of the December 7, 2012 deposition of Greg Hallman in this matter.

7. Attached as Exhibit E is a true and correct copy of the *Curriculum Vitae* of Jay C. Hartzell, available at http://faculty.mccombs.utexas.edu/jay.hartzell (accessed Jan. 17, 2017).

8. Attached as Exhibit F is a true and correct copy of Dr. Greg Hallman's Amended Response to Defendant's Subpoena, dated January 10, 2017.

9. Attached as Exhibit G is a true and correct copy of the professional calendar of Dr. Greg Hallman, produced by Dr. Hallman on January 6 and 10, 2017 in response to Freddie Mac's *subpoena duces tecum* to Dr. Hallman.

10. Attached as Exhibit H is a true and accurate copy of Dr. Greg Hallman's LinkedIn profile (accessed Jan. 17, 2017).

11. Attached as Exhibit I is a true and accurate copy of a December 23, 2016 email from Dr. Greg Hallman to Mr. Jordan Hershman.

I declare under penalty of perjury that the foregoing is true and correct. Executed January 17, 2017 at Boston, Massachusetts.

Emily E. Renshaw

# Exhibit A

# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al., | **TRANSCRIPT OF PROCEEDINGS** |
| | (from audio recording) |
| Plaintiffs, | |
| vs. | Case No. 2:09-CV-221 |
| DHL EXPRESS (USA), INC., an Ohio corporation, et al., | Judge Dale A. Kimball |
| | Magistrate Judge Paul M. Warner |
| Defendants. | |

---

**October 14, 2011**

Location: United States District Court
350 South Main Street
Salt Lake City, Utah

Reporter: Susette M. Snider, CRR, CSR, RPR

A P P E A R A N C E S

FOR THE PLAINTIFFS:

**Kyle D. Schonekas**
**Patrick S. McGoey**
Attorneys at Law
SCHONEKAS, EVANS, McGOEY & McEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Tel: 504-680-6050
Fax: 504-680-6051

FOR DEFENDANT DHL EXPRESS (USA), INC.:

**George M. Haley**
Attorney at Law
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101
Tel: 801.799.5800
Fax: 801.799.5700
ghaley@hollandhart.com

**Amy L. Rudd**
Attorney at Law
DECHERT, LLP
300 West 6th Street, Suite 2010
Austin, Texas 78701
Tel: 512.394.3000
Fax: 512.394.3001
amy.rudd@duchert

**Christopher S. Ruhland**
Attorney at Law
DECHERT, LLP
US Bank Tower
633 West 5th Street, 37th Floor
Los Angeles, California 90071-2013
Tel: 213.808.5700
Fax: 213.808.5760

Case: 4:08-cv-00160-BYP Doc #: 359-1 Filed: 01/20/17 7 of 413. PageID #: 16568
Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 4 of 102


**FOR MOVANTS JOSEPH M. CURTIS, UNISHIPPERS GLOBAL LOGISTICS, THEODORE K. ZEIGLER, KEVIN LATHROP AND DANIEL LOCKWOOD**:

**Jessica P. Wilde**
Attorneys at Law
Lewis M. Francis
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street
Suite 1500
Salt Lake City, Utah 84145-0444
Tel: 801.521.3200
Fax: 801.328.0537
jwilde@joneswaldo.com
lfrancis@joneswaldo.com

**P R O C E E D I N G S**

THE COURT: All right, folks. The court will come to order.

Good afternoon. We are here today in the case of Gulf Coast Shippers Limited Partnership, et al., versus DHL Express (USA), et al., Case Nos. 209-CV-221. It's been assigned to District Judge Dale Kimball.

We've got a number of folks here. Counsel for plaintiffs, Patrick McGoey.

Mr. McGoey, how are you?

MR. McGOEY: Good, your Honor.

THE COURT: Nice to see you again.

MR. McGOEY: I also have Kyle Schonekas with me.

MR. SCHONEKAS: Afternoon, your Honor.

THE COURT: Afternoon.

Mr. McGoey, will you be handling the laboring oar on most of these or --

MR. McGOEY: We kind of have a little division between us, but I would guess --

THE COURT: You'll let me know as the -- as the case goes along?

MR. McGOEY: Yes.

THE COURT: All right. I have Mr. George Haley here and --

MR. HALEY: Good afternoon, your Honor.

THE COURT: Afternoon. And who else do you have here with you, Mr. --

MR. HALEY: I have Amy Rudd and Chris Ruhland on behalf of DHL, and all three of us will be arguing different motions.

THE COURT: All right. Thank you.

We don't not have Andrew Walker in here this time.

MR. HALEY: We do not have Mr. Walker.

THE COURT: He was here last time, as I recall.

MR. HALEY: He was here. He's off on other matters today.

THE COURT: He's off on a lark. He's off vacationing.

MR. HALEY: I -- I -- I actually don't know where Mr. Walker is.

THE COURT: All right. And then for the movants we have Lewis Francis.

MR. FRANCIS: Yes, and I also have Jessica Wilde with me here today.

THE COURT: Yes, I have a passing

acquaintance with Ms. Wilde from her days at the court, and it's nice to have you folks with us.

All right. Well, we have by my count nine motions -- two, three, four, five, six --

MR. HALEY: Your Honor --

THE COURT: Yes.

MR. HALEY: -- if I may, there were a couple of motions that were on your notice of hearing that I don't think -- have been resolved or otherwise aren't going to be heard today.

THE COURT: I -- we love to hear that.

MR. HALEY: According to my notes, 179, the motion to quash the subpoena of Theodore Zeigler, is off.

THE COURT: Yeah.

MR. HALEY: 198, defendants' motion to compel certain discovery responses, is off.

THE COURT: Okay.

MR. HALEY: 174, a motion to quash a subpoena (inaudible) to Global Logistics --

THE COURT: Right.

MR. HALEY: -- is off.

206, a motion to quash DHL's subpoena directed to UPS, is off.

THE COURT: Okay.

MR. HALEY: And then a motion to quash an objection to the UPS subpoena is off, which is 159.

THE COURT: Right.

MR. HALEY: And then 239, a motion for protective order regarding DHL's (inaudible).

THE COURT: Well, thank you, Mr. Haley. Now, you know, you built me up for a let down because my law clerk told me about that, and I was hoping you were telling me that some of the nine that were still remaining were going to be resolved.

MR. HALEY: I regret I've disappointed you yet again, your Honor.

THE COURT: Well, you know, I'm geared up, so we're going to go ahead, but I appreciate the information, Mr. Mr. Haley.

And so here's what I have on my list of matters today, if you'll see if that makes sense to all the parties here. First, what I -- I have blocked these -- or not blocked, grouped these a little bit as I -- they make sense to me.

Docket No. 177, that's the movant's motion to quash the subpoena on Joseph Curtis; Docket No. 257, movant's motion to quash Daniel Lockwood's subpoena; and Docket No. 259, movant's motion to quash Kevin Lathrop's; and I take it that that would

be you, Mr. Francis, on those three?

MR. FRANCIS: Your Honor, I'll actually be handling the motion of Mr. Curtis. Ms. Wilde will be handling the motions on lock wood and Lathrop. It also might make sense at the same time to deal with the motion as it relates to Alex Rossi because that's also another (inaudible).

THE COURT: Yeah, I got that, but I've blocked that out with 268, 270 and 272, which would be quash -- motions to quash Nancy -- is it Haug?

MR. FRANCIS: Haug.

THE COURT: And then the two motions relative to Rossi.

And then we have Docket No. 237. That's the protective order, motion -- defendants' motion for protective order regarding the timing and location of the deposition of Charles Brewer. That's your motion, Mr. Haley, or one of your --

MR. HALEY: Mr. Ruhland will be arguing that one, your Honor.

THE COURT: Okay. And -- and then we also have 265 and 282 regarding the expert witness issues, 265 being defendants' motion to amend the scheduling order, and 282, plaintiffs' Rule 37 motion to limit expert testimony.

Those are the motions that I believe or understand that are scheduled to be argued today.

MR. HALEY: They are, your Honor. From -- that's exactly how I had them grouped as well. I think that makes sense on -- on how to group the arguments. Certainly the one that deals with the expert witnesses, their motion for protective order, as well as our motion to amend -- or their motion for sanctions, I should say, our motion to amend clearly dovetail.

THE COURT: Okay.

MR. HALEY: So I only -- in terms of my preparation, I intended to make just one argument as it related to both (inaudible).

THE COURT: That's fine. I -- and I would appreciate -- obviously, folks, we've got some time this afternoon, and I in no way want to limit people unduly. But we have lots of lawyers here, and it is Friday afternoon, simply meaning that brevity and succinct arguments are always appreciated by the Court.

So we'll kind of work through them in the -- in the order that I laid them out, and if I don't call the right attorney, just come up and say, Well, I'm handling this one, or whatever. I'm easily

confused on who's going to be arguing what. We've got -- I -- I'm just -- how many meters do we have running today? One, two, three, four, five, six, seven. You'll have to speak up because the whirr of the meters is so loud in my ear that I want to be able to hear everything.

So we'll begin with the first -- what I call the first group -- even though I know you're dividing it up, Mr. Francis -- 177, 257 and 259, movants' motions to quash, and -- I guess it's really to quash as I have noted before.

So, Mr. Francis, since it's your motion, let's hear from you first, sir, and if you'd like to have Ms. Wilde address it whenever it's appropriate, that's fine.

MR. FRANCIS: Right. So I'll -- I'll start with the motion as it relates to Joe Curtis, and then Ms. Wilde will handle the motions as they relate to Dan lock wood and --

THE COURT: Right.

MR. FRANCIS: -- Kevin Lathrop.

As we indicate in our papers, it would be duplicative, burdensome and unnecessary for Mr. Curtis, who is a third party to this action, to be deposed again by DHL. DHL has already deposed

Mr. Curtis twice on the same subject matter, once in the Unishippers case, which is really a parallel case to this one, again in the Worldwide case, which was a case in Texas which had very similar claims. In both of those cases DHL was represented by the same counsel that is here today, and the same counsel took his deposition.

Since the filing of our motion, Mr. Curtis has also testified at length in the trial of the Unishippers case which was held before this court in front of Judge Kimball in July. During that time DHL also had the opportunity to cross-examine Mr. Curtis on the subject matter of his testimony.

So he's already testified three times, been cross-examined or deposed by DHL three times on the same subject matter.

This is not a situation where Gulf Coast is seeking to take Mr. Curtis's deposition. It's DHL seeking to take Mr. Curtis's deposition again for the third time.

DHL already has the information that it's going to obtain from Mr. Curtis, the relevant information as it relates to the claims in the Unishippers case, which are the same claims in this case. There's no need to depose him again.

The further issue is that Mr. Curtis is a resident of this district, so there's no need to take his deposition again to preserve his testimony for use at trial. If DHL wants to have him testify in our case, they can call him as a witness, serve him with a subpoena. He's subject to the subpoena power of this Court.

I'd like to provide the Court, if I could, with a copy of a case. This is the case of **Robinson v. Stanley**. It's a recent case from the Northern District of Illinois. It was a case where the court ruled that deposing a third party for the third time would be unduly burdensome and unnecessary and granted a motion to quash.

But this Court has also noted in the case of third parties there's a different standard that applies. In the International Coal case his Court indicated that when you're considering the burden on a third-party witness like Mr. Curtis, there's even a heightened standard.

But the point -- and they make that point again in this Robinson v. Stanley case in the highlighted part on section -- or page 2. It says:

It is significant that Mr. DeGrasse is not a party. In keeping with the text and

purpose of Rule 45(c)(3)(A), it has been consistently held that non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.

And if I could direct your attention to --

THE COURT: You can invite my attention.

MR. FRANCIS: I'm sorry? I'd love to invite your attention, that's true, your Honor. I would never purport to direct your attention.

On page -- page 5 -- and this is the part that I find interesting where the court explains why it ruled the way it did. And I quote:

In all cases there comes a time when discovery must end. Discovery, like all matters of procedure, has ultimate and necessary boundaries.

And there the court is quoting Hickman v. **Taylor**, the Supreme Court case.

It goes on to say:

The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.

Quote: Parties are entitled to reasonable

opportunity to investigate the facts and no more, end quote, quoting a couple of other cases from that district.

THE COURT: Mr. Lewis, let me ask you a question.

MR. FRANCIS: Sure.

THE COURT: Or, excuse me. Mr. Francis.

MR. FRANCIS: It's -- it's a common confusion. I get confused on that sometimes.

THE COURT: Yeah. When people have two last names, two first names, you can just count on it that I'll screw it up, but I apologize.

Mr. Francis, it appears to me that what DHL wants with Mr. Curtis is they're claiming that there's four areas that they haven't inquired about, as I understand it -- of course, Mr. Haley or one of his colleagues can respond to this, but I'd like to hear it from you -- the first one being a third-party beneficiary claim, which, as I understand, Judge Kimball has ruled on. He's already indicated that they have that status. I know that the defendants have filed a motion for reconsideration.

But -- so assume for the moment that that's a resolved issue, at least unless the judge grants the motion for reconsideration, changes his

mind, but two, three -- or plaintiffs' relationship to Unishippers, plaintiffs' claim regarding damages from DHL's billing practices and breach of other contracts and DHL's counterclaims against plaintiff for nonpayment of DHL invoices.

They -- as I understand, their contention is those subject matters that I just enumerated were not covered in prior depositions, and I want to know from your standpoint were they covered or are you simply saying they had ample opportunity, they just didn't exercise it?

MR. FRANCIS: Well, I think it's a combination of both. First, they had ample opportunity to ask all of these types of questions of Mr. Curtis, and they did ask these types of questions of Mr. Curtis. And, finally, Mr. Curtis is not really the person that has this information as it relates to at least a couple of these categories. And I'll go through them.

First, they talk about the franchisee relationship with Unishippers. First, I don't really know what that means exactly, but if it has any relevance to this case, it had relevance to the third -party beneficiary issue, which the Court has correctly noted that Judge Kimball has already ruled

upon. That really is the main driving force behind DHL's attempt to depose a lot of these witnesses, and I think you'll see that in the later motions.

But the relationship between Unishippers and the franchisees is a matter of contract. It's the franchise agreement. That's the relationship between the parties. Mr. Curtis doesn't have anything to add to that. This is not a deposition of Unishippers. In fact, DHL withdrew its subpoena to do a 30(b)(6) deposition of Unishippers. Mr. Curtis does not have any special knowledge of the relationship between Unishippers and the franchisees. That's, again, a matter of contract, and it's not relevant, really, to any other claims that are still in the case. The third-party beneficiary issue has already been decided.

Now, he also -- the second part is they say there are unique claims and damages. Well, first off, the franchisee claims were the same as Unishippers' claims. They're based on the same contract for breach of contract, on the same actions by DHL. Mr. Curtis has already been deposed extensively by DHL on those issues. He also testified at trial extensively on the issues to which he had personal knowledge and was cross-examined by

DHL.

The damages as they relate to the franchisees, Mr. Curtis is not going to have any specific knowledge as it relates to the franchisees' damages. If DHL wants to find out particular information about their damages, he should ask them, not Mr. Curtis who's not a franchisee and is not employed by any franchisees.

The final category is DHL's counterclaims for payment. Now, these sales counterclaims that are in this case were originally asserted in the Unishippers case against Unishippers. We had full discovery on those counterclaims. We deposed a number of people at DHL, and DHL deposed a number of people from Unishippers. Those claims were later dismissed by Judge Kimball, and then they were filed in this case by DHL.

So there isn't anything that hasn't already been discovered on those counterclaims as it relates to Mr. Curtis or any information that Mr. Curtis might have. He didn't work for the billing department at DHL. He doesn't work for the billing department for Unishippers. There's simply no reason for DHL to take Mr. Curtis's deposition again except to heap costs and expenses on the

plaintiffs in this case and on Unishippers. You know, for him to appear for another day of testimony means it's another day of work that's lost and for which Unishippers has to pay Mr. Curtis.

So I really don't think that DHL's met its burden in this regard to show why it should take Mr. Curtis's deposition for a third time, and I would suggest that the motion should be granted on that basis and the subpoena quashed.

THE COURT: Thank you, Mr. Francis.

Ms. Wilde, do you want to -- do you want -- why don't I hear from Ms. Wilde, and then --

MR. HALEY: Okay.

THE COURT: Are you going to do this one?

MR. HALEY: Ms Rudd's going to do the argument for DHL.

THE COURT: Okay. But are you going to handle all three.

MS. RUDD: I am, your Honor.

THE COURT: So why don't we just wait and let you hear -- let me hear all three of theirs, and then let's hear your response.

MR. HALEY: Thank you, your Honor.

MS. WILDE: Good afternoon, your Honor.

THE COURT: Good afternoon.

MS. WILDE: I will try to not be duplicative of what Mr. Francis has said, although our arguments are similar.

Dan lock wood, he is the CEO of Unishippers, and Kevin Lathrop is the president of Unishippers. They have each extensively testified with respect to the facts and issues in this lawsuit, which, as Mr. Francis, indicated are identical to the Unishippers -- the issues and facts that were presented in the Unishippers case that recently went to trial in July.

As Mr. Francis said, Judge Kimball recently ruled on the issue of whether the franchisees, the plaintiffs in this case, are third-party beneficiaries under the agreement between DHL and Unishippers, which further confirms that the claims of the plaintiffs in the action are the same as the claims that Unishippers brought. They're suing under the same agreement, and they're relying on the same obligations of DHL.

Mr. Lathrop and Mr. Lock wood, they've both testified extensively in this case. Back in March of 2010 Mr. Lock wood testified for two days individually, and then on another day he testified as a 30(b)(6) witness to Unishippers. And similarly

Mr. Lathrop, he testified individually for a full day, and then on another day he was deposed as a 30(b)(6) witness.

THE COURT: Well, Ms. Wilde, let me just ask you straightforward because to me this kind of cuts to the chase. And I suspect I know what your answer will be, but I'll want to hear from the other side as well. Is this new material? Are they seeking to depose on new material, or are we replowing old ground?

MS. WILDE: Your Honor, they are seeking the same material that they have, and I can go through sort of the subject matter as I've identified in their briefs about what they're -- what they're after.

The first thing is -- that they're after is the data that Mr. Lathrop relied upon when he did his damages calculations. And just without, you know, giving too much detail on this subject, when Mr. Lathrop did his damages calculations, it's essentially the same damage calculation that's used in this case that's relied upon by Rick Hoffman, the expert, and back in -- back in December Mr. Lathrop sent -- I'm sorry -- counsel for Unishippers sent a letter to DHL's counsel. And if I can approach the

bench and --

THE COURT: You may.

MS. WILDE: In this letter Mr. Francis indicated that -- this was shortly after Mr. Lathrop did his damages calculation, and attached with this e-mail was all of the data that Mr. Lathrop relied upon when he came up with his damages calculation. It was an extensive amount of data.

And shortly after this letter was sent, Unishippers' counsel allowed DHL's counsel to call Kevin and ask him anything they wanted to about his damages calculation, and that phone conversation took place on February 22nd where Khal LeQuang of DHL -- I'm sorry -- DHL's counsel, he called and he talked to Kevin for, you know, a couple of hours and asked him anything he wanted to about this. Furthermore, this is what the scope of Mr. Lathrop's testimony was over the course of a couple days at trial when DHL extensively cross-examined him.

The -- I would say that's kind of in a nutshell the information that DHL wants from Mr. Lathrop.

With respect to both of them, they're also interested in obtaining information about their ownership interest and management in Castle

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 23 of 102


Enterprises, one of the plaintiffs in this action. Mr. Lathrop testified back in March of 2010 that he and Mr. Lock wood have a very small ownership interest in Castle Enterprises. And there is an issue as to whether Castle Enterprises decided to stop paying DHL once DHL announced that it was leaving the U.S., and Mr. Lathrop provided extensive testimony about that. He talked about the decision behind not paying them. He -- he specified that him and Mr. Lock wood were the two managing members that decided they should pay DHL but they were outvoted by six other managing members. And that -- that deposition testimony has been attached to our papers.

I -- moving on, I -- there is just a few other subjects that DHL claims that it needs information which either is information it already has or information that it can readily -- readily obtain from the franchisees.

One of them, as Mr. Francis indicated, is Unishippers' relationship with the franchisees, and to the extent of their relationship, that is all contractual. Judge Kimball has ruled that they are third-party beneficiaries. And Unishippers has also provided DHL in this case with the standard franchise agreement, and to the extent DHL wants to know

information about each of the franchise relationships with Unishippers, they can obtain that from each of these franchisees.

The other few subjects that (inaudible) DHL claims that it needs information is Unishippers' communications with the franchisees. That's been a subject of much testimony in depositions and at trial.

And another thing they've put in their papers is the franchise reaction to DHL's announcement when DHL was leaving the U.S. This is information that has already been testified by Kevin and Dan, and it's also information that can easily be obtained from the franchisees.

Other than that, I don't think any of the information they're requesting is that -- you know, that relevant to this lawsuit. One of those things is Unishippers' decision to resell portions of their underperforming franchise territories, which doesn't have a whole lot of relevance to this lawsuit.

Like Mr. Francis said, DHL can subpoena both of these guys, and they can testify at trial. They don't need to depose them in order to call them as witnesses at trial.

And I would close, unless your Honor has

any questions, that this information is duplicative and cumulative. It would be an undue burden for them to testify about information that they've testified extensively before.

THE COURT: Thank you, Ms. Wilde.

Is it Ms. Rudd that's going to respond?

MR. McGOEY: Your Honor, I joined in those motions other than to say that all of my clients have been deposed twice by DHL in this litigation, and other than -- they deposed Mr. Cameron now twice. I haven't yet seen a second deposition bear any additional fruit.

THE COURT: Thank you, Mr. McGoey.

Ms. Rudd.

MS. RUDD: Good to see you again, your Honor.

THE COURT: It's nice to see you.

MS. RUDD: I'm hoping I can make this relatively simple. We do not seek to retread old ground with these three deponents. We have multiple reasons to depose them. All three were disclosed as material witnesses in the initial disclosures of the plaintiffs in this case. No one is disputing that they have relevant evidence to this case, and none of them have been deposed yet in this case.

We -- first of all, let me take Lathrop and lock wood. Both of them are owners of one of the Phase 1 plaintiffs in this case. They have 13 and 15 percent ownership interests respectively. That's not a small ownership percentage. There are 13 owners in Castle, and they have a significant portion of the ownership relative to the other owners in the enterprise. They have been involved in management decisions. Eric Smith, who we deposed, is the general manager of Castle, but he said he reports up to his managing members who include Mr. Lathrop and Mr. Lock wood --

THE COURT: Ms. Rudd, can I interrupt you?

MS. RUDD: Sure.

THE COURT: Of course I can.

MS. RUDD: Of course you can.

THE COURT: I don't mean to sidetrack you, but in fairness to you, I want to ask the question that just came to my mind because it's relevant to my thinking on -- on this issue.

What -- how would you propose, practically speaking, in a deposition to limit your questioning -- I say yours, meaning anybody who does it -- to new ground, to use the plowing analogy? Because we're hearing from the movants and from the

plaintiff that this is all duplicative, it's been heard or it's -- you know, in one form or another, in another case, in another deposition, whatever, in testimony at trial, it's all duplicative. You're suggesting that it's new, that it's new material and so on.

I see a practical problem here. And I know this may not be going directly to the argument, but I think it goes to the issue, where, you know, we start getting objection after objection in a new -- in a third deposition, or whatever the number would be, asked and answered, you've been over this ground, blah, blah, blah. And the reason I'm concerned is the last thing I want is phone calls to my chambers in the middle of a deposition saying, well, here they go again. They're off into matters that have already, you know, been discovered and et cetera, et cetera, et cetera.

How would you propose to do that literally? I mean, what's the practical -- are you confident that the materials that you want to ask about are sufficiently new and unplowed ground that you can do that and not end up in a deposition battle all day long?

MS. RUDD: I am, your Honor. What I will

say about this is when we're talking about the prior depositions and prior testimony of these witnesses, one thing is the depositions that were taken of these witnesses in the Unishippers case were taken long before we ever had an order from the court phasing trials, identifying the four selected plaintiffs for the Phase 1 trial, long before the expert for plaintiffs disclosed his expert opinions on damages in this case.

What we want from these three witnesses is literally information related to the Phase 1 franchisee plaintiffs that were not disclosed at the time these witnesses were previously deposed, that were not at issue in the trial of Unishippers or Worldwide or any other case involving DHL, and I think we could easily narrowly limit the deposition questions to the issues that are relevant to the claims and damages of the four Phase 1 trial plaintiffs in this case.

I -- frankly, I don't think it's going to be a full day of deposition for any one of these witnesses because we don't seek to retread old ground about, you know, what third-party beneficiary issues might be lurking out there. I think we've heard from these witnesses on those issues, and we don't want to

hear from those witnesses again on the issues they've testified about before.

So I think we could control ourselves sufficiently and ensure that the questions that we are asking are narrowly tailored to, you know, ensure that they're not duplicative in the depositions going forward.

As a practical matter, your Honor, I think what we could do is we could -- we could limit our questions to the damages at issue in this case, what these witnesses communications were with the particular franchisee plaintiffs, what these witnesses' relationships were to the particular franchisee plaintiffs and -- and how they communicated with these franchisee plaintiffs relative to the claims and issues in this case.

THE COURT: You would not be inquiring, I take it, into the third-party beneficiary claim because that's now been ruled on by the Court.

MS. RUDD: No, your Honor. We've heard from these witnesses numerous times on that issue, and we're not interested in inquiring about that anymore.

THE COURT: Okay. Go ahead. I kind of jumped in and turned the course of the ship, so --

MS. RUDD: Well, I -- you know, just to go back to sort of -- although I don't think it's necessarily our burden to lay out every issue that we think would be relevant in these depositions because on a motion to quash it's the movant's burden to demonstrate why it would be an undue burden to move forward with the deposition.

But just to allay any further concerns that your Honor might have, on Mr. Lathrop, he is the principal person who calculated a significant portion of the damages for the Phase 1 plaintiffs in this case. Mr. Hoffman has testified that Mr. Lathrop is the person who provided him with all of the analytics for the overcharge damages alleged by the Phase 1 plaintiffs in this case. That totals about $7.5 million. If Mr. Lathrop is the person that calculated those damages, notwithstanding any data that was provided to DHL in the Unishippers trials, he's making a different calculation in this case, and I think we're entitled to ask him about that.

The other thing on Mr. Lathrop is, as I said, he is an owning member and a managing member of one of the Phase 1 plaintiff's, and in that position I don't think he truly qualifies as a third party. I think he's a party plaintiff in this case, as is

Mr. Lockwood, who is a managing member of Castle and who was one of the people that the general manager was reporting to on a daily basis and who made decisions for the company during the relevant time period to this case.

And then Mr. Curtis, Mr. Curtis is actually a unique person in that he worked for DHL for 19 years as a vice president and worked directly with resellers in that capacity. He talked to resellers about rates, about billing.

And then he moved over to Unishippers in a critical time period in early 2008 and remained at Unishippers through the time period when DHL ceased providing U.S. domestic shipping services, and in that role his whole job was communicating with franchisees about sales and revenues. And as a result, he has a unique perspective on how those franchisees were faring during the critical time period, how the four Phase 1 plaintiffs were faring relative to the rest of the franchise system.

We have multiple documents that Mr. Curtis is on discussing issues about conversion, issues about revenue and sales during the critical 2008 time period, and we think we're entitled to ask him about those particular issues for these particular

franchisee plaintiffs.

THE COURT: All right.

MS. RUDD: One last thing, your Honor, turning back to your question about how to practically limit the questioning on these depositions. I think one of the things -- one of the other things we could do is put a time limit on the depositions. We would be happy to confine ourselves to three hours per deposition.

THE COURT: Thank you, Ms. Rudd.

MS. RUDD: Thank you, your Honor.

THE COURT: Mr. Francis, do you want to respond?

MR. FRANCIS: Yes, I would. I think truly, as DHL's counsel has admitted at the end of their communications to the Court, the only way to truly limit the deposition is to limit its length.

So I don't think -- I think you need to look at separately the issue, though, of Lathrop and lock wood and Curtis. I don't think they've articulated any new need to depose Mr. Curtis. All the issues that they raised they have already deposed Mr. Curtis on. He is a third party. He is not a party to this proceeding. I don't think they've met their burden to show that they should depose him

again.

As it relates to Mr. Lock wood and Mr. Lathrop, I don't think they've met their burden there either, given the fact they've already deposed those gentlemen for three days each. But if the Court is inclined to allow them to proceed on a limited basis, I would think the only way to limit the scope consistent with the representations they've made to the court is to limit the scope of those depositions to two hours each. That truly is the only way to rein in attorneys or to limit the scope of their examination.

THE COURT: I know Mr. Haley. He can't clear his throat in two hours.

MR. FRANCIS: Actually, he's (inaudible) to take quite short depositions in this case.

So I would suggest that --

THE COURT: Mr. Haley wouldn't feel good if I didn't take a shot at him every time he comes into my courtroom.

MR. HALEY: It would hurt my feelings if you didn't.

THE COURT: Absolutely.

Go ahead, Mr. Francis.

MR. FRANCIS: So I would just suggest that

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 34 of 102


all -- there really isn't a basis for taking any of these depositions certainly with respect to Mr. Curtis. If they do -- are allowed to proceeded with Lathrop and lock wood, it would be limited to two hours each on the topics they mentioned.

THE COURT: All right. Thank you.

Let me make a couple of observations/findings. Look -- and by the way, I appreciate this case out of -- was it Illinois?

MR. FRANCIS: Yeah, the Northern District of Illinois.

THE COURT: Yeah. I actually read those highlighted provisions, and it makes some good sense.

This is a situation where at least as to two of the three witnesses, lock wood and Lathrop in particular, you know, they're pretty important people relative to this matter. They've got some serious involvement.

I understand the arguments for the motion to quash. They're -- they're not frivolous arguments by any stretch of the imagination. They have been deposed and re-deposed, and they've testified at trial. And there are good reasons -- and although classically they are not parties and that gives rise to even more protection than a party, they certainly

have certain similarities as parties and so forth.

Out of an abundance of fairness to the defendants who are defendants here who are trying to defend against serious allegations, I note that Judge Kimball did not attempt to limit multiple depositions, although he did seek and, as I understand, advise counsel to try and be economical, for want of a better word, in how they approached these things.

I am going to deny the motions to quash an all three. However, because I recognize there is some burden associated here and there is some obvious concerns relative to duplicative information. I'm going to limit the depositions to new material, to new matters, to those issues that were properly raised in the papers as, quote, new.

I do not want old ground being replowed, for want of -- that's the best way I can describe it. I will limit the depositions to three hours. I think that that will cause -- and I expect everyone to participate in good faith in that. And what I'm saying is I don't want counsel filibustering for fifteen minutes on objections and things that eat up the three hours. If that's the case and I get a call on it, we'll extend it another hour or two hours or

whatever. But I -- you're all professionals, and you're all people that I respect, so I don't think I even have to go there. But if you can get in and get it done, I think three hours is sufficient. And if it goes three hours and fifteen minutes, let's not be -- let's not get crazy. Let's just get it done and get it finished.

But basically three hours is what I think is a reasonable time period to get this additional information out out of an abundance of fairness to the defendants, quite frankly. I do believe that they are defending, and they may or may not have had an opportunity in the past. I'm not going to go there. But the fact is that if there's new material, new information, I'll give them the benefit of the doubt that they're entitled to go and find it out.

So that's the order on those -- on those three. Is there any question about what I've ordered and what I expect?

(No response.)

THE COURT: All right. That you.

MR. FRANCIS: Just to be clear, your Honor, then with respect to the deposition of those parties, absent the court granting a motion for reconsideration, there won't be any question on the

issue of third party --

THE COURT: Thank you, Mr. Francis. You're absolutely right. And let me be clear about that. Appreciate you raising that, although I alluded to it a number of times in my questioning.

I do not -- I am not allowing questioning about third-party beneficiary claims and status based on Judge Kimball's prior ruling. Now, if for whatever reason he grants the motion for reconsideration and then reconsiders and then changes his ruling on that, that's a different -- that's a horse of a different color, and we'll address it at that time.

MR. FRANCIS: Thank you for clarifying that.

THE COURT: But that's -- for right now that seems to be the law of the case, and I think that that has to be respected.

All right. Let's go to Docket No. 237, defendants' motion for protective order regarding the timing and location of the deposition of Charles Brewer. And this will be Mr. Ruhland; is that correct?

MR. RUHLAND: It is. Thank you, your Honor, very much.

THE COURT: Now, before you start, Mr. Ruhland, let me just see if you can clarify or if -- you or anyone here, exactly where we stand on this and what exactly the issue is here because I'm not sure exactly where we are on this. So help me understand where we are currently.

MR. RUHLAND: Sure. And that's a good place to start because where we are is there's only one dispute left with respect to Mr. Brewer as a question of whether Mr. Brewer's going to be ordered to fly from Cape Town, South Africa, to Salt Lake to be deposed in Salt Lake or whether he can be deposed via videoconference where he lives and works in Cape Town, South Africa. That is the only question that is left.

THE COURT: Does everybody agree with that?

MR. MCGOEY: Your Honor, I completely disagree with that.

THE COURT: Okay.

MR. MCGOEY: At least I -- I think -- I think the sole issue before the Court on this motion is whether or not DHL had good cause under Rule 26 to -- to file a protective order under the local rule and stay the deposition that I properly noticed in

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 39 of 102


July --

THE COURT: When he was here for the trial.

MR. MCGOEY: -- when he was here in Salt Lake. They chose to take the benefit of the local rule and stay the deposition --

THE COURT: Okay. Well, I don't want to hear the argument right now, so -- I mean from you, Mr. McGoey. You'll certainly have your opportunity.

So with that, apparently it's not as clear as mud, so why don't you go ahead and tell me what you think the issue is, Mr. Ruhland, and make your best shot, and then we'll give Mr. McGoey an opportunity and see if we can sort it out.

MR. RUHLAND: Thank you.

I mean, there was an issue about what would happen in July, but since we are no longer in July, it doesn't seem to be an issue anymore because that is past.

But in any event --

THE COURT: Well, it's not an issue that's current, but it's prolog and related to, in my opinion, how this case may -- how this issue may play out. I don't think we can ignore what the situation was in July in terms of how this might be resolved.

But -- so --

MR. RUHLAND: Okay.

THE COURT: -- feel free to either address it or ignore it, but I -- I think Mr. McGoey is clearly intending to address it, it sounded like to me, so --

MR. RUHLAND: Simply what happened in July is we had a dispute about whether while Mr. Brewer was here to testify at trial they could sort of collar him in the hallway and force him to -- to sit for a deposition, even though it wasn't his plan to come out for a deposition. We did file a motion for protective order. It didn't get resolved one way or the other before he was here for trial so that that issue could have been resolved. He's now for a long time back in --

THE COURT: All right, Mr. Ruhland --

MR. RUHLAND: -- back there.

THE COURT: -- you got me going here.

MR. RUHLAND: I'm sorry. I want to make sure I --

THE COURT: No. I -- no. What I mean by that is I -- my clerks have told me to quit asking questions, and I still -- you know, what am I going to do? I -- get a new clerk, you know.

MR. RUHLAND: We hope not.

THE COURT: I've got to tell you, I'd like to find out -- now, you talk about them collaring him in the hallway and taking his deposition and so on, but let's -- let's be realistic here for just a minute. What is the practical reason why, as long as he's flying from South Africa to Salt Lake City to appear and testify at trial -- and I say it with all due respect to you. I'm not making any disparaging remarks about you or anybody else, but that on its face would be a classic opportunity to stay an extra day, get the deposition done. Why wasn't that done?

MR. RUHLAND: I'm happy to answer that. To us it seemed like a terrible time for him to be deposed for two reasons. One, we knew there was a mechanism for him to be deposed via videoconference, and, again, this is someone -- we talked about Mr. Curtis being deposed three times. Mr. Brewer's been deposed six times. They have stacks of deposition transcripts and four trial transcripts, one of which they were involved in because your Honor mentioned the fact that Judge Kimball allowed some consolidation. In the Unishippers case Mr. Brewer was deposed. They had a lawyer on the phone who could have asked questions if she wanted to.

So the point is he's been deposed a lot. He came out for trial, which for all of us in trial, as the Court knows, is a very stressful, busy time for us and the witnesses, attempting to prepare a witness at night to testify the next morning, then moving on to the next witness the following night to prepare.

And our feeling was for both the lawyers who were trying the case, who were the same lawyers -- so it would be one thing if we had some other law firm in two cases. But the same lawyers who were focused on attempting to defend DHL in the Unishippers case would have had to shift gears and defend Mr. Brewer in the deposition in the Gulf Coast case in the middle of a trial. Similarly, Mr. Brewer would have had to prepare for his deposition while he's in one case at the same time that he's preparing in a very important trial to testify. And to us, it didn't seem right that he ought to have to be deposed during the middle of a trial.

It's -- I can understand the court saying, Well, gee, somebody could make their travel arrangements so they stay one more day. But to us it wasn't about just one more day in a hotel. It was the energy and effort that go into defending a

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 43 of 102


deposition like that and Mr. Brewer testifying in a deposition such as that. And that was the reason that we said that we didn't think it was appropriate.

THE COURT: Okay.

MR. RUHLAND: And, you know, the Court may disagree, and I -- if that's the case, it is. But, you know, now -- it was not resolved. He did not testify, and now he's sitting --

THE COURT: He wasn't deposed.

MR. RUHLAND: He wasn't deposed. In other words, he testified at trial --

THE COURT: Right.

MR. RUHLAND: -- but he wasn't deposed. And that was -- that was our feeling.

THE COURT: Okay.

MR. RUHLAND: Now we're faced with a situation where, as we've said all along, we believe that a videoconference of Mr. Brewer is proper. Obviously under Rule 30(b)(4) the Court can order a deposition to be taken by telephone or other remote means. In fact, we thought we were close to working out the schedule with the plaintiffs' lawyers, and at the end of the day, they said they couldn't find a court reporter to time shift to -- you know, because it's later in the day in South Africa, they would

have had to get a court reporter early in the morning. We this morning found a court reporter who's willing to do it, and that seemed to be the hitch.

But, really, it just seems like when we're talking about a protective order and we're trying to prevent undue burden and expense, the expense of a videoconference isn't anything like him coming out. As well as the burden, he's got another job. He doesn't currently actually work -- today, he doesn't work for DHL Express (USA), which is the defendant. He works -- he certainly works for a sister company, the one in South Africa, but --

THE COURT: Does he travel to the U.S. on a regular basis for business, Mr. Ruhland?

MR. RUHLAND: He does not. He does not.

And that's the big difference between this case and the cases that the plaintiffs cited in their motion where you had someone who traveled from Greece to New York all the time. And they said, Well, go depose him in New York. He'll be there for business. Or another gentleman traveled from Israel to Los Angeles. Even in that case, the Cadent case, where the court said that the witness travels from Israel to Los Angeles so he out to be able to depose

him in Los Angeles, the court ordered that the parties split the cost of the travel. And, again, I think the thought there was it's a reduction of burden to do it that particular way instead of having all the lawyers fly out to Israel.

In that case the -- the party representing the foreign deponent wasn't offering a video deposition. The alternative there, they were arguing, hey, everybody ought to fly out to Israel or everybody ought to fly out to Greece, which obviously is more expensive if it was done that way.

Here we think we were just offering what we think is the most practical, least expensive way. And I think that in this deposition, your Honor, it makes sense because, again, when you have someone who's been deposed and testified so many times over the same documents -- and Mr. Francis made the point that at some point you run out of new things to ask. Well, all we've seen are the same documents, the same questions asked. He gives the same answers so we sort of know what's going to happen at this deposition, and it just seems that he ought to be able to testify by videoconference.

THE COURT: Well, maybe I have misapprehended your arguments in the past on the

papers, or whatever, but it seemed to me that the argument really was that it was an undue burden because of travel time or costs associated with that. Now you're really telling me that it's duplicative and redundant.

MR. RUHLAND: Well, I appreciate that, your Honor. We are saying that it's too expensive and burdensome for travel. The only point I make about it being duplicative is not to say that he shouldn't be deposed. We are not arguing that he shouldn't be deposed because it's duplicative. All we're saying is in a situation where you have someone who's been deposed many times, a videoconference is easier. You could send him the documents. We'll -- I guarantee you won't be surprised at what those documents are in advance. And it's just an easier routine. They've seen him testify before many times.

So what I'm saying about that is I can imagine a situation with somebody who's never been deposed before. You don't know what he looks like, what his demeanor is, what documents you might show him. I can understand the in-person --

THE COURT: Yeah.

MR. RUHLAND: -- compulsion. That's all I'm saying, your Honor, on that point.

THE COURT: I understand. I understand.

And there -- and I will tell you that I do think -- I mean, obviously video depositions are commonplace and are used regularly, but there is something to be said for in-person. It's -- you know, whether it's a phone call or video or whatever, it's not quite the same as eyeball to eyeball.

MR. RUHLAND: There's no question. I agree with that, your Honor. And that's why -- I'm only saying that I just think it mitigates in favor of video here when they've already -- they know what he is eyeball to eyeball. They've done it. All the resellers have done it. That's all I'm saying.

THE COURT: Okay. All right. Thank you --

MR. RUHLAND: Thank you very much, your Honor.

THE COURT: -- Mr. Ruhland.

Mr. McGoey.

MR. McGOEY: Yes, your Honor. Thank you.

Your Honor, to first address the issue of whether or not this is -- the issue is the undue burden for Mr. Brewer to fly from South Africa to the U.S. or is it did DHL have good cause to move for protective order and not prevent me to take his

deposition in July, I would say the same issue applies to their first -- to Unishippers' motion for protective order for Lathrop, lock wood and Curtis. They moved to stay -- they moved for a protective order. They got the stay under the local rule. And the discovery period in this case has come and gone, yet, they're still required to produce them for a deposition.

The same is -- is the method here. Just because you file for a protective order and get a stay under local rules does not you allow you to have to -- doesn't change your burden as to the good cause that you needed to show when I noticed the deposition.

THE COURT: Well, let me ask you the more pressing question. I say "the more pressing question." Pressing in my mind. What is it you want today? I mean, I know that you noticed the deposition. I know what happened in July and so on. There's been some water under the bridge. But tell me, you know, today what is it you want?

MR. McGOEY: I want him to come to the United States for a deposition. I started trying to take his deposition in March of this year. He was in Texas in May for the Worldwide Express trial. They

wouldn't let me depose him in Texas. I said I'll come to Houston. They wouldn't let me.

They said, Well, you know what? He'll be in New York in June.

I said, I'll go to New York and depose him.

Then his travel schedule changed and he wasn't in New York.

Then he was going to be in July -- in July he was going to be in Salt Lake at the Unishippers trial. I said, I'll be here in at the Unishippers trial. I'll depose him. I'll depose him either before he testifies or after he testifies in the case. Whatever you all prefer.

By my count DHL had more than ten lawyers in the courtroom for two weeks, for the entire two weeks. Mr. Haley had probably five lawyers from his office. Mr. Ruhland had probably at least five or six, several in the back just looking at iPads, not doing any work. So the fact of the matter is to tell me that they didn't have a lawyer available is just disingenuous.

I have a right to depose him. He was properly noticed. DHL put forth no proof or substance for their -- for the good cause to not

depose -- to not allow me to depose him, and the proof of that --

THE COURT: All right, Mr. McGoey. I've got the gist of that argument. And I'm not trying to interrupt you, but let's cut to the chase here. I know it feels good to say it, but I don't need to hear it.

MR. McGOEY: I just -- I want him -- I want him brought to the U.S. for a deposition.

THE COURT: No, I understand, but my -- okay. That's what you want. But now tell me about -- you heard Mr. Ruhland say, Well, hey, jeez we'll make him available by video deposition. What's your position on that?

MR. McGOEY: The first time that was offered to me they told me he was only available at nine in the morning Cape Town time, which was one in the morning New Orleans time. I looked around and tried to find a videoconference service that would do it, and I couldn't find anyone. So they graciously said, We'll move the deposition back to 1:00 Cape Town time. My paralegal tried to find someone to do it. We could not find it -- anyone to do it.

THE COURT: Well --

MR. McGOEY: But the fact of the matter is

I want to look him in the eye just like you said. I told them I would -- I would attempt to see if videoconferencing was a possibility, but I wasn't relinquishing my right to compel him here for a deposition. We were unable to do it because they took the position that I had to do it at one in the morning my time. That was -- I mean, they're not reasonable. I mean, it's -- it's games. It's just more of the games.

THE COURT: Okay. Thank you. Anything else, Mr. McGoey? I don't want to cut you off.

MR. McGOEY: Just that --

THE COURT: You came a long ways.

MR. McGOEY: I understand.

THE COURT: I don't want to cut you off.

MR. McGOEY: They -- Mr. Wong, Who's not here today, he's the one who wrote me on June 17th, a month before I noticed the deposition of Mr. Brewer here, and said, We don't know his travel schedule. He's -- we don't know what it's going to be. He's not available. You have to depose him in South Africa because that's where he lives. That was their position, not the undue burden of him coming over now. I -- I didn't try to horse collar him in the hallway or anything like that --

THE COURT: How is -- how is the weather in South Africa this time of the year?

MR. McGOEY: I don't know.

THE COURT: How would you like to find out?

MR. McGOEY: Well, I found out how Seattle was when we deposed Mr. Cameron for the second time --

THE COURT: Okay.

MR. McGOEY: -- and --

THE COURT: How was that?

MR. McGOEY: It was short and brief.

THE COURT: Good.

MR. McGOEY: And duplicative.

THE COURT: All right. Touché. Thank you, Mr. McGoey.

MR. McGOEY: Thank you, your Honor.

THE COURT: All right. Mr. Ruhland, final word on this one.

MR. RUHLAND: Your Honor, if the Court has questions of me, I mean, I'm happy to answer. Otherwise --

THE COURT: No, I don't.

MR. RUHLAND: Thank you.

THE COURT: Thank you.

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 53 of 102


This one is relatively easy for me. I'll just be candid with you. I'm going to order his deposition. I do think, with all due respect to the defendants, that -- that it sounds like to me that Mr. McGoey has given you a number of opportunities to do it. It can be done in one of two ways. You can produce him in the -- anywhere in the United States, and, Mr. McGoey, you'll bear your own expenses. But if you don't want to produce him in the United States, Mr. McGoey is going to South Africa courtesy of DHL.

That's my ruling, and you've got 30 days to get it done. So if he's coming out to New York on business, Mr. McGoey, you're going to New York, and I hope you'll enjoy a nice Broadway show. But the fact is I do believe -- I do believe that it's time to get Brewer's final -- hopefully, final deposition done.

But, you know, with all due respect, i just think there were some opportunities here, and for whatever reasons they weren't seized. But I do think Mr. McGoey tried reasonably to get that done, and, you know, Mr. Brewer needs to be deposed.

So I'm going to order -- and I don't -- and I'm not saying which way it goes. I mean, I'm going to let you folks sort that out. But I'll give

you 30 days to get it -- I mean, it doesn't even have to be done in 30 days. I'll give you 30 days to get a resolution so -- to be reasonable here. And that is -- and let me be clear on the record. He will be deposed, and -- and if -- if he's not traveling to the United States anytime in the reasonable future for business and -- and they don't want to bring him for purposes of the deposition alone, then I -- the order of the court will be that the defendants will bear the costs of Mr. McGoey going to -- is it Johannesberg? I don't know where he is, but he's somewhere in South Africa.

MR. RUHLAND: It's Cape Town, your Honor.

THE COURT: Cape Town?

MR. FRANCIS: It doesn't have to be Mr. McGoey. If it's South Africa, I will take that.

MR. McGOEY: He's always there for a (inaudible).

THE COURT: Well, you know, I love people who have that kind of a willing attitude.

MR. FRANCIS: Thank you, your Honor.

THE COURT: It shows me something.

But the fact is -- but if it's in the United States, then each party to bear their own costs. But there needs to be an agreed time, date --

agreed upon date and time within 30 days. If not, then I'll take further action on it.

Is the order clear?

MR. McGOEY: Yes, your Honor. Thank you.

THE COURT: All right.

MR. RUHLAND: It is. Thank you, your Honor.

THE COURT: Now, the next three are -- I'm taking in a block, Docket Nos. 268, 270 and 272, which are the motions to quash and protective order, or at least motions to quash, I guess -- well, there is in the alternative a motion for protective order for Nancy Haug or Haug and Alexander Rossi.

And let's see. Who's going to handle this?

MR. McGOEY: I'll be handling these, your Honor.

THE COURT: All right.

MR. FRANCIS: And I'll be handling about -- yeah, Mr. Rossi.

THE COURT: I was going to say, on the movant. Unishippers' motion, so we've got Mr. Francis and Mr. McGoey.

Go ahead Mr. McGoey.

MR. McGOEY: Your Honor, I'll be very

brief. The only areas that they've -- that DHL's identified Ms. Haug and Mr. Rossi as having any knowledge or potentially relevant information deals with the third-party beneficiary issue. They both were involved with the fourth amendment, which DHL has taken the position that means my parties are not third-party beneficiaries. Judge Kimball has already ruled as a matter of law that the contract provides that my clients are third-party beneficiaries.

So just as your previous ruling on lock wood and Lathrop and Curtis that you aren't going to allow them to go into third-party beneficiary issues, I think that same would apply here, and it's the law of the case.

And then I just would note as of August 22nd of 2011 when DHL sent me their supplemental disclosures in this case, they didn't identify either of these witnesses as having potentially relevant information in this case despite the fact that they've known of their existence since 2010 when Mr. Cameron was deposed the first time. This is just another issue that they've thought of and wanted to, in fact, make me go back to Seattle a third time because when I was at the deposition for Mr. Cameron the second time, at about fifteen minutes

to go, at a break Mr. Wong handed across the table a preprinted and signed subpoena from one of their attorneys in Texas, so it was obviously prepared the day before, and said, We'll be coming back to Seattle next week. At that point I just -- I left.

THE COURT: Thank you, Mr. McGoey.

MR. McGOEY: Thank you, your Honor.

THE COURT: Mr. Francis, please.

MR. FRANCIS: Thank you, your Honor. I'll also be brief. There's some overlapping issues with respect to our motion but also some that are particular to Unishippers.

Mr. Rossi was Unishippers in-house counsel for approximately ten years, from 1990 to 2000. DHL is seeking to depose Mr. Rossi for communications that he had with Unishippers during that time period, which would be privileged. But beyond that -- and I think, you know, we needed to do the Shelton analysis if the Court were actually going to allow the deposition to go forward or really to evaluate it on a substantive basis.

But I agree with Mr. McGoey in that the only issue that they want to depose him on is this Amendment No. 4, which by the way, he didn't sign, someone else at Unishippers signed, and Amendment

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 58 of 102


No. 4 only relates to the issue of whether or not certain independent agents and affiliates are subject to the terms of the national account agreement. DHL is trying to use that language to suggest that somehow the franchisees weren't third-party beneficiaries.

They also reference a letter between Mr. Rossi and Ms. Haug about that Amendment No. 4, which again is consistent with the Court's ruling that the franchisees are different than these affiliates or independent agents that are referenced in Amendment No. 4.

So, really, the only issue which has no relevance now in the case relates to the third-party beneficiary issue, and that's the only reason they seek to --

THE COURT: And Judge Kimball has already ruled on that.

MR. FRANCIS: Right.

There's two other issues. One is Mr. Rossi was not served under Rule 45. The subpoena could be quashed on that basis alone. It's pretty clear the majority rule is that under Rule 45 you have to serve the person. You can't leave it with somebody else.

Interestingly -- and this is typical of DHL's behavior in this case -- they took the position in our case that after we had served their former CEO, Hans Hickler, through his wife at their Florida residence that he hadn't been personally served. Now they're here in the court suggesting that the rule is different when it applies to them. According to the return of service they filed with the court, the subpoena was served on Mrs. Rossi, not Mr. Rossi.

THE COURT: So you think that what's good for the goose is good for the gander.

MR. FRANCIS: Well, that's always been my practice, but, you know, I think there's a judicial doctrine called estoppel which actually keeps you from taking an inconsistent position with your prior position as well.

Finally, if --

THE COURT: That is unknown to my law clerks. They think I'm the most inconsistent judge they have ever dealt with in terms of my rulings, but actually, to me, it's all absolutely consistent.

MR. FRANCIS: Well, I think judges are exempted from that doctrine.

THE COURT: Okay.

MR. FRANCIS: But attorneys should be held

to it.

Even if these other issues weren't there, the defective service, the irrelevance of the subject matter, again, he was our in-house counsel. There's the whole issue of privilege.

I think the Shelton factor analysis would apply to this case. That's the factor analysis that applies to opposing counsel or in-house counsel where the other side seeks to depose them on issues in the case. It's a three-factor analysis, and the first is that there's no other means to obtain the information. The second is the information has to be relevant and not privileged, and third, it has to be crucial to the preparation of the case.

And just going through each of those, first, no other means to obtain the information, they already took Gerald Cameron's deposition on this exact amendment. They already know what the amendment says. It's clear on its face. They have the letter between Mr. Rossi and Ms. Haug regarding the amendment.

Secondly, the information isn't relevant because the issue's already been decided. And if they want to ask Mr. Rossi about his communications with Unishippers, those are privileged.

And, thirdly, it's clearly not crucial their case because it doesn't even relate to an issue that's in the case.

So I would just submit that this -- Mr. Rossi is not a proper party to be deposed in this case and that the motion to quash be granted.

THE COURT: Thank you, Mr. Francis.

Who am I going to hear from, Mr. Ruhland?

MR. HALEY: Mr. Ruhland, yes, your Honor.

THE COURT: All right.

MR. RUHLAND: Thank you, your Honor.

We actually believe that these are two important depositions that DHL wants to take even beyond the third-party beneficiary issues. And I'll get to that.

But there's a threshold issue here, which is whether the plaintiffs and Unishippers are in a position to complain about third parties being deposed who themselves have not complained. And, in fact, there's a -- your Honor decided a case, the Anastasion case -- and of course I'm not suggesting there's estoppel here as your Honor mentioned. But it was last year, Anastasion versus Credit Service of Los Angeles, where a similar issue occurred where a plaintiff tried to quash the deposition subpoena of a

third party.

The court held two things. First, the court doesn't even have jurisdiction for an out-of-state deposition subpoena to quash it. Now, that only would apply to Ms. Haug. She is in Washington. Mr. Rossi's here, so, of course, the Court has jurisdiction on that one.

But the second and most important is even if there's jurisdiction, the court held that the parties don't have standing to object to a third-party subpoena. Only the people who are subpoenaed do.

In this case Ms. Haug, we've actually called her up on the phone. She's willing to be deposed. She did not object. Mr. Rossi did not object. His former employer, Unishippers, did. And we'll get to that. But what the court said is that unless a party can show that it is asserting a personal right or privilege, then the court would hold that the plaintiff has no standing to object.

We think that applies here. And certainly what's overlaying this, your Honor, is that DHL is being sued in Phase One, according to their expert, for $30 million. That's just for four out of the hundred or so plaintiffs. We're talking about

hundreds of millions of dollars, and the parties agreed that they would each be able to take 19 depositions. If DHL goes out and uses its 19 depositions to take what other parties thing are foolish or irrelevant depositions, then ultimately we've wasted a deposition.

But DHL had made a determination that of the 19 depositions it gets to defend itself in this case, and particularly with a woman, Ms. Haug, who we can't bring to trial because she's in the state of Washington, it just seems that we ought to be able to go and get the information from her that we think is relevant --

THE COURT: Beyond the third-party beneficiary --

MR. RUHLAND: Correct.

THE COURT: -- issue?

MR. RUHLAND: Correct. And --

THE COURT: What is that information you want beyond that?

MR. RUHLAND: A number of things. First -- and we provide the testimony from Mr. Cameron in the papers, and we also provided a letter that she wrote -- Mr. Cameron testified that he would defer to Ms. Haug not just on a third-party

beneficiary issue, but the entire negotiation of Amendment 4, which is not just about third-party beneficiary. It's three pages long. I have it here. And he said that she communicated with -- with Unishippers and with the reseller. He doesn't know what all those communications were. It seems we ought to be able to ask her. She had communications with Mr. Rossi of Unishippers, and again Mr. Francis is coming in and saying, well, we ought to be able to take Mr. Rossi's. If we don't get Ms. Haug's deposition, we have neither side of the transaction that includes discussions about things like rates and ongoing support of the resellers and marketing issues.

We have a serious damages here because, among other things, the position of the plaintiffs is that they were overcharged. Well, we believe that the evidence is going to be that they knew all along what they were charged, why they were charged, how that compared to other resellers. Those are the conversations we think might have taken place between Mr. Rossi on the one hand and Airborne Express at the time, now DHL, and also with Ms. Haug.

And we've got documents produced in the case from these folks that discuss a number of

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 65 of 102


topics, including, for example, the issue of exclusivity. That's a big issue in this case, was Unishippers required to ship with DHL such that it couldn't make a deal with others, and were the franchisees also bound? The letter that we cite that Ms. Haug wrote, she talks about there have been conversations about exclusivity.

So the question isn't whether she may have some discoverable information, and certainly if you look at the -- if we talk about the standard of, you know, either relevant or likely to lead to the discovery of relevant evidence, it seems she meets that minimum threshold. So does Mr. Rossi. And it seems to me that that's why they're here complaining about this.

I mean, all that Mr. McGoey has to say about Ms. Haug's deposition is he's upset because he doesn't want to fly to Seattle again. In a hundreds of millions of dollars case where we've had depositions all over the place, when they want to take depositions out of state, when they want to go to Texas, when they want to go to Florida, it's worth their money, but when we want to go to Seattle, it's a problem.

Well, Mr. McGoey doesn't have to fly to

Seattle. If he thinks Ms. Haug has nothing interesting to say, he doesn't even need to be there, or he could be on the telephone as they have done for other depositions. But to deny DHL the right to take a deposition of a third party who hasn't complained just doesn't team right.

And with respect to Mr. Rossi, he's in the same boat except for a couple issues. One I mentioned, he's in Salt Lake, so the Court obviously has jurisdiction. Second, ten years ago, eleven years ago, he was a lawyer for Unishippers, which is now complaining that there are privilege issues. We're not going to ask about privileged communications. And if -- if we do, Mr. Francis can instruct the witness not to answer, which is his right, and he's done that before. But if we ask about communications between Mr. Rossi and Airborne, clearly those are not privileged communications, and we ought to be able to ask that.

Shelton -- the whole Shelton line of cases are about a party that is trying to depose litigation counsel, whether in-house or outside trial counsel, of its opponent in the case. Mr. Rossi has never been a lawyer for Gulf Coast, the plaintiffs. He was a lawyer for a third party, Unishippers. And, again,

he had no -- nothing to do with this litigation, this lawsuit, in terms of the trial strategy. We only want to ask him about what he did as a lawyer who dealt with Airborne. And so we don't think Shelton applies to this case.

THE COURT: Thank you, Mr. Ruhland.

MR. RUHLAND: Thank you.

THE COURT: Mr. McGoey?

MR. McGOEY: Yes, your Honor.

THE COURT: What's your response to the standing argument?

MR. McGOEY: The standing argument, we filed not only to quash it but for a protective order. And the case law is clear that a party can move for a protective order even for a third party, and we cited that in our reply brief.

THE COURT: So you're saying that this -- I just want to make clear of your -- you're saying that the moving -- excuse me -- that the nonparty witness would have to move for the motion to quash, but under the case law that any party can move for a protective order?

MR. McGOEY: Yes. And there is some case --

THE COURT: Is that a fair statement?

MR. McGOEY: There is some case law that says a party can move to quash, but I acknowledge that there is some case law that says there is -- a party cannot do that. That's why I filed it to quash as well as for protective order.

THE COURT: Um-hum. Okay. What about the jurisdiction argument, about whether or not the Court has jurisdiction over Ms. Haug as opposed to Mr. Rossi?

MR. McGOEY: Well, I'm not a party to any litigation in Seattle, and originally they issued the subpoena from this court, not from the Washington court. And that was one of my first bases for the protective order was it was invalid. They then on the last day of discovery fixed a subpoena and served that on her but didn't tell her that I had a pending motion to quash.

So this is the only Court that I can ask for relief from for a protective order --

THE COURT: Okay.

MR. McGOEY: -- and so I do think you have standing.

THE COURT: Okay.

MR. McGOEY: Regarding --

THE COURT: Well, jurisdiction.

MR. McGOEY: Jurisdiction.

THE COURT: Yeah.

MR. McGOEY: I'm sorry.

THE COURT: I don't have standing, but I've got jurisdiction.

MR. McGOEY: With respect to the topics, I didn't hear Mr. Ruhland answer the court's question regarding what Ms. Haug -- what information she would have that's relevant that doesn't deal with the third-party beneficiary issue. Since day one of this case DHL has been throwing its Amendment 4 up in the motion to dismiss as well as in three motions for summary judgment now, saying Amendment 4 means my clients are not third-party beneficiaries.

Judge Kimball has ruled when he granted my motion for summary judgment that they were precluded from discovery on the third-party issue, third-party beneficiary issue. So there's a ruling in this case that is the law of this case, as you said, that they are not entitled to discovery from Ms. Haug concerning third-party beneficiary issues, which is the fourth amendment.

The only other thing he says is damage issues, that we were overcharged. Ms. Haug never worked for DHL. She worked for Airborne in the

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 70 of 102


1990s. DHL bought Airborne in 2003. She has -- she was a head of marketing. She has nothing to do with the rates my clients were charged. That's Mr. Cameron. He negotiated the contract, he negotiated the rates. They've deposed him twice.

With respect to exclusively, that was an argument that they made in the Unishippers trial, and that's already been ruled on. As far as I'm concerned, there's res judicata and issue preclusion on all the rulings in that case, and we'll be asking Judge Kimball for that relief in the near future.

But that -- Ms. Haug has no information that is anything relevant to this case other than their claim of third-party beneficiary, which the court has already ruled they're not entitled to any additional discovery on.

THE COURT: Thank you, Mr. McGoey.

MR. McGOEY: Thank you.

THE COURT: Mr. Francis.

MR. FRANCIS: Just briefly, on the standing issue and the court's decision in the Anastasion case, the court expressly indicated that a third party, unless the party challenging the subpoena, has a personal right or privilege with respect to the subject matter sought by the subpoena.

We, as the client, Unishippers, own the attorney-client privilege. The cases are legion in that regard. We have the right to assert the privilege. We have standing, therefore, to file a motion to quash against our -- seeking information from our former general counsel, in-house counsel, during the time period in which he was general counsel, which is that 1990 to 2000 period. That's where they're seeking the information. This amendment that they've talked about was in 1999 when Mr. Rossi was in-house counsel for Unishippers. So clearly we have standing to bring a motion to quash.

I think that also applies to the defective nature of the service of the subpoena. Mr. Rossi doesn't need to stand up and object. He wasn't even served with the subpoena. We have the right --

THE COURT: Well, I appreciate that, but the problem with that argument, of course, is that sooner or later they'll get it right, and then we're all back here again. So I'd rather go to a more substantive argument than a technical service of process issue because --

MR. FRANCIS: Well, except discovery is over in this case, so --

THE COURT: Well, that's right. That's

right. It has --

MR. FRANCIS: -- so it has resolved the issue.

THE COURT: That's right. That's right. Good point.

MR. FRANCIS: So technically it's defective. Substantively it's defective.

Mr. Ruhland got up and does not give one discrete answer to the court's question about what they needed to depose Mr. Rossi on except the third-party beneficiary issue, because, really, if you read the papers, before the Court ruled that was the issue.

DHL has now got up and said, Oh, we didn't ever seek to conduct additional discovery on the third-party beneficiary issue. In fact, that was the key component of their argument to this Court before the Court ruled following their opposition memoranda that were filed. That was the reason they were taking these depositions. Now they want to back up and say, Oh, no, no, we weren't ever going to do that. We're going to do something else. But when pressed, they can't identify what that is.

Simply stated, Mr. Rossi does not have the information, any non-privileged information, which is

relevant to the claims in this case. Given that he was our attorney and there are privilege issues and that he hasn't been properly served, I think the motion should be quashed and they shouldn't be allowed to proceed with his deposition.

THE COURT: All right. Thank you.

Anything else, Mr. Ruhland?

MR. RUHLAND: Just a couple things, your Honor.

With respect to Mr. Rossi and service, we cited two cases in our brief that within the Tenth Circuit, not Tenth Circuit cases, that said that you don't need to actually serve the person personally. They admitted in their brief the Tenth Circuit itself has not ruled on that issue and there are cases that go both ways.

Our point on that is Mr. Rossi certainly had notice, which is what a service is supposed to entail. We gave -- apparently served it on his wife. She handed it to him. He had it, and that's why they're here today. And it does seem to be a pretty technical way to slice things when we have cases that go both ways on that issue.

And in terms of the relevance, again, I think I described why we want Ms. Haug. Of course,

we did want them for the third-party beneficiary question, but now we have another question because Gulf Coast has argued that paragraph 2 of Amendment 4, which says that USA and USA franchisees -- excuse me -- paragraph 4 of Amendment 4, which says that the agreement is solely with reseller and not reseller's independent agents or affiliates. But that has nothing to do with third-party beneficiary. It has nothing to do with them. We're not talking about them.

Well, then the question is: Who does it refer to? Who are these independent agents and/or affiliates, and were the Gulf Coast plaintiffs using them? Because if they were, clearly that would limit damages. It would limit the incidents of breach. So we ought to be able to find out what this agreement means.

And we just had a case -- a new Unishippers case we tried with Judge Kimball. The court allowed every witness pretty much to get up and say, Well, this is my understanding of the agreement, and that's my -- this is my understanding of the agreement, and that provision and this provision. And if that's going to be the case, the people -- Mr. Rossi and Ms. Haug, who were involved in

negotiating this, we ought to be able to know what they think, and again, especially given the stakes, given the fact they're not here to object. And Mr. McGoey, he just doesn't think it's relevant. But that's fine. He doesn't need to attend.

With respect to Mr. Rossi and the privilege issues, we understand about privilege, and we're not going to get into privileged communications. We're never going to ask Mr. Rossi what advice he gave to Unishippers. We want to know what he discussed with Airborne.

And with respect to the historical issue of whether -- the fact that Ms. Haug worked at Airborne. They're claiming they were overcharged back into the Airborne days. And, in fact, we had deposition testimony from Mr. Lockwood and Mr. Lathrop who claimed they believed and knew that they were being overcharged back in the Airborne days. So it is relevant.

And, again, given the standard -- the two standards that I think are important here are, one, that there's a pretty low standard for discovery in terms of the showing that needs to be made, and second, the burden is on them, the moving parties, to show why the court should issue a protective order,

and I don't think they met that burden. Thank you.

THE COURT: Thank you. I'm going to take these three under advisement. I want to think about this a little bit over the weekend, and the order will be forthcoming very soon.

Let's go to the last -- what I call the last two motions, the remaining motions, that being Docket No. 265, defendants' motion to amend the scheduling order regarding expert witnesses, and the Docket 282, plaintiffs' Rule 37 motion to limit expert testimony. We'll start with 265.

Mr. Haley, will that be you, or is that someone else?

MR. HALEY: That would be me, your Honor.

THE COURT: All right. If I could hear from you, sir.

MR. HALEY: And do you want to just hear my arguments to both motions now, or do you want me to break it up?

THE COURT: I would love to hear them both.

MR. HALEY: Okay. And that makes sense to me.

Really, there's, you know, two motions. One is their Rule 37 motion, their motion to exclude

Hallman's testimony just period and then our motion to substitute Mr. Miller for Mr. Hallman.

The first point, I think it really is a simple argument, is that --

THE COURT: Well, let -- let me interrupt you, Mr. Haley. It might be helpful to the Court -- and I'm not trying to reorganize your argument, but I guess maybe if you --

MR. HALEY: Yeah.

THE COURT: -- would be willing to --

MR. HALEY: (Inaudible).

THE COURT: -- it seems to me it would be helpful to first -- assume for the moment that when you get -- because it sounded to me like you were going to talk about the Rule 37. Assume for the moment that -- that I make you -- I say "I make you," but I order that you can't change your expert witness. Then what's your argument about Rule -- their 37 motion vis-à-vis if you -- you know, I guess if you can change your witness, that's a whole different issue. So, I mean --

MR. HALEY: Okay.

THE COURT: -- it seems to me you've got to kind of assume one thing to argue the other.

MR. HALEY: Okay. Well, that's fine.

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 78 of 102


THE COURT: Does that make any sense?

MR. HALEY: Yeah, it does make sense. It does make sense to do it, and I'm happy -- I'm happy --

THE COURT: I'm not trying to tell you how to do it, but it's just --

MR. HALEY: No. But, really, I think both, either the Rule 37 motion or a our motion to amend the scheduling, it still comes down to the same fundamental issue --

THE COURT: Right.

MR. HALEY: -- which is prejudice.

THE COURT: Okay.

MR. HALEY: And, really, it's up to the plaintiffs to demonstrate that they have some kind of prejudice because we want to change from Dr. Hallman to Mr. Gil.

They -- they talk a lot in their reply memo about what Mr. -- or Dr. Hallman actually said in his deposition. And if you'll look at this, I mean, it's a hardship to him. He says -- and it was very clear in his deposition, but he's afraid he might lose his job. I mean, it says it at page 158 of his deposition:

The economics laid off all their

lecturers -- I'm a lecturer at the school. I don't have tenure protection -- laid off all their lecturers two years ago. And the University of Texas is suffering like most state institutions from severe budget cuts, and it is not a time that I want to miss classes.

And he says quite clearly in his declaration that the administration has come to him and said, You've got to cut back on your outside professor witness work. And he's untenured. He says he's worried that it's going to cost him his tenureship and/or his job, and he doesn't want to do it anymore. And so short of being ordered to appear, he's not going to show up and testify for us. He started complaining about that in July, and again, he talks about that in his deposition.

So what do we do? We have an expert. We're being faced with -- this first phase is 30 million. We want to have the same experts so there's continuity for the second phase, which is over 200 million. And our key damages expert says, I can't do this anymore, I want out.

Now, how are they prejudiced where we have a trial date eight months ago? And, really, we started talking to them in August about this problem,

so it's, you know, ten months from a trial date. And we cited the court cases where it's been 80 days. You know, the Tenth Circuit said that's not prejudice. There's even one case that we cite that's in the middle of trial, and the court says, You're not prejudiced. You can take a recess and go find out what the expert has to say in terms of changes his testimony.

So I just really think it's clear that what the plaintiffs are trying to do is to take advantage. And, of course, they see we're in a problem with one of our key witnesses who clearly wants out, says he can't do it, his job won't let him, he wants out, and they want to force us to bring a reluctant expert so that they get that tactical advantage. Well, that's not prejudice, having someone take away a tactical advantage from you. The prejudice is, you know, you've got to take another witness's deposition.

And, you know, everybody knows Mr. Miller. He's not some unknown expert in this community. In fact, their expert, Mr. Hoffman and Mr. Miller worked together for a number of years. You know, Mr. Miller was his mentor. So they know all about him. They don't have to do any big background searches. You

know he's going to be qualified. He's in this court all the time. It's just a matter of finding out how does he get at the opinion.

And the fundamental opinion is going to be the same. Their fundamental opinion is Mr. Hoffman's damage analysis is overstated. Okay. Well, how do you get to that? You know, Mr. Miller rightly says, I want to do my own analysis. I want to -- you know, I'm not just going to rubber stamp what somebody else does. I'm a proud professional, and I'm entitled to do my own analysis at it.

But the fundamental -- it's going to be no surprise to anybody that our damages expert's going to say that Mr. Hoffman's damage number is too high, which is the fundamental opinion.

So, you know, he says he's unavailable. He's got -- you know, he's got new classes. Question on page 36 of his deposition:

Are you available to testify in this trial in spring of 2012?

I am not available to miss numerous classes in the spring of 2012. There's no way, no.

THE COURT: Well, Mr. Haley, I understand that argument. To a certain extent I guess -- and

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 82 of 102


I'm just thinking out loud here. I mean, I also understand some of the countervailing arguments from the plaintiffs.

But I'm assuming that Mr. Hallman, for want of a better word, is a big boy. You know, it seems to me that he's created a career for himself, for want of a better word. Part of that is -- part of the building block is he wants to do expert testimony, he wants to teach, he wants to maybe write. I don't know what all of his aspirations and aspects are. But -- and obviously there are always conflicts and priorities that, you know, weigh against one another. But it seems to me that from a professional standpoint, being a professional, you know, he's taken on a job for DHL. And he's halfway through the job, so to speak, and all of a sudden, he says, Well, I've got other priorities. I don't want to show up anymore.

I've got to tell you that's not very impressive to me in terms of Dr. Hallman's willingness to follow through on his professional responsibilities.

MR. HALEY: Well, I can't say, your Honor, that we're very pleased about having to file the motion either, to find out that your damage expert

does not want to participate anymore.

But he's not a professional expert. He's a professional professor. He teaches at the University of Texas. And you know what state legislatures are like these days in terms of funding. And he sees people getting laid off, and he's got his -- he's got a new position. He's got new classes. He's got a bigger caseload. And he's got his management coming to him and saying, Are you going to be a professor, or are you going to be an expert witness? You've got to make a decision. And that's not a quote, but, you know, that's the gist of it.

And so he's got to make a career decision to back off doing the expert testimony work. And he comes to us and tells us way in advance. So what's the harm? That's -- that's fundamentally -- if you go to the Summer case, which is the Tenth Circuit case that lays out the standard, one of the standards they have to demonstrate is prejudice. What's their prejudice by having to deal with a new expert? They've got to take another deposition.

And we went to them -- they have deposed Mr. Hallman recently, which is what I'm quoting from, but they also spent a lot of time talking to him

about his supplemental opinions.

And we said, We ought to kick off Hallman's deposition. Let's get it sorted out whether or not the judge is going to allow us to substitute experts so we don't have to do this twice. That's the most efficient thing to do. And they wouldn't. They wanted to insist on going forward with Mr. Hallman's deposition, and we did. And he testified to what he testified to.

But the only hardship that they have is to have to spend another day deposing Mr. Miller if they even choose to do it because, you know, sometimes good trial lawyers, which plaintiffs counsel certainly are, decide not to throw a bunch of cards over when they're deposing an expert when they know a case is going to trial. I did that with Mr. Hoffman just recently, very short deposition, pinned him down to what he has to say, don't spend a lot of time on it, don't give them a dress rehearsal.

So I just don't see that they've identified any prejudice by having to take Mr. Miller's deposition, have Mr. Hoffman read a new expert report and help them get ready for either cross-examination at trial or in a deposition.

THE COURT: Okay. So I understand that

part of your argument. So now let's assume for the moment that I deny that. Tell me about the 37 motion of -- their 37 motion. What's your response to the fact they don't want Hallman to be able to supplement and so forth?

MR. HALEY: It's the same issue as to prejudice. Again, what prejudice do they have?

THE COURT: Your argument is, of course, that he didn't have the native files and that now he's got them, he's entitled to supplement the report; and their argument is, in essence, it's a whole new report. Is that it in a nutshell?

MR. HALEY: I think that is it in a nutshell. And then I would go back to the same legal standards that we talked about again, and there's the Tenth Circuit case of Davey versus Lockheed Martin and again, the Summers versus Missouri Pacific Railroad, both Tenth Circuit cases.

But I'll give a four-part test, and you've seen it. It all goes back to the old Jacobson case, and I'm sure you've seen those, your Honor, about what they have to show. And, again, what they haven't shown is prejudice.

In fact, they deposed him, and what the remedy the courts say is how do you -- how do you

deal with the issue, is you allow them to take the deposition. The -- the U.S District Court for the District of Colorado in the case of Ge-Prolec Transformers versus North American Substation sort of deals with this very issue, and they just say, look, if a deposition doesn't do it, then the expert gets to do a surrebuttal report. That satisfies the hardship prong of that four-part test.

So, really, they've already deposed him, and they've deposed him on his new report. So, you know, there's no surprise there. We're still eight months from trial. So -- and there is the issue of native format. We -- and, you know, we talked about that in his deposition, about the inability to be able to make the -- the formulas work when you don't have -- and this is all over my head, but to make the formulas work if you don't have the actual spreadsheets and if you just have a PDF of it and try to reverse engineer it, you couldn't do it. We didn't get that until September.

So, you know, I mean, it certainly addresses the bad faith arm of that. One of the issues is are we doing this in bad faith? Is it a tactical decision on our part to do a supplemental report to gain some kind of advantage? Clearly, no.

I mean, we're at -- we're at the disadvantage because we have the reluctant expert and that we didn't have the -- all the information that Mr. Hoffman relied upon to -- he used in calculating his own report in the electronic format.

So, again, I don't see how they're prejudiced. It just doesn't seem fundamental -- it seems fundamentally unfair to me to force us to go forward in a case of this magnitude with a witness who doesn't want to be there. I mean, what happens if he just says, No, I'm not coming?

THE COURT: Well, you know, I had a witness say that once. He was a psychiatrist in San Antonio, and when the marshals picked him up and brought him, you know, it was an amazing thing.

MR. HALEY: A great way to warm up my witness, your Honor.

THE COURT: Well, you know, you asked. I just wanted you to know.

MR. HALEY: I know. I know. But that's what I'm saying. That's what I'm saying. It just seems so fundamentally unfair to me, whereas, you know, everyone knows Gil Miller. He's been around this courthouse for a long time. There's no surprises to his background and what he's testified

to. It's just a matter of a new report that they're going to have to spend a day taking a deposition on. And in the scheme of discovery that we've spent in this case, one more day of deposition and a day of prep, it just is not -- it's not prejudice to them.

THE COURT: But as a practical matter, let's just assume for a moment that -- you say it's one more day of deposition, but it seems to me that it's quite a bit more than that, isn't it really, Mr. Haley, because the plaintiffs are then going to have to completely -- I mean, the material may be substantially the same, but in reality, you've got a whole new report, a whole new expert, and now they've got to respond to that. To me it's not just one more day of deposition.

MR. HALEY: We do this all the time, Judge, at trial. Damages experts change their theory in the middle of trial all the time, there's a slight revision to the schedule. I mean, Mr. Hoffman did in the Unishippers case. We stayed up late. We figured out how we were going to address it. We crossed him. I mean, that's what we do. I mean, you do it in the middle of trial all the time, and having eight months or four months or a month to figure out what the differences are and how you're going to be able to do

it and you have somebody as skillful as Rick Hoffman on your team to be able to parse through it and tell you where he thinks you can attack is -- there's no prejudice to them. And the case law's clear. I mean, there's the case that says 80 days in advance is no prejudice. They had eight months.

THE COURT: All right. Thank you, Mr. Haley.

MR. SCHONEKAS: Good afternoon, your Honor. Kyle Schonekas. It's late in the afternoon. We had to go deeper in the bench to second string.

THE COURT: That's just fine.

MR. SCHONEKAS: I'll be brief.

THE COURT: How do you pronounce your name?

MR. SCHONEKAS: Schonekas.

THE COURT: Schonekas. Thank you, Mr. Schonekas.

MR. SCHONEKAS: Judge, I want to begin first of all -- I'm sorry. George, this yours?

First I want to begin in response to the suggestion that this gentleman just won't show. If you recall, your Honor, there was a big fight about whether we could go forward with the deposition.

They attempted to quash it; your Honor ordered that it go forward. Mr. McGoey took his deposition. At page 100, line 14, Mr. McGoey asked, and I quote?

If the judge -- if the judge doesn't let you out of this case, are you prepared to testify at the trial next spring?

Answer: I'm going to be extremely disappointed because -- I mean, if the judge tells me I have to be there, I will be there

There's your answer right there, Judge. And what -- what this motion really ought to be styled is motion to change expert that prepared poor report and did bad deposition. And what we're trying to do here is tactically retool the plant after we're well into this and after this gentlemen has been deposed.

Now, they won't say that. Instead, the reason that's given is this is a hardship to Mr. Hallman because he has been assigned a new responsibility at UT --

THE COURT: All right. Mr. Schonekas, let's assume for the moment you're right.

MR. SCHONEKAS: Doesn't happen often, but thank you.

THE COURT: That's why we're assuming.

MR. SCHONEKAS: Okay.

THE COURT: That's why at home I have to say to my wife, Just assume for the moment that I'm right, which is very tough for her to do.

But assume for the moment that you're right, that they -- you know, they weren't happy with Hallman from the July trial and now, you know, they want to get someone new. The standard is the same, though, is it not, that being prejudice?

MR. SCHONEKAS: Yes, Judge, it is.

THE COURT: So -- and I'm not trying to -- but instead of addressing the motive, let's address the standard. I mean, I don't care whether they didn't like him, they want somebody new or the guy doesn't want to testify, they want someone new. The question is whether or not there is a prejudice that would suggest it's not fair to you and your clients to change the horse at this point.

MR. SCHONEKAS: And that's exactly right for two principal reasons, Judge. First, if they're allowed to change this expert, we will not be able to effectively cross-examine the new expert with the prior expert's old opinions. And this was exactly the issue that was addressed in Commonwealth Scientific. This was the Texas -- Eastern District

of Texas State. And the court there stated:

CSIRO argues it will be severely prejudiced if Buffalo were allowed to substitute invalidity experts because Bagby made a number of admissions in his deposition that CSIRO intends to rely on to impeach the expected expert testimony. If McNair were allowed to testify, impeaching him with Bagley's [sic] statements would have the same -- would not have the same effect as impeaching Bagley [sic] with his own statements. CSIRO would be prejudiced by the substitution. Impeaching McNair with Bagley's [sic] statements would have a minimum impact on the jury, whereas impeaching Bagby with his own statements would have a much stronger impact. This factor weighs against allowing the substitution.

And important importantly, Judge, I think Mr. Hallman's contention that -- that this is going to hurt him, which is the argued basis -- it's not that he was a bad expert. They don't go there. What they say is, is that it's going to be an imposition. He accepted another engagement after this. He's going to testify in February in another matter where he says he's going to go and testify. Now, that

doesn't square up with this notion that he's getting out of the expert business. In fact, he's doing it again, and he's joined a new consulting firm.

THE COURT: But Mr. Schonekas -- but Mr. Schonekas, I'm willing to accept all of that.

MR. SCHONEKAS: Yes, sir.

THE COURT: But like I say, the motive for why they want to change horses is not the moment -- is not of moment to me as much as the prejudice.

MR. SCHONEKAS: The prejudice. Well, the prejudice is, is that --

THE COURT: I mean, I get the fact that he may or may not really want off the case and that they may -- they may really want him off the case, and this is the stated reason. But the fact is that there's still the prejudice issue, and that's --

MR. SCHONEKAS: Absolutely.

THE COURT: And that's --

MR. SCHONEKAS: And I think we've satisfy it, Judge, by virtue of the fact that we're not going to be able to confront him with Mr. Hallman's admissions in his depositions and in his report.

In addition to that, we're now going to have to get -- assuming you were to allow another expert, which I urge you not to do, we're going to

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 94 of 102


have Mr. Hallman, then, generate another rebuttal report on topics that Mr. Hallman never addressed. And so we're going to have to incur the expense of having to get our expert to retool, to respond to yet another expert's report.

And, Judge, it is prejudicial that maybe his admissions -- you shouldn't be able to keep changing experts until you find one that you think is going to carry the day. You do that in advance of designating him and in advance of obtaining a report from him and in advance of obtaining a second report from him. In fact, we filed a Rule 37 motion to limit his opinions to what was in the first report. And what do we get the next day? 140-page report.

Now, I think that's sandbagging, Judge. And I don't think Mr. Haley was up to it, but you don't wait until a reply or a rebuttal report to submit the sum and substance of the analysis that you should have done in the first instance. And that's why we should not have to go back and start all over with another expert, particularly for a man who says he will be there.

THE COURT: Okay.

MR. SCHONEKAS: And in addition, they haven't paid this guy in excess of $400,000. Now,

maybe that might have something to do with his reluctance. As of the date of his deposition, that's what he testified to.

Thank you, judge.

THE COURT: Thank you, Mr. Schonekas. Where are you from, Mr. Schonekas?

MR. SCHONEKAS: That's New Orleans, Judge, not New York. You thought there was an accent there?

THE COURT: Not at all.

MR. SCHONEKAS: Good.

THE COURT: Not at all.

MR. SCHONEKAS: Thank you, sir.

THE COURT: You're from New Orleans?

MR. SCHONEKAS: New Orleans.

THE COURT: Ah, yes. Well, are you working with Mr. McGoey down there?

MR. SCHONEKAS: I have that pleasure, yeah. He tells me that, Judge.

THE COURT: Yeah, that is a pleasure for you to work with him?

MR. SCHONEKAS: That's what he tells me.

THE COURT: Yeah. I would think so, all right. Thank you.

MR. SCHONEKAS: Thank you, sir.

THE COURT: All right. Mr. Haley, please.

MR. HALEY: I think he has another point he wants to make.

MR. SCHONEKAS: Oh, Judge, let me mention this.

THE COURT: Sure.

MR. SCHONEKAS: Mr. McGoey, my trainer, has suggested to me in the very remote chance that your Honor were to consider that this was a hardship to Mr. Hallman, we would agree to continue the trial to June 1 so that it wouldn't interfere with Mr. Hallman's school schedule and we wouldn't work such a hardship on this man.

Thank you.

THE COURT: That's magnanimous.

MR. SCHONEKAS: That's my nature. Thank you, Judge.

THE COURT: Yeah.

Mr. Haley, please.

MR. HALEY: Again, I'm just -- I just want to drive home the point the Tenth Circuit in Summers versus Missouri Pacific Railroad Systems, 132 F.3d 599, goes through the four steps, and it says -- and it's talking about modifying the scheduling order to allow a new witness. And the Tenth Circuit says:

Any prejudice to defendant could have readily been cured. The substance of Dr. Schreiber's testimony could have been established through deposition and by review of his reports.

And the issue is there was a reversal back to the trial court. So what they're saying is that there's no prejudice. If you can take a deposition and review the reports, which is exactly the situation we are here, there's -- there's no prejudice.

And then just as your Honor's thinking about it, again the Tenth Circuit case in Davey versus Lockheed Martin Corporation, 301 F.3d 1204, starting at page 7, there's a really nice discussion as to what is not prejudice, and they talk about the Smith case where there's a surprise expert and the parties had ten minutes to be able to respond to it. And they said, yeah, that's prejudice. But then they talked about the Summers case where they had 80 days prior to trial to be able to get ready for it, and that is not prejudice.

So, you know, (inaudible) the basics say if the motion is made before trial, it sort of mitigates the issue of prejudice.

THE COURT: Well, one quick question for you, Mr. Haley. You heard Mr. Schonekas's via -- Mr. McGoey via Mr. Schonekas's magnanimous offer to extend the trial to June to -- I'll say continue the trial 'til June to avoid any possible problem for your witness. Does that impact your argument at all?

MR. HALEY: You know, I just can't respond to that without talking to Dr. Hallman.

THE COURT: Okay.

MR. HALEY: I just don't -- I just don't know one way or the other, your Honor.

THE COURT: Okay. Thank you.

MR. HALEY: But the one thing I just want your Honor to know and assure you that what -- Dr. Hallman was my witness at the initial first trial. He told me when we were doing the prep how he was worried about how this was all affecting him at the University of Texas. It's not tactical. We're not making it up. It's really what's going on, your Honor.

THE COURT: Thank you.

I think that I'm going to deny the motion to amend the scheduling order. I think in this case DHL has to dance with the one they brung. I do think there's prejudice. I'm sensitive to Dr. Hallman's

concerns. But I think he's a professional, and I think that he's -- has to understand that when he takes on these kinds of assignments and -- and so on that he needs to see it through.

Having said that, I am also going to deny the plaintiffs' motion relative to limiting Dr. Hallman's supplemental report. I will allow the plaintiffs' expert to respond to Dr. Hallman's supplemental report, but I think that Dr. Hallman received the native files and it may or may not be a wholly new report. I don't -- I'm not going to go there. I realize the arguments and the concerns, but I think that in fairness, Dr. Hallman got those files, he prepared a supplemental report, and if the plaintiffs would like to respond to that report through their expert, that's fine. But I am going to allow that supplemental report, and I'm going to not allow Mr. Hallman to -- or, excuse me, Mr. Miller to take -- Dr. Miller to step in for Dr. Hallman.

MR. HALEY: Your Honor, in view of that, would you entertain a motion to continue the trial date until school's out at the University of Texas?

THE COURT: Absolutely. I'll entertain it. And I don't know what -- because I -- I do think -- in fairness to Dr. Hallman, I understand the

Case 2:09-cv-00221-RJS Document 409-2 Filed 09/06/13 Page 100 of 102


economic times we're in. I don't want to prejudice him. But let me suggest you do this first, Mr. Haley. Why don't you talk to him, let him know what the ruling of the court is. Let him know what -- I mean, he knows what the current trial date is in April, I believe it is, and he'll know whether or not based on his circumstances whether that makes sense. I thought it was very gracious of the plaintiffs to say they'd be willing to continue that.

But why don't we just get a clarification before we move the trial.

MR. HALEY: I will, your Honor. Then I'll meet and confer with counsel.

THE COURT: I think that would be -- because, again, nobody's trying to work a hardship on anybody. I mean, you know, it's -- but on the other hand, it just seems to me at this stage of the proceedings and with the water that's been under the bridge in these -- in both trials, both cases, it's not the right time to change the expert.

All right. Is --

MR. SCHONEKAS: Thank you, your Honor.

THE COURT: Mr. Schonekas, did you have something else?

MR. SCHONEKAS: No, sir. I thought we

were done. I was just rising.

THE COURT: Oh, you'll know we're done because here in the Rocky Mountains, when the gavel comes down, that's when we're done.

MR. SCHONEKAS: We have those in the south too, your Honor.

THE COURT: All right. So are my rulings clear that I've made today and that -- we have those three under advisement that will come out very quickly, very soon.

I appreciate all of counsel's preparation and arguments today. I thought they were very helpful and they were informative. I appreciate particularly those of you who come from out of state. I know that you have had to travel to get here, and it's always a pleasure to have you in the court.

And with that, the court will be in recess.

(The proceedings concluded.)

REPORTER'S CERTIFICATE

STATE OF UTAH )
) ss.
COUNTY OF SALT LAKE )

I, Susette M. Snider, Registered Professional Reporter, Certified Realtime Reporter and Notary Public in and for the State of Utah, do hereby certify:

That on October 25, 2011 and October 26, 2011I transcribed an audio file at the request of George M. Haley, Attorney at Law;

That the testimony of all speakers was reported by me in stenotype and thereafter transcribed, and that a full, true, and correct transcription of said testimony is set forth in the preceding pages, according to my ability to hear and understand the audio file provided;

I further certify that I am not kin or otherwise associated with any of the parties to said cause of action and that I am not interested in the outcome thereof.

WITNESS MY HAND AND OFFICIAL SEAL this 26th day of October, 2011.

______________________________
Susette M. Snider, CSR, RPR

# Exhibit B

George M. Haley, #1995
Blaine J. Benard, #5661
J. Andrew Sjoblom, #10860
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101
Tel.: (801) 799-5800
Fax: (801) 799-5700
GMHaley@hollandhart.com
BJBenard@hollandhart.com
JASjoblom@hollandhart.com

Edwin V. Woodsome, Jr. (*pro hac vice*)
Christopher S. Ruhland (*pro hac vice*)
Andrew S. Wong (*pro hac vice*)
Amy L. Rudd (*pro hac vice*)
DECHERT LLP
633 West 5th Street, 37th Floor
Los Angeles, California 90071
Tel.: (213) 808-5700
Fax: (213) 808-5760
ed.woodsome@dechert.com
william.oxley@dechert.com
christopher.ruhland@dechert.com
andrew.wong@dechert.com

*Attorneys for Defendant DHL Express (USA), Inc.*
*and DPWN Holdings (USA), Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DHL EXPRESS (USA), INC., an Ohio corporation, et al.<br><br>Defendants. | **DECLARATION OF DR. GREG HALLMAN IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO DENY DHL EXPRESS (USA), INC'S REQUEST TO REPLACE EXPERT WITNESS**<br><br>Case No. 2:09-CV-221<br>Judge Robert J. Shelby<br>Magistrate Judge Paul M. Warner |

Case 2:09-cv-00221-RJS Document 410 Filed 09/06/13 Page 2 of 6

I, Dr. Greg Hallman, declare:

1. I have been employed as a Senior Lecturer in the Department of Finance at the McCombs Graduate School of Business at the University of Texas at Austin since 2002. My primary responsibility as a Senior Lecturer at the University is to teach MBA courses in valuation, corporate finance and real estate finance.

2. In April 2011, my duties at the University changed dramatically. First, I was appointed the Associate Director of the Real Estate Finance and Investment Center at the University. In that capacity, I am required not only to participate and engage in the daily activities at the Center, but also to attend meetings and conferences, and to accept various speaking engagements that bring recognition to the Center. Second, I took over the real estate finance classes previously taught by Professor Jay Hartzell after he accepted a position as the Chairman of the Finance Department. My additional responsibilities in connection with those classes include writing additional curricula, preparing new lectures, and attending and teaching classes.

3. After April 2011, my duties at the University included performing those duties associated with my role as the Associate Director of the Real Estate Finance and Investment Center, serving as the primary lecturer for three courses, and co-teaching a fourth course involving the oversight of a REIT fund, over which I serve as the Director.

4. As a result of these increased duties at the University of Texas, in August 2011, I asked counsel for DHL to attempt to replace me as the designated defense expert in this case. I also told DHL counsel at that time that I would be unable to continue to serve as DHL's expert in subsequent phases of the litigation.

5. I was informed by DHL counsel in or about October 2011 that the Court had denied their request for permission to replace me as DHL's expert witness in Phase I of this action. I understand that the case was thereafter stayed pending resolution of the appeal in *Unishippers*, and as a result I have done no other work on the *Gulf Coast* case.

6. I received a telephone call from counsel for DHL regarding this case in mid-August 2013. Counsel informed me that, as a result of the recent *Unishippers* decision, additional expert analysis and damages calculations would be required in this action. In particular, counsel told me that they anticipate that Plaintiffs' expert, Mr. Richard Hoffman, will provide new damages calculations for the 180-day notice period, and that DHL would need an expert witness to analyze those calculations, perform rebuttal calculations, and sit for an additional deposition.

7. On that telephone call, I again asked counsel for DHL if they could obtain a replacement expert for the case. I explained that, since 2011, I have taken on more duties at the University of Texas in addition to the ones I had previously undertaken that preclude me from spending significant time on outside expert work. I informed counsel that I did not want to provide any further expert opinions, reports, depositions or any other work in this case.

8. I have undertaken additional duties and responsibilities at the University. Specifically, in April 2012, I accepted a position as the Director of the new Masters of Science in Finance program at the McCombs Graduate School of Business at the University. As the Director of a new masters program, I have ultimate responsibility for admissions, curriculum, and placement, as well as the day-to day activities, management, and oversight of a new graduate program and degree at the University. Given the new nature of this program, this has resulted in

a significant time commitment from me in addition to all of my other duties at the University. This workload has become significantly more time consuming in the last year as the program has grown since its inception, and I expect this to continue in the next academic year as the University expects the program and the number of students to continue to grow in the next two years. As a result, given the additional responsibilities and time commitment that I have made to the University in this position and in my other duties, continuing to serve as an expert witness in this matter would cause substantial and potentially irreparable hardship.

9. I understand that Plaintiffs are claiming that I have been actively engaged as an expert in several other cases since asking to be replaced as DHL's expert in this case. That is not true. On the contrary, I have significantly curtailed my expert work and have only performed non-complex expert work during breaks in the academic school year and with heavy assistance from others in my Department.

10. Since asking to be replaced as an expert in this case, I have performed expert work only in connection with two cases. In *In re Freddie Mac Securities Litigation,* No. 4:08-cv-160 (N.D. Ohio), I agreed to serve as an expert because defense counsel indicated that my services would be limited to providing testimony on market efficiency, as opposed to performing any computational damages analysis. In other words, the job did not require me to compile a damages schedule, review financial documents or other schedules, and it did not require the involvement of other expert analysts or support, as is typical for expert damages work.

11. Moreover, I prepared and served my expert report in the *Freddie Mac* case during the University of Texas's summer break, and my deposition was taken on the last day of the

University's fall semester, when no classes were being held. Any other work on the matter was done during the winter break, and completed before Spring classes started at the University.

12. After my deposition in the *Freddie Mac* case, counsel asked me to serve as the damages expert in the case. Because damages work is far more labor-intensive, I declined that engagement. I also declined another request from counsel in the *Freddie Mac* case to serve as the damages expert in another matter.

13. The only reason that I was able to do work on the *Freddie Mac* case is because I was able to get the permission of the Finance Department to do the work, primarily by enlisting the assistance of other professors in the Department, who took the laboring oar on the bulk of the work required.

14. As for *In re Arthocare Corporation Securities Litigation*, No. 1:08-cv-00574 (E.D. Tex), I accepted my engagement on that case and performed the bulk of the analysis well before I took on my additional responsibilities with the University in April 2011. And again, I finalized and served my expert declaration in that case during final exam week, when I was not holding classes. My understanding is that the *Arthocare* case has concluded, and thus there is no further expert work required of me on the *Arthocare* case going forward.

15. I have not taken on new active expert matters and, unless and until my duties at the University change, I have told DHL's counsel that I have no interest in doing any further work on this case, and I do not foresee that changing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of September, 2013, in Austin, Texas.

Dr. Greg Hallman

# Exhibit C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (YOUNGSTOWN)**

| | |
|---|---|
| In RE FREDDIE MAC<br>SECURITIES LITIGATION | Civil Action<br>No. 4:08-cv-160<br><br>CLASS ACTION |

# EXPERT REPORT OF DR. GREG HALLMAN

**August 16, 2012**

**Expert Report of Dr. Greg Hallman**

# I. Introduction

1. I have been retained by counsel for the class plaintiffs in the Freddie Mac Securities Litigation to provide an opinion on the efficiency of the market for Freddie Mac common stock during the class period starting 8/1/2006 and ending 11/20/2007 (inclusive). This expert report contains my opinion on the efficiency of the market in which Freddie Mac Common stock traded during the class period.

# II. Qualifications

2. I am a Senior Lecturer in the Department of Finance at the McCombs Graduate School of Business at the University of Texas at Austin, where I teach graduate-level courses in valuation, corporate finance, investment theory, and real estate finance, and serve as Director of the McCombs MBA REIT Fund and Director of the McCombs Master of Science in Finance (MSF) Program. I also serve on the Advisory Committee of the McCombs MBA Investment Fund. I have won numerous teaching awards for my MBA finance classes at McCombs, including the Joe D. Beasley Award for MBA Teaching, the award for Best MBA Core Professor, and numerous selections to the MBA Teaching Honor Roll. Prior to joining the faculty at the University of Texas in 2002, I was a Managing Director in the Silicon Valley office of Intecap, Inc., an economic consulting firm purchased by Charles River Associates in 2004. I am currently a Senior Consultant with Charles River Associates, although Charles River Associates is not working with me on this matter. I have worked as a consultant on litigation matters for the past sixteen years, and I have analyzed and calculated securities and valuation-related damages numerous times in my career both as a testifying expert and as support to a

testifying expert. I have an MBA in Finance from Tulane University and a Ph.D. in Finance from the University of Texas at Austin. A copy of my current curriculum vitae (CV) is in Exhibit 1, which includes my professional presentations and publications, along with a complete listing of my prior testimony.

## III. Summary of Opinion

3. Based on my evaluation of the market in which Freddie Mac common stock traded, it is my opinion that the market for Freddie Mac common stock was semi-strong form efficient during the class period 8/1/06 – 11/20/07. In the course of my analysis I examined factors related to the structural characteristics of the market in which Freddie Mac common stock traded described in the *Cammer* and *Krogman* decisions, as well as the cause-and-effect relationship between major earnings announcements and price changes in Freddie Mac stock during the class period. This analysis informs and supports my conclusion that trading in Freddie Mac common stock was semi-strong form efficient during the class period in this matter.

## IV. Background

4. The Federal Home Loan Mortgage Corporation ("Freddie Mac") is a stockholder-owned company chartered by Congress in 1970 to stabilize the nation's residential mortgage markets and expand opportunities for homeownership and affordable rental housing.[1] The Federal Home Loan Mortgage Corporation operates under the name "Freddie Mac,"

[1] Freddie Mac 2006 Annual Report at 1.

and the company is referenced by that name in this report. Freddie Mac purchases residential mortgages and mortgage-related securities in the secondary mortgage market.

5. I understand plaintiffs in this matter allege that "Throughout the Class Period, Defendants made a series of materially false and misleading public statements relating to, among other things, (i) its [Freddie Mac's] exposure to or risk of loss from subprime mortgage loans and other nontraditional, high risk mortgages, including 'Alt-A' mortgages [...]; (ii) its underwriting guidelines and Defendants' adherence to those guidelines, (iii) its loan analysis software and fraud detection systems, (iv) its risk management measures and its risk management performance, and (v) its capital position."[2]

6. I understand the Class Period in this matter starts on 8/1/2006 and ends on 11/20/2007, inclusive.[3]

## V. Methodology and Bases for Opinion on Market Efficiency

7. I understand that established case law suggests factors to be considered when determining the efficiency of the market for a given security.[4] These *Cammer* and *Krogman* factors include: (1) the average weekly trading volume expressed as a percentage of total outstanding shares; (2) the number of securities analysts following and reporting on the stock; (3) the extent to which market makers and arbitrageurs trade in the stock; (4) the company's eligibility to file SEC registration Form S-3 (as opposed

[2] Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation a/k/a Freddie Mac et. al, Third Amended Complaint, February 28, 2012 at ¶2.

[3] Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation a/k/a Freddie Mac et. al, Third Amended Complaint, February 28, 2012 at ¶13.

[4] *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J.1989); *Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001).

to Form S-1 or S-2); (5) the existence of empirical facts "showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price"; (6) the company's market capitalization; (7) the bid-ask spread for stock sales; and (8) float, the stock's trading volume without counting insider-owned stock.[5] The *Cammer* and *Krogman* factors are consistent with my knowledge and understanding of financial markets and the academic literature regarding market efficiency.

8. Much academic literature on market efficiency provides evidence that the major stock markets in the U.S. are semi-strong form efficient. Additionally, the efficient market hypothesis and the idea that large stocks traded on the major exchanges (NYSE and NASDAQ) are semi-strong form efficient is taught in MBA finance textbooks used at virtually every major business school in the U.S.[6] A semi-strong form efficient market is a market in which stock prices reflect all publicly-available information, and stock prices react quickly to new material information (news) regarding stock value.

9. In their section on market efficiency, Parrino et. al.[7] discusses the underlying concepts of operational efficiency and informational efficiency.

---

[5] As summarized in *Unger v. Amedisys Inc.* 401 F.3d 316, 323 (5th Cir. 2005)

[6] Standard MBA finance textbook treatment and evidentiary support for semi-strong form efficiency can be found in the following widely used finance textbooks: (1) Corporate Finance, Ross, Westerfield, Jaffe, Ninth edition, Chapter 14 (which includes the following statement in the summary section regarding market efficiency, page 460, point 4., "Much evidence from different financial markets supports weak form and semistrong form efficiency but not strong form efficiency.");
(2) Investments, Bodie, Kane, Marcus, Ninth Edition, (which includes the statement at page 373, "We conclude that markets are generally very efficient, but that rewards to the especially diligent, intelligent, or creative may in fact be waiting");
(3) Fundamentals of Corporate Finance, Parrino, Kidwell, and Bates, Second Edition, Chapter 2, pages 33, 34 (which contains the following sentences at page 34 regarding semistrong-form efficiency, "The concept of semistrong-form efficiency is a reasonable representation of the public stock markets in developed countries such as the United States. In a market characterized by this sort of efficiency, as soon as information becomes public, it is quickly reflected in stock prices through trading activity."). Two pages from the Parrino et. al. textbook that provide a reasonable summary of the market efficiency issue are attached to this report as Exhibit 2.

[7] Fundamentals of Corporate Finance, Robert Parrino, David Kidwell, Thomas Bates, John Wiley & Sons, copyright 2012, second edition, page 33.

Case: 4:08-cv-00160-JRA Doc #: 199-10 Filed: 08/17/12 6 of 25. PageID #: 6548



> The overall efficiency of a market depends on its *operational efficiency* and its *informational efficiency*. **Market operational efficiency** focuses on bringing buyers and sellers together at the lowest possible cost. The costs of bringing buyers and sellers together are called *transaction costs* and include such things as broker commissions and other fees and expenses. The lower these costs, the more operationally efficient markets are. Why is operational efficiency important? If transaction costs are high, market prices will be more volatile, fewer financial transactions will take place, and prices will not reflect the knowledge and expectations of investors as accurately.
>
> Markets exhibit **informational efficiency** if market prices reflect all relevant information about securities at a particular point in time. As suggested above, informational efficiency is influenced by operational efficiency, but also depends on the availability of information and the ability of investors to buy and sell securities based on that information. In an informationally efficient market, market prices adjust quickly to new information as it becomes available. Prices adjust quickly because many security analysts and investors are gathering and trading on information about securities in a quest to make a profit. Note that competition among investors is an important driver of informational efficiency.

10. In large part, the *Cammer* and *Krogman* factors examine the operational efficiency and the informational efficiency of the market in which a stock trades. The *Cammer* and *Krogman* analysis focuses on the availability of information and the existence of a market and trading mechanism for getting information into stock prices. I examine the *Cammer* and *Krogman* factors as they relate to the existence of a (semi-strong) efficient market for Freddie Mac common stock in the following sections.

*i) Trading Volume*

11. Among the structural indicators of likely efficiency is the volume of trading in a particular security. The *Cammer* decision states that, "Turnover measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one."[8] Per *Cammer*, a large

[8] *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989).

volume of weekly stock trades implies an efficient market in that many investors use corporate information as a basis for executing trades.[9] The average daily turnover rate for Freddie Mac calculated using reported volume over the entire class period was 0.61 percent.[10] This average daily turnover rate over the class period implies a weekly turnover rate based of 3.05 percent (i.e., 5 x 0.61% = 3.05%). The average weekly turnover rate of 3.05% is above the 2% level cited in *Cammer* as justifying a "strong presumption" of efficiency. Thus, trading volume over the class period supports a finding that the market for Freddie Mac common stock was (semi-strong form) efficient.

*ii) Security Analysts*

12. The *Cammer* decision states, "it would be persuasive to allege a significant number of securities analysts followed and reported on a company's stock during the class period."[11] *Cammer* goes on to state that the existence of analysts implies that company reports were closely reviewed and interpreted by investment analysts, who would make recommendations to investors based on the information contained in such reports.[12] I have identified analyst coverage of Freddie Mac from Bear Sterns, Prudential Equity Group, Credit Suisse, Morgan Stanley, Fox-Pitt Kelton, JP Morgan, Piper Jaffray, Fitch IBCA, National Australia Bank Limited, Barclays, Citi, and UBS Research published during the class period. Contemporary news reports summarized the buy/sell/hold

---

[9] *See id.* p. 1286.

[10] Volume data as reported by Bloomberg. The average daily volume during the class period was 3,997,309 shares. The total volume during the class period was 1,319,111,849 shares.

[11] *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989).

[12] *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989).

recommendations of 17 analysts on Freddie Mac during the class period.[13] Freddie Mac was also very closely followed by the press during the class period in this matter. A Westlaw search on Freddie Mac returned over 13,000 articles referencing the company in the title or lead paragraph during the class period. This level of security analyst and press coverage supports a finding that the market for Freddie Mac was (semi-strong form) efficient.

*iii) Market Makers and Arbitrageurs*

13. The *Cammer* decision observes that, "[t]he existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level."[14] During the class period Freddie Mac stock was traded on the NYSE. The NYSE system facilitates trades through a market-making specialist for each listed stock. The NYSE market is viewed as well-functioning and efficient, and NYSE-listed companies include such household names as General Electric, Wal-Mart and IBM. There was a minimum of 12.4 million Freddie Mac common shares sold short on the NYSE during the class period, indicating the presence of arbitrage activity with investors taking positions on both sides of the stock. Filings with the SEC show call and put options on Freddie Mac stock were held during the class period by investors such as the Goldman Sachs Group and JP Morgan Chase & Co, also indicating the presence of arbitrage activity with investors in the options market taking positions on both sides of the stock. Filings with the SEC show Freddie Mac common

---

[13] Nelson Research Reports "FREDDIE MAC Consensus Recommendation: HOLD," 1/9/07.

[14] *Cammer v. Bloom*, 711 F. Supp. 1286, 1287. (D.N.J. 1989).

stock was held by large institutional holders such as Vanguard Group and Wellington Management Company during the class period. During the class period, Freddie Mac was listed in the Standard and Poor 500, an index of 500 leading companies in leading industries of the U.S. economy, and one of the most widely followed and traded indexes in the market. Membership in a major exchange using a specialist system such as the NYSE, the presence of short interest and options indicating investor positions and interest on both sides of the stock, ownership by institutional investors, and membership in a major market index such as the S&P 500, all support a finding that the market for Freddie Mac common stock was (semi-strong form) efficient during the class period in this matter.

*iv) Form S-3 Eligibility*

14. The *Cammer* court found that "it would be helpful to allege the Company was entitled to file an S-3 Registration Statement in connection with public offerings or, if ineligible, such ineligibility was only because of timing factors rather than because the minimum stock requirements set forth in the instructions to Form S-3 were not met. Again, it is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency."[15] At the time of *Cammer*, the filing of a Form S-3 registration statement required firms to file reports under the Securities Exchange Act of 1934 for three years prior to the Form S-3 filing and to have $150 million of stock held by non-affiliates (or $100 million of stock held by non-affiliates coupled with annual trading

[15] *See id.* p. 1288.

volume of three million shares per year).[16] The SEC has since modified the requirements for filing a Form S-3. Among the current requirements for filing a Form S-3 registration statement are that a company be organized and operating under the laws of the United States or its territories, has filed reports under the Exchange Act for twelve calendar months, has suffered no default of its obligations and has an aggregate market value of common equity held by non-affiliates of $75 million or more.[17]

15. The value of Freddie Mac's common stock held by non-affiliates during the Class Period was approximately $39.1 billion.[18] This value is significantly higher (over 500X higher) than the $75 million threshold requirement of the S-3. However, Freddie Mac was not eligible to register an S-3 during the class period because it did not meet the requirement of having filed reports under the Exchange Act. Freddie Mac, a Government-Sponsored Enterprise, had a statutory exemption from filing reports under the Exchange Act.[19] Also, in 2003, Freddie Mac's independent auditors had identified "Material Weaknesses" in the Freddie Mac's internal controls.[20] Freddie Mac worked during the class period toward remediating those material weaknesses and establishing a history of filing timely

[16] *See id.* p. 1271.

[17] *See* SEC 1379, "Form S-3, Registration Statement under the Securities Act of 1933, General Instructions," as revised August 2001.

[18] According to its May 7, 2007 proxy statement, on April 2, 2007 Freddie Mac had 661.1 million common shares held by investors other than insiders. The closing stock price of Freddie Mac common stock on April 2, 2007 was $59.13.

661.1 million x $59.13 = $39,092 million.

[19] Freddie Mac 2006 Annual Report, p 1.

[20] "In connection with their ongoing audits of the restatement of the previously issued financial statements and the company's 2002 financial statements, PwC has identified and communicated to management and the Audit Committee that 'material weaknesses' (as defined under standards established by the American Institute of Certified Public Accountants) in internal controls existed during the time periods covered by the restated financial statements." Freddie Mac Press Release, "Freddie Mac Announces Restatement Results," November 21, 2003.

quarterly reports in order to qualify for SEC registration.[21] Freddie Mac released financial "Information Statements" in lieu of Exchange Act reports which contained, among other things, the company's revenue, operating profit, debt payments, net income, and credit losses and estimated credit and interest rate risk exposure. Analysts and the financial press reported this information about Freddie Mac's financial performance, financial condition, and expectations regarding future performance, and used this information in their financial analysis and financial projections of the company.

16. While Freddie Mac did not meet the full eligibility requirements of S-3 registration during the class period in this matter, meeting the minimum size requirements of the S-3 registration form supports a finding that the market for Freddie Mac common stock was (semi-strong form) efficient during the class period. Throughout the class period, Freddie Mac filed financial information statements, issued press releases, and conducted and participated in earnings calls with stock analysts and investors, and the information contained in these releases was used by equity analysts as the basis for their research pieces, stock valuation, and financial projections of the company.

*v) Event Study*

---

[21] "The material weaknesses and significant deficiencies in our internal control over financial reporting adversely affect our ability to record, process, summarize and report financial data in a timely manner. Based on the continued existence of material weaknesses at December 31, 2006, our Chief Executive Officer and Chief Financial Officer have concluded that our internal control over financial reporting was not effective at December 31, 2006. In order to compensate for the material weaknesses and other deficiencies in our internal controls, we continue to perform extensive verification and validation procedures to provide reasonable assurance that our consolidated financial statements are prepared in accordance with GAAP. Therefore, in view of the additional procedures we performed, we believe that these weaknesses do not prevent us from preparing and issuing our consolidated financial statements in conformity with GAAP.

Our resumption of interim financial reporting will depend on continued progress with our remediation efforts; however, our objective is to return to quarterly reporting during the second half of 2007. We will begin the process of registering our common stock with the SEC after resuming timely quarterly reporting." Freddie Mac 2006 Annual Report, page 59.

17. The *Cammer* court examines the existence of empirical facts "showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price" when considering the efficiency of a stock. We examine this factor using an event study analysis around the six earnings releases made by Freddie Mac during the class period. Event study analysis is a widely accepted, peer-reviewed method for calculating the effect of an event on the value of the stock of a company.[22]

18. An event study analysis consists of first determining a statistical model (the "market model") to predict the normal or expected return on the stock given market returns, then using the model to measure abnormal performance (i.e., abnormal price movement). The event study can isolate that part of the stock-price change related only to the Freddie Mac-specific news and unrelated to market news and effects on the examined date. The standard event study methodology is well suited to analyze the stock price reaction around Freddie's earnings announcements during the class period to test for a cause and effect relationship between financial news releases and stock returns, because earnings announcements are events where Freddie Mac releases new financial information to the market.

19. To estimate the parameters of the statistical market model used to study Freddie Mac stock movements around the earnings release dates, we use daily returns on Freddie Mac and the S&P 500 and an estimation period starting August 1, 2005, and running through

[22] David I. Tabak, PhD, and Frederick C. Dunbar, PhD, "Materiality and Magnitude: Event Studies in the Courtroom", Litigation Services Handbook – The Role of the Financial Expert, Third Edition, Edited by Roman L. Weil, Michael J. Wagner, and Peter B. Frank, John Wiley & Sons, 2001.

July 31, 2006. There are a total of 252 trading days in the estimation period. The estimated statistical model shows good overall fit measures with a statistically significant F-statistic, indicating a statistically significant relation between the returns of Freddie Mac common stock and the returns of the market. This statistically significant market-model relation itself supports a finding that the market for Freddie Mac common stock was (semi-strong form) efficient, as it implies that the price of Freddie Mac stock rapidly incorporated information about prospects for the U.S. economy and U.S. equities as a whole during the control period. A model estimated over the class period is similarly statistically significant, supporting the finding that the market for Freddie Mac common stock efficiently processed news into returns and was (semi-strong form) efficient during the class period.

20. Following the language in *Cammer*, we analyzed six financial releases made by Freddie Mac during the class period. These releases are summarized in Table 1 below and discussed in the following paragraphs. The results of our event study analysis show that Freddie Mac stock reacted quickly and logically (in the expected direction) to each of the six earnings releases studied, and the stock price reaction on these important financial information release dates supports the finding that the market for Freddie Mac stock was semi-strong form efficient.

**Table 1**

| Calendar Date | News Vs. Expectations | Abnormal Return | one-tail p | Release Title | Period Covered |
|---|---|---|---|---|---|
| 10/3/06 | Positive | 1.2% | 11.9% | "Freddie Mac Provides Market Update" | H1 06 |
| 1/5/07 | Weakly Negative | -1.0% | 16.3% | "Freddie Mac Provides Quarterly Market Update" | Q3 06 |
| 3/23/07 | In-Line | 0.2% | 44.2% | "Freddie Mac Reports 2006 Financial Results" | 2006 |
| 6/14/07 | Negative | -1.3% | 10.7% | "Freddie Mac Releases First Quarter 2007 Financial Results; Company Resumes Quarterly Reporting" | Q1 07 |
| 8/30/07 | Negative | -4.7% | 0.0% | "Freddie Mac Releases Second Quarter 2007 Financial Results; Net Income of $764 Million, Fair Value Increase of $800 Million" | Q2 07 |
| 11/20/07 | Negative | -29.0% | 0.0% | "Freddie Mac Reports Third Quarter 2007 Net Loss of $2.0 Billion or $3.29 Per Diluted Share" | Q3 07 |

21. 10/3/06 - The morning of October 3, 2006, Freddie Mac released a "market update" for the first half of 2006. The release stated "Management's current estimate of net income for the first half of the year is approximately $2.7 billion. [...] Management expects to report the company's net income for the first half to have benefited significantly from mark-to-market gains recorded for its guarantee asset and derivatives, as interest rates increased during the first half of the year." Prudential Equity released a report on this date titled "GAAP Earnings Surpass Our Expectations Due to Higher Rates in 2Q (since reversed); Stable Outlook on Credit and Interest Rate Risks." The report stated, "GAAP net income of $2.7 billion (or $2.6 billion excluding one-time tax benefit) for 1H06 substantially exceeded our forecast of $1.6 billion. While the company did not provide full detail, we suspect the main earnings drivers benefited from higher interest rates, in-line margin, and better-than-expected credit losses offset by continuing higher-than-

expected operating expenses." This unexpected positive news caused the price of Freddie Mac common stock to increase 1.2% more than predicted by the market model, and this timely and logical stock price reaction to better-than-expected financial results is consistent with an efficient market.

22. 1/5/07 - The morning of January 5, 2007, Freddie Mac released a "market update" for the third quarter of 2006. The released stated "For the third quarter, the company estimates a net loss of approximately $550 million, compared to net income of $880 million for the third quarter of 2005. [...] the company expects to report a loss in net income for the fourth quarter..." The *Wall Street Journal* headlined its story about the release "Freddie Mac Warns of a Loss, Citing Drop in Interest Rates." The *New York Times* characterized the third quarter results as "in line with analysts' expectations," but noted, "For the fourth quarter, Freddie Mac also expects to report a loss." The analyst at Fox-Pitt, Kelton characterized this release as "weak" with an "uninspiring outlook" and noted that Freddie Mac's guidance for the timing of year-end financial reporting was later than expected. This unexpected negative news caused the price of Freddie Mac common stock to decrease 1.0% more than predicted by the market model, and this timely and logical stock price reaction to an announcement of poor financial results and a warning of poor future financial results is consistent with an efficient market.

23. 3/23/07 - The morning of March 23, 2007 Freddie reported its full-year 2006 financial results. The release stated "Freddie Mac (NYSE:FRE) today reported net income of $2.2 billion for 2006, up 4 percent compared to $2.1 billion in 2005 [...] As a result of the interest-rate movements in the last quarter, Freddie Mac reported a net loss of $480 million in the fourth quarter of 2006." These earnings were in line with expectations, as

the analyst at Fox-Pitt Kelton had noted in January "FRE expects to post a loss in 4Q06, however, we expect the company to post positive earnings for the full year 2006." Bear Sterns stated "FRE reported a GAAP loss in Q4 as anticipated."[23] One commenter at the Motley Fool characterized the release as "One step forward, one step back," noting the gain for the year and the loss for the quarter.[24] During the analyst call following the release Freddie Mac CFO Anthony Piszel stated, "we have little to no exposure to the subprime risk layered mortgage products." This statement was echoed in analyst coverage such as that of Bear Sterns, who stated, "Freddie Mac's exposure to high risk mortgages is quite low."[25] Freddie Mac stock increased 0.2% more than predicted by the market model in response to the financial releases on this day, and this muted stock price reaction is logical based on the fact that the information released in this earnings statement was expected by at least some market participants. Additionally, the muted stock price reaction to an announcement containing information that Freddie Mac did not have significant exposure to subprime credit risk is consistent with the idea that the market did not believe that Freddie Mac had significant subprime credit exposure, and was therefore not surprised to hear Freddie Mac's CFO say that they did not have any significant subprime credit exposure.

24. 6/14/07 - The morning of June 14, 2007, Freddie Mac reported its first quarter 2007 financial results. The release stated, "Freddie Mac (NYSE:FRE) today reported a net loss of $211 million, or $0.46 per diluted common share, in the first quarter of 2007, compared to net income of $2.0 billion, or $2.80 per diluted common share, for the same

[23] "Freddie Mac Releases 2006 Financials, Now Even Closer to Being Current" Bear Sterns, 3/23/07

[24] Caplan, S.J. "Freddie Mac's Two Left Feet" Motley Fool, March 26, 2007

[25] "Freddie Mac Releases 2006 Financials, Now Even Closer to Being Current" Bear Sterns, 3/23/07

period in 2006." The company also reported resuming quarterly reporting of financial results. Reuters reported, "Freddie Mac FRE.N, the No. 2 U.S. mortgage finance company, on Thursday reported an unexpected first-quarter loss, as rising interest rates hurt the value of hedges it holds to protect profits on its mortgage portfolio."[26] Reuters also reported that analysts expected a positive result for the quarter. This unexpected negative news caused the price of Freddie Mac common stock to decrease 1.3% more than predicted by the market model, and this timely and logical stock price reaction to worse-than-expected financial results is consistent with an efficient market.[27]

25. 8/30/07 - The morning of August 30, 2007, Freddie Mac reported its second quarter 2007 financial results. The release stated, "Freddie Mac (NYSE:FRE) today reported second quarter net income of $764 million, or $1.02 per diluted common share, compared to net income of $1.4 billion, or $1.93 per diluted common share, for the same period in 2006. [...] Credit-related expenses, consisting of provision for credit losses and real estate owned (REO) operations expense, were $336 million for the second quarter of 2007, compared to $63 million for the second quarter of 2006." The *Financial Times* characterized the cause of Freddie Mac's reduction in profit as unexpected, stating "The decline reflected higher-than-expected credit losses on mortgages originated in 2006 and 2007, which Freddie Mac attributed to a jump in foreclosures amid the 'deteriorating housing environment'."[28] The analyst with National Australia Bank noted, "the jump in Freddie's credit provisions were (approximately) twice as sever [*sic*] than what we saw from the large bank 2Q results, and the losses on

[26] Adler, Lynn "UPDATE 3-Freddie Mac posts loss as mortgage market soured" Reuters, June 14, 2007 1:39pm EDT

[27] Freddie Mac also issued a $0.47 dividend on this date. The returns analyzed here were adjusted for that payment.

[28] Saskia Scholtes et al. "Freddie Mac profits plunge" Financial Times, August 30, 2007

credit guarantees and loans purchased which combined were of a greater magnitude (for Freddie and probably for Fannie Mae as well) should also be a concern for the banking and investment banking sectors."[29] This unexpected negative news caused the price of Freddie Mac common stock to decrease 4.7% more than predicted by the market model, and this timely and logical stock price reaction to worse-than-expected financial results is consistent with an efficient market.

26. 11/20/07 - The morning of November 20, 2007, Freddie Mac reported its 3rd quarter 2007 financial results. The release stated, "Freddie Mac (NYSE:FRE) today reported a net loss of $2.0 billion, or $3.29 per diluted common share, in the third quarter of 2007, compared to a net loss of $715 million, or $1.17 per diluted common share, for the same period in 2006." Reuters characterized this release as unexpected, stating, "Freddie Mac FRE.N, the No. 2 U.S. mortgage finance company, on Tuesday stunned Wall Street with a unexpectedly wide loss and plans to slash its dividend or use other means to raise capital to withstand a continuing downturn in the housing market."[30] This unexpected negative news caused the price of Freddie Mac common stock to decrease 29.0% more than predicted by the market model, and this timely and logical stock price reaction to much-worse-than-expected financial results is consistent with an efficient market.

27. Statistical significance of abnormal returns around financial information release dates is not a requirement of either *Cammer* or *Krogman*. The question in *Cammer* as to whether or not there is a cause-and-effect relationship between the release of new financial information and stock returns does not include the requirement that all such

---

[29] Bush, Michael. "At a glance – Freddie Mac: A Poor 2Q07 Result and an indication that the US mortgage market will remain tough for some time yet," National Australia Bank Limited.

[30] Reuters "Freddie Mac hit by huge loss, says needs capital" 11/20/2007

announcements contain information that would cause the value of the stock to move a great deal, or in statistical terms, move a stock's value more than two-standard deviations from its expected returns based on a market model. Such a requirement would impose a strong restriction on the magnitude of the news (i.e., a requirement that all news releases contain information that would move the equity value by a large amount, and large enough to be deemed a "statistically significant" change in value) rather than on the degree of market efficiency. That said, two of the six earnings announcement events produce abnormal returns on Freddie Mac stock that are strongly statistically significant (both with p-values that are essentially equal to zero), three additional events have results that are close to traditional and accepted measures of statistical significance with one-tailed p-values above 10% but below 20% (10.7%, 11.9%, and 16.3%), and the event with weak individual abnormal-return statistical significance results (p-value of 44.2%) is the event with arguably the least amount of unexpected news.

28. As a way to assess statistical significance of our test results, we conduct a joint test on whether all of the event days are insignificant as a group. Tests such as the F-test[31] and the Chi-squared test[32] summarize the likelihood that one might observe a similar set of days, and more specifically a similar set of abnormal returns on the earnings release days, under the assumption that the returns on the event days in question are not exceptional or special, relative to the estimation period data and market model. These tests provide a means to incorporate information that multiple days may be individually

[31] Peter Kennedy, "A Guide to Econometrics," 6th Edition, Blackwell Publishing, Malden, MA, 2008.

[32] John E. Freund, "Mathematical Statistics," 5th Edition, Prentice Hall, Englewood Cliffs, NJ, 1992.

close to statistically significant, such as in our sample. Observing several days that are individually close to conventional significance levels (p-values above but close to 10%) should be unlikely if those days are truly typical based on the data. Review of market commentary regarding the earnings release announcements demonstrates five of the earnings release events reviewed above provided the market with some degree of unexpected information related to the value of Freddie Mac common stock. Using a standard F test and the five events with news that differed from market expectations – 10/3/06, 1/5/07, 6/14/07, 8/30/07, and 11/20/07 – we can easily reject the null hypothesis that all five of these events were insignificant (with a p value of less than 0.001). Alternatively, using a Chi-Squared test, we can easily reject the null hypothesis that the total variation in returns over the five event days was typical (with a p value less than 0.001). Furthermore, the large negative return on the final event date, 11/20/07, is not the sole source of the significance in either of these tests. One can also reject the null hypothesis that the other four days are all insignificant or had typical total variation (with a p value that is also less than 0.001). The results of both the F-test and the Chi-Square test support the idea that Freddie Mac stock reacted to the information in the earnings releases, and the statistical results support the hypothesis that Freddie Mac stock had a cause and effect relationship between unexpected financial releases and an immediate response in the stock price.

29. This examination of the stock price reaction around Freddie Mac's announcements of financial results shows that Freddie Mac common stock reacted quickly and logically to the arrival of new, material information regarding the value of Freddie Mac common stock, which supports the existence of a "cause-and-effect relationship between

unexpected corporate events or financial releases and an immediate response in the stock price." The price reactions of Freddie Mac common stock on the dates examined above support a finding that the market for Freddie Mac common stock was (semi-strong form) efficient.

*vi) Market Capitalization*

30. Market capitalization of a company "may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations."[33] As of the beginning of the class period, Freddie Mac's market capitalization was approximately $38.9 billion. This is more than six times larger than the average market capitalization of companies listed by the NYSE Group.[34] The *Cheney* and *Krogman* decisions state that market capitalization in the top sixty percent of the relevant sample group weighs in favor of market efficiency. Freddie Mac's large market capitalization supports the presumption that the market for Freddie Mac's stock was (semi-strong form) efficient.

*vii) Bid-Ask Spread*

31. The *Krogman* decision states that a "large bid-ask spread is indicative of an inefficient market, because it suggests that the stock is too expensive to trade."[35] In *Krogman*, a spread equal to 5.6% of closing price suggested market inefficiency.[36] In *Cheney*, an

---

[33] *Krogman*, 202 F.R.D. at 478 (citing *O'Neil v. Appel*, 165 F.R.D. 479,503 (W.D. Mich. 1996)).

[34] In August 2006, the combined market cap of NYSE Group companies was $15.7 trillion. 2,764 companies were listed by the NYSE Group in 2006. $15.7 trillion/2,764 = $5.7 billion.

Internet Source: http://www.nyxdata.com/nysedata/asp/factbook/viewer_interactive.asp?hidCategory=5

[35] *Krogman*, 202 F.R.D. at 478.

[36] *See id.* at 478.

average daily relative bid-ask spread of 2.4% weighed in favor of market efficiency.[37] I have calculated the bid-ask spread in two ways. First I have calculated the average daily closing bid-ask spread as reported by Bloomberg. Over the entire class period, the average daily closing bid-ask spread for Freddie Mac common stock as a percentage of the closing price was 1.7%, below the average in *Cheney*, and supportive of market efficiency.[38] I have also calculated the bid-ask spread using the Corwin-Schultz estimator. The Corwin-Schultz estimator calculates the bid-ask spread using data on closing, high, and low transaction prices of a stock.[39] The Corwin-Schultz estimator calculates the bid-ask spread of Freddie Mac common stock during the class period as 0.57%, also well below the average in *Cheney*. These measures of the bid-ask spread for Freddie Mac stock show that Freddie Mac stock was not expensive to trade during the class period, and this finding supports the presumption that the market for Freddie Mac common stock was (semi-strong form) efficient.

*viii) "Float" Percentage*

32. The *Krogman* decision observes that "[i]n determining efficiency, courts also consider the percentage of shares held by the public, rather than insiders."[40] In the *Cheney* decision, 5% of shares outstanding held by insiders (i.e., a 95% float) was taken as supportive of the presumption of market efficiency. As of April 2, 2007, Freddie Mac

[37] *Cheney*, 213 F.R.D. at 501.

[38] This is the average of the bid-ask spread across the 314 days with active closing bids and asks reported by Bloomberg. On 16 days during the class period Bloomberg reports Freddie Mac common stock closed with a 'stub' bid more than 30% lower than the lowest executed trade of the day. These days are excluded from the average calculation. The SEC defines 'stub' bids as bids that are so far away from the prevailing market that they are not intended to be executed. (See SEC Release No. 34-63255). As defined, no trades were executed at stub bids during the class period.

[39] Corwin, S. A. and Schultz, P. (2012), A Simple Way to Estimate Bid-Ask Spreads from Daily High and Low Prices. *The Journal of Finance* 67: 719–760.

[40] *Krogman*, 202 F.R.D. at 478 (citing *O'Neil*, 165 F.R.D. at 503).

had a float percentage of 99.9%. This high float percentage supports the presumption that the market for Freddie Mac common stock was (semi-strong form) efficient during the class period.

*Conclusion*

33. In conclusion, I find the *Cammer* and *Krogman* factors examined above provide persuasive evidence of the (semi-strong form) efficiency of the market for the Freddie Mac common stock over the class period examined. It is my opinion the market for the Freddie Mac common stock was semi-strong form efficient during the class period in this matter.

## VI. Documents considered

34. I reviewed numerous news and analyst reports on Freddie Mac over the class period of 8/1/2006 – 11/20/2007. I also read the Third Amended Complaint filed February 28, 2012 in this matter. I reviewed the financial data described above. A complete compilation of the set of news stories and analyst reports provided to me will promptly be provided to defense counsel in electronic format.

## VII. Potential Additional Analyses to Perform

35. My opinions are based on the information received and available as of the date of my report. I will consider any additional documents or information that becomes available after the date of this report. I will consider issues raised at my deposition. Any of this

additional information may cause me to change my opinions, and I may supplement this report accordingly.

## VIII. Compensation

36. I am being compensated at a rate of $500 per hour. Those assisting me in my work on this matter, Kevin Jewell and Professor Jay Hartzell, are being compensated at rates of $250 and $500 per hour, respectively.

I declare under penalty of perjury, 28 U.S.C. sec. 1746, that the foregoing is true and correct this 16th day of August, 2012 in Austin, Texas.

Greg Hallman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2012, a copy of the foregoing "EXPERT REPORT OF DR. GREG HALLMAN" was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ Joseph T. Deters*
Joseph T. Deters (0012084)

# EXHIBIT 1

# GREG HALLMAN

Greg.Hallman@mccombs.utexas.edu

(512) 732-2344

Ph.D. Finance,
University of Texas at Austin

M.B.A. Finance,
Tulane University

B.A. Chemistry,
University of Virginia

Dr. Greg Hallman is a member of the faculty in the finance department of the University of Texas' McCombs School of Business where he teaches graduate-level courses in valuation, real estate finance, and investment theory, and serves as Director of the McCombs MBA REIT Fund and Director of McCombs Master of Science in Finance (MSF) Program. In addition to his work at the University of Texas, Dr. Hallman has testified on matters involving securities, valuation, and commercial damage issues. He holds a Ph.D. in finance from the University of Texas at Austin, an MBA from Tulane University and a B.A. in chemistry from the University of Virginia.

## PROFESSIONAL EXPERIENCE

2002–Present *Senior Lecturer in Finance and Real Estate Finance*, University of Texas at Austin, McCombs Graduate School of Business, Department of Finance

*Director*, McCombs MBA REIT Fund

*Director,* Master of Science in Finance (MSF) Program

- Named to MBA Faculty Honor Roll: 2002–2011
- Awarded "Best MBA Core Curriculum Professor" by MBA class of 2010, 2011
- Awarded "Joe D. Beasley MBA Teaching Award", 2010-2011
- Awarded "Best Professor" by Alpha Kappa Psi business fraternity

2007–Present *Senior Consultant*, Charles River Associates

2006–2008 *Visiting Professor of Finance*, Instituto de Empresa, Madrid, Spain

2004–2007 *Affiliate*, ERS Group, Inc.

2002–Present *Founder*, Austin Financial Analytics

1999–2002 *Managing Director* (2001–2002), *Director* (1999–2001); InteCap, Inc.

1997–1998 *Finance Instructor*, University of California, Berkeley-Extension

1996–1999 *Consultant*, PHB Hagler Bailly, Inc.

1993–1995 *Finance Instructor*, University of Texas at Austin

1988–1990 *Senior Financial Analyst*, HPI Healthcare, Inc.

## PUBLICATIONS AND RESEARCH PAPERS

"Incentive Compensation and the Likelihood of Termination: Theory and Evidence from Real Estate Organizations" with Jay Hartzell and Chris Parsons. *Real Estate Economics,* 2011, V39 3: pp. 507-546.

"Business Valuation: Adjusted Present Value (APV) Method" with Bonnie J. Goldsmith, *Litigation Services Handbook: The Role of the Financial Expert*, Roman L. Weil, Peter B. Frank, Christian W. Hughes, Michael J. Wagner, eds., Fourth Edition, John Wiley and Sons, 2007.

"Real Options Applications for Telecommunications Deregulation" with Chris McClain. *Real Options: The New Investment Theory and Its Implications for Telecommunications Economics*, James Alleman and Eli Noam, eds., Boston: Kluwer Academic Press, 1999.

"Tax Effects of Discount Rates in Taxable Damage Awards" with Michael J. Wagner. *CPA Expert*, winter 1999.

## PRESENTATIONS AND PROFESSIONAL MEETINGS

"The US and Global Economy", Home Builders Association and Austin Board of REALTORS® Housing Forecast, January 12, 2012, Austin, Texas.

"State of the Real Estate and Real Estate Capital Markets", The University of Texas School of Law 45th Annual William W. Gibson, Jr. Mortgage Lending Conference, September 16, 2011, Austin, Texas.

"The Economy – Where We're Headed", Texas Bar Association Advanced Business Bankruptcy Conference, June 4, 2010, Dallas, Texas.

"Financing/Credit Markets" session – panel speaker, Austin Bar Association 17th Annual Land Development Seminar, September 18, 2009, Austin, Texas.

"A Primer on Securitization," The University of Texas School of Law 27th Annual Jay L. Westbrook Bankruptcy Conference, November 13, 2008, Austin, Texas.

"Mortgage Meltdown: What Happened? Our Roundtable of Experts Sorts it Out," Texas Magazine – The McCombs School of Business Magazine, August, 2008.

"The Subprime Crisis: How Did We Get Here, and What Comes Next";
Fulbright and Jaworski Client Breakfast; January 2008
Vinson and Elkins; February 2008
Texas Bar Association CLE course; March 2008
Winstead Sechrest & Minick P.C.; April 2008
Brown McCarroll. LLP; May 2008

Case: 4:08-cv-00160-JRA Doc #: 199-11 Filed: 08/17/12 4 of 7. PageID #: 6869


Discussant for "Forecasting Real Estate Cash Flows: Evidence on the Quality of FFO Forecasts," 2004 Financial Management Association Annual Meeting, New Orleans, Louisiana.

"Statistical Regression in Litigation," 2000 AICPA National Advanced Litigation Services Conference, October 17, 2000, Beverly Hills, California.

"Advanced Issues in Determining Discount and Growth Rates," 1997 AICPA National Advanced Litigation Services Conference, October 16, 1997, Las Vegas, Nevada (co-presented with Michael J. Wagner).

## Academic and Professional Memberships

American Finance Association

American Economics Association

American Real Estate and Urban Economics Association

*ad-hoc* Referee/Reviewer for Journal of Real Estate Economics

## Testimony and Expert Reports

*County of Solano* v. *Lionsgate Corporation State of California*, State of California, Office of Administrative Hearings; arbitration and deposition testimony: a statistical analysis of construction cost overruns on County bridge projects. (1998)

*Steimle* v. *Steimle*, Superior Court of the State of California, County of San Francisco; trial and deposition testimony: an analysis of executive compensation and community and separate character of executive stock options. (1999)

*Kevin L. Guertin* v. *Home Depot*, United States District Court, Northern District of California, San Jose Division; federal Rule 26 report: an analysis and valuation of employee stock options. (2000)

*Bamford* v. *Bamford*, Superior Court of the State of California, County of San Mateo; deposition testimony: an analysis of executive compensation and community and separate character of executive stock options, and analysis of community and separate investment risk profiles. (2000)

*Brent H. Beebe and Marsha A. Beebe* v. *Charles Kelson et. al*, United States District Court, Eastern District of California; deposition testimony and declaration: a statistical analysis regarding alleged price-fixing in State contracts. (2000)

*ARCH Development Partners*; fairness opinion: valuation of preferred stock in six early stage (pre-public) technology ventures. (2000)

*Provision Dental Systems, Inc.* v. *Robert Shiller*, American Arbitration Association, Case no. 74 116 01083 00 LDG; arbitration testimony: valuation of private equity and calculation of lost earnings. (2001)

*BankAmerica Corp. Securities Litigation*, United States District Court, Eastern District of Missouri; federal rule 26 report and deposition testimony: a calculation of damages suffered by class in class-action securities litigation related to merger of BankAmerica and Nationsbank. (2001)

*Oracle Corporation* v. *Pier Carlo Falotti*, United States District Court, Northern District of California, San Francisco Division; Federal Rule 26 report and deposition testimony: a calculation of damages suffered by Mr. Falotti from lost Oracle stock options due to alleged improper termination. (2001)

*George J. Zeller v. America Online*, United States District Court, Eastern District of Virginia, Alexandria Division; Federal Rule 26 report: a rebuttal report filed regarding calculation of damages suffered by Mr. Zeller. (2001)

*Ronald J. Arnold* v. *America Online*, Superior Court of the State of California, County of Santa Clara; Deposition testimony: a rebuttal to plaintiff's expert regarding calculation of damages suffered by Mr. Arnold and valuation of employee stock options and lost wages. (2002)

*Rebecca Aaronson* v. *Xerox*, United States District Court, Northern District of California, San Francisco Division; Federal Rule 26 report: a calculation of damages suffered by Ms. Aaronson from wrongful termination; rebuttal to plaintiff's expert. (2002)

*Lawrence Spiler* v. *Xerox*, United States District Court, Northern District of California, San Francisco Division; Federal Rule 26 report: a calculation of damages suffered by Mr. Spiler from wrongful termination; rebuttal to plaintiff's expert. (2002)

*VFB L.L.C.* v. *Campbell Soup Company*, United States District Court, Northern District of Delaware; trial, deposition, and Federal Rule 26 report: a business valuation and calculation of damages suffered by creditors from bankruptcy of Vlasic Foods International (a spin-off from Campbell's Soup Company). (2004)

*Latin American Courier Inc. and Pegaso Express S.A.* v. *Airborne, Inc. and DHL Holdings (USA) et. al*., in the District Court, 285th Judicial District, Bexar County, Texas; trial, deposition, and Federal Rule 26 report: a calculation of lost profits related to express package shipping into and out of Mexico; calculation of various elements of commercial damages. (2005)

Matter between *Applied Mechanical Corporation* and *Daniel J. Tobin*; Mediation; Testimony at mediation: a business valuation; valuation of private equity holdings. (2005)

*Carriage Way Limited Partnership* v. *The National Life Insurance Co*., United States District Court, Eastern District of Michigan, Southern Division; Federal Rule 26 report, affidavit, deposition: a commercial mortgage prepayment calculation and interpretation. (2005)

*Elaine Trahan, Individually and on behalf of all others similarly situated* vs. *Long Beach Mortgage Company and Washington Mutual Bank*, F.A.; United States District Court for the Eastern District of Texas, Lufkin Division; Affidavit: home equity loan mortgage design (2006)

*Stephen Johnston et. al.,* vs. Baran Group, et. al., in the Superior Court, State of Georgia, Civil Case no. 2004CF89313; Federal Rule 26 report, depositions: calculation of damages suffered by shareholders related to sale of o2 Wireless, a publicly traded telecommunications equipment company. (2006)

*Watchguard Technologies, Inc.* v. *Michael N. Valentine and SonicWall, Inc.*, United States District Court for the Northeastern Division of Texas, Dallas Division; Federal Rule 26 report and deposition: calculation of damages related to theft of trade secret claim. (2006)

*Stonehill-PRM WC I, L.P., v. Chasco Constructors Ltd., L.L.P. and Safeco Insurance Company of America*, United States District Court, Travis County, Texas; report and deposition; valuation of a student apartment complex in Austin, TX related to a breach of contract claim regarding construction. (2007)

*In Re: Chaparral Resources Inc. Shareholders Litigation*, In the Court of Chancery of the State of Delaware in and for New Castle County; C.A. No. 2001-N; report, deposition, and trial; analysis of oil company (Chaparral) stock price in relation to a merger bid from Lukoil. (2007)

*Alvarez & Marsal North America, LLC, Liquidating Trustee of Azabu Buildings, Ltd., v. Beecher, Ltd.,* In the United States Bankruptcy Court, District of Hawaii, Case No. 05-50011, report and deposition; valuation of hotel real estate assets and hotel business value. (2007)

*In re: TyCom Ltd. Securities Litigation*, United States District Court for the District of New Hampshire, Civil Action No. 03-CV-1352, report and deposition; calculation of damages suffered by shareholders of TyCom. (2007)

*DHL Express (USA), Inc. v. Express Save Industries, Inc.*, United States District Court Southern District of Florida Fort Lauderdale Division, 09-60276, reports; analysis of damages suffered by Express Save Industries related to DHL leaving US domestic express market. (2009)

*Forever 21 Retail, Inc. v. A'Gaci, L.L.C., Won Management, L.L.C., and Mall Del Norte, L.L.C.*, District Court of Travis County, Texas, 261st Judicial District, No. D-1-GN-07-003229, deposition and trial testimony; analysis of lost profits related to exclusionary language in a mall lease. (2009)

*The Service Source, Inc. v. DHL Express (USA), Inc.,* State of Michigan in the Circuit Court for the County of Lenawee, Case No. 09-3258-CK, report, deposition and trial testimony; calculation of lost profits related to DHL's cessation of domestic shipping in the US. (2010)

*R. Scott Brown and Volant Energy, L.L.C. v. Allan D. Keel, Oaktree Capital Management, LLC, and Oaktree Capital Management, L.P.,* In the District Court of Harris County, Texas, 234th Judicial District, Case No. 2009-04679 report, deposition and trial testimony; valuation of employee stock options. (2010)

*Unishippers Global Logistics, LLC, v. DHL Express (USA), Inc.,* In the United States District Court, District of Utah, Central Division, Civil No. 2:08-CV-894; report and deposition and trial testimony; calculation of lost profits related to DHL's cessation of domestic shipping in the US. (2010, 2011)

*Falcon Express International, Inc., vs. DHL Express (USA), Inc*., In the District Court of Harris County, Texas, 157th Judicial District, Cause No. 2008-66394; trial testimony; analysis of damage claims by both parties. (2010)

*DHL Express (USA), Inc., vs. Rapid Enterprises Inc., d/b/a Express One.,* In the United States District Court, Southern District of Florida, Fort Lauderdale Division, Civil No. 09-60747; report; analysis of damage claims by both parties. (2010)

*Centro Del Rio, Ltd., vs. Keystone-Texas Property Holding Corp., New River Center Mall, L.P., And Ben Ashkenazy*, In the District Court, 166th Judicial District, Bexar County, Texas, Cause No. 2005-CI-09467, report and deposition; investment analysis of proposed hotel in San Antonio, Texas. (2010)

*Worldwide Express Operations, LLC d/b/a Worldwide Express, and Good Harris, LLC* vs. *DHL Express (USA)*, Inc., 192nd Judicial District Court, Dallas County, Texas, Cause #DC-08-15314; report, deposition and trial testimony; analysis of lost profits claims. (2010, 2011)

*USS Logistics, LLC, et. al.,*vs *DHL Express (USA)*, Inc., In the Third Judicial District Court, Salt Lake City, Utah, Civil No. 680926254; report, deposition, and trial testimony; analysis of damage claims by both parties. (2010)

*In Re Arthrocare Corporation Securities Litigation*, In the United States District Court, Western District of Texas, Austin Division, Civil No. 1:08-cv-00574-SS; expert declaration and damages report regarding damages suffered by shareholders and option holders, market efficiency. (2011)

*Gulf Coast Shippers Limited Partnership, et. al.,* vs *DHL Express (USA)*, Inc., In the United States District Court, District of Utah, Central Division, Civil No. 2:09-CV-221; report and deposition; calculation of lost profits related to DHL's cessation of domestic shipping in the US. (2011)

# EXHIBIT 2

SECOND EDITION

# FUNDAMENTALS OF CORPORATE FINANCE

Robert Parrino

*Lamar Savings Centennial Professor of Finance*
*University of Texas at Austin*

David S. Kidwell

*Professor of Finance and Dean Emeritus*
*University of Minnesota*

Thomas W. Bates

*Department Chair and Associate Professor of Finance*
*Arizona State University*

WILEY

John Wiley & Sons, Inc.

Case: 4:08-cv-00160-BYP Doc #: 359-1 Filed: 01/20/17 148 of 413. PageID #: 16709
Case: 4:08-cv-00160-JRA Doc #: 199-12 Filed: 08/17/12 3 of 5. PageID #: 6875

| | |
|---|---|
| VICE PRESIDENT, EXECUTIVE PUBLISHER | George Hoffman |
| PROJECT EDITOR | Jennifer Manias |
| EDITORIAL ASSISTANT | Erica Horowitz |
| ASSOCIATE DIRECTOR OF MARKETING | Amy Scholz |
| MARKETING ASSISTANT | Courtney Luzzi |
| SENIOR PRODUCT DESIGNER | Allie K. Morris |
| PRODUCT DESIGNER | Greg Chaput |
| SENIOR PRODUCTION EDITOR | William A. Murray |
| SENIOR PHOTO EDITOR | Jennifer MacMillan |
| SENIOR DESIGNER | Maureen Eide |
| COVER PHOTO | Benjamin Antony Monn/Gigia Marchiori Photo Agency |

The CFA Institute Materials used in this book are reproduced and republished from the CFA Program Materials with permission from the CFA Institute. The authors and publisher are grateful for permission to use this material.

This book was set in Minion Pro by Aptara, Inc. and printed and bound by Courier/Kendallville. The cover was printed by Lehigh Phoenix.

This book is printed on acid free paper. ∞

Founded in 1807, John Wiley & Sons, Inc. has been a valued source of knowledge and understanding for more than 200 years, helping people around the world meet their needs and fulfill their aspirations. Our company is built on a foundation of principles that include responsibility to the communities we serve and where we live and work. In 2008, we launched a Corporate Citizenship Initiative, a global effort to address the environmental, social, economic, and ethical challenges we face in our business. Among the issues we are addressing are carbon impact, paper specifications and procurement, ethical conduct within our business and among our vendors, and community and charitable support. For more information, please visit our website: www.wiley.com/go/citizenship.

Copyright © 2012, 2009 John Wiley & Sons, Inc. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, scanning or otherwise, except as permitted under Sections 107 or 108 of the 1976 United States Copyright Act, without either the prior written permission of the Publisher, or authorization through payment of the appropriate per-copy fee to the Copyright Clearance Center, Inc., 222 Rosewood Drive, Danvers, MA 01923 (website: www.copyright.com). Requests to the Publisher for permission should be addressed to the Permissions Department, John Wiley & Sons, Inc., 111 River Street, Hoboken, NJ 07030-5774, (201) 748-6011, fax (201) 748-6008, or online at: www.wiley.com/go/permissions.

Evaluation copies are provided to qualified academics and professionals for review purposes only, for use in their courses during the next academic year. These copies are licensed and may not be sold or transferred to a third party. Upon completion of the review period, please return the evaluation copy to Wiley. Return instructions and a free of charge return mailing label are available at www.wiley.com/go/returnlabel. If you have chosen to adopt this textbook for use in your course, please accept this book as your complimentary desk copy. Outside of the United States, please contact your local sales representative.

ISBN: 978-0-470-87644-2
BRV ISBN: 978-0-470-93326-8

Printed in the United States of America

10 9 8 7 6 5 4 3 2 1

Case: 4:08-cv-00160-BYP Doc #: 359-1 Filed: 01/20/17 149 of 413. PageID #: 16710
Case: 4:08-cv-00160-JRA Doc #: 199-12 Filed: 08/17/12 4 of 5. PageID #: 6876



## 2.4 MARKET EFFICIENCY

LEARNING OBJECTIVE

Financial markets, such as the bond and stock markets, help bring buyers and sellers of securities together. They reduce the cost of buying and selling securities by providing a physical location or computer trading system where investors can trade securities. The supply and demand for securities are better reflected in organized markets because much of the total supply and demand for securities flows through these centralized locations or trading systems. Any price that balances the overall supply and demand for a security is a market equilibrium price.

Ideally, economists would like financial markets to price securities at their **true (intrinsic) value**. A security's true value is the present value (the value in today's dollars) of the cash flows an investor who owns that security can expect to receive in the future. This present value, in turn, reflects all available information about the size, timing, and riskiness of the cash flows at the time the price was set.[3] As new information becomes available, investors adjust their cash flow estimates and, through buying and selling, the price of a security adjusts to reflect this information.

Markets such as those just described are called "efficient" markets. More formally, in an **efficient market**, security prices fully reflect the knowledge and expectations of all investors at a particular point in time. If markets are efficient, investors and financial managers have no reason to believe the securities are not priced at or near their true value. The more efficient a market is, the more likely securities are to be priced at or near their true value.

The overall efficiency of a market depends on its *operational efficiency* and its *informational efficiency*. **Market operational efficiency** focuses on bringing buyers and sellers together at the lowest possible cost. The costs of bringing buyers and sellers together are called *transaction costs* and include such things as broker commissions and other fees and expenses. The lower these costs, the more operationally efficient markets are. Why is operational efficiency important? If transaction costs are high, market prices will be more volatile, fewer financial transactions will take place, and prices will not reflect the knowledge and expectations of investors as accurately.

Markets exhibit **informational efficiency** if market prices reflect all relevant information about securities at a particular point in time. As suggested above, informational efficiency is influenced by operational efficiency, but it also depends on the availability of information and the ability of investors to buy and sell securities based on that information. In an informationally efficient market, market prices adjust quickly to new information as it becomes available. Prices adjust quickly because many security analysts and investors are gathering and trading on information about securities in a quest to make a profit. Note that competition among investors is an important driver of informational efficiency.

**true (intrinsic) value**
for a security, the value of the cash flows an investor who owns that security can expect to receive in the future

**efficient market**
market where prices reflect the knowledge and expectations of all investors

**market operational efficiency**
the degree to which the transaction costs of bringing buyers and sellers together are minimized

**market informational efficiency**
the degree to which current market prices reflect relevant information and, therefore, the true value of the security

> The concept of market efficiency originated with the Ph.D. dissertation that Eugene Fama wrote at the University of Chicago. You can see a video of an interview with Dr. Fama that relates to market efficiency and other concepts discussed in this chapter at http://www.dfaus.com/philosophy/markets-work.html.

### Efficient Market Hypotheses

Public financial markets are efficient in part because regulators such as the SEC require issuers of publicly traded securities to disclose a great deal of information about those securities to investors. Investors are constantly evaluating the prospects for these securities and acting on the conclusions from their analyses by trading them. If the price of a security is out of line with what investors think it should be, then they will buy or sell that security, causing its price to adjust to reflect their assessment of its value. The ability of investors to easily observe transaction prices and trade volumes and to inexpensively trade securities in public markets contributes to the efficiency of this process. This buying and selling by investors is the mechanism through which prices adjust to reflect the market's consensus. The theory about how well this mechanism works is known as the **efficient market hypothesis**.

**Strong-Form Efficiency.** The market for a security is perfectly informationally efficient if the security's price always reflects all information. The idea that all information about a security is reflected in its price is known as the **strong-form of the efficient market hypothesis**. Few people really believe that market prices of public securities reflect all available information, however. It is widely accepted that insiders have information that is not reflected in the security prices. Thus, the concept of strong-form market efficiency represents the ideal case rather than the real world.

**efficient market hypothesis**
a theory concerning the extent to which information is reflected in security prices and how information is incorporated into security prices

**strong-form of the efficient market hypothesis**
the theory that security prices reflect all information

[3]We discuss how to calculate the present value of future cash flows in Chapters 5 and 6.

**private information**
information that is not available to all investors

If a security market were strong-form efficient, then it would not be possible to earn abnormally high returns (returns greater than those justified by the risks) by trading on **private information**—information unavailable to other investors—because there would be no such information. In addition, since all information would already be reflected in security prices, the price of a share of a particular security would change only when new information about its prospects became available.

**semistrong-form of the efficient market hypothesis**
the theory that security prices reflect all public information but not all private information

**public information**
information that is available to all investors

**Semistrong-Form Efficiency.** A weaker form of the efficient market hypothesis, known as the **semistrong-form**, holds only that all **public information**—information that is available to all investors—is reflected in security prices. Investors who have private information are able to profit by trading on this information before it becomes public. For example, suppose that conversations with the customers of a firm indicate to an investor that the firm's sales, and thereby its cash flows, are increasing more rapidly than other investors expect. To profit from this information, the investor buys the firm's stock. By buying the stock, the investor helps drive up the price to the point where it accurately reflects the higher level of cash flows.

The concept of semistrong-form efficiency is a reasonable representation of the public stock markets in developed countries such as the United States. In a market characterized by this sort of efficiency, as soon as information becomes public, it is quickly reflected in stock prices through trading activity. Studies of the speed at which new information is reflected in stock prices indicate that by the time you read a hot tip in the *Wall Street Journal* or a business magazine, it is too late to benefit by trading on it.

**weak-form of the efficient market hypothesis**
the theory that security prices reflect all information in past prices but do not reflect all private or all public information

**Weak-Form Efficiency.** The weakest form of the efficient market hypothesis is known, aptly enough, as the **weak-form**. This hypothesis holds that all information contained in past prices of a security is reflected in current prices but that there is both public and private information that is not. In a weak-form efficient market, it would not be possible to earn abnormally high returns by looking for patterns in security prices, but it would be possible to do so by trading on public or private information.

An important conclusion from efficient market theory is that at any point in time, all securities of the same risk class should be priced to offer the same expected return. The more efficient the market, the more likely this is to happen. Since both the bond and stock markets are relatively efficient, this means that securities of similar risk will offer the same expected return. This conclusion is important because it provides the basis for identifying the proper discount rate to use in applying the bond and stock valuation models developed in Chapters 8 and 9.

> For an in-depth discussion of market efficiency, visit http://www.investorhome.com/emh.htm.

**BEFORE YOU GO ON**

How does information about a firm's prospects get reflected in its share price?

What is strong-form market efficiency? semistrong-form market efficiency? weak-form market efficiency?

## 2.5 FINANCIAL INSTITUTIONS AND INDIRECT FINANCING

LEARNING OBJECTIVE

**financial intermediation**
conversion of securities with one set of characteristics into securities with another set of characteristics

As we mentioned earlier, many business firms are too small to sell their debt or equity directly to investors. They have neither the expert knowledge nor the financing requirements to make transacting in wholesale markets cost effective. When these companies need funds for capital investments or for liquidity adjustments, their only feasible choice is to borrow in the *indirect* market from a financial institution. These financial institutions act as intermediaries, converting financial securities with one set of characteristics into securities with another set of characteristics. This process is called **financial intermediation**. The hallmark of indirect financing is that a financial institution—an intermediary—stands between the lender-saver and the borrower-spender. This route is shown at the bottom of Exhibit 2.1.

# Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

-------------------------------------X

OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,
On Behalf of Itself and all Others
Similarly Situated,

PLAINTIFF,

-against-

FEDERAL HOME LOAN MORTGAGE CORPORATION
a/k/a FREDDIE MAC, RICHARD F. SYRON,
PATRICIA L. COOK, ANTHONY S. PISZEL,
and EUGUE M. McQUADE,

DEFENDANTS.

-------------------------------------X

DEPOSITION OF DR. GREG HALLMAN
New York, New York
Friday, December 7, 2012

Reported by:
Rebecca Schaumloffel, RPR, CLR
Job No: 56048

G. HALLMAN

A. Two gentlemen helped me on the report, Professor Jay Hartzell, H-A-R-T-Z-E-L-L, and a gentleman named Kevin Jewell and his last name is J-E-W-E-L-L. Two Ls.
Q. Where does Professor Jay Hartzell work?
A. He is the chairman of the finance department at the University of Texas at Austin, where I work.
Q. Is he being compensated in connection with this case, do you know?
A. Yes.
Q. Do you know what he is being compensated?
A. His hourly rate is the same as mine, yes. 500 per hour.
Q. And who is Kevin Jewell?
A. Kevin Jewell is a gentleman I worked with him at a firm that I was associated with a number of years ago. He has just continued to work with me on -- I think he kind of works for himself now. But he had worked at Cornerstone for some years,



G. HALLMAN

got his MBA at the University of Texas. Was one of our very good students and then has been in this business since that time doing expert work or litigation work.
Q. Do you know how long he worked at Cornerstone?
A. I think it was two years after he graduated from Brown and then before he went back to get his MBA.
Q. So you say he is self-employed now?
A. I think he does, yes, I think he works for himself. Freelance.
Q. Now, you work -- you have some kind of an affiliation with a company called Charles River Associates; is that right?
A. Yes, I do. I do. I am a senior consultant.
Q. So what is it specifically you do as a senior consultant for Charles River Associates, which I will refer to as CRA?
A. You know, I signed that agreement with Charles River Associates in 2007 and I worked cases with them, you know, probably



G. HALLMAN

through 2010 or '11, but I have not worked on anything with them for two years, almost two years now. Although I am still -- I am still under contract with them as a senior consultant.
Q. How come you have not worked for them for the past two years?
A. Well, they have not brought me any cases to work on, and the cases that I have worked on have been on the plaintiffs' side and they do not want to work with me on the plaintiffs' side.
Q. So does that mean then in the last couple of years you have worked predominantly on the plaintiff side?
A. Yes, I have only done two cases in the last couple of years and that has been the ArthroCare case and then this matter.
Q. So both of those cases in the last two years, you have represented plaintiffs in securities fraud class actions, correct?
A. That's correct. Can I clarify one thing about that?



G. HALLMAN

Q. Of course.
A. I have a case, there is a case in which I am working, still with Charles River Associates. It's a case for DHL. And that's on the defense side. All my DHL cases were on the defense side and those were all for Charles River Associates, CRA.
Q. But nonetheless, notwithstanding that experience, Charles River Associates is not bringing you -- hasn't brought you any cases to work on for two years; is that right?
A. That's correct, yes.
Q. Now, before the ArthroCare case, there were other securities fraud class actions that you worked on in your career, correct?
A. Yes.
Q. When was the last time that you worked on a securities fraud class action representing defendants?
A. I worked as the expert for Toronto Dominion Bank in the Enron matter.
Q. Was Toronto Dominion Bank a

G. HALLMAN

defendant in that case?
A. Yes.
Q. When did you get hired to work on that matter?
A. It would have to be 2006.
Q. So since 2006, you have not been retained by defendants in a securities fraud class action; is that correct?
A. That's correct, yes.
Q. Now, since 2006, how many times have you been retained by plaintiffs in securities fraud class actions?
A. Two, I think.
Q. Are the two the ArthroCare case and this case?
A. Yes.
Q. You said that you met with counsel in preparation for this deposition. When did you do that?
A. Yesterday afternoon.
Q. Was anyone other than counsel present?
A. No.
Q. How long did that meeting last



G. HALLMAN

for?
A. An hour to an hour and a half.
Q. Does your CV accurately state your educational and employment history?
A. Yes.
Q. Let's mark -- we will do that later.
I want to ask you whether you have ever given any seminars or drafted any academic literature concerning a number of subjects. Let me know if you have or you haven't. Okay?
A. These are papers, papers that I might have written?
Q. Papers or books.
A. Or a talk?
Q. Or spoken at a seminar.
A. Okay.
Q. Sub prime loans?
A. Yes.
Q. Papers?
A. Not papers. Just a lot of conferences.
Q. When were those conferences?



G. HALLMAN

A. Well, they are listed on my CV but after the -- I have taught, the mortgage backed securities class at the University of Texas from 2002 -- I had a couple of years off when Professor Hartzell taught it and I am teaching it again. So, you know, people in Austin knew this and so when the sub prime crisis happened, I remember I gave the first talk at Fulbright Jaworski at a client breakfast they had in Houston and then after that it seemed like there was a string of them that I gave. I gave a CLE talk on sub prime. So there was -- I gave -- we did a professor roundtable for an alumni magazine for the University, and I was one of the four professors in that where we were talking about the sub prime crisis.
Q. When did you speak first at Fulbright Jaworski about the sub prime mortgage crisis?
A. It was January and it was either -- it was probably January '08.
Q. On how many occasions do you think you have spoken on that subject? When



G. HALLMAN

I say "spoken," I mean, of course, in front of some audience, a presentation.
A. So outside of my classes?
Q. Yes.
A. More than five and less than ten. Between five and ten.
Q. When was the last time that you addressed an audience on that subject other than in the classroom?
A. It was probably still in '08. It might have been into '09 by then. You know I did five or six at law firms around Texas, but I think it was really all in that kind of '08, maybe into '09 period. It dropped off the radar. Not off the radar but people got tired of talking about it after that.
Q. Have you ever addressed the subject of Freddie Mac in a paper, a book or any presentation you have given?
A. Not solely Freddie Mac but certainly Freddie Mac was -- discussion of Freddie Mac was contained in all of my talks about the sub prime crisis.
Q. Freddie Mac and Fannie Mae?

# Exhibit E

# Jay C. Hartzell

Department of Finance
McCombs School of Business
The University of Texas at Austin
2110 Speedway Stop B6600
Austin, TX 78712-1276
(512) 471-6779; jhartzell@mail.utexas.edu

## Academic Positions Held

**McCombs School of Business, The University of Texas at Austin**

| | |
|---|---|
| Professor of Finance | *2011 to present* |
| Chair, Department of Finance | *2011 to present* |
| Allied Bancshares Centennial Fellow in Finance | *2008 to present* |
| Executive Director, Real Estate Finance and Investment Center (REFIC) | *2007 to present* |
| Associate Professor of Finance | *2006 to 2011* |
| Associate Director, REFIC | *2005 to 2007* |
| Assistant Professor of Finance | *2001 to 2006* |

**Stern School of Business, New York University**

| | |
|---|---|
| Assistant Professor of Finance | *1998 to 2001* |

## Education

**Ph.D. in Finance, The University of Texas at Austin, 1998**
Minors: Real Estate, Economics.

**B.S. in Business Administration and Economics, Trinity University, 1991**
Graduated *Cum Laude*. National Merit Scholar.

## Publications

"Institutional Investors as Monitors of Corporate Diversification Decisions: Evidence from Real Estate Investment Trusts" with Libo Sun and Sheridan Titman. *Journal of Corporate Finance*, forthcoming.

"Trade-offs in Corporate Governance: Evidence from Board Structures and Charter Provisions" with Stuart L. Gillan and Laura T. Starks. 2011. *The Quarterly Journal of Finance* 1, 667-705.

"Incentive Compensation and the Likelihood of Termination: Theory and Evidence from Real Estate Organizations" with Greg Hallman and Chris Parsons. 2011. *Real Estate Economics* 39, 507-546.

"Is a Higher Calling Enough? Incentive Compensation in the Church" with Chris Parsons and David Yermack. 2010. *Journal of Labor Economics* 28, 509-539.

"Alternative Benchmarks for Evaluating Mutual Fund Performance" with Tobias Mühlhofer and Sheridan Titman. 2010. *Real Estate Economics* 38, 121-154.

"Explicit vs. Implicit Contracts: Evidence from CEO Employment Agreements" with Stuart Gillan and Robert Parrino. 2009. *Journal of Finance* 64, 1629-1655.

"The Role of Corporate Governance in Initial Public Offerings: Evidence from Real Estate Investment Trusts" with Jarl Kallberg and Crocker Liu. 2008. *Journal of Law and Economics* 51, 539-562.

"Why Do Firms Hold So Much Cash? A Tax-Based Explanation" with Fritz Foley, Sheridan Titman and Garry Twite. 2007. *Journal of Financial Economics* 86, 579-607 (Lead article).

"The Effect of Corporate Governance on Investment: Evidence from Real Estate Investment Trusts" with Libo Sun and Sheridan Titman. 2006. *Real Estate Economics* 34, 343-376 (Lead article). Winner of the 2006 Edwin S. Mills *Real Estate Economics* Best Paper Award.

"Active Institutional Shareholders and Costs of Monitoring: Evidence from Executive Compensation" with Andres Almazan and Laura T. Starks. 2005. *Financial Management* 34(4), 5-34 (Lead article).

"The Impact of CEO Turnover on Equity Volatility" with Matthew J. Clayton and Joshua Rosenberg. 2005. *Journal of Business* 78, 1779-1808.

"The Role of the Underlying Real Asset Market in REIT IPOs" with Jarl G. Kallberg and Crocker H. Liu. 2005. *Real Estate Economics* 33, 27-50.

"What's In It For Me? Private Benefits Obtained by CEOs Whose Companies are Acquired" with Eli Ofek and David Yermack. 2004. *Review of Financial Studies* 17, 37-61.

"Institutional Investors and Executive Compensation" with Laura T. Starks. 2003. *Journal of Finance* 58, 2351-2374.

"Market Reaction to Public Information: The Atypical Case of the Boston Celtics" with Gregory W. Brown. 2001. *Journal of Financial Economics* 60, 333-370.

## Research Papers

"On Enhancing Shareholder Control: A (Dodd-) Frank Assessment of Proxy Access" with Jonathan Cohn and Stuart Gillan. Under revision for second review, *Journal of Finance*.

"Is There a Disposition Effect in Corporate Investment Decisions? Evidence from Real Estate Investment Trusts" with Alan Crane. Under revision for second review, *Real Estate Economics*.

"Human Capital and the Supply of Religion" with Joseph Engelberg, Raymond Fisman, and Christopher A. Parsons.

## Professional and Academic Activities and Service

**Editorial Board**, *Real Estate Economics*, 2007-present.

**Associate Editor**, *Review of Financial Studies*, 2009-2012.

**American Real Estate and Urban Economics Association (AREUEA)**, Board of Directors, 2009-2012. Member, 1998-present.

**Urban Land Institute.** Advisory Board (previously known as Executive Committee), Austin District Council, 2010-present. Member, Industrial & Office Park Development Council (Gold), 2009-present. Full member, 2008-present.

**National Council of Real Estate Investment Fiduciaries.** Data Products Council, 2009. Member, 2008-present.

**Financial Management Association.** Track chair, real estate, annual meeting, 2007. Program committee, European meeting, 2006. Program committee, annual meeting, 2004, 2005. Corporate finance awards committee, annual meeting, 2003. Member, 1998-present.

**Western Finance Association.** Program committee, annual meeting, 2006, 2010, 2011. Member, 1998-present.

**Conference on Financial Economics and Accounting.** Co-organizer, Finance, 19th Annual Meeting, 2008.

**American Finance Association.** Member, 1998-present.

**Ad Hoc Referee** for the following journals:
*The Accounting Review; American Economic Review; Financial Management; International Journal of Managerial Finance; International Journal of Manpower; International Review of Finance; Journal of Banking and Finance; Journal of Corporate Finance; Journal of Economics, Management, and Strategy; Journal of Economic Behavior and Organization; Journal of Finance; Journal of Financial and Quantitative Analysis; Journal of Financial Economics; Journal of Financial Intermediation; Journal of Financial Markets, Instruments and Institutions; Journal of Institutional and Theoretical Economics; Journal of Law, Economics, and Organizations; Journal of Real Estate Research; Journal of Risk and Insurance; Journal of Urban Economics; Management Science; Public Finance Review; Quarterly Review of Economics and Finance; Real Estate Economics; Review of Economic Studies; Review of Financial Studies.*

**Service for the University of Texas at Austin**
Executive Director, Real Estate Finance and Investment Center (REFIC), 2007-present.
Associate Director, REFIC, 2005-2007.
Member, Finance Department Executive Committee, 2006-present.
Member, Graduate Assembly (University wide), 2009-present.
Member, Finance Department PhD Committee, 2003-present.
Member, University Outstanding Graduate Thesis Award Committee, 2010.
Guest speaker, MBA Alumni Network, El Paso, 2010; Seattle and Austin, 2009.
Guest speaker, UT LAMP program, 2009.
Speaker on Real Estate Valuation, VALCON 2009, Co-sponsored by UT School of Law.
Member, Planning Committee, 2009 Mortgage Lending Institute, Sponsored by UT School of Law.
Speaker, 2009 Mortgage Lending Institute (Austin and Dallas), Sponsored by UT School of Law.
Guest speaker, Austin Bar Association Real Estate Section meeting, 2010.
Speaker, 2009 Land Use Conference, Sponsored by UT School of Law.
Judge, MBA Finance Tournament, 2001-2006, 2008-2009.
Assistant Graduate Advisor and Minority Liaison, Finance Department, 2005-2008.
Member, McCombs Option I Policy Committee, 2006-2008.
Panel Chair, $IC^2$ Conference on Corporate Governance in Early-Stage Companies, 2005, 2006.
Member, Plus Program Committee, 2003-2005.
Judge, MBA Consulting Challenge, 2002, 2003, 2004.
Member, MBA Scholarship Committee, 2002.

**PhD Dissertation Committees**

UT-Austin: Jennifer Brown (accounting), Alan Crane (co-chair), Chang Mo Kang, Ayla Kayhan, Jung-Eun Kim (chair), Andreas Lawson, Jie Lian, Andras Marosi, Bill Mayew (accounting), Thomas Moeller, Carlos Molina, Saumya Mohan (co-chair), Chris Parsons (co-chair), Lorenzo Preve, Casey Schwab (accounting), Zekiye Selvili, Nate Sharp (accounting), Stephanie Sikes (accounting), Libo Sun (co-chair), Erin Towery (accounting), Vahap Uysal, Malcolm Wardlaw, Peggy Weber (accounting), Li Yong.

NYU: Eliezer Fich (economics), Charu Raheja, Jayanthi Sunder.

## Academic Presentations (includes presentations made by co-authors at major conferences)

**2012**

University of Arizona.

**2011**

Indian School of Business Summer Research Conference, National Bureau of Economic Research (NBER) Program on Law and Economics, Society for Financial Studies Finance Cavalcade, University of Michigan.

**2010**

American Real Estate and Urban Economics Association (AREUEA) annual meeting, Homer Hoyt Institute/Weimer School of Advanced Studies in Real Estate and Land Economics Spring Conference, UC-Irvine Commercial Real Estate Academic Symposium, Indiana University, University of Colorado at Boulder, University of Florida.

**2009**

AREUEA annual meeting, Association for the Study of Religion Economics and Culture (ASREC) annual meeting, National Bureau of Economic Research (NBER) Economics of Religion conference, Western Finance Association (WFA) annual meeting, National University of Singapore, Ohio State University, Singapore Management University, University of Alabama, University of Cincinnati, University of Washington.

**2008**

AREUEA annual meeting, Real Estate Research Institute (RERI) Conference, McGill University, University of California - Los Angeles.

**2007**

American Finance Association (AFA) annual meeting, Hong Kong University of Science and Technology Symposium, Real Estate Research Institute (RERI) Conference, Australian National University, Baylor University, Penn State University, Texas Tech University, University of California - Berkeley, University of Delaware, University of Oklahoma, University of South Florida.

**2006**

AFA annual meeting (two papers), University of Texas at Dallas.

**2005**

AREUEA annual meeting, NBER Corporate Governance meeting, Ohio State University, Penn State University, Southern Methodist University, University of North Carolina at Chapel Hill Tax Symposium, University of Texas at San Antonio.

**2004**

Association of Financial Economists (AFE) annual meeting, AREUEA annual meeting, Financial Management Association (FMA) annual meeting, NBER Summer Institute: Corporate Governance

Workshop, College of William and Mary.

**2003**
AFA annual meeting, AREUEA/AFA joint session at annual meeting, University of British Columbia, University of Delaware Corporate Governance Symposium, University of Minnesota, University of North Carolina at Chapel Hill, WFA annual meeting.

**2002**
Babson College, Oklahoma State University, University of Oklahoma, Real Estate Research Conference (Vail, CO), University of Southern California.

**2001**
Arizona State University, University of Oregon.

**2000**
Dartmouth Center for Corporate Governance/Journal of Financial Economics (JFE) Conference on Contemporary Governance Issues, Marquette University, NYU-Columbia Joint Seminar, Southern Methodist University, University of Illinois at Urbana-Champaign, University of Texas at Austin.

**1999**
AFA annual meeting, Harvard Business School/JFE Conference on Complementary Research Methodologies.

**1998**
AFA annual meeting, FMA annual meeting, University of Alberta, University of Florida, Georgia State University, University of Michigan Ann Arbor, New York University, University of North Carolina Chapel Hill, Penn State University, Rice University, Southern Methodist University, Stanford University, and Tulane University.

**1997**
FMA annual meeting.

## Other Participation in Academic Conferences

**Discussant**
AFA annual meeting, 2002, 2009, 2010, 2102.
AFA / AFE joint session at annual meeting, 2003.
AFE annual meeting, 1999, 2007.
AREUEA annual meeting, 1999, 2000, 2004, 2007, 2008, 2012.
AREUEA mid-year meeting, 2009, 2010.
Conference, Financial Economics and Accounting, 1999.
Financial Research Association, 2010.
FMA annual meeting, 1999, 2002, 2003, 2004, 2006.
FMA annual meeting – Tutorial on empirical methodology, 2009.
FMA annual meeting – Panel discussion, 2008.
Mitsui Symposium at the University of Michigan, 2005.
Real Estate Research Institute Conference, 2011.
Red Rock Finance Conference, 2012.
Texas Finance Festival, 2000, 2007.
WFA annual meeting, 2001, 2010, 2011.

**Session Chair**
AREUEA annual meeting, 2010.
AREUEA mid-year meeting, 2009.
FMA annual meeting, 2004, 2005.
WFA annual meeting, 2006, 2010.

## Teaching Experience

**The University of Texas at Austin**
Current PhD Course: *Empirical Corporate Finance*. Doctoral course in research methodology and topics.

Current MBA courses: *Real Estate Markets*. Elective in real estate asset and capital markets. *Financial Management*. Core MBA course, Houston MBA program.

Current BBA course: *Real Estate Finance and Syndication*. Elective in real estate capital markets.

Previous courses: *Financial Management*. Core MBA course, also taught in UT's Executive MBA and Professional MBA programs. *Real Estate Analysis*. MBA elective in real estate debt markets. *Seminar in Real Estate Finance*. MBA elective in real estate equity markets. *Business Finance*. Undergraduate required course.

Teaching honors and awards: Voted the "Outstanding Professor" by the graduating class of the Houston MBA program. Twice voted the "Outstanding Core Instructor" by graduating MBA classes. Named to the Honor Roll for teaching multiple times for both the MBA and Executive MBA programs.

**New York University**
Taught *Corporate Finance* and *Corporate Finance Topics*. MBA elective and undergraduate elective, respectively.

## Honors and Awards

Best Paper Award, Indian School of Business Summer Research Conference, 2011.
Outstanding Editorial Board Member, *Real Estate Economics*, 2010.
Post Doctoral Award, Weimer School of Advanced Studies in Real Estate and Land Economics, Homer Hoyt Institute, 2010.
Real Estate Research Institute (RERI) Grant Recipient (with Alan Crane), 2007.
RERI Grant Recipient (with Tobias Mühlhofer and Sheridan Titman), 2006.
CBA Foundation Research Excellence Award for Assistant Professors, 2006. (Finance Department nominee, 2003, 2005.)
Finance Department nominee for Assistant Professor Teaching Award, 2003, 2004.
University Preemptive Fellowship, UT-Austin, 1993-1995.
University Continuing Fellowship, UT-Austin, 1995-1997.
Austin Mortgage Bankers Association Scholarship, 1995.
Lola Wright Foundation Scholarship, 1995-1997.

## Non-Academic Experience

**Consulting practice**, Austin, Texas.
Expert witness and financial consulting. *2007 to present*
Provided expert witness testimony and served as a consulting expert. Experience includes depositions and testimony on multiple occasions. Retained as expert witness in multiple cases involving valuation, real estate transactions, contracting issues and market conditions, as well as several cases regarding compensation for regulated utilities. Retained as consulting expert by multiple clients for matters involving corporate governance, valuation, and mortgage issues (commercial and subprime).

**Hewitt Associates**, The Woodlands, Texas.
Benefits Consultant. *1991 to 1993*
Consulted with clients on administration and ongoing design of defined contribution retirement plans. Earned Certified Employee Benefits Specialist (CEBS) designation.

**Lola Wright Foundation**, Austin, Texas.
Investment Performance Consultant. *1995 to 1997*
While in graduate school, analyzed performance of foundation's investment managers.

## References

Furnished upon request.

# Exhibit F

**UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEDERAL HOME LOAN MORTGAGE CORPORATION, ET AL.**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 4:08-cv-160** |

**DR. GREG HALLMAN'S AMENDED RESPONSE**
**TO DEFENDANT'S SUBPOENA**

Dr. Greg Hallman ("Dr. Hallman"), a non-party to the above-referenced action who resides in the Western District of Texas, the place in which compliance is demanded, hereby responds to Plaintiff's Subpoena to Produce Documents, Electronically Stored Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") as follows:

**RESPONSES AND OBJECTIONS**
**TO DOCUMENT REQUESTS**

**1.** Documents sufficient to show all litigation or arbitration matters on which Dr. Hallman was engaged as a consulting or testifying expert for the period January 1, 2011, to the present.

**RESPONSE:** Dr. Hallman objects to this request because it is overly broad as to time and subject-matter, seeks irrelevant information, and is not reasonably calculated to lead to discovery of admissible evidence. Dr. Hallman further objects because, were he acting as an expert witness in this action (which is no longer the case), it exceeds the scope of discovery allowed under Federal Rule of Civil Procedure 26(a)(2).



534441v1

Subject to and without waiving all objections, Dr. Hallman further states that he does not have documents that would identify all such matters for the period in question. However, a list including any such matters is set forth in response to Request No. 2.

**2.** For each litigation or arbitration matter on which Dr. Hallman was engaged as a consulting or testifying expert for the period January 1, 2011 to the present, documents sufficient to show the dates on which: (1) the expert engagement began; (2) Dr. Hallman submitted a report; and (3) Dr. Hallman testified at deposition, hearing or trial.

**RESPONSE**: Dr. Hallman objects to this request because it is overly broad as to time and subject-matter, seeks irrelevant information, and is not reasonably calculated to lead to discovery of admissible evidence. Dr. Hallman further objects because, were he acting as an expert witness in this action (which is no longer the case), it exceeds the scope of discovery allowed under Federal Rule of Civil Procedure 26(a)(2).

Subject to and without waiving all objections, Dr. Hallman states that he does not have documents sufficient to show the matters in question. However, the following is a list of such matters:[1]

1. *Unishippers Global Logistics, LLC, v. DHL Express (USA), Inc.*, In the United States District Court, District of Utah, Central Division, Civil No. 2:08-CV-894.

   Start date – April 2010

   Report date – August 2010.

   Testimony date(s) – Deposition September 2010; trial in July 2011.

---

[1] Unless otherwise stated in this Response, Dr. Hallman does not have a copy of the reports and transcripts referred to below.

End Date – July 2011.

Subject: Lost profits calculation.

2. *Worldwide Express Operations, LLC d/b/a Worldwide Express, and Good Harris, LLC* vs. *DHL Express (USA)*, Inc., 192nd Judicial District Court, Dallas County, Texas, Cause #DC-08-15314.

   Start date – July 2010.

   Report date – October 2010.

   Testimony date(s) – Deposition in March 2011; trial in May 2011.

   End date – May 2011

   Subject: Lost profits calculation.

3. *In Re Arthrocare Corporation Securities Litigation*, In the United States District Court, Western District of Texas, Austin Division, Civil No. 1:08-cv-00574-SS.

   Start date – April 2011.

   Report date – November 2011.

   Testimony date(s) – None.

   End date – February 2012.

   Subject: damages; market efficiency.

4. *Gulf Coast Shippers Limited Partnership, et. al.*, vs *DHL Express (USA)*, Inc., In the United States District Court, District of Utah, Central Division, Civil No. 2:09-CV-221.

   Start date – May 2011.

   Report date – August 2011.

   Testimony date(s) – Deposition in September 2011.

   End date – September 2011.

   Subject: Lost profits calculation.

5. *In Re Freddie Mac Securities Litigation*, United States District Court, Northern District of Ohio, Eastern Division (Youngstown), Civil Action No. 4:08-cv-160.

Start date – June 2012.

Report date – August 2012.

Testimony date(s) – December 2012.

End date: March 2013.

Subject: Market efficiency.

6. *In the Matter of the Marriage of K.R.J. and A.J.*, cause number 13-2647, 428th Judicial District Court, Hays County, Texas.

   Start date – August 2014.

   Report date – December 2014.

   Testimony date – Deposition in December 2014; trial in December 2014.

   End date – December 2014.

   Subject: Effect of commercial endorsements on value.

7. *In Re DePuy Orthopaedics Inc. – Pinnacle Hip Implant Products Liability Litigation*, United States District Court, Northern District of Texas, Dallas Division, MDL Docket No. 3:11-MD-2244-K.

   Start date – March 2015.

   Report date – August 2015.

   Testimony date(s) – Deposition in October 2015.

   End date – February 2016.

   Subject: Punitive damages valuation issues.

8. *Velocity v MHD* (consulting engagement); case number not known.

   Start date – May 2012.

   Report date – None.

   Testimony date(s) – None.

   End date – June 2012.

   Subject: Lost profits/commercial damages.

9. *Wickline valuation matter* (consulting engagement); pre-suit mediation matter.

   Start date – November 2013.

   Report date – None.

   Testimony date(s) – None.

   End date – January 2014.

   Subject: stock option valuation.

10. *In Re: Diamond Foods Inc. Securities litigation* (consulting engagement); Case No. 1 1-cv-05386-WHA; N.D. Cal.

    Start date – March 2013.

    Report date – None.

    Testimony date(s) – None.

    End date – August 2013.

    Subject: Market efficiency.

11. *Brown, et. al. v. China Integrated Energy, Inc., et al.* (consulting engagement); No. 2:11-cv-02559; C.D. Cal.

    Start date – September 2014.

    Report date – None.

    Testimony date(s) – None.

    End date – February 2015.

    Subject: Market efficiency.

12. *Herbalife Ltd. V. KPMG, LLP* (consulting engagement); non-administered arbitration, International Institute for Conflict Prevention and Resolution; case number not known.

    Start date – September 2015.

    Report date – None.

    Testimony date(s) – None.

End date – March 2016.

Subject: Commercial damages.

**3.** A copy of Dr. Hallman's professional calendar for the period January 1, 2015 through December 31, 2019.

**RESPONSE**: Dr. Hallman objects to this request because it would require him to produce a calendar he maintains on the computer system of the University of Texas as part of his employment. This calendar contains the names of students, which are protected from disclosure by law, as well as information about the business and affairs of the University of Texas, some of which is confidential or sensitive. Dr. Hallman thus cannot produce his calendar without redaction.

Subject to and without waiving that objection, and in light of the subpoena proponent's agreement to accept redacted documents, Dr. Hallman will produce redacted copies of his calendar for the period in question.

**4.** All expert reports authored by Dr. Hallman and all transcripts of Dr. Hallman's testimony from January 1, 2011 to the date of the response to this subpoena.

**RESPONSE**: Dr. Hallman objects to this request because it is overly broad as to time and subject-matter, seeks irrelevant documents, and is not reasonably calculated to lead to discovery of admissible evidence. Dr. Hallman further objects because, were he acting as an expert witness in this action (which is no longer the case), it exceeds the scope of discovery allowed under Federal Rule of Civil Procedure 26(a)(2).

Subject to and without waiving all objections, Dr. Hallman further states, other than the reports done in connection with the above-referenced actions, he has one report, which he wrote in connection with *In re Arthrocare Corporation*

*Securities Litigation*, Cause No. 1:08-cv-00574-SS, in the United States District Court for the Western District of Texas in November 2011. This report will be produced.

Dr. Hallman also has a report submitted in relation to *In Re DePuy Orthopaedics Inc. – Pinnacle Hip Implant Products Liability Litigation*, as well as a transcript of his deposition testimony in that matter. These documents are subject to a protective order in the above-referenced action (a copy of which will be produced) and Dr. Hallman therefore cannot provide them and objects to being requested to do so.

In addition, Dr. Hallman has a copy of his reports and deposition in this case, which presumably also are in the subpoena proponent's possession and therefore will not be produced.

**5.** Documents sufficient to identify any work, including but not limited to the drafting of reports and the giving of testimony, that Dr. Hallman is currently scheduled to perform, or that he currently expects to be performing, as a consulting or testifying expert from the present date to December 31, 2019.

**RESPONSE**: Dr. Hallman objects to this request because it seeks irrelevant documents and is not reasonably calculated to lead to discovery of admissible evidence. Dr. Hallman further objects because, were he acting as an expert witness in this action (which is no longer the case), it exceeds the scope of discovery allowed under Federal Rule of Civil Procedure 26(a)(2).

Subject to and without waiving all objections, Dr. Hallman states that he has no such documents.

Respectfully submitted,

/s/
Jonathan D. Pauerstein
State Bar No. 15637500
ROSENTHAL PAUERSTEIN
SANDOLOSKI AGATHER LLP
755 East Mulberry, Suite 200
San Antonio, Texas 78212
Tel: (210) 225-5000
Fax: (210) 354-4034
jpauerstein@rpsalaw.com

**ATTORNEY FOR DR. GREG HALLMAN**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 10, 2017, a true and accurate copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure upon the parties listed below:

Jordan D. Hershman
One Federal St.
Boston, MA 02110
jordan.hershman@morganlewis.com

/s/
Jonathan D. Pauerstein

# Exhibit G

Calendar

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28<br>1p China call [redacted] | 29<br>1p China call with [redacted] | 30 | 31 | Jan 1 | 2 | 3 |
| 4 | 5 | 6 | 7<br>10a MSF bootcamp | 8<br>10a MSF bootcamp | 9<br>10a MSF bootcamp | 10 |
| 11 | 12<br>10a MSF bootcamp<br>12p lunch | 13<br>10a MSF bootcamp | 14<br>4:30p China integra | 15 | 16<br>2p UT Practicum Pr | 17 |
| 18 | 19 | 20 | 21<br>11a MBA RE<br>2p undergrad RE<br>3:30p Excel Review | 22 | 23 | 24 |
| 25 | 26<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 27<br>8:30a [redacted] concus | 28<br>11a MBA RE<br>1p headshot<br>1:10p PACE meetin<br>2p undergrad RE<br>+1 | 29<br>10:45a Meeting re:<br>1p trees by Dorian | 30<br>[redacted]<br>11a Meeting [redacted]<br>1p Practicum meet | 31 |

Calendar

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |

## WEDNESDAY, JANUARY 07, 2015

10:00a to 12:00p MSF bootcamp
Location: my office GSB 5.161
[redacted]

## THURSDAY, JANUARY 08, 2015

10:00a to 12:00p MSF bootcamp
Location: my office GSB 5.161
[redacted]

## FRIDAY, JANUARY 09, 2015

10:00a to 12:00p MSF bootcamp
Location: my office GSB 5.161
[redacted]

## MONDAY, JANUARY 12, 2015

10:00a to 12:00p MSF bootcamp
Location: my office GSB 5.161
[redacted]

12:00p to 1:00p lunch
Location: my office
[redacted]

## TUESDAY, JANUARY 13, 2015

10:00a to 12:00p MSF bootcamp
Location: my office GSB 5.161
[redacted]

## WEDNESDAY, JANUARY 14, 2015

4:30p to 5:30p China integrated call

## FRIDAY, JANUARY 16, 2015

2:00p to 2:30p UT Practicum Progress
Location: Lync Meeting (connection details below)

[redacted]

[redacted]

## WEDNESDAY, JANUARY 21, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p Excel Review discussion
Location: [redacted] office

[redacted]

## MONDAY, JANUARY 26, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## TUESDAY, JANUARY 27, 2015

8:30a to 9:30a [redacted]

## WEDNESDAY, JANUARY 28, 2015

11:00a to 12:30p MBA RE

Location: GSB 3.120

1:00p to 1:00p headshot
Location: GSB big room by office

1:10p to 1:40p PACE meeting
Location: my office
[redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, JANUARY 29, 2015

10:45a to 11:45a Meeting re: Plan II thesis [redacted]

1:00p to 2:00p trees by Dorian
Location: home

## FRIDAY, JANUARY 30, 2015

1/30/2015 to 1/31/2015 [redacted]

11:00a to 11:30a Meeting [redacted]
Location: [redacted] office
[redacted]

1:00p to 4:00p Practicum meetings
Location: my office

## SATURDAY, JANUARY 31, 2015

1/30/2015 to 1/31/2015 [redacted]

# February 2015

Calendar

February 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |

March 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Feb 1 | 2<br>11a MBA RE<br>12p Lunch with pro<br>1p Trac Dat discuss<br>2p undergrad RE<br>3:30p REIT class | 3<br>12:30p Lunch with [redacted]<br>1:30p Merrill Lynch | 4<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 5<br>1:30p office hours | 6<br>1p Trac Dat worksh<br>1:30p office hours | 7 |
| 8 | 9<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 10 | 11<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 12<br>8:30a labwork<br>1:15p meeting with<br>1:30p office hours | 13<br>11:15a eye exam<br>1:15p Meet [redacted]<br>1:30p office hours | 14 |
| 15 | 16<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 17<br>12p Lunch with [redacted] | 18<br>11a MBA RE<br>12:30p lunch with [redacted]<br>2p undergrad RE<br>3:30p office hours<br>3:30p Rachel Party | 19<br>10a [redacted]<br>1:30p office hours | 20<br>Hicks Muse PE conf<br>1:30p office hours<br>3:30p meet my rep | 21 |
| 22 | 23<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 24<br>3p Meet w/ [redacted] re: | 25<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 26<br>1:30p office hours | 27<br>1:30p office hours<br>2p Real estate mee | 28 |

# February 2015

Calendar

February 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |

March 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

## MONDAY, FEBRUARY 02, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

12:00p to 1:00p Lunch with prospective student
Location: MSB Conference Room - CBA 6.420
[redacted]

[redacted]

[redacted]

[redacted]

1:00p to 2:00p Trac Dat discussion with [redacted]
Location: IROM Conference Room (CBA 5.204)
[redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## TUESDAY, FEBRUARY 03, 2015

2/3/2015 to 2/4/2015

12:30p to 1:30p Lunch with Mock Interview Employers
Location: Finance Conference Room
[redacted]

1:30p to 3:00p Merrill Lynch Boot Camp- Fundamentals of Investment
Location: AT&T CC- Rm 205
[redacted]

## WEDNESDAY, FEBRUARY 04, 2015

2/3/2015 to 2/4/2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, FEBRUARY 05, 2015

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, FEBRUARY 06, 2015

1:00p to 2:00p Trac Dat workshop - Alternate date
Location: Accounting Conference Room CBA 4M.204
[redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

## MONDAY, FEBRUARY 09, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## WEDNESDAY, FEBRUARY 11, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, FEBRUARY 12, 2015

8:30a to 9:00a labwork
Location: cpl

1:15p to 1:45p meeting with [redacted]
Location: my office

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, FEBRUARY 13, 2015

11:15a to 12:15p eye exam
Location: texas state optical

1:15p to 1:45p Meet [redacted]
Location: My office

1:30p to 3:30p office hours
Location: GSB 5.161

## MONDAY, FEBRUARY 16, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## TUESDAY, FEBRUARY 17, 2015

12:00p to 1:00p Lunch with [redacted]
Location: Burgers?

## WEDNESDAY, FEBRUARY 18, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

12:30p to 1:30p lunch with [redacted]
Location: Carillon

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

3:30p to 4:30p [redacted] Party
Location: MSB conference room

## THURSDAY, FEBRUARY 19, 2015

- 10:00a to 11:00a [redacted]
- 1:30p to 3:00p office hours
  Location: GSB 5.161

## FRIDAY, FEBRUARY 20, 2015

- 2/20/2015 (All day) Hicks Muse PE conference
  Location: San Jacinto center
- 1:30p to 3:30p office hours
  Location: GSB 5.161
- 3:30p to 4:00p meet my replacement
  Location: my office

## MONDAY, FEBRUARY 23, 2015

- 11:00a to 12:30p MBA RE
  Location: GSB 3.120
- 2:00p to 3:30p undergrad RE
  Location: UTC 4.132
- 3:30p to 6:30p REIT class
  Location: CBA 4.332

## TUESDAY, FEBRUARY 24, 2015

- 3:00p to 4:00p Meet w/ [redacted] re: RE Private Equity Fund curriculum
  Location: [redacted] office
  [redacted]

## WEDNESDAY, FEBRUARY 25, 2015

- 11:00a to 12:30p MBA RE
  Location: GSB 3.120
- 2:00p to 3:30p undergrad RE
  Location: UTC 4.132
- 3:30p to 4:30p office hours
  Location: GSB 5.161

## THURSDAY, FEBRUARY 26, 2015

- 1:30p to 3:00p office hours
  Location: GSB 5.161

## FRIDAY, FEBRUARY 27, 2015

1:30p to 3:30p office hours
Location: GSB 5.161

2:00p to 2:30p Real estate meeting
Location: GSB 5.161
[redacted]

# March 2015

Calendar

**March 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**April 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Mar 1 | 2<br>8a Texas MSF Admi<br>11a MBA RE<br>2p undergrad RE<br>+1 | 3<br>12:30p Lexus for se<br>2p PE Fund Advisor<br>3:15p [redacted] | 4<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 5<br>11:15a call with [redacted]<br>1:30p office hours | 6<br>UT PhD Alumni event<br>1:30p office hours<br>2:45p Meeting w [redacted] | 7 |
| 8 | 9<br>[redacted]<br>2p undergrad RE | 10<br>1p Colonoscopy | 11<br>2p undergrad RE<br>3:30p office hours | 12<br>10a [redacted]<br>10a meeting with [redacted]<br>12p lunch with [redacted]<br>+2 | 13<br>1:30p office hours | 14 |
| 15<br>Renée OOO | 16<br>SPRING BREAK | 17<br>SPRING BREAK | 18<br>SPRING BREAK<br>9a War on drugs tic<br>1p MSF meeting | 19<br>SPRING BREAK | 20<br>SPRING BREAK | 21<br>SPRING BREAK |
| 22 | 23<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 24 | 25<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 26<br>1p Quick Chat<br>1:30p office hours<br>4p [redacted]<br>4:30p [redacted] call | 27<br>9a Texas MSF Sprin<br>1:30p office hours<br>3:30p Meet w/[redacted] | 28 |
| 29 | 30<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 31 | Apr 1<br>10a<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 2<br>12p MSF skype inte<br>1:30p office hours | 3<br>meeting with counsel<br>1:30p office hours | 4 |

# March 2015

Calendar

March 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

April 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

## MONDAY, MARCH 02, 2015

3/2/2015 (All day)

8:00a to 3:30p Texas MSF Admissions Event
Location: Legacy Events Room
[redacted]

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## TUESDAY, MARCH 03, 2015

12:30p to 2:30p Lexus for service

2:00p to 3:00p PE Fund Advisory Council and team call
Location: [redacted]
[redacted]

[redacted]

[redacted]

[redacted]

3:15p to 4:15p [redacted]
[redacted]

## WEDNESDAY, MARCH 04, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, MARCH 05, 2015

11:15a to 11:45a call with [redacted]

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, MARCH 06, 2015

3/6/2015 to 3/7/2015 UT PhD Alumni event
Location: campus

1:30p to 3:30p office hours
Location: GSB 5.161

2:45p to 3:15p Meeting w [redacted]
Location: My office

## SATURDAY, MARCH 07, 2015

3/6/2015 to 3/7/2015 UT PhD Alumni event
Location: campus

## MONDAY, MARCH 09, 2015

3/9/2015 to 3/15/2015 [redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

## TUESDAY, MARCH 10, 2015

3/9/2015 to 3/15/2015 [redacted]

1:00p to 5:00p Colonoscopy

Location: 8015 shoal creek

## WEDNESDAY, MARCH 11, 2015

3/9/2015 to 3/15/2015 [redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, MARCH 12, 2015

3/9/2015 to 3/15/2015 [redacted]

10:00a to 11:00a Greg Hallman-MSF courses/instructors
Location: [redacted] office
[redacted]

10:00a to 11:00a meeting with [redacted]
Location: [redacted] office
[redacted]

12:00p to 1:30p lunch with [redacted]
Location: Carillon

1:30p to 3:00p office hours
Location: GSB 5.161

3:00p to 3:30p UT MSF call
[redacted]

## FRIDAY, MARCH 13, 2015

3/9/2015 to 3/15/2015 [redacted]

1:30p to 3:30p office hours

Location: GSB 5.161

## SATURDAY, MARCH 14, 2015

3/9/2015 to 3/15/2015 [redacted]

## SUNDAY, MARCH 15, 2015

3/9/2015 to 3/15/2015 [redacted]

## MONDAY, MARCH 16, 2015

3/16/2015 (All day) SPRING BREAK

## TUESDAY, MARCH 17, 2015

3/17/2015 (All day) SPRING BREAK

## WEDNESDAY, MARCH 18, 2015

3/18/2015 (All day) SPRING BREAK

9:00a to 2:05p War on drugs tickets

1:00p to 2:00p MSF meeting
Location: [redacted] office
[redacted]

## THURSDAY, MARCH 19, 2015

3/19/2015 (All day) SPRING BREAK

## FRIDAY, MARCH 20, 2015

3/20/2015 (All day) SPRING BREAK

## SATURDAY, MARCH 21, 2015

3/21/2015 (All day) SPRING BREAK

## MONDAY, MARCH 23, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## WEDNESDAY, MARCH 25, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, MARCH 26, 2015

1:00p to 1:30p Quick Chat
Location: [redacted] office
[redacted]

1:30p to 3:00p office hours
Location: GSB 5.161

4:00p to 5:00p [redacted]
Location: [redacted] office
[redacted]

4:30p to 5:30p [redacted] call
[redacted]

## FRIDAY, MARCH 27, 2015

9:00a to 1:30p Texas MSF Spring Meeting
Location: DKR Memorial Stadium - Touchdown Club
[redacted]

[redacted]

We are looking forward to seeing you at

**The Texas MSF Advisory Council – Spring 2015 meeting**
Friday, *March 27, 2015*
*9:00am – 1:30pm*
Touchdown *Club, DKR Memorial S*tadium

**RSVP for the Cocktail Reception and the Meeting**
Please RSVP using this link.

Agenda
To *be* confirmed

Attire
Business Casual

**Cocktail Reception on March 26th, 2015 at 7:00pm**
Jim Recer will be hosting a cocktail reception for Advisory Council members and current students to give mentors an opportunity to meet their mentees in person.

Dues
If you have not already, please be sure to pay your dues of $1,000 before the spring meeting date.
You can either send a check to my attention at 2116 Speedway Stop B6600, Austin, TX 78712 or use a credit card with this link.

Parking
The entrance to the Touchdown Club is on the north side of the stadium on 23rd street.
The closest garage parking to those entrances are:
San Jacinto Garage – 2401 San Jacinto Boulevard
Or
Manor Garage – 2017 Robert Dedman Drive

**Room Block**
A limited room block for the night of March 26, 2015 at The Stephen F. Austin Intercontinental Hotel has been secured at the rate of $199/night.
To reserve a room, please contact Rose Amir (rose.amir@mccombs.utexas.edu) to receive a confirmation number.

**RSVP for the Cocktail Reception and the Meeting**
Please RSVP using this link.

[redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

3:30p to 4:00p Meet w/ [redacted] re: interest in the MSF program
Location: your office [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

MONDAY, MARCH 30, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

# April 2015

Calendar

April 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

May 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 31 | Apr 1<br>10a<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 2<br>12p MSF skype inte<br>1:30p office hours | 3<br>meeting with counsel<br>1:30p office hours | 4 |
| 5 | 6<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 7 | 8<br>9:30a [redacted]<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 9<br>Orchestra trip<br>8:30a FW: 8:30 (CT);<br>1:30p office hours | 10<br>meet ng with counsel<br>10a UT MSF Practic<br>1:30p office hours | 11 |
| 12<br>Orchestra trip | 13<br>11a MBA RE<br>12:15p Confirming:<br>12:30p lunch with T<br>+2 | 14<br>3p Pinnacle | 15<br>Canceled: [redacted]<br>11a MBA RE<br>2p undergrad RE<br>3:30p office hours | 16<br>12p lunch with [redacted]<br>1:30p office hours | 17<br>1:30p office hours | 18<br>11a BBA London or |
| 19 | 20<br>11a MBA RE<br>12:15p Lunch w/ [redacted]<br>2p undergrad RE<br>3:30p REIT class | 21 | 22<br>11a MBA RE<br>2p undergrad RE<br>3p Parth's talk<br>3:30p office hours | 23<br>1:30p office hours | 24<br>1:30p office hours | 25 |
| 26 | 27<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 28 | 29<br>11a MBA RE<br>1p meeting re RE IE<br>2p undergrad RE<br>3:30p office hours | 30<br>9a Pinnacle meetin<br>1:30p office hours | May 1<br>11a meeting with [redacted]<br>1:30p office hours<br>2p meet [redacted] | 2 |

# April 2015

Calendar

April 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

May 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

## WEDNESDAY, APRIL 01, 2015

10:00a to 10:30a

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, APRIL 02, 2015

12:00p to 1:30p MSF skype interviews
Location: my office

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, APRIL 03, 2015

4/3/2015 to 4/4/2015 meeting with counsel
[redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

## SATURDAY, APRIL 04, 2015

4/3/2015 to 4/4/2015 meeting with counsel
[redacted]

## MONDAY, APRIL 06, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE

Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## WEDNESDAY, APRIL 08, 2015

9:30a to 10:00a Greg Hallman-MSF
Location: [redacted] CBA 6.238
[redacted]

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, APRIL 09, 2015

4/9/2015 to 4/13/2015 Orchestra trip
Location: Corpus christi
[redacted]

8:30a to 9:30a FW: 8:30 (CT); UT ACC leaderrship/faculty breakfast with [redacted] Global Director of Recruiting for EY
Location: ATT Center proposed
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

1:30p to 3:00p office hours
Location: GSB 5.161

FRIDAY, APRIL 10, 2015

4/9/2015 to 4/13/2015 Orchestra trip
Location: Corpus christi
[redacted]

4/10/2015 to 4/11/2015 meeting with counsel
Organizer: Greg Hallman
[redacted]

10:00a to 11:15a UT MSF Practicum Presentation Dial-In
Location: Lync Meeting (connection details below)
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

## SATURDAY, APRIL 11, 2015

4/9/2015 to 4/13/2015 Orchestra trip
Location: Corpus christi
[redacted]

4/10/2015 to 4/11/2015 meeting with counsel
Organizer: Greg Hallman
[redacted]

## SUNDAY, APRIL 12, 2015

4/9/2015 to 4/13/2015 Orchestra trip
Location: Corpus christi
[redacted]

## MONDAY, APRIL 13, 2015

4/9/2015 to 4/13/2015 Orchestra trip
Location: Corpus christi
[redacted]

11:00a to 12:30p MBA RE
Location: GSB 3.120

12:15p to 2:00p Confirming: Lunch meeting w/ [redacted]
Location: Dean's conference room, GSB 2.104AA
[redacted]

12:30p to 1:30p lunch with [redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## TUESDAY, APRIL 14, 2015

3:00p to 4:00p Pinnacle

## WEDNESDAY, APRIL 15, 2015

4/15/2015 to 4/18/2015 Canceled: [redacted]

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, APRIL 16, 2015

4/15/2015 to 4/18/2015 Canceled [redacted]

12:00p to 1:00p lunch with [redacted]
Location: Main 101

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, APRIL 17, 2015

4/15/2015 to 4/18/2015 Canceled: [redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

## SATURDAY, APRIL 18, 2015

4/15/2015 to 4/18/2015 Canceled: [redacted]

11:00a to 12:00p BBA London orientation
Location: ??

## MONDAY, APRIL 20, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

12:15p to 1:15p Lunch w/ [redacted]
Location: AT&T
[redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## WEDNESDAY, APRIL 22, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:00p to 4:30p Parth's talk

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, APRIL 23, 2015

1:30p to 3:00p office hours
Location: GSB 5.161

## FRIDAY, APRIL 24, 2015

1:30p to 3:30p office hours
Location: GSB 5.161

## MONDAY, APRIL 27, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE

Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

## WEDNESDAY, APRIL 29, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

1:00p to 1:30p meeting re RE IB
Location: GSB 5.161
[redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 4:30p office hours
Location: GSB 5.161

## THURSDAY, APRIL 30, 2015

9:00a to 5:30p Pinnacle meeting
Location: JW Marriott

1:30p to 3:00p office hours
Location: GSB 5.161

# May 2015

Calendar

**May 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

**June 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27<br>11a MBA RE<br>2p undergrad RE<br>3:30p REIT class | 28 | 29<br>11a MBA RE<br>1p meeting re RE IE<br>2p undergrad RE<br>+1 | 30<br>9a Pinnacle meetin<br>1:30p office hours | May 1<br>11a meeting with J<br>1:30p office hours<br>2p meet [redacted] | 2 |
| 3 | 4<br>11a MBA RE<br>12:30p lunch with [redacted]<br>2p undergrad RE<br>+2 | 5<br>1:30p [redacted]<br>2p office hours<br>4p FW: RE fund pre | 6<br>10a State of Digital<br>11a MBA RE<br>2p undergrad RE | 7<br>Real Estate Confere | 8<br>AIS Signature Required<br>1:30p Sparefoot me | 9 |
| 10 | 11 | 12<br>9a [redacted] itigation me | 13<br>12p Lunch with [redacted] | 14<br>8:30a [redacted] Dr. Apt | 15 | 16 |
| 17 | 18 | 19 | 20 | 21<br>12p lunch with [redacted]<br>2p [redacted] | 22<br>9a MSF graduation | 23 |
| 24 | 25 | 26<br>[redacted] Out<br>12:30p lunch with F<br>2p Meet w/ [redacted] | 27<br>1:30p Meet roofer | 28<br>2p [redacted] | 29 | 30 |
| 31 | Jun 1<br>[redacted] | 2 | 3 | 4 | 5 | 6 |

# May 2015

Calendar

May 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

June 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |

## FRIDAY, MAY 01, 2015

11:00a to 12:00p meeting with [redacted]

1:30p to 3:30p office hours
Location: GSB 5.161

2:00p to 2:30p meet [redacted]
Location: my office

## MONDAY, MAY 04, 2015

11:00a to 12:30p MBA RE
Location: GSB 3.120

12:30p to 2:00p lunch with [redacted]

2:00p to 3:30p undergrad RE
Location: UTC 4.132

3:30p to 6:30p REIT class
Location: CBA 4.332

4:00p to 5:30p FW: RE fund presentation
Location: Dean's conference room

[redacted]

DGH000116

[redacted]

## TUESDAY, MAY 05, 2015

1:30p to 2:00p [redacted]e: Thesis - final meeting
Location: [redacted] office

[redacted]

2:00p to 4:00p office hours

4:00p to 5:30p FW: RE fund presentation
Location: Dean's conference room

[redacted]

## WEDNESDAY, MAY 06, 2015

10:00a to 11:00a State of Digital @ McCombs
Location: Legacy Events Room - CBA 3.202

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]

11:00a to 12:30p MBA RE
Location: GSB 3.120

2:00p to 3:30p undergrad RE
Location: UTC 4.132

## THURSDAY, MAY 07, 2015

5/7/2015 (All day) Real Estate Conference

## FRIDAY, MAY 08, 2015

5/8/2015 to 5/9/2015 AIS Signature Required
Location: CBA 6.222
[redacted]

1:30p to 3:00p Sparefoot meeting
[redacted]

## SATURDAY, MAY 09, 2015

5/8/2015 to 5/9/2015 AIS Signature Required
Location: CBA 6.222
[redacted]

## TUESDAY, MAY 12, 2015

9:00a to 6:30p [redacted] litigation meeting

Organizer: Greg Hallman
[redacted]

## WEDNESDAY, MAY 13, 2015

12:00p to 1:30p Lunch with [redacted]
Location: Carillon
[redacted]

## THURSDAY, MAY 14, 2015

8:30a to 12:00p [redacted] Dr. Apt
[redacted]

## THURSDAY, MAY 21, 2015

12:00p to 1:30p lunch with [redacted]
Organizer: Greg Hallman
[redacted]

2:00p to 3:00p [redacted]
Location: [redacted] Office
[redacted] >;

## FRIDAY, MAY 22, 2015

9:00a to 2:00p MSF graduation
Location: SAC

## TUESDAY, MAY 26, 2015

5/26/2015 to 5/27/2015 [redacted] Out
Location: Port A
[redacted]

12:30p to 1:30p lunch with [redacted] from Tulane
[redacted]

2:00p to 3:00p Meet w/ [redacted] re: PE RE fund - summer to do's
Location: [redacted] office
[redacted]

[redacted]

WEDNESDAY, MAY 27, 2015

5/26/2015 to 5/27/2015 [redacted] Out
Location: Port A
[redacted]

1:30p to 2:30p Meet roofer
Location: Home

THURSDAY, MAY 28, 2015

2:00p to 3:00p [redacted]

# June 2015

Calendar

June 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

July 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 31 | Jun 1<br>[redacted] OOO | 2 | 3 | 4 | 5 | 6 |
| 7 | 8<br>4p [redacted] to Dentist | 9 | 10<br>1:30p meeting with<br>2p [redacted] baby sho | 11<br>2p [redacted]<br>3p Final Oral Exami<br>4:30p Call [redacted] on ce | 12 | 13 |
| 14 | 15<br>Teach FIN 367 | 16 | 17 | 18<br>2p Lloyd's of Londo | 19 | 20 |
| 21 | 22<br>9a Teach FIN 367 | 23<br>9a Teach FIN 367 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | Jul 1<br>7:45a Breakfast and | 2<br>2:50p [redacted] at Derm | 3 | 4 |

# June 2015

Calendar

June 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

July 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

## MONDAY, JUNE 01, 2015

6/1/2015 to 6/6/2015 [redacted]

## TUESDAY, JUNE 02, 2015

6/1/2015 to 6/6/2015 [redacted]

## WEDNESDAY, JUNE 03, 2015

6/1/2015 to 6/6/2015 [redacted]

## THURSDAY, JUNE 04, 2015

6/1/2015 to 6/6/2015 [redacted]

## FRIDAY, JUNE 05, 2015

6/1/2015 to 6/6/2015 [redacted]

## SATURDAY, JUNE 06, 2015

6/1/2015 to 6/6/2015 [redacted]

[redacted]

## MONDAY, JUNE 08, 2015

4:00p to 5:30p [redacted] to Dentist
Location: Hills
[redacted]

## WEDNESDAY, JUNE 10, 2015

1:30p to 2:00p meeting with [redacted]
Location: GSB 5.161

2:00p to 3:30p [redacted] baby shower
Location: GSB events room, 5th floor

## THURSDAY, JUNE 11, 2015

2:00p to 3:00p [redacted]

3:00p to 4:00p Final Oral Examination for [redacted]

4:30p to 5:30p Call [redacted] on cell

## MONDAY, JUNE 15, 2015

6/15/2015 to 6/18/2015 Teach FIN 367
Location: 32L.LG.03

## TUESDAY, JUNE 16, 2015

6/15/2015 to 6/18/2015 Teach FIN 367
Location: 32L.LG.03

## WEDNESDAY, JUNE 17, 2015

6/15/2015 to 6/18/2015 Teach FIN 367
Location: 32L.LG.03

## THURSDAY, JUNE 18, 2015

6/15/2015 to 6/18/2015 Teach FIN 367
Location: 32L.LG.03

2:00p to 5:00p Lloyd's of London

## MONDAY, JUNE 22, 2015

9:00a to 1:00p Teach FIN 367
Location: 32L.LG.03

## TUESDAY, JUNE 23, 2015

9:00a to 1:00p Teach FIN 367
Location: 32L.LG.04

# July 2015

Calendar

July 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

August 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | Jul 1<br>7:45a Breakfast and | 2<br>2:50p [redacted]t Derm | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14<br>3p Teeth cleaning | 15<br>9a labwork<br>2p Meet w/ [redacted]e:<br>3:30p meet [redacted] | 16<br>1:40p dermatologis | 17<br>9:45a pickup [redacted]<br>11a Meet [redacted]<br>12p [redacted] REPE mo | 18<br>11a [redacted] I |
| 19 | 20<br>Prep MSF class | 21<br>9a Teach MSF class | 22<br>9a Teach MSF class<br>3p Pinnacle call wit | 23<br>9a Teach MSF class | 24<br>9a Teach MSF class | 25 |
| 26 | 27<br>9a Teach MSF class | 28<br>9a Teach MSF class | 29<br>9a Teach MSF class | 30<br>9a Teach MSF class | 31<br>Pinnacle meeting | Aug 1 |

July 2015

Calendar

July 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

August 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

## WEDNESDAY, JULY 01, 2015

7:45a to 8:15a Breakfast and Staff Introductions for MSF Orientation
Location: Atrium/CBA Events

[redacted]

## THURSDAY, JULY 02, 2015

2:50p to 3:20p [redacted] at Dermatologis - Thurs 7/2 at 2:50pm

[redacted]

## TUESDAY, JULY 14, 2015

3:00p to 4:00p Teeth cleaning

## WEDNESDAY, JULY 15, 2015

9:00a to 9:30a labwork
Location: cpl

2:00p to 3:00p Meet w/ [redacted] re: MS programs
Location: Dean's conference room

[redacted]

3:30p to 4:00p meet [redacted]
Location: GSB 5.161

## THURSDAY, JULY 16, 2015

1:40p to 2:10p dermatologist
Location: westlake dermatology

## FRIDAY, JULY 17, 2015

9:45a to 10:45a pickup [redacted]

delta flt 1868

11:00a to 12:00p Meet [redacted]
Location: School

12:00p to 1:30p [redacted] REPE model
Location: GSB 5161

## SATURDAY, JULY 18, 2015

11:00a to 12:30p [redacted] REPE modeling
Location: GSB 5.161

## MONDAY, JULY 20, 2015

7/20/2015 (All day) Prep MSF class
Location: UT

## TUESDAY, JULY 21, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## WEDNESDAY, JULY 22, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

3:00p to 3:30p Pinnacle call with [redacted]

## THURSDAY, JULY 23, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## FRIDAY, JULY 24, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## MONDAY, JULY 27, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## TUESDAY, JULY 28, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## WEDNESDAY, JULY 29, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## THURSDAY, JULY 30, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## FRIDAY, JULY 31, 2015

7/31/2015 (All day) Pinnacle meeting
Location: Austin

# August 2015

Calendar

August 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

September 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27<br>9a Teach MSF class | 28<br>9a Teach MSF class | 29<br>9a Teach MSF class | 30<br>9a Teach MSF class | 31<br>Pinnacle meeting | Aug 1 |
| 2 | 3<br>9a Teach MSF class<br>2p Meeting re MS s | 4<br>9a Teach MSF class | 5<br>9a Teach MSF class | 6<br>9a Teach MSF class | 7<br>9a Teach MSF class | 8 |
| 9 | 10<br>9:30a FW: GoToMee<br>12p Lunch w/ Jay re | 11 | 12<br>10:30a Panel to Tex<br>1p Independent Fir<br>2:30p Wells Fargo T<br>+1 | 13 | 14<br>Austin Trek/company visits<br>SAVE THE DATE - Faculty Retreat - August<br>Pinnacle report due<br>+1 | 15 |
| 16 | 17 | 18<br>10a Fwd: MSF and I | 19<br>8a teach Valuation<br>12:30p Meet [redacted]<br>2p meeting with [redacted] | 20 | 21<br>Texas MSF Trek Ho<br>7a Texas MSF Comp<br>8a teach valuation<br>+2 | 22 |
| 23 | 24<br>8a teach valuation<br>11a Bloomberg call<br>3:30p GRES kickoff | 25 | 26<br>8a teach Valuation<br>3:30p teach REIT fu | 27 | 28<br>MSF Trek to Dallas<br>9:30a NGP Energy (<br>12p meet [redacted]<br>+2 | 29 |
| 30 | 31 | Sep 1 | 2<br>8a teach Valuation<br>10:30a PERE Fund N<br>3:30p teach REIT fu | 3 | 4<br>4p Call with [redacted] | 5 |

# August 2015

Calendar

| August 2015 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

| September 2015 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |

## MONDAY, AUGUST 03, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

2:00p to 3:00p Meeting re MS staffing
Location: finance conference room

## TUESDAY, AUGUST 04, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## WEDNESDAY, AUGUST 05, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## THURSDAY, AUGUST 06, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## FRIDAY, AUGUST 07, 2015

9:00a to 4:00p Teach MSF class
Location: GSB 2.120

## MONDAY, AUGUST 10, 2015

9:30a to 10:30a FW: GoToMeeting Invitation - University of Texas/RCA walk through
[redacted]

[redacted]

-----[redacted]

12:00p to 1:00p Lunch w/[redacted] re: REFIC
Location: Carillon
[redacted]

WEDNESDAY, AUGUST 12, 2015

10:30a to 11:30a Panel to Texas MSF Class re: Opportunities and Roles in Finance
Location: GSB 2.120
[redacted]

2:30p to 3:00p Meet w/ Jay re: real estate modeling
Location: Jay's office
[redacted]

2:30p to 4:00p Wells Fargo Technical Interviewing Workshop
Location: GSB 2.126
[redacted]

[redacted]

[redacted]

FRIDAY, AUGUST 14, 2015

8/14/2015 to 8/15/2015 SAVE THE DATE - Faculty Retreat - August 14, 2015

8/14/2015 to 8/15/2015 Austin Trek/company visits
Location: Freescale (confirmed)
[redacted]

8/14/2015 (All day) Pinnacle report due

4:00a to 11:00a Dimensional Fund Advisors Company Visit
Location: 6300 Bee Cave Road, Building One - 78746
[redacted]

SATURDAY, AUGUST 15, 2015

8/14/2015 to 8/15/2015 SAVE THE DATE - Faculty Retreat - August 14, 2015

8/14/2015 to 8/15/2015 Austin Trek/company visits
Location: Freescale (confirmed)
[redacted]

TUESDAY, AUGUST 18, 2015

10:00a to 2:00p Fwd: MSF and MSBA Combined Career Bootcamp (Etiquette lunch, networking, social media)
Location: The SAC Legislative Assembly Room and Ballroom
[redacted]

[redacted]

## WEDNESDAY, AUGUST 19, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

12:30p to 1:00p Meet [redacted]
Location: GSB 5.161

2:00p to 2:30p meeting with [redacted]
Location: GSB 5.161
Organizer: Greg Hallman
[redacted]

## FRIDAY, AUGUST 21, 2015

8/21/2015 (All day) Texas MSF Trek Houston
Location [redacted] unable to go this day
[redacted]

7:00a to 1:30p Texas MSF Company Visit: BBVA Compass
Location: 2200 Post Oak Blvd Houston, TX 77046
[redacted]

8:00a to 10:00a teach valuation
Location: GSB 2.120

9:30a to 11:00a Texas MSF Company Visit: EY
Location: 5 Houston Center, Suite 1200, 1401 McKinney Street Houston, TX 77010
[redacted]

2:00p to 3:30p Texas MSF Compay Visit: Deutsche Bank
Location: 700 Louisiana, Suite 2400 Houston, TX 77002

[redacted]

## MONDAY, AUGUST 24, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

11:00a to 12:00p Bloomberg call with rep
Location: GSB 5.161

3:30p to 4:30p GRES kickoff
Location: Cain and Abels

## WEDNESDAY, AUGUST 26, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## FRIDAY, AUGUST 28, 2015

8/28/2015 (All day) MSF Trek to Dallas

[redacted]

9:30a to 11:30a NGP Energy Capital Management
Location: Williams Square - 5221 N. O'Connor Blvd, Suite 1100 EAST TOWER, Irving, TX 75039.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

12:00p to 2:00p meet [redacted]
Location: GSB 5.161

12:00p to 1:30p Westwood Management Company Visit
Location: 200 Crescent Ct #1200, Dallas, TX 75201
[redacted]

[redacted]

[redacted]

2:00p to 3:30p JPMorgan Company Visit
Location: 2200 Ross Avenue, 10th Floor, Dallas, TX 75201
[redacted]

[redacted]

[redacted]

# September 2015

Calendar

September 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

October 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | 31 | Sep 1 | 2<br>8a teach Valuation<br>10:30a PERE Fund N<br>3:30p teach REIT fu | 3 | 4<br>4p Call with [redacted] | 5 |
| 6 | 7<br>LABOR DAY | 8<br>12:30p ? lunch with | 9<br>8a teach Valuation<br>10a MSF budget m<br>11:30a Bloomberg<br>3:30p teach REIT fu | 10<br>9a Invitation: RealM<br>12p Bank of Texas M<br>2:15p [redacted] | 11<br>12:15p lunch<br>2p DFA Company V | 12 |
| 13 | 14<br>8a teach valuation<br>10:30a look over AC<br>12:15p Meet [redacted]<br>12:15p Meet [redacted] | 15<br>12:30p banh mi lun | 16<br>8a teach Valuation<br>2:30p Meet w/ [redacted]<br>3:30p teach REIT fu | 17<br>HOLD: Texas MSF A<br>12p HOLD: texas M | 18<br>3p Meeting with [redacted]<br>4:30p Call RE: Herb | 19<br>HOLD: Texas MSF T<br>HOLD: Texas MSF T |
| 20<br>HOLD: Texas MSF T | 21<br>8a teach valuation<br>1p Call re Pinnacle<br>2:30p [redacted] to call G<br>3p RE 101 ULI Austi | 22<br>12p REIT Fund Con | 23<br>8a teach Valuation<br>2p Meeting with Ol<br>3:30p teach REIT fu | 24<br>1p Speak on MSF to<br>3p meeting re mod<br>3:30p Greg Hallmar<br>4p consulting meet | 25<br>8a REIT Advisory B<br>3:30p MSF meeting | 26 |
| 27 | 28<br>8a teach valuation<br>10a Invitation: Moc | 29 | 30<br>8a teach Valuation<br>1p Look over TracD<br>3:30p teach REIT fu | Oct 1<br>2p [redacted] | 2<br>ACL Fest | 3<br>ACL Fest |

# September 2015

Calendar

| September 2015 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

| October 2015 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## WEDNESDAY, SEPTEMBER 02, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

10:30a to 12:30p PERE Fund Meeting
Location: Dean's Conference Room

[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## FRIDAY, SEPTEMBER 04, 2015

4:00p to 5:00p Call with [redacted]
Location: He calls me

## MONDAY, SEPTEMBER 07, 2015

9/7/2015 (All day) LABOR DAY

## TUESDAY, SEPTEMBER 08, 2015

12:30p to 1:30p ? lunch with [redacted]
Location: TBD

## WEDNESDAY, SEPTEMBER 09, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

10:00a to 11:30a MSF budget meeting
Location: Bob's office

11:30a to 12:00p Bloomberg meeting
Location: GSB 5.161
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, SEPTEMBER 10, 2015

9:00a to 9:30a Invitation: RealMassive/UT Intro @ Thu Sep 10, 2015 9am - 9:30am [redacted]
Location: Go-to-Meeting
[redacted]

[redacted]

more details »

[redacted]

[redacted]

[redacted]

With: [redacted]

[redacted]

[redacted]

12:00p to 1:00p Bank of Texas MSF Lunch
Location: GSB 5.130

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

2:15p to 3:15p [redacted]

## FRIDAY, SEPTEMBER 11, 2015

12:15p to 1:30p lunch
Location: Izumi Sushi
[redacted]

2:00p to 4:00p DFA Company Visit
Location: 6300 Bee Cave Road, Building One - 78746
[redacted]

## MONDAY, SEPTEMBER 14, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:30a to 11:00a look over AC Mtg PP
Location: [redacted] Office
[redacted]

12:15p to 1:00p Meet [redacted]
Location: GSB 5.161
[redacted]

12:15p to 1:00p Meet [redacted]
Location: GSB 5.161
[redacted]

## TUESDAY, SEPTEMBER 15, 2015

12:30p to 1:30p banh mi lunch
Location: TBD
[redacted]

## WEDNESDAY, SEPTEMBER 16, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

2:30p to 3:00p Meet w/ Jay re: RE Fund presenting at AC meeting
Location: [redacted] office
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, SEPTEMBER 17, 2015

9/17/2015 (All day) HOLD: Texas MSF AC Fall Meeting
Location: TBD
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

12:00p to 5:30p HOLD: texas MSF AC meeting
Location: TBD

[redacted]

## FRIDAY, SEPTEMBER 18, 2015

3:00p to 3:30p Meeting with [redacted] re RE
Location: Gsb 5.161

4:30p to 5:30p Call RE: Herbalife
Location: Dial-in: 650.282.4420 Conference#: 24422 Passcode: 24422

[redacted]

## SATURDAY, SEPTEMBER 19, 2015

9/19/2015 to 9/20/2015 HOLD: Texas MSF Tailgate for the UT vs Cal game
Location: The Hall of Honors - McCombs School of Business

[redacted]

[redacted]

[redacted]

9/19/2015 (All day) HOLD: Texas MSF Tailgate vs Cal
Location: Hall of Honors
[redacted]

## SUNDAY, SEPTEMBER 20, 2015

9/19/2015 to 9/20/2015 HOLD: Texas MSF Tailgate for the UT vs Cal game
Location: The Hall of Honors - McCombs School of Business
[redacted]

[redacted]

## MONDAY, SEPTEMBER 21, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

1:00p to 1:30p Call re Pinnacle depo production
Location: call in?

2:30p to 3:00p Katie to call Greg re: REIT Fund details
Location: What is the best number to reach you on?
[redacted]

3:00p to 5:00p RE 101 ULI Austin Fellow Program - Session 1 Developing a Strategy
Location: CLA 0.106 (College of Liberal Arts bldg, behind SAC)

## TUESDAY, SEPTEMBER 22, 2015

12:00p to 1:00p REIT Fund Conference Call
Location: Conference number: 512 232-8670, access code is 6543205#, stay on the line
[redacted]

[redacted]

## WEDNESDAY, SEPTEMBER 23, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

2:00p to 2:30p Meeting with [redacted]
Location: my office GSB 5.161
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, SEPTEMBER 24, 2015

1:00p to 1:30p Speak on MSF to MPA board
Location: AT&T, classroom 104

3:00p to 3:30p meeting re modeling positing
Location [redacted] office
[redacted]

3:30p to 4:00p Greg Hallman-Director Classification review
Location [redacted] office, CBA 6.238
[redacted]

4:00p to 4:30p consulting meeting
Location: GSB 5.161
[redacted]

## FRIDAY, SEPTEMBER 25, 2015

8:00a to 2:00p REIT Advisory Board meeting
Location: Legacy events

3:30p to 4:30p MSF meeting
Location: GSB 5.161
[redacted]

## MONDAY, SEPTEMBER 28, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:00a to 11:00a Invitation: Mock Technical Interview - [redacted] @ Mon Sep 28, 2015 10am - 11am [redacted]

[redacted]

more details »

[redacted]

WEDNESDAY, SEPTEMBER 30, 2015

8:00a to 10:00a teach Valuation
Location: GSB 2.120

1:00p to 1:30p Look over TracDat
Location: [redacted] Office

[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

# October 2015

Calendar

October 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

November 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28<br>8a teach valuation<br>10a Invitation: Moc | 29 | 30<br>8a teach Valuation<br>1p Look over TracD<br>3:30p teach REIT fu | Oct 1<br>2p [redacted] | 2<br>ACL Fest | 3<br>ACL Fest |
| 4 | 5<br>4p Meet w/Jay RE:T | 6 | 7<br>11:30a Faculty mee<br>1p Pinnacle depo p | 8<br>2:30p Herbalife Call | 9<br>12p MSF info call | 10 |
| 11 | 12<br>Pinnacle hip depo p<br>8a teach valuation<br>11:30a Dinner elf | 13<br>Pinnacle deposition | 14<br>8a teach valuation<br>10a Call [redacted] at<br>12:30p Lunch with (<br>3:30p teach REIT fu | 15<br>11:30a Real Estate r<br>1p lunch re firstdov<br>2p Meeting with Gr | 16<br>[redacted]<br>1p RE practicum pr | 17 |
| 18 | 19<br>8a teach valuation<br>11a ULI Austin Real<br>12:30p research prc | 20 | 21<br>8a teach valuation<br>10a meeting re MS<br>1:15p meeting re M<br>2p meeting re: valu<br>+1 | 22<br>12:45p Herbalife Pr<br>1p Herbalife Call | 23<br>8a UT undergrad re<br>2p Greg to meet Be | 24 |
| 25 | 26<br>8a teach valuation<br>8:30a Campus Visit | 27 | 28<br>8a teach valuation<br>3:30p teach REIT fu | 29 | 30<br>3p Energy Diploma | 31 |

# October 2015

Calendar

October 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

November 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |

## THURSDAY, OCTOBER 01, 2015

2:00p to 3:00p [redacted] meeting
Location: [redacted] office

[redacted]

## FRIDAY, OCTOBER 02, 2015

10/2/2015 (All day) ACL Fest
Location: Zilker

## SATURDAY, OCTOBER 03, 2015

10/3/2015 (All day) ACL Fest
Location: Zilker

## MONDAY, OCTOBER 05, 2015

4:00p to 5:00p Meet w/ [redacted] RE:Thesis
Location: [redacted] Office

[redacted]

## WEDNESDAY, OCTOBER 07, 2015

11:30a to 1:00p Faculty meeting
Location: CBA events room

1:00p to 2:00p Pinnacle depo prep call
Location: dial in

[redacted]

DGH000149

## THURSDAY, OCTOBER 08, 2015

2:30p to 3:00p Herbalife Call
Location: Dial-in: 650.282.4420 Conference#: 24422 Passcode: 24422

[redacted]

## FRIDAY OCTOBER 09 2015

12:00p to 12:30p MSF info call
Location: Matt calls GH 5124267671

[redacted]

## MONDAY, OCTOBER 12, 2015

10/12/2015 (All day) Pinnacle hip depo prep

8:00a to 10:00a teach valuation
Location: GSB 2.120

11:30a to 1:30p Dinner elf
Location: My house

## TUESDAY, OCTOBER 13, 2015

10/13/2015 (All day) Pinnacle deposition

## WEDNESDAY, OCTOBER 14, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:00a to 11:00a Call [redacted] at Suntrust ATL
Location: I call his office line

[redacted]

12:30p to 1:00p Lunch with [redacted]
Location: AT&T Center
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, OCTOBER 15, 2015

11:30a to 1:30p Real Estate mentor match lunch
Location: Atrium

1:00p to 2:00p lunch re firstdownplaybook
Location: Shady Grove

2:00p to 3:00p Meeting with [redacted] with UT
Location: 823 Congress Avenue, Suite #1111
[redacted]

## FRIDAY, OCTOBER 16, 2015

10/16/2015 (All day) [redacted]

1:00p to 2:00p RE practicum project kick off meeting
Location: 4550 Mueller Blvd., Austin, TX 78723
[redacted]

## MONDAY, OCTOBER 19, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

11:00a to 11:30a ULI Austin Real Estate Fellows - Prep Call
Location: Dial-In Below
[redacted]

[redacted]

12:30p to 1:00p research project meeting
Location: GSB 5.161
[redacted]

## WEDNESDAY, OCTOBER 21, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:00a to 10:30a meeting re MSF w [redacted]
Location: my office

1:15p to 1:45p meeting re MSF w [redacted]
Location: GSB 5.161

2:00p to 2:30p meeting re: valuation interview
Location: GSB 5.161
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, OCTOBER 22, 2015

12:45p to 1:00p Herbalife Pre-Call
Location: Dom to Call Greg's Office
[redacted]

1:00p to 1:30p Herbalife Call
Location: Dial-in: 650.282.4420 Conference#: 24422 Passcode: 24422
[redacted]

[redacted]

## FRIDAY, OCTOBER 23, 2015

8:00a to 2:00p UT undergrad real estate case competition
Location: GSB 5.142A

2:00p to 3:00p Greg to meet [redacted] (REFIC Council Member) [redacted] & his son [redacted]
Location: Gregs Office, GSB 5.161
[redacted]

## MONDAY, OCTOBER 26, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

8:30a to 5:30p Campus Visit
[redacted]

## WEDNESDAY, OCTOBER 28, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## FRIDAY, OCTOBER 30, 2015

3:00p to 4:00p Energy Diplomacy - UT MSF meeting
Location: CBA 6.304F
[redacted]

# November 2015

Calendar

November 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

December 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Nov 1 | 2<br>8a teach valuation<br>11a meeting<br>3p RE 101 ULI Austi | 3 | 4<br>8a teach valuation<br>3:30p teach REIT fu | 5 | 6<br>[redacted]<br>11:30a REFIC Plann | 7 |
| 8 | 9<br>8a teach valuation<br>10:30a meeting re r<br>11a [redacted] | 10<br>10a call re UT MSF<br>10:30a Integrated B<br>11a UT MSF practic | 11<br>8a teach valuation<br>10a Greg Hallman -<br>11a meeting re MS<br>12p discuss NYC RE<br>+3 | 12<br>8:30a READ DEPO | 13<br>10a meeting with [redacted]<br>11:30a RE: AHFH ne<br>1p Call with counse | 14 |
| 15 | 16<br>8a teach valuation | 17 | 18<br>8a teach valuation<br>11a REFIC fall confe<br>3:30p teach REIT fu | 19<br>National Real Estate | 20 | 21 |
| 22 | 23<br>8a teach valuation | 24<br>10a Real Estate clas | 25 | 26<br>8:15a Flight: WN 41<br>8:15a Flight: WN 41<br>8:15a Flight: WN 41 | 27 | 28 |
| 29 | 30<br>8a teach valuation | Dec 1<br>8:30a Meeting [redacted] | 2<br>8a teach valuation<br>12p MSF speak to F<br>12p Petroleum Eng<br>3:30p teach REIT fu | 3<br>MSF Holiday Party | 4<br>[redacted]<br>11a catch up | 5 |

# November 2015

Calendar

**November 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

**December 2015**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

## MONDAY, NOVEMBER 02, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

11:00a to 11:30a meeting
Location: GSB 5.161
[redacted]

3:00p to 5:00p RE 101 ULI Austin Fellow Program - Session 2 - Negotiating the Deal
Location: MSB conference room

## WEDNESDAY, NOVEMBER 04, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## FRIDAY, NOVEMBER 06, 2015

11/6/2015 (All day) [redacted]

11:30a to 5:00p REFIC Planning Retreat
Location: Headliners Club
[redacted]

[redacted]

[redacted]

## MONDAY, NOVEMBER 09, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:30a to 11:00a meeting re microfinance project
Location: GSB 5.161
[redacted]

11:00a to 12:00p [redacted] -Thesis
Location: [redacted] office
[redacted]

## TUESDAY, NOVEMBER 10, 2015

10:00a to 10:30a call re UT MSF practicum
Location: Greg calls [redacted]

[redacted]

10:30a to 11:00a Integrated Bionics - UT MSF call
[redacted]

11:00a to 11:30a UT MSF practicum call
Location: Greg calls [redacted]

## WEDNESDAY, NOVEMBER 11, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

10:00a to 10:30a Greg Hallman - 16-17 Teaching Assignment
[redacted]

11:00a to 11:30a meeting re MSF
Location: [redacted] office
[redacted]

12:00p to 12:30p discuss NYC RE banking with [redacted]
Location: GSB 5.161
[redacted]

1:00p to 1:30p assign students to practicum projects
Location: [redacted] office
[redacted]

2:00p to 2:30p Invitation: Consultation with [redacted]

[redacted]

more details »

[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, NOVEMBER 12, 2015

8:30a to 3:30p READ DEPO
Location: home office

## FRIDAY, NOVEMBER 13, 2015

10:00a to 11:00a meeting with [redacted] REFIC strategy meeting debriefing
Location: [redacted] office
[redacted]

11:30a to 1:00p RE: AHFH new facility tour
Location: 500 W Ben White
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]@mccombs.utexas.edu]
[redacted]

[redacted]

[redacted]

1:00p to 1:30p Call with counsel re depo errata
Location: call-in number from [redacted]

## MONDAY, NOVEMBER 16, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

## WEDNESDAY, NOVEMBER 18, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

11:00a to 9:00p REFIC fall conference
Location: AT&T

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, NOVEMBER 19, 2015

11/19/2015 (All day) National Real Estate Challenge
Location: AT&T

## MONDAY, NOVEMBER 23, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

## TUESDAY, NOVEMBER 24, 2015

10:00a to 12:00p Real Estate class
Location: Finance conference room - 6th floor
[redacted]

## THURSDAY, NOVEMBER 26, 2015

8:15a to 12:25p Flight: WN 4158 from AUS to LAX
Location: AUSTIN, TX

Confirmation Code: H25SUJ

[redacted]

8:15a to 12:25p Flight: WN 4158 from AUS to LAX
Location: AUSTIN, TX

Confirmation Code: H75SV9

[redacted]

8:15a to 12:25p Flight: WN 4158 from AUS to LAX
Location: AUSTIN, TX

Confirmation Code: H64SUU

[redacted]

## MONDAY, NOVEMBER 30, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

# December 2015

Calendar

December 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

January 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30<br>8a teach valuation | Dec 1<br>8:30a Meeting [redacted] | 2<br>8a teach valuation<br>12p MSF speak to F<br>12p Petroleum Eng<br>3:30p teach REIT fu | 3<br>MSF Holiday Party | 4<br>[redacted]<br>11a catch up | 5 |
| 6 | 7<br>[redacted]<br>10a [redacted] | 8 | 9<br>12:30p Call with [redacted]<br>1p meeting with [redacted]<br>3p REFIC Assistant | 10<br>9:30a REFIC Strateg<br>1:30p Valuation offi<br>2p Call with [redacted] | 11<br>11a REFIC Assistant<br>12p Valuation offic<br>2p Valuation final e | 12 |
| 13 | 14<br>12p MSF lunch | 15<br>12:15p Invitation: JI | 16<br>4p meeting with [redacted] | 17 | 18 | 19 |
| 20 | 21<br>4p meet yard lighti | 22 | 23<br>Car rental: Atlanta Hartsfield International Airport<br>Hotel: Hilton Asheville Biltmore Park | 24 | 25 | 26 |
| 27<br>Car rental: Atlanta Hartsfield International Airport<br>Hotel: Hilton Ashev | 28 | 29 | 30 | 31 | Jan 1 | 2 |

# December 2015

Calendar

December 2015

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

January 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

## TUESDAY, DECEMBER 01, 2015

8:30a to 9:00a Meeting [redacted]

## WEDNESDAY, DECEMBER 02, 2015

8:00a to 10:00a teach valuation
Location: GSB 2.120

12:00p to 1:00p MSF speak to PE group
Location: CPE 2.208

12:00p to 1:00p Petroleum Engineering Info Session
Location: CPE 2.204
[redacted]

3:30p to 6:30p teach REIT fund
Location: GSB 3.104

## THURSDAY, DECEMBER 03, 2015

12/3/2015 (All day) MSF Holiday Party
Location: Z Tejas
[redacted]

## FRIDAY, DECEMBER 04, 2015

12/4/2015 (All day [redacted]

11:00a to 11:30a catch up
Location: KC to call GH
[redacted]

[redacted]

[redacted]

[redacted]

MONDAY, DECEMBER 07, 2015

12/7/2015 (All day) [redacted]

[redacted]

10:00a to 11:00a [redacted]
Location: Jay's office

[redacted]

WEDNESDAY, DECEMBER 09, 2015

12:30p to 1:00p Call with [redacted] re MBA RE
Location: he calls my school office

1:00p to 2:00p meeting with [redacted] REFIC Private Equity Fund
Location: [redacted] office

[redacted]

3:00p to 4:00p REFIC Assistant Director Interview- [redacted]
Location: [redacted] office

[redacted]

THURSDAY, DECEMBER 10, 2015

9:30a to 11:00a REFIC Strategic Planning Meeting
Location: 823 Congress Suite 1111

[redacted]

1:30p to 3:30p Valuation office hours
Location: GSB 5.161

2:00p to 2:15p Call with [redacted] and [redacted] University of Texas
[redacted]

## FRIDAY, DECEMBER 11, 2015

11:00a to 12:00p REFIC Assistant Director interview- [redacted]
Location: [redacted] office
[redacted]

12:00p to 2:00p Valuation office hours
Location: GSB 5.161

2:00p to 5:00p Valuation final exam
Location: CPE 2.214
[redacted]

## MONDAY, DECEMBER 14, 2015

12:00p to 1:30p MSF lunch
Location: TBD
[redacted]

## TUESDAY, DECEMBER 15, 2015

12:15p to 1:15p Invitation: [redacted] Introduction Lunch @ Tue Dec 15, 2015 12:15pm - 1:15pm [redacted]
Location: Walton's Fancy & Staple, 609 W 6th St, Austin, TX 78701, United States
[redacted]

[redacted] more details »

[redacted]

## WEDNESDAY, DECEMBER 16, 2015

- 4:00p to 4:30p meeting with [redacted] and Jay-MS Marketing budget
  Location [redacted] office
  [redacted]

## MONDAY, DECEMBER 21, 2015

- 4:00p to 4:30p meet yard lighting BIggadike
  Location: my house

## WEDNESDAY, DECEMBER 23, 2015

- 12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
  Location: Atlanta Hartsfield International Airport

  Agency: Hertz

  [redacted]

- 12/23/2015 to 12/27/2015 Hotel: Hilton Asheville Biltmore Park
  Location: Hilton Asheville Biltmore Park

  Telephone: Tel: +1-828-209-2700

## THURSDAY, DECEMBER 24, 2015

- 12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
  Location: Atlanta Hartsfield International Airport

  Agency: Hertz

  [redacted]

- 12/23/2015 to 12/27/2015 Hotel: Hilton Asheville Biltmore Park
  Location: Hilton Asheville Biltmore Park

  Telephone: Tel: +1-828-209-2700

## FRIDAY, DECEMBER 25, 2015

- 12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
  Location: Atlanta Hartsfield International Airport

  Agency: Hertz

  [redacted]

- 12/23/2015 to 12/27/2015 Hotel: Hilton Asheville Biltmore Park
  Location: Hilton Asheville Biltmore Park

  Telephone: Tel: +1-828-209-2700

## SATURDAY, DECEMBER 26, 2015

- 12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
  Location: Atlanta Hartsfield International Airport

Agency: Hertz

[redacted]

12/23/2015 to 12/27/2015 Hotel: Hilton Asheville Biltmore Park
Location: Hilton Asheville Biltmore Park

Telephone: Tel: +1-828-209-2700

## SUNDAY, DECEMBER 27, 2015

12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
Location: Atlanta Hartsfield International Airport

Agency: Hertz

[redacted]

12/23/2015 to 12/27/2015 Hotel: Hilton Asheville Biltmore Park
Location: Hilton Asheville Biltmore Park

Telephone: Tel: +1-828-209-2700

## MONDAY, DECEMBER 28, 2015

12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
Location: Atlanta Hartsfield International Airport

Agency: Hertz

[redacted]

## TUESDAY, DECEMBER 29, 2015

12/23/2015 to 12/29/2015 Car rental: Atlanta Hartsfield International Airport
Location: Atlanta Hartsfield International Airport

Agency: Hertz

[redacted]

# January 2016

Calendar

January 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

February 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27<br>Car rental: Atlanta Hartsfield International Airport<br>Hotel: Hilton Ashev | 28 | 29 | 30 | 31 | Jan 1 | 2 |
| 3 | 4 | 5<br>9:30a [redacted] | 6<br>1:30p [redacted] | 7<br>1:15p knee appt - D | 8 | 9 |
| 10 | 11<br>10a REFIC duties<br>11a Prep for [redacted] | 12<br>1p meeting with [redacted]<br>2p Meeting re real<br>3:30p Meeting with | 13<br>2p Call RE: Bond Cc | 14<br>10a Real Estate Call | 15<br>12p Lunch meeting<br>1:30p [redacted] | 16 |
| 17 | 18<br>3p teeth cleaning | 19<br>1p REIT Conference<br>2p Invitation: McCc<br>3:30p REIT class | 20<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2p Meeting with [redacted] | 21<br>11:45a Texas MSF P<br>3:30p Meeting with | 22<br>9a REFIC updates, i<br>12:30p MSF practic | 23 |
| 24 | 25<br>9:30a meeting to di<br>11a undergrad RE c<br>12:30p MBA RE clas<br>+1 | 26<br>1:30p REFIC Team N<br>3:30p REIT class | 27<br>11a undergrad RE c<br>11:30a Lunch and L<br>12:30p MBA RE clas<br>+2 | 28<br>2p [redacted] | 29<br>7a San Antonio Tre<br>1:30p meet MSBA F<br>4:30p meeting re U | 30 |
| 31 | Feb 1<br>11a undergrad RE c<br>12:30p MBA RE clas | 2<br>12p REFIC Involvem<br>1:30p REFIC Team N<br>3:30p REIT class | 3<br>11a undergrad RE c<br>12:30p MBA RE clas<br>4p Real Estate Care | 4 | 5<br>9a Updated Invitati<br>10:30a meeting wit<br>11:30a Meeting re:<br>+2 | 6 |

# January 2016

Calendar

January 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

February 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 1 | 2 | 3 | 4 | 5 |

## TUESDAY, JANUARY 05, 2016

9:30a to 10:00a [redacted]

## WEDNESDAY, JANUARY 06, 2016

1:30p to 2:30p [redacted]

## THURSDAY, JANUARY 07, 2016

1:15p to 1:45p knee appt - [redacted]
Location: Austin Regional Clinic

[redacted]

## MONDAY, JANUARY 11, 2016

10:00a to 10:30a REFIC duties
Location: [redacted] office

[redacted]

11:00a to 12:00p Prep for [redacted] and Dept Chair meeting on Tuesday
Location: GSB 5.148

[redacted]

## TUESDAY, JANUARY 12, 2016

- 1:00p to 2:00p meeting with [redacted] and [redacted] REFIC council membership
  Location [redacted] office
  [redacted]

- 2:00p to 2:30p Meeting re real estate
  Location: GSB 5.161
  [redacted]

- 3:30p to 4:00p Meeting with [redacted] Option III staffing
  Location: dean's conference room
  [redacted]

## WEDNESDAY, JANUARY 13, 2016

- 2:00p to 2:30p Call RE: Bond Cost
  Location: LitiNomics to Call [redacted]

## THURSDAY, JANUARY 14, 2016

- 10:00a to 11:00a Real Estate Call
  Location: PLEASE CALL CONFERENCE CALL LINE: 512-232-8670
  [redacted]

## FRIDAY, JANUARY 15, 2016

- 12:00p to 1:00p Lunch meeting [redacted] and [redacted] -REFIC roster
  Location: TBD
  [redacted]

- 1:30p to 3:30p [redacted] REFIC overview
  Location: [redacted] office
  [redacted]

MONDAY, JANUARY 18, 2016

3:00p to 4:00p teeth cleaning
Location: the Hills Dental

TUESDAY, JANUARY 19, 2016

1:00p to 1:30p REIT Conference Chat
Location: [redacted] Office
[redacted]

2:00p to 3:00p Invitation: McCombs Information Meeting with [redacted] @ Tue Jan 19, 2016 2pm - 3pm [redacted]

[redacted]

more details »

[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

WEDNESDAY, JANUARY 20, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:00p to 3:00p Meeting with [redacted] REFIC advisory council membership
Location: [redacted] office
[redacted]

THURSDAY, JANUARY 21, 2016

11:45a to 1:00p Texas MSF Program Kick Off
Location: GSB Events Room (GSB 5.130)
[redacted]

[redacted]

3:30p to 4:15p Meeting with [redacted] -MS Staffing
Location: Dean's conference Room
[redacted]

## FRIDAY, JANUARY 22, 2016

9:00a to 10:00a REFIC updates, info, etc
Location: [redacted] office
[redacted]

12:30p to 3:00p MSF practicum meetings

## MONDAY, JANUARY 25, 2016

9:30a to 10:30a meeting to discuss RCA data
Location: [redacted] office
[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p meeting re MSF
Location: GSB 5.161

## TUESDAY, JANUARY 26, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, JANUARY 27, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

11:30a to 1:00p Lunch and Learn
Location: MSB Conference Room
[redacted]

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:30p to 3:00p Firstdown playbook meeting
Location: GSB 5.161
[redacted]

3:00p to 3:30p go meet [redacted]
Location: his office

## THURSDAY, JANUARY 28, 2016

2:00p to 3:00p [redacted] KOR Group/REFIC Interest
Location: Four Seasons
[redacted]

## FRIDAY, JANUARY 29, 2016

7:00a to 7:00p San Antonio Trek
Location: San Antonio
[redacted]

1:30p to 2:00p meet MSBA RE data team
Location: my office

4:30p to 5:00p meeting re UT real estate
Location: GSB 5.161
[redacted]

# February 2016

Calendar

February 2016

| S | M | T | W | T | F | S |
| --- | --- | --- | --- | --- | --- | --- |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | | | | | |

March 2016

| S | M | T | W | T | F | S |
| --- | --- | --- | --- | --- | --- | --- |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| --- | --- | --- | --- | --- | --- | --- |
| 31 | Feb 1<br>11a undergrad RE c<br>12:30p MBA RE clas | 2<br>12p REFIC Involvem<br>1:30p REFIC Team M<br>3:30p REIT class | 3<br>11a undergrad RE c<br>12:30p MBA RE clas<br>4p Real Estate Care | 4 | 5<br>9a Updated Invitati<br>10:30a meeting wit<br>11:30a Meeting re:<br>12p Tentative [redacted]<br>+1 | 6 |
| 7 | 8<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2:30p Updated Invit<br>3p Invitation: Plan I | 9<br>1:30p REFIC Team M<br>3:30p REIT class | 10<br>11a undergrad RE c<br>12:30p MBA RE clas | 11 | 12<br>7a Houston Trek<br>10:30a [redacted]<br>1:30p meet [redacted] a [redacted]<br>2p meeting with [redacted]<br>+1 | 13 |
| 14 | 15<br>11a undergrad RE c<br>12:30p MBA RE clas | 16<br>11a Lunch and Lear<br>11a Tracdat<br>1:30p REFIC Team M<br>3:30p REIT class | 17<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Tracdat | 18<br>[redacted] - Funeral | 19<br>10a REFIC Strategic<br>12p [redacted]<br>1:30p Firstdown pla | 20 |
| 21 | 22<br>10:15a meet [redacted]<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Meeting with A/<br>+1 | 23<br>10a [redacted]<br>1:30p REFIC Team M<br>3:30p REIT class | 24<br>11a undergrad RE c<br>12:30p MBA RE clas | 25<br>12:45p Lunch with [redacted]<br>3p REFIC Associate<br>4p ULI Austin Fellov | 26<br>ARGUS Training<br>8:45a Texas MSF Ac<br>12p Texas MSF Adv | 27 |
| 28<br>ARGUS Training | 29<br>10a Meeting with D<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p REFIC Strategic<br>+1 | Mar 1<br>9a Call with [redacted]<br>11a Lunch and Lear<br>1:30p REFIC Team M<br>2:30p meeting re M<br>+2 | 2<br>9a REFIC Strategic I<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Martin hurtado<br>+1 | 3 | 4<br>11a meet [redacted]<br>1p Firstdown Playb<br>4p [redacted] | 5 |

February 2016

Calendar

February 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | | | | | |

March 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

## MONDAY, FEBRUARY 01, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## TUESDAY, FEBRUARY 02, 2016

12:00p to 1:00p REFIC Involvement
Location: AT&T

[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, FEBRUARY 03, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

4:00p to 6:00p Real Estate Career EXPO
Location: Atrium

[redacted]

9:00a to 10:00a Updated Invitation: The Univeristy of Texas McCombs & Clark - 2/5/2016 @ Fri Feb 5, 2016 9am - 10am [redacted]

Location: 2110 Speedway B6000, Austin, TX 78705

[redacted]

[redacted]

[redacted] more details »

[redacted]

10:30a to 11:30a meeting with [redacted] REFIC updates
Location: [redacted] office

[redacted]

11:30a to 12:00p Meeting re: MSF AC
Location: [redacted] office

[redacted]

12:00p to 1:00p Tentative: [redacted]
Location: UT - [redacted] Office

[redacted]

2:00p to 2:30p ULI Austin Fellows Planning Call
Location: Dial-in info below

[redacted]

## MONDAY, FEBRUARY 08, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:30p to 3:00p Updated Invitation: Informational Meeting about MBS Market @ Mon Feb 8, 2016 2:30pm - 3pm [redacted]
Location: GSB 5.161
[redacted]

[redacted]

[redacted] more details »

[redacted]

3:00p to 3:30p Invitation: Plan II Thesis Supervisor Meeting @ Mon Feb 8, 2016 3pm - 3:30pm [redacted]

[redacted]

[redacted] more details »

[redacted]

## TUESDAY, FEBRUARY 09, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, FEBRUARY 10, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## FRIDAY, FEBRUARY 12, 2016

7:00a to 8:00p Houston Trek
Location: Houston
[redacted]

10:30a to 12:30p [redacted]
Location: 823 Congress suite 1111
[redacted]

1:30p to 2:00p meet [redacted]
Location: my office

2:00p to 2:30p meeting with [redacted]
Location: my office

3:00p to 4:00p [redacted]erformance Evaluation
Location: [redacted] office
[redacted]

## MONDAY, FEBRUARY 15, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## TUESDAY, FEBRUARY 16, 2016

11:00a to 12:00p Tracdat
[redacted]

11:00a to 1:00p Lunch and Learn
Location: GSB Events Room
[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, FEBRUARY 17, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p Tracdat
Location: [redacted] Office
[redacted]

## THURSDAY, FEBRUARY 18, 2016

2/18/2016 to 2/19/2016 [redacted] - Funeral
[redacted]

## FRIDAY, FEBRUARY 19, 2016

2/18/2016 to 2/19/2016 [redacted] - Funeral
[redacted]

10:00a to 12:00p REFIC Strategic Planning Session
Location: On campus/Room TBD
[redacted]

12:00p to 12:30p [redacted] conference planning
[redacted]

1:30p to 2:00p Firstdown playbook meeting
Location [redacted] office

## MONDAY, FEBRUARY 22, 2016

10:15a to 10:45a meet [redacted]
Location: GSB 5.161

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:45p Meeting with AACSB review team
Location: MPA Program Office conference room (GSB 4.112)
[redacted]

4:00p to 6:30p judge ULI competition
Location: Arch school

## TUESDAY, FEBRUARY 23, 2016

10:00a to 11:00a [redacted]/Architecture
Location: SUT 1.130
[redacted]

[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, FEBRUARY 24, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## THURSDAY, FEBRUARY 25, 2016

12:45p to 2:00p Lunch with [redacted]
Location: Gabriel's
[redacted]

3:00p to 4:30p REFIC Associate Council | Nominations Call
Location: Call: 512-232-8670 | Code: 6543203#
[redacted]

[redacted]

[redacted]

4:00p to 6:00p ULI Austin Fellows Session #3
Location: MSB Conference Room
[redacted]

## FRIDAY, FEBRUARY 26, 2016

2/26/2016 to 2/28/2016 ARGUS Training
Location: Lab
[redacted]

8:45a to 9:45a Texas MSF Advisory Council Leadership Breakfast
Location: The Carillon
[redacted]

12:00p to 6:00p Texas MSF Advisory Council Spring Meeting
Location: Belmont Hall - The Carpenter-Winkel Centennial Room (9th floor)
[redacted]

## SATURDAY, FEBRUARY 27, 2016

2/26/2016 to 2/28/2016 ARGUS Training
Location: Lab
[redacted]

## SUNDAY, FEBRUARY 28, 2016

2/26/2016 to 2/28/2016 ARGUS Training
Location: Lab
[redacted]

## MONDAY, FEBRUARY 29, 2016

10:00a to 11:00a Meeting with [redacted]
Location: AT&T coffee shop
[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 4:00p REFIC Strategic Planning w Mandy
[redacted]

4:00p to 4:30p [redacted] Office
Location: Meet on Dry Run Outcome's
[redacted]

# March 2016

Calendar

March 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

April 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28<br>ARGUS Training | 29<br>10a Meeting with D<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p REFIC Strategic<br>+1 | Mar 1<br>9a Call with [redacted]<br>11a Lunch and Lear<br>1:30p REFIC Team M<br>2:30p meeting re M<br>+2 | 2<br>9a REFIC Strategic I<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p [redacted]<br>+1 | 3 | 4<br>11a meet [redacted]<br>1p Firstdown Playb<br>4p [redacted] | 5 |
| 6 | 7<br>10a Call w [redacted]<br>11a undergrad RE c<br>12:30p Wells Fargo<br>2p REFIC work sess<br>+1 | 8<br>1p call [redacted]<br>1:30p REFIC Team M | 9<br>1:15p Performance<br>2p Filming for UT<br>2:30p meet [redacted] | 10<br>9a Real Estate Inves<br>3p Call RE: Herbalif | 11<br>10a [redacted]<br>10:30a REFIC Assoc<br>11:30a REFIC team<br>2p Meet re RE with | 12 |
| 13 | 14<br>11a Call re MSF wit | 15<br>10a REFIC Team Wc<br>3:30p Herbalife call | 16<br>1p Anniversary | 17 | 18 | 19 |
| 20 | 21<br>10a Meeting Major<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2:30p Andy Scott/G<br>+1 | 22<br>11a Lunch and Lear<br>1:30p REFIC Team M<br>3:30p REIT class | 23<br>10a Meeting with J.<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2p meeting re RE d<br>+3 | 24<br>9:45a Call re: RE tea<br>10:30a [redacted]<br>1p Candidate [redacted]<br>2:30p REFIC 2016-17 | 25<br>8:30a MBA investm<br>9:30a skype call wit | 26 |
| 27 | 28<br>11a undergrad RE c<br>12:30p MBA RE clas | 29<br>1:30p [redacted]<br>1:30p REFIC Team M<br>3:30p REIT class | 30<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Invitation: Thesi | 31<br>10a MRI on knee<br>1p Candidate C, [redacted] | Apr 1 | 2 |

# March 2016

Calendar

March 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

April 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## TUESDAY, MARCH 01, 2016

9:00a to 9:30a Call with [redacted] Wells Fargo
Location: he calls my cell

11:00a to 1:00p Lunch and Learn
Location: GSB Events Room
[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

2:30p to 3:00p meeting re MSF
Location: GSB 5.161
[redacted]

3:00p to 4:00p REFIC Advisory Council planning call
Location: 512-232-8670 #6543201
[redacted]

[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, MARCH 02, 2016

9:00a to 11:00a REFIC Strategic Planning
Location: McCombs Dean's Conference Room/GSB 2.104
[redacted]

[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 4:00p [redacted] call
Location: He calls me

4:00p to 5:00p [redacted] calls re MBA RE
Location: She calls me my office

## FRIDAY, MARCH 04, 2016

11:00a to 11:30a meet [redacted] re RE PE fund
Location: gsb 5.161
[redacted]

1:00p to 2:00p Firstdown Playbook finance meeting
Location: GSB 5.161
Organizer: Greg Hallman
[redacted]

4:00p to 5:00p [redacted] Family Meeting [redacted]
Location: [redacted] Office: GSB 5.161
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## MONDAY, MARCH 07, 2016

10:00a to 10:15a Call w[redacted]
Location: He calls me

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 1:30p Wells Fargo lunch/[redacted]
Location: AT&T Carillion
[redacted]

2:00p to 3:00p REFIC work session prep
Location[redacted] office
[redacted]

3:30p to 4:00p meeting re MSF
Location: GSB 5.161
[redacted]

## TUESDAY, MARCH 08, 2016

1:00p to 1:30p call [redacted] re MBE RE
Location: I call him

720-635-6108

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## WEDNESDAY, MARCH 09, 2016

1:15p to 1:45p Performance Pro
[redacted]

2:00p to 2:30p Filming for UT
Location: in front of Dean's office
[redacted]

2:30p to 3:00p meet [redacted]
Location: GSB 5.161

## THURSDAY, MARCH 10, 2016

9:00a to 10:00a Real Estate Investment Fund Conference call
Location: Conference Line
[redacted]

3:00p to 4:00p Call RE: Herbalife
Location: Dial-in: 650.282.4420 Conference#: 24422 Passcode: 24422
[redacted]

## FRIDAY, MARCH 11, 2016

10:00a to 10:30a [redacted] and [redacted] - phone call
Location: [redacted] office
[redacted]

[redacted]

[redacted]

10:30a to 11:00a REFIC Associate Council New Members meeting
Location: office

[redacted]

11:30a to 1:30p REFIC team lunch
Location: Olmarie

[redacted]

2:00p to 2:30p Meet re RE with [redacted]
Location: GSB 5.161

[redacted]

## MONDAY, MARCH 14, 2016

11:00a to 11:30a Call re MSF with [redacted]
Location: skype

[redacted]

## TUESDAY, MARCH 15, 2016

10:00a to 2:00p REFIC Team Workshop
Location: conf rm by [redacted] office

[redacted]

[redacted]

[redacted]

3:30p to 4:30p Herbalife call with [redacted]

## WEDNESDAY, MARCH 16, 2016

1:00p to 2:00p Anniversary

## MONDAY, MARCH 21, 2016

10:00a to 10:30a Meeting Major Gifts Team
Location: Development Conference Room (5th floor)

[redacted]

[redacted]

- [redacted]
- [redacted]
  - [redacted]
  - [redacted]
  - [redacted]

[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:30p to 3:00p [redacted]/Greg Hallman/[redacted] re: Texas MSF Program
Location: UT to call [redacted]

4:30p to 5:00p call on RE class
[redacted]

TUESDAY, MARCH 22, 2016

11:00a to 1:00p Lunch and Learn
Location: MSB Conference Room
[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

WEDNESDAY, MARCH 23, 2016

10:00a to 10:30a Meeting with [redacted]
Location: [redacted] office
[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:00p to 2:30p meeting re RE data talk
Location: [redacted] office
[redacted]

3:00p to 3:30p Thesis meeting w [redacted]
Location: GSB 5.161
[redacted]

3:30p to 4:00p Meeting re: RE accting
[redacted]

4:00p to 4:30p REFIC Conf. Rowling Hall Presentation
Location: [redacted] Office (GSB 2.104)
[redacted]

## THURSDAY, MARCH 24, 2016

9:45a to 10:00a Call re: RE teaching
Location: I call [redacted]

[redacted]

10:30a to 11:00a [redacted]
Location: 1301 W 38th; Suite 102;Austin 78705; 512-454-4561

[redacted]

1:00p to 2:00p Candidate B, Program Manager Interviews
Location: Dean's Conference Rm

[redacted]

[redacted]

[redacted]

2:30p to 3:30p REFIC 2016-17 Budget Review Meeting
Location [redacted] Office - CBA 6.238

[redacted]

## FRIDAY, MARCH 25, 2016

8:30a to 12:30p MBA investment fund presentations
Location AT&T classroom 101

9:30a to 10:00a skype call with [redacted]
Location: I call

[redacted]

## MONDAY, MARCH 28, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## TUESDAY, MARCH 29, 2016

1:30p to 2:30p [redacted]

1:30p to 2:30p REFIC Team Meeting
Location Finance Conference Room

[redacted]

[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, MARCH 30, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p Invitation: Thesis Meeting- [redacted]

## THURSDAY, MARCH 31, 2016

10:00a to 11:00a MRI on knee
Location: ARA imaging Westlake Medical Center Suite H-200

1:00p to 2:00p Candidate C, Program Manager Interview
Location: Enchanted Rock Conference Room (MBA Program Office)
[redacted]

# April 2016

Calendar

April 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

May 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28<br>11a undergrad RE c<br>12:30p MBA RE clas | 29<br>1:30p [redacted]<br>1:30p REFIC Team M<br>3:30p REIT class | 30<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Invitation: Thesi | 31<br>10a MRI on knee<br>1p Candidate C, Pro | Apr 1 | 2 |
| 3 | 4<br>10a [redacted] class<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p meeting re real | 5<br>1:30p REFIC Team M<br>3:30p REIT class | 6<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p finish grading m<br>4:30p call [redacted] re M | 7<br>9a REFIC Strategic F<br>1p [redacted] re M<br>3p Meeting with Ja | 8<br>11a RE PE meeting<br>1:30p HUD and Tim | 9 |
| 10 | 11<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p Invitation: [redacted] | 12<br>1:30p REFIC Team M<br>2:30p meet [redacted]<br>3:30p REIT class | 13<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3p call [redacted]<br>3:30p Prof Hallman | 14<br>GRES NYC Trek | 15<br>12p lunch with [redacted]<br>1p meet Funda's RE<br>2:30p real estate pr | 16 |
| 17<br>11a [redacted] MBS pr | 18<br>11a undergrad RE c<br>12:30p MBA RE clas | 19<br>1:30p REFIC Team M<br>3:30p REIT class | 20<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2p USC Case Comp<br>2p career meeting (<br>+3 | 21<br>11a<br>4p Meeting re prop | 22<br>1p meeting with [redacted]<br>1:30p Timber talk w<br>2p meeting re care<br>2:30p meeting to cl<br>+2 | 23 |
| 24 | 25<br>11a undergrad RE c<br>12:30p MBA RE clas<br>2p [redacted] c<br>3p meeting re MSF<br>+1 | 26<br>10a Castle Hill Prac<br>10:30a [redacted] practic<br>11:30a Spring Facul<br>1:30p REFIC Team M<br>+3 | 27<br>1 [redacted]<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3:30p fly to dallas | 28<br>10a pick up BMW | 29<br>11a potential exper<br>11:30a Corporate R<br>2p REFIC Conferenc<br>3p update meeting | 30 |

# April 2016

Calendar

April 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

May 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

## MONDAY, APRIL 04, 2016

10:00a to 11:00a [redacted] class
Location: GSB 5

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p meeting re real estate
Location: GSB 5.161
[redacted]

## TUESDAY, APRIL 05, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, APRIL 06, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 4:00p finish grading midterms
Location: my office
[redacted]

[redacted]

4:30p to 5:00p call [redacted] re MBA RE
Location: I call

## THURSDAY, APRIL 07, 2016

9:00a to 11:00a REFIC Strategic Planning Session
Location: McCombs Dean's Conference Room/GSB 2.104
[redacted]

1:00p to 1:30p [redacted] re MRI
Location: ARC ortho suite 102

3:00p to 3:30p Meeting with [redacted] - non cash RE Fund gifts
Location: [redacted] office
[redacted]

## FRIDAY, APRIL 08, 2016

11:00a to 12:30p RE PE meeting
Location: Capridge

1:30p to 2:30p HUD and Timber chat w [redacted]
Location: Your office
[redacted]

## MONDAY, APRIL 11, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p Invitation: [redacted] - Thesis Presentation Skeleton @ Mon Apr 11, 2016 3pm - 3:30pm [redacted]
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

TUESDAY, APRIL 12, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

2:30p to 3:00p meet [redacted]
Location: my office

3:30p to 6:30p REIT class
Location: UTC 4.134

WEDNESDAY, APRIL 13, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:00p to 3:30p call [redacted]
Location: I call - resume on desk

[redacted]

3:30p to 4:00p [redacted] and [redacted]
Location: GSB 5.161

[redacted]

THURSDAY, APRIL 14, 2016

4/14/2016 (All day) GRES NYC Trek

[redacted]

## FRIDAY, APRIL 15, 2016

12:00p to 1:00p lunch with [redacted]
Location: around/on campus

1:00p to 1:30p meet [redacted] REIT team
Location: my office

2:30p to 4:30p real estate practicum meeting
Location: GSB 5.154
[redacted]

## SUNDAY, APRIL 17, 2016

11:00a to 11:30a [redacted] MBS presentation

## MONDAY, APRIL 18, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## TUESDAY, APRIL 19, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, APRIL 20, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:00p to 2:30p career meeting [redacted]
Location: GSB 5.161 - my office
Organizer: Greg Hallman
[redacted]

2:00p to 3:30p USC Case Comp Presentation & Debrief
Location: MSB Conference Room - CBA 6.420
[redacted]

[redacted]

2:30p to 3:00p Questions about McCombs Real Estate
Location: GSB 5.161
[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

3:00p to 3:30p Meeting re RE
Location: GSB 5.161
Organizer: Greg Hallman
[redacted]

3:00p to 3:30p Invitation: Thesis Rough Draft Review @ Wed Apr 20, 2016 3pm - 3:30pm [redacted]

[redacted]

[redacted]

more details »

[redacted]

THURSDAY, APRIL 21, 2016

11:00a to 11:30a

4:00p to 4:30p Meeting re property
Location: GSB 5.161

FRIDAY, APRIL 22, 2016

1:00p to 1:30p meeting with [redacted] re MSF
Location: GSB 5.161

1:30p to 2:00p Timber talk w [redacted]
Location: Your office
[redacted]

2:00p to 2:30p meeting re career
Location: GSB 5.161 - my office
[redacted]

2:30p to 3:00p meeting to chat
Location: my office
[redacted]

3:00p to 3:30p meeting re recruiting
Location: GSB 5.161
[redacted]

4:00p to 4:30p meet [redacted] - Abacus
Location: [redacted] office

## MONDAY, APRIL 25, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

2:00p to 3:00p [redacted] to lunch
Location: Gabriels
[redacted]

3:00p to 3:30p meeting re MSF
Location: GSB 5.161 - my office
[redacted]

3:30p to 4:00p timber project
Location: GSB 5.161
[redacted]

## TUESDAY, APRIL 26, 2016

10:00a to 12:30p Castle Hill Practicum Project Presentation + Lunch
Location: MSB Conference Room (CBA 6.420) & AT&T Carillon Restaurant
[redacted]

10:30a to 12:30p Hal's practicum presentation
Location: 6th floor big conference room

11:30a to 1:00p Spring Faculty Meeting & Awards Lunch
Location: CBA Events Room (CBA 3.304)
[redacted]

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

2:30p to 3:00p meeting

Location: GSB 5.161 - my office

[redacted]

3:00p to 3:30p meeting re RE

Location: GSB 5.161

[redacted]

3:30p to 6:30p REIT class

Location: UTC 4.134

## WEDNESDAY, APRIL 27, 2016

11:00a to 2:00p [redacted] at RE classes

Location: UTC 1.132

[redacted]

11:00a to 12:30p undergrad RE class

Location: UTC 1.132

12:30p to 2:00p MBA RE class

Location: UTC 1.132

3:30p to 4:30p fly to dallas

## THURSDAY, APRIL 28, 2016

10:00a to 11:00a pick up BMW

Location: Berli's in Pflugerville

## FRIDAY, APRIL 29, 2016

11:00a to 12:00p potential expert project

[redacted]

[redacted]

11:30a to 1:30p Corporate Recognition Event

Location: AT&T Center Ballroom (Level M3)

[redacted]

[redacted]

***Please accept or decline this outlook appointment to RSVP***

Dean Jay Hartzell cordially invites you
to the McCombs School of Business

## Corporate Recognition Event

Friday, April 29, 2016

11:30 a.m. Reception
12:00 p.m. Lunch and Program

AT&T Executive Education and Conference Center
Ballroom, Level M3
1900 University Avenue
Austin, TX 78705

. . .

**2016 Honorees**

Outstanding Corporate Partner
Chevron

Outstanding Corporate Champion
Niloufar Molavi, PwC

Trailblazer Award
Google

Outstanding Executive Education Partner
USAA

Newcomer Award
Toyota

. . .

Business attire

***Please accept or decline this outlook appointment to RSVP***

2:00p to 3:30p REFIC Conference coordination call
Location: 512-232-8670 #6543205
[redacted]

3:00p to 4:00p update meeting
Location: my office GSB 5.161
Organizer: Greg Hallman
[redacted]

# May 2016

Calendar

May 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

June 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| May 1 | 2<br>11a undergrad RE c<br>12:30p MBA RE clas<br>3:30p [redacted] | 3<br>12p Invitation: Thes<br>1:30p REFIC Team M<br>3:30p REIT class | 4<br>8a SPRING CONFER<br>9a REFIC pre-meeti<br>11a undergrad RE c<br>12:30p MBA RE clas | 5<br>3:15p call re new cl | 6<br>3p [redacted] | 7 |
| 8 | 9<br>9a Real Estate Inves | 10<br>1:30p REFIC Team M | 11<br>8:30a [redacted] finance<br>1p [redacted] F<br>4p HH | 12<br>9a Fiber install | 13<br>4:30p meet RE und | 14 |
| 15 | 16 | 17<br>1:30p REFIC Team M<br>2:30p mee [redacted] | 18<br>3:20p TSA Pre | 19<br>11a Total Men's Hea | 20<br>11:30a Texas MSF G | 21 |
| 22 | 23 | 24<br>3p UT McCombs/U | 25<br>7:30a ULI breakfast | 26<br>2p REFIC Meeting<br>4p Real Estate Pract | 27 | 28 |
| 29 | 30 | 31<br>11:30a REFIC - ULI I<br>2p [redacted] | Jun 1 | 2 | 3<br>11:45a UT Real Esta<br>1:30p RE meeting w<br>1:30p [redacted] | 4 |

May 2016

Calendar

May 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

June 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

## MONDAY, MAY 02, 2016

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

3:30p to 5:00p [redacted]

## TUESDAY, MAY 03, 2016

12:00p to 12:30p Invitation: Thesis Oral Examination - [redacted] @ Tue May 3, 2016 12pm - 12:30pm [redacted]

[redacted] more details »

[redacted] options »

[redacted]

1:30p to 2:30p REFIC Team Meeting
[redacted]

3:30p to 6:30p REIT class
Location: UTC 4.134

## WEDNESDAY, MAY 04, 2016

8:00a to 5:00p SPRING CONFERENCE
Location: JW Marriott
[redacted]

9:00a to 11:00a REFIC pre-meeting
Location: JW Marriott / Room # TBD
[redacted]

11:00a to 12:30p undergrad RE class
Location: UTC 1.132

12:30p to 2:00p MBA RE class
Location: UTC 1.132

## THURSDAY, MAY 05, 2016

3:15p to 3:45p call re new class
Location: 512 426 7671
[redacted]

## FRIDAY, MAY 06, 2016

3:00p to 3:30p [redacted]
Location: GSB 5.161

## MONDAY, MAY 09, 2016

9:00a to 9:45a Real Estate Investment Fund Call
[redacted]

[redacted]

## TUESDAY, MAY 10, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## WEDNESDAY, MAY 11, 2016

8:30a to 9:30a [redacted] finances
Location: [redacted] house

1:00p to 2:30p [redacted] RE 388 test
[redacted]

4:00p to 6:30p HH
Location: Gabriel's
[redacted]

## THURSDAY, MAY 12, 2016

9:00a to 10:00a Fiber install
Location: 30°16'43'' N, 97°48'7'' W

## FRIDAY, MAY 13, 2016

4:30p to 6:00p meet RE undergrads
Location: Crown and Anchor?

## TUESDAY, MAY 17, 2016

1:30p to 2:30p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

2:30p to 3:30p meet [redacted] re SNL
Location: GSB 5.161
[redacted]

## WEDNESDAY, MAY 18, 2016

3:20p to 4:00p TSA Pre
Location: 7010 W Highway 71 Ste 160

[redacted]

[redacted]

## THURSDAY, MAY 19, 2016

11:00a to 11:30a Total Men's Health
Location: William Cannon

[redacted]

[redacted]

## FRIDAY, MAY 20, 2016

11:30a to 1:00p Texas MSF Graduation Ceremony
Location: Student Activity Center (SAC) Auditorium (1.402)
[redacted]

[redacted]

[redacted]

[redacted]

## TUESDAY, MAY 24, 2016

3:00p to 3:30p UT McCombs/USGBC Call
Location: 512 232-8670,6543208#
[redacted]

[redacted]

## WEDNESDAY, MAY 25, 2016

7:30a to 9:00a ULI breakfast
Location: Headliners Club

## THURSDAY, MAY 26, 2016

2:00p to 3:00p REFIC Meeting
Location: TBD
[redacted]

4:00p to 5:00p Real Estate Practicum
Location: [redacted] office | SUT 3.130B
[redacted]

## TUESDAY, MAY 31, 2016

11:30a to 1:30p REFIC - ULI Fellows/Academic Programs Committee
Location: Pennybacker
[redacted]

2:00p to 3:00p [redacted]/fund
Location: Capridge
[redacted]

# June 2016

Calendar

June 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

July 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | 31<br>11:30a REFIC - ULI I<br>2p [redacted] /fu | Jun 1 | 2 | 3<br>11:45a UT Real Esta<br>1:30p RE meeting w<br>1:30p [redacted] | 4 |
| 5 | 6<br>1:30p meeting re R<br>3:30p UT REFIC Stra | 7 | 8<br>Greg on Vacation<br>Australia<br>3:45p REFIC team m<br>4:30p [redacted] | 9<br>Greg on Vacation<br>Australia | 10<br>Greg on Vacation<br>Australia | 11<br>Greg on Vacation<br>Australia |
| 12<br>Greg on Vacation<br>Australia | 13<br>Greg on Vacation<br>Australia | 14<br>Greg on Vacation<br>Australia | 15<br>Greg on Vacation<br>Australia | 16<br>Greg on Vacation<br>Australia | 17<br>Greg on Vacation<br>Australia | 18<br>Greg on Vacation<br>Australia |
| 19<br>Greg on Vacation<br>Australia | 20<br>Greg on Vacation<br>Australia | 21<br>Greg on Vacation<br>Australia | 22<br>Greg on Vacation<br>Australia<br>Mandy vacation | 23<br>Greg on Vacation<br>Australia<br>Mandy vacation | 24<br>Greg on Vacation<br>Australia<br>Mandy vacation | 25<br>Australia |
| 26 | 27<br>10:30a REFIC/[redacted]<br>12p REFIC/[redacted]<br>2p REFIC/JLL - [redacted] | 28<br>8:30a UT REFIC-[redacted]<br>10a UT REFIC/West<br>11:30a [redacted] | 29<br>11a Meet [redacted]<br>11a Meeting with [redacted]<br>12p Lunch with [redacted]<br>1:30p REFIC team m<br>+3 | 30 | Jul 1 | 2<br>Hilton Head |

# June 2016

Calendar

| June 2016 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

| July 2016 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

## FRIDAY, JUNE 03, 2016

11:45a to 1:00p UT Real Estate | [redacted]
Location: The Carilion @ AT&T
[redacted]

1:30p to 3:00p RE meeting with [redacted]
Location: GSB 5.161

1:30p to 2:30p [redacted]

## MONDAY, JUNE 06, 2016

1:30p to 2:30p meeting re REIT modeling
Location: GSB 5.161
[redacted]

3:30p to 5:30p UT REFIC Strategic Planning Session
Location: UT McCombs | Room TBD
[redacted]

## WEDNESDAY, JUNE 08, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/8/2016 (All day) Australia
Location: Australia

3:45p to 4:30p REFIC team meeting
Location: Gabriel's
[redacted]

4:30p to 5:30p [redacted] - Real Estate program
Location: Gabrielle's
[redacted]

## THURSDAY, JUNE 09, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/9/2016 (All day) Australia
Location: Australia

## FRIDAY, JUNE 10, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/10/2016 (All day) Australia
Location: Australia

## SATURDAY, JUNE 11, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/11/2016 (All day) Australia
Location: Australia

## SUNDAY, JUNE 12, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/12/2016 (All day) Australia
Location: Australia

## MONDAY, JUNE 13, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/13/2016 (All day) Australia
Location: Australia

## TUESDAY, JUNE 14, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/14/2016 (All day) Australia
Location: Australia

## WEDNESDAY, JUNE 15, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/15/2016 (All day) Australia
Location: Australia

## THURSDAY, JUNE 16, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/16/2016 (All day) Australia
Location: Australia

## FRIDAY, JUNE 17, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/17/2016 (All day) Australia
Location: Australia

## SATURDAY, JUNE 18, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/18/2016 (All day) Australia
Location: Australia

## SUNDAY, JUNE 19, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office

[redacted]

6/19/2016 (All day) Australia
Location: Australia

## MONDAY, JUNE 20, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/20/2016 (All day) Australia
Location: Australia

## TUESDAY, JUNE 21, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/21/2016 (All day) Australia
Location: Australia

## WEDNESDAY, JUNE 22, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/22/2016 to 6/24/2016 [redacted] vacation
Location: Port Aransas
[redacted]

6/22/2016 (All day) Australia
Location: Australia

## THURSDAY, JUNE 23, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/22/2016 to 6/24/2016 [redacted] vacation
Location: Port Aransas
[redacted]

6/23/2016 (All day) Australia
Location: Australia

## FRIDAY, JUNE 24, 2016

6/8/2016 to 6/24/2016 [redacted] on Vacation
Location: Out of office
[redacted]

6/22/2016 to 6/24/2016 [redacted] vacation
Location: Port Aransas
[redacted]

6/24/2016 (All day) Australia
Location: Australia

## SATURDAY, JUNE 25, 2016

6/25/2016 (All day) Australia
Location: Australia

## MONDAY, JUNE 27, 2016

10:30a to 11:30a REFIC/[redacted]
Location: HFF | 2323 Victory Avenue | Suite 1200 | Dallas, Texas 75219
[redacted]

12:00p to 1:30p REFIC/[redacted] CBRE - lunch
Location: TBD
[redacted]

2:00p to 3:00p REFIC/JLL - [redacted]
Location: JLL Dallas office, 7th floor
[redacted]

## TUESDAY, JUNE 28, 2016

8:30a to 9:30a UT REFIC-[redacted] & [redacted]
Location: Lucky's on Oaklawn
[redacted]

10:00a to 11:00a UT REFIC/[redacted]
Location: Centergy Retail - 8235 Douglas Avenue, Suite 900
[redacted]

11:30a to 1:00p Jody Thornton/Lunch
Location: TBD
[redacted]

## WEDNESDAY, JUNE 29, 2016

11:00a to 12:00p Meet [redacted] and attorney re new case
Location: [redacted] office

11:00a to 12:00p Meeting with [redacted] and [redacted] - expert witness
Location: [redacted] office
[redacted]

12:00p to 1:00p Lunch with [redacted]
Location: Tbd

1:30p to 2:30p REFIC team meeting
[redacted]

2:30p to 3:00p REFIC planning w [redacted]
[redacted]

3:30p to 4:00p Conference call with Reis Services to discuss renewal
Location [redacted] office
[redacted]

3:30p to 4:00p Reis Renewal
Location: https://www.gotomeeting.com/join/652818933
[redacted]

# July 2016

Calendar

July 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

August 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27<br>10:30a REFIC/[redacted]<br>12p REFIC/[redacted]<br>2p REFIC/JLL [redacted] | 28<br>8:30a UT REFIC[redacted]<br>10a UT REFIC/West<br>11:30a[redacted] | 29<br>11a Meet[redacted]<br>11a Meeting with [redacted]<br>12p Lunch with [redacted]<br>+4 | 30 | Jul 1 | 2<br>Hilton Head |
| 3<br>Hilton Head | 4<br>Greg on vacation<br>Hilton Head | 5<br>Hilton Head | 6<br>Hilton Head | 7<br>Hilton Head | 8<br>Hilton Head | 9<br>Hilton Head |
| 10 | 11<br>12:30p REIT model | 12<br>9:30a UT Real Estat<br>11a UT Practicum/S | 13<br>11a Safety talk at U<br>12:30p lunch re: stu | 14<br>8:30a UT REFIC - M<br>11a Safety talk at U | 15<br>9:30a McCombs RE | 16 |
| 17 | 18<br>Safety talk UTPD<br>10a Texas URE Prog<br>12p lunch Sheridan<br>+2 | 19<br>2:45p pick up [redacted] | 20<br>11:30a UT REFIC/Hu<br>2:45p pick up Casey | 21<br>10a Discuss REFIC n<br>2:45p pick up [redacted] | 22<br>11a REFIC Overview<br>2:45p pick up [redacted] | 23 |
| 24 | 25<br>11a Pre-Op appoint<br>12:30p [redacted]<br>1p UT Austin/Lions | 26<br>1p REIT model mee<br>4:30p beers with [redacted] | 27<br>7a Drive to San Ant<br>9a UT REFIC/Hixon<br>10:30a REFIC - Man<br>+2 | 28 | 29<br>10a take [redacted] ca | 30<br>vacation |
| 31<br>vacation | Aug 1 | 2 | 3 | 4 | 5 | 6 |

# July 2016

Calendar

July 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

August 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

## SATURDAY, JULY 02, 2016

7/2/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## SUNDAY, JULY 03, 2016

7/3/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## MONDAY, JULY 04, 2016

7/4/2016 to 7/8/2016 [redacted] on vacation
Location: Out of Office

[redacted]

7/4/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## TUESDAY, JULY 05, 2016

7/4/2016 to 7/8/2016 [redacted] on vacation
Location: Out of Office

[redacted]

7/5/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## WEDNESDAY, JULY 06, 2016

7/4/2016 to 7/8/2016 [redacted] on vacation
Location: Out of Office
[redacted]

7/6/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## THURSDAY, JULY 07, 2016

7/4/2016 to 7/8/2016 [redacted] on vacation
Location: Out of Office
[redacted]

7/7/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## FRIDAY, JULY 08, 2016

7/4/2016 to 7/8/2016 [redacted] on vacation
Location: Out of Office
[redacted]

7/8/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## SATURDAY, JULY 09, 2016

7/9/2016 (All day) Hilton Head
Location: Hilton Head Island, South Carolina, United States

## MONDAY, JULY 11, 2016

12:30p to 1:30p REIT model
Location: My office

## TUESDAY, JULY 12, 2016

9:30a to 10:00a UT Real Estate/JLL - recruiting
Location: Call: 512-232-8670 Passcode: 6543202#
[redacted]

11:00a to 1:00p UT Practicum/South Central Waterfront Initiative
[redacted]

## WEDNESDAY, JULY 13, 2016

11:00a to 12:00p Safety talk at UT
Location: CBA events room

12:30p to 1:30p lunch re: student funds
Location: Carillon
[redacted]

## THURSDAY, JULY 14, 2016

8:30a to 9:30a UT REFIC - [redacted]
Location: Mozart's
[redacted]

11:00a to 12:00p Safety talk at UT
Location: CBA events room

## FRIDAY, JULY 15, 2016

9:30a to 10:00a McCombs RE-PE fund
Location: Dial In: 1-800-308-2601 Passcode: 2123186401 Mobile: (tel://1-800-308-2601,*,,2123186401#)
[redacted]

[redacted]

[redacted]

## MONDAY, JULY 18, 2016

7/18/2016 (All day) Safety talk UTPD
Location: CBA events room

10:00a to 12:00p Texas URE Program Update
Location: Finance Conference Room
[redacted]

[redacted]

12:00p to 1:30p lunch [redacted]
Location: The Carillon (1900 University Ave, Austin, TX, United States)
[redacted]

1:30p to 2:30p Meeting re REIT fund and BIWS
Location: GSB 5.161

2:45p to 3:15p pick up [redacted] at camp

## TUESDAY, JULY 19, 2016

2:45p to 3:15p pick up [redacted] at camp

## WEDNESDAY, JULY 20, 2016

11:30a to 1:00p UT REFIC/[redacted] lunch
Location: Austin Java / Barton Springs Road
[redacted]

2:45p to 3:15p pick up [redacted] at camp

## THURSDAY, JULY 21, 2016

10:00a to 10:45a Discuss REFIC membership and RE Fund
Location: Call 512-232-8670
[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

2:45p to 3:15p pick up [redacted] at camp

## FRIDAY, JULY 22, 2016

11:00a to 12:00p REFIC Overview with MBA Admissions
Location: MBA Program Office Pedernales Falls Conference Room

[redacted]

[redacted]

[redacted]

2:45p to 3:15p pick up [redacted] at camp

## MONDAY, JULY 25, 2016

11:00a to 12:00p Pre-Op appointment
Location: Seton Main - pre-op

[redacted]

12:30p to 1:30p [redacted]
Location: Austin Ortho on 35th

[redacted]

1:00p to 1:30p UT Austin/Lionstone Recruiting Call
Location: 512-232-8670 code: 6543203

[redacted]

[redacted]

[redacted]

## TUESDAY, JULY 26, 2016

1:00p to 4:00p REIT model meeting
Location: GSB 5.161
[redacted]

4:30p to 6:30p beers with [redacted]
Location: School House Pub (2207 Manor Rd, Austin, TX, United States)

## WEDNESDAY, JULY 27, 2016

7:00a to 9:00a Drive to San Antonio
Location: 2604 Oak Haven Drive Austin 78704
[redacted]

9:00a to 9:30a UT REFIC/Hixon Properties
Location: 315 E Commerce St Ste 300
[redacted]

10:30a to 11:30a REFIC - [redacted]
Location: Silver Ventures
[redacted]

12:00p to 1:00p UT REFIC/Lunch
Location: TBD
[redacted]

1:30p to 2:30p UT REFIC - [redacted]
Location: TBD
[redacted]

## FRIDAY, JULY 29, 2016

10:00a to 11:00a take [redacted] car to Volvo shop for AC while in Denver
Location: 6375 East Hwy 290 Austin, Texas 78723

## SATURDAY, JULY 30, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## SUNDAY, JULY 31, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

# August 2016

Calendar

August 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

September 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 31<br>vacation | Aug 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8<br>10:30a Texas MSF C | 9 | 10<br>11:15a knee surger | 11 | 12<br>2p ACL tix - [redacted] | 13 |
| 14 | 15 | 16<br>12:45p [redacted]<br>2p ACL tix - Ben Ha | 17<br>11a CoStar Overvie<br>11a Meeting with [redacted]<br>1:30p MBA Coffee | 18<br>10a Call [redacted] re puni<br>1:30p MS Program : | 19 | 20 |
| 21 | 22 | 23<br>9a UT REFIC/ULI Fe<br>10a UT REFIC/Facul<br>2p RE Practicum | 24<br>11a REFIC Student<br>1:30p MBA Coffee<br>2p meet re REIT mc<br>2p ACL tix - [redacted] | 25<br>10:30a BMW servic<br>1:30p CoStar Analy:<br>4p RE Faculty Meet | 26<br>2p dinner for [redacted] | 27 |
| 28 | 29<br>11:20a [redacted] drivin<br>11:30a BA101 filmin<br>2p Reis Review | 30 | 31<br>10:30a FW: UT REFI<br>12:30p REFIC - [redacted]<br>1:30p MBA Coffee<br>2p REFIC Team Mee | Sep 1<br>7:30a Headshots fo<br>11a RE head shot<br>1p Driving test for ( | 2<br>2p meet [redacted]<br>2:30p meet [redacted]<br>3p meet [redacted]<br>3:30p Meet [redacted] | 3 |

# August 2016

Calendar

**August 2016**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

**September 2016**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |

## MONDAY, AUGUST 01, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## TUESDAY, AUGUST 02, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## WEDNESDAY, AUGUST 03, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## THURSDAY, AUGUST 04, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## FRIDAY, AUGUST 05, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## SATURDAY, AUGUST 06, 2016

7/30/2016 to 8/6/2016 vacation
Location: Denver, Colorado, United States

## MONDAY, AUGUST 08, 2016

10:30a to 11:30a Texas MSF Career Week: Career Exploration Panel
Location: Legacy Events Room - CBA 3.202
[redacted]

## WEDNESDAY, AUGUST 10, 2016

11:15a to 3:30p knee surgery
**Location:** [redacted] Seton
[redacted]

## FRIDAY, AUGUST 12, 2016

2:00p to 2:30p ACL tix - [redacted]
**Location:** gmail

## TUESDAY, AUGUST 16, 2016

12:45p to 1:30p [redacted]
**Location:** Seton Medical Tower - 1301 W 38th St, Austin, TX, United States

2:00p to 2:30p ACL tix - Ben Harper
**Location:** gmail

## WEDNESDAY, AUGUST 17, 2016

11:00a to 12:00p CoStar Overview - [redacted]
**Location:** 100 Congress Ave, Suite 1500, Austin, TX 78701
[redacted]

11:00a to 12:00p Meeting with CoStar
**Location:** 100 Congress Ave;Suite 1500;Austin, TX 78701
[redacted]

1:30p to 2:30p MBA Coffee
**Location:** Carpenter Leadership Center, 3rd Floor GSB
[redacted]

[redacted]

[redacted]

[redacted]

THURSDAY, AUGUST 18, 2016

10:00a to 10:30a Call [redacted] re punis in new matter
Location: Call

1:30p to 3:30p MS Program Staff Mock Interviews
Location: Ford Career Center (4th Floor)

[redacted]

[redacted]

[redacted]

- [redacted]
- [redacted]
- [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted] [redacted]

## TUESDAY, AUGUST 23, 2016

9:00a to 10:00a UT REFIC/ULI Fellows Planning
Location: PLEASE NOTE NEW ADDRESS: 3800 N. Lamar Blvd, Suite 350

[redacted]

10:00a to 11:00a UT REFIC/Faculty Committee touch base
Location: Pennybacker

[redacted]

2:00p to 2:30p RE Practicum
Location: [redacted] office

[redacted]

## WEDNESDAY, AUGUST 24, 2016

11:00a to 2:00p REFIC Student Fall Kick-off
Location: GSB Events (GSB 5.130)

[redacted]

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

[redacted]

2:00p to 3:00p meet re REIT model
Location: GSB 5.161
[redacted]

2:00p to 2:30p ACL tix - [redacted]
Location: gmail

## THURSDAY, AUGUST 25, 2016

10:30a to 12:00p BMW service
Location: BMW of Austin (7011 McNeil Dr, Austin, TX, United States)

1:30p to 3:00p CoStar Analysis - [redacted]
Location: 100 Congress Ave, Suite 1500, Austin, TX 78701
[redacted]

4:00p to 5:30p RE Faculty Meeting
Location: GSB 6.420
[redacted]

## FRIDAY, AUGUST 26, 2016

2:00p to 2:30p dinner for Madrone grooms
Location: Madrone Ranch Trail, Austin, TX, United States

## MONDAY, AUGUST 29, 2016

11:20a to 12:20p [redacted] driving test
Location: 1633 Pat Booker Rd - Universal City, TX, United States

11:30a to 12:30p BA101 filming

Location: TBD

[redacted]

2:00p to 2:30p Reis Review

Location: https://www.gotomeeting.com/join/814389541

[redacted]

## WEDNESDAY, AUGUST 31, 2016

[redacted]

[redacted] to 1:30p REFIC - [redacted]

Location: Headliners

[redacted]

1:30p to 2:30p MBA Coffee

**Location:** Carpenter Leadership Center, 3rd Floor GSB

[redacted]

2:00p to 3:00p REFIC Team Meeting

**Location:** Finance Conference Room

[redacted]

# September 2016

Calendar

September 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

October 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29<br>11:20a [redacted] drivin<br>11:30a BA101 filmin<br>2p Reis Review | 30 | 31<br>10:30a FW: UT REFI<br>12:30p REFIC - [redacted]<br>1:30p MBA Coffee<br>2p REFIC Team Mee | Sep 1<br>7:30a Headshots fo<br>11a RE head shot<br>1p Driving test for ( | 2<br>2p meet [redacted] Mc<br>2:30p meet [redacted]<br>3p meet [redacted]<br>3:30p Meet [redacted] | 3 |
| 4<br>4p Texas MSF Tailga | 5 | 6 | 7<br>1:30p MBA Coffee<br>2p REFIC Team Mee<br>2:30p meet [redacted]<br>4p REIT/PE fund me | 8<br>1:30p Meeting re: R<br>2p Meet re: Firstdo | 9<br>10:30a Austin Trek<br>2p Forensic Finance | 10 |
| 11 | 12<br>1p USGBC / UT Call<br>3p UT Case Study<br>3:30p meet [redacted] | 13<br>11:30a Fall Faculty I | 14<br>1:30p MBA Coffee<br>2p REFIC Team Mee<br>4:30p FAP-REIT info | 15<br>9a root canal<br>2p ACL tix - Band o | 16 | 17 |
| 18 | 19<br>12:30p [redacted] | 20<br>2p ACL tix - Foals | 21<br>11:30a This Time is<br>1:30p MBA Coffee<br>2p REFIC Team Mee<br>3p meeting re RE -<br>+2 | 22<br>4p REFIC Executive | 23<br>10a UT [redacted]<br>2p Meet [redacted] | 24 |
| 25 | 26 | 27 | 28<br>7:30a ULI breakfast<br>1:30p MBA Coffee<br>2p REFIC Team Mee | 29<br>10a review REIT pre<br>2p Brack meeting<br>4:30p REIT Board/U | 30<br>8a McCombs REIT I<br>8a REIT Fund Confe | Oct 1 |

September 2016

Calendar

September 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

October 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

## THURSDAY, SEPTEMBER 01, 2016

7:30a to 2:00p Headshots for Real Estate Faculty
Location: Check-In at CLA 1.302F

[redacted]

11:00a to 11:30a RE head shot
Location: CLA 1.302

1:00p to 1:30p Driving test for [redacted]
Location: 2049 W Stassney Ln - Austin, TX, United States

## FRIDAY, SEPTEMBER 02, 2016

2:00p to 2:30p meet [redacted]
Location: GSB 5.161

2:30p to 3:00p meet [redacted] MSF re consulting
Location: GSB 5.161

3:00p to 3:30p meet [redacted]
Location: GSB 5.161

3:30p to 4:30p Meet [redacted]
Location: GSB 5.161

## SUNDAY, SEPTEMBER 04, 2016

4:00p to 6:30p Texas MSF Tailgate and BBQ (Texas vs Notre Dame)
Location: McCombs - Hall of Honors

[redacted]

[redacted]

## WEDNESDAY, SEPTEMBER 07, 2016

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

2:30p to 3:00p meet [redacted]
Location: GSB 5.161

4:00p to 5:00p REIT/PE fund meet and greet
Location: GSB 3.130

## THURSDAY, SEPTEMBER 08, 2016

1:30p to 2:00p Meeting re: RE courses
Location: GSB 5.161
[redacted]

2:00p to 3:00p Meet re: FirstdownPlaybook
Location: GSB 5.161
[redacted]

## FRIDAY, SEPTEMBER 09, 2016

10:30a to 3:00p Austin Trek - Part I
[redacted]

2:00p to 3:30p Forensic Finance conference valuation presentation
Location: AT&T

## MONDAY, SEPTEMBER 12, 2016

1:00p to 2:00p USGBC / UT Call
[redacted]

[redacted]

3:00p to 3:30p UT Case Study
Location: Dial in: 800-867-9476 / AC: 7155898 / Chair: Chase

[redacted]

3:30p to 4:00p meet [redacted]
Location: GSB 5.161

TUESDAY, SEPTEMBER 13, 2016

11:30a to 1:00p Fall Faculty Meeting & Luncheon
Location: CBA Events Room (CBA 3.304)
[redacted]

## WEDNESDAY, SEPTEMBER 14, 2016

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB
[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

4:30p to 5:30p FAP-REIT info session
Location: UTC 4.110
[redacted]

## THURSDAY, SEPTEMBER 15, 2016

9:00a to 11:00a root canal
Location: Westlake Endodontics (4201 Bee Caves Rd Ste C104, Austin, TX, United States)

[redacted]

2:00p to 2:30p ACL tix - Band of Horses [redacted]
Location: gmail

MONDAY, SEPTEMBER 19, 2016

12:30p to 1:00p [redacted]
Location: Seton Medical Tower (1301 W 38th St, Austin, TX, United States)

TUESDAY, SEPTEMBER 20, 2016

2:00p to 2:30p ACL tix - Foals
Location: gmail

WEDNESDAY, SEPTEMBER 21, 2016

11:30a to 12:30p This Time is Different: The Globalization Impact on Real Estates Growing Appeal and Investment Performance
Location: View Invite for Meeting Details

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

3:00p to 3:30p meeting re RE - [redacted]
Location: GSB 5.161

[redacted]

3:30p to 4:00p TreppAcademicEdition Discussion
Location: Dial-in: 888-204-5987; Conference Code: 4079624

[redacted]

[redacted]

4:00p to 5:00p TA meeting
Location: Gsb 5.161

[redacted]

## THURSDAY, SEPTEMBER 22, 2016

4:00p to 5:30p REFIC Executive Committee call
Location: Call in information will be sent

[redacted]

## FRIDAY, SEPTEMBER 23, 2016

10:00a to 11:00a UT Greg
Location: 100 Congress

[redacted]

2:00p to 2:30p Meet [redacted]
Location: GSB 5.161

[redacted]

## WEDNESDAY, SEPTEMBER 28, 2016

7:30a to 9:00a ULI breakfast
Location: Headliners Club (221 W 6th St Ste 2100, Austin, TX, United States)

Central Health innovation district

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

## THURSDAY, SEPTEMBER 29, 2016

- 10:00a to 10:30a review REIT presentation
  Location: GSB 5.161
  [redacted]

- 2:00p to 4:00p Brack meeting
  Location: Arch deans conference room

- 4:30p to 7:30p REIT Board/UT Alumni Social
  Location: Castle Hill - 1111 West 11th Street
  [redacted]

## FRIDAY, SEPTEMBER 30, 2016

- 8:00a to 2:00p McCombs REIT Fund Board Meeting
  Location: McCombs- Legacy Events Room
  [redacted]

- 8:00a to 2:00p REIT Fund Conference
  [redacted]

# October 2016

Calendar

October 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

November 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28<br>7:30a ULI breakfast<br>1:30p MBA Coffee<br>2p REFIC Team Mee | 29<br>10a review REIT pre<br>2p Brack meeting<br>4:30p REIT Board/U | 30<br>8a McCombs REIT I<br>8a REIT Fund Confe | Oct 1 |
| 2 | 3<br>3:30p meeting with<br>4p Meeting with Ja<br>4:30p call [redacted] | 4 | 5<br>1:30p MBA Coffee<br>2p REFIC Team Mee<br>4p crown | 6<br>10a [redacted]<br>1p Green Street Off<br>2p RE PE fund | 7 | 8 |
| 9 | 10<br>12p NYC Prep Sessi | 11 | 12<br>11a RE Fund Develo<br>12p lunch with She<br>1:30p MBA Coffee<br>+2 | 13<br>1:30p Call with [redacted]<br>3:30p Center meeti | 14 | 15 |
| 16 | 17<br>Real Estate New York Trek/MBA Investmen | 18 | 19<br>11a real estate ener<br>12p [redacted]<br>1:30p MBA Coffee<br>+3 | 20<br>10:23a [redacted]<br>2:05p [redacted] | 21 | 22 |
| 23 | 24<br>ULI Fall Meeting | 25 | 26<br>8a ULI product cou<br>1:30p MBA Coffee<br>+1 | 27<br>1p Follow-Up Call v<br>2:30p [redacted] re ca<br>+1 | 28<br>2p Univ. of Texas PI | 29 |
| 30 | 31<br>10a [redacted]<br>11a call re DFA and | Nov 1<br>11a Real Estate Pan | 2<br>10:30a Quick Call re<br>1:30p MBA Coffee<br>2p REFIC Team Mee | 3<br>12p RCA/ U Texas R<br>12:30p Invitation: M<br>2p UT Real Estate P | 4<br>Houston Trek | 5 |

# October 2016

Calendar

October 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

November 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |

## MONDAY, OCTOBER 03, 2016

3:30p to 4:00p meeting with [redacted] PE set up
**Location:** [redacted] office

[redacted]

4:00p to 4:30p Meeting with [redacted] Ut Project
**Location:** [redacted] office GSB 2.104

[redacted]

4:30p to 5:00p call [redacted] re PE fund
**Location:** I call

[redacted]

## WEDNESDAY, OCTOBER 05, 2016

1:30p to 2:30p MBA Coffee
**Location:** Carpenter Leadership Center, 3rd Floor GSB

[redacted] Butler [redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

4:00p to 6:00p crown
Location: Hills Dental Spa
[redacted]

THURSDAY, OCTOBER 06, 2016

10:00a to 10:30a [redacted] - Phone Discussion 3rd Semester of Fund
Location: (512) 426-7671
[redacted]

1:00p to 1:30p Green Street Office webinar
Location: ipad

2:00p to 2:30p RE PE fund
Location: [redacted]ffice
[redacted]

MONDAY, OCTOBER 10, 2016

12:00p to 1:00p NYC Prep Session
Location: MSB Conference Room CBA 6.420
[redacted]

[redacted]

WEDNESDAY, OCTOBER 12, 2016

11:00a to 11:45a RE Fund Development Call
Location: CONFERENCE LINE TO BE ADDED

[redacted]

12:00p to 1:00p lunch with [redacted]
Location: AT&T

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

2:00p to 3:00p REFIC Team Meeting

Location: Finance Conference Room

[redacted]

2:30p to 3:00p Real Estate visit

Location: Finance conference room

[redacted]

## THURSDAY, OCTOBER 13, 2016

1:30p to 2:00p Call with [redacted] on PE fund

3:30p to 4:30p Center meeting of the minds

Location: [redacted] office?

[redacted]

## MONDAY, OCTOBER 17, 2016

10/17/2016 to 10/18/2016 Real Estate New York Trek/MBA Investment Banking

[redacted]

## TUESDAY, OCTOBER 18, 2016

10/17/2016 to 10/18/2016 Real Estate New York Trek/MBA Investment Banking

[redacted] y

[redacted]

## WEDNESDAY, OCTOBER 19, 2016

11:00a to 11:30a real estate energy savings project

Location: [redacted] office

[redacted]

12:00p to 1:30p [redacted] Real Estate contact introductions
Location: Carillon
[redacted]

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB
[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

2:30p to 3:00p update
Location: GSB 5.161
[redacted]

3:00p to 3:30p meeting re RE 378
Location: GSB 5.161
[redacted]

THURSDAY, OCTOBER 20, 2016

10:23a to 12:36p [redacted], Flight to ATLANTA, GA - EKQMAR
Location: AUSTIN, TX

[redacted]

2:05p to 3:26p [redacted], Flight to RALEIGH DURHAM, NC - EKQMAR
Location: ATLANTA, GA

[redacted]

[redacted]

## MONDAY, OCTOBER 24, 2016

10/24/2016 to 10/27/2016 ULI Fall Meeting
Location: Dallas
[redacted]

## TUESDAY, OCTOBER 25, 2016

10/24/2016 to 10/27/2016 ULI Fall Meeting
Location: Dallas
[redacted]

## WEDNESDAY, OCTOBER 26, 2016

10/24/2016 to 10/27/2016 ULI Fall Meeting
**Location:** Dallas
[redacted]

8:00a to 10:00a ULI product council macro talk
**Location:** Dallas

1:30p to 2:30p MBA Coffee
**Location:** Carpenter Leadership Center, 3rd Floor GSB
[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
**Location:** Finance Conference Room
[redacted]

THURSDAY, OCTOBER 27, 2016

10/24/2016 to 10/27/2016 ULI Fall Meeting
**Location:** Dallas
[redacted]

[redacted]

1:00p to 1:30p Follow-Up Call [redacted]

[redacted]

2:30p to 3:00p [redacted]re careers
Location: GSB 5.161

[redacted]

3:30p to 4:00p meet re: tax speakers
Location: GSB 5.161

[redacted]

FRIDAY, OCTOBER 28, 2016

2:00p to 3:00p Univ. of Texas PE RE Fund
Location: GH to call LM

[redacted]

[redacted]

MONDAY, OCTOBER 31, 2016

10:00a to 10:30a [redacted]

11:00a to 11:30a call re DFA and FF

[redacted]

# November 2016

Calendar

**November 2016**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

**December 2016**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | 31<br>10a [redacted]<br>11a call re DFA and | Nov 1<br>11a Real Estate Pan | 2<br>10:30a Quick Call re<br>1:30p MBA Coffee<br>2p REFIC Team Mee | 3<br>12p RCA/ U Texas R<br>12:30p Invitation: N<br>2p UT Real Estate P | 4<br>Houston Trek | 5 |
| 6<br>12a | 7<br>2:15p [redacted] | 8<br>11a UT RE Practicur | 9<br>12p UT Real Estate<br>1:30p MBA Coffee<br>2p REFIC Team Mee<br>3p meeting | 10<br>11a REIT analyst int<br>2:30p meet [redacted]<br>3p meet [redacted] | 11<br>12p REIT analyst int<br>2p U Texas / RCA R<br>2p<br>2:30p [redacted]<br>+1 | 12 |
| 13 | 14<br>11a REFIC - [redacted] | 15<br>1p PE fund update | 16<br>REFIC Council Fall N<br>8a UT REFIC \| Execu<br>9a UT REFIC \| Comr<br>10a UT REFIC \| Boa<br>+3 | 17<br>National Real Estate | 18<br>3:30p meet re scho | 19 |
| 20 | 21 | 22 | 23<br>1:30p MBA Coffee | 24 | 25 | 26 |
| 27 | 28 | 29<br>2p call [redacted] re | 30<br>1:30p MBA Coffee<br>2p REFIC Team Mee | Dec 1<br>3p [redacted] etire | 2<br>10a UT REFIC \| Fall<br>11a Practicum mee<br>12p Lunch<br>1p project review | 3 |

# November 2016

Calendar

November 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

December 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## TUESDAY, NOVEMBER 01, 2016

11:00a to 1:00p Real Estate Panel - coincides w/ Practicum course
Location: SAC Ballroom

[redacted]

## WEDNESDAY, NOVEMBER 02, 2016

10:30a to 11:00a Quick Call re valuation
Location: 512 426 7671

[redacted]

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

THURSDAY, NOVEMBER 03, 2016

12:00p to 12:30p RCA/ U Texas Renewal Discussion
Location: phone
[redacted]

12:30p to 12:50p Invitation: Meeting with [redacted] Interview @ Thu Nov 3, 2016 12:30pm - 12:50pm (CDT) [redacted]
Location: GSB 5.161
[redacted]

[redacted]

more details »

[redacted]

2:00p to 4:00p UT Real Estate Practicum - UT Brackenridge Tract work session
Location: SUTTON (SUT) 3.112
[redacted]

FRIDAY, NOVEMBER 04, 2016

11/4/2016 (All day) Houston Trek
[redacted]

SUNDAY, NOVEMBER 06, 2016

12:00a to 12:30a

MONDAY, NOVEMBER 07, 2016

2:15p to 2:45p [redacted]
**Location:** Seton Medical Center, 35th

TUESDAY, NOVEMBER 08, 2016

11:00a to 1:00p UT RE Practicum - South Central Waterfront
**Location:** McCombs: MSB conference room, GSB 6.420 (see map attached)

[redacted]

[redacted]

WEDNESDAY, NOVEMBER 09, 2016

12:00p to 1:00p UT Real Estate Finance and Investment & NGKF Meeting
**Location:** Carillon at the AT&T center

[redacted]

[redacted]

1:30p to 2:30p MBA Coffee
**Location:** Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

3:00p to 3:30p meeting
Location: GSB 5.161
[redacted]

[redacted]

## THURSDAY, NOVEMBER 10, 2016

11:00a to 4:00p REIT analyst interviews
Location: GSB 5.161

2:30p to 3:00p meet [redacted], MBA app
Location: GSB 5.161

3:00p to 3:30p meet [redacted]
Location: GSB 5.161

## FRIDAY, NOVEMBER 11, 2016

12:00p to 4:00p REIT analyst interviews
Location: GSB 5.161

2:00p to 3:00p U Texas / RCA Renewal Discussion
Location: phone
[redacted]

[redacted]

2:00p to 2:30p

2:30p to 3:30p [redacted] - conference prep

[redacted]

4:00p to 4:30p [redacted] /University of Texas - McCombs School of Business
Location [redacted] will call [redacted]

[redacted]

## MONDAY, NOVEMBER 14, 2016

11:00a to 11:30a REFIC - [redacted]
Location: Call: 512 232-8670 Code: 6543206#

[redacted]

## TUESDAY, NOVEMBER 15, 2016

1:00p to 2:00p PE fund update and lunch
Location: AT&T Carillon

[redacted]

## WEDNESDAY, NOVEMBER 16, 2016

11/16/2016 (All day) REFIC Council Fall Meeting

[redacted]

8:00a to 9:00a UT REFIC | Executive Committee Meeting
Location: AT&T Executive Conference Center - Room TBD

[redacted]

9:00a to 10:00a UT REFIC | Committee Meetings
Location: AT&T Executive Center - rooms TBD

[redacted]

[redacted]

10:00a to 11:00a UT REFIC | Board of Directors Meeting
**Location:** AT&T Executice Conference Center - room TBD

[redacted]

1:30p to 2:30p MBA Coffee
**Location:** Carpenter Leadership Center, 3rd Floor GSB

[redacted]

2:00p to 4:00p MSB foundation boared meeting
**Location:** Dean's conference room

[redacted]

2:00p to 3:00p REFIC Team Meeting
**Location:** Finance Conference Room

[redacted]

THURSDAY, NOVEMBER 17, 2016

11/17/2016 (All day) National Real Estate Challenge

[redacted]

FRIDAY, NOVEMBER 18, 2016

3:30p to 4:30p meet re schools and names

**Location:** GH office

[redacted]

WEDNESDAY, NOVEMBER 23, 2016

1:30p to 2:30p MBA Coffee

**Location:** Carpenter Leadership Center, 3rd Floor GSB

[redacted]

TUESDAY, NOVEMBER 29, 2016

2:00p to 2:30p call [redacted] re RE PhD
Location: I call her cell - see email

WEDNESDAY, NOVEMBER 30, 2016

1:30p to 2:30p MBA Coffee
Location: Carpenter Leadership Center, 3rd Floor GSB

[redacted]

[redacted]

[redacted]

[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

# December 2016

Calendar

December 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

January 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28 | 29<br>2p call [redacted] re | 30<br>1:30p MBA Coffee<br>2p REFIC Team Mee | Dec 1<br>3p [redacted] retire | 2<br>10a UT REFIC \| Fall<br>11a Practicum mee<br>12p Lunch<br>1p project review | 3 |
| 4 | 5 | 6 | 7<br>11a ULI Hines Com<br>11:30a Lunch - [redacted]<br>12p SPORTS SAFE (<br>2p REFIC Team Mee | 8<br>11:30a Lunch - [redacted]<br>3p GRES Salary & N | 9<br>1p [redacted]eview<br>2:30p University of<br>4p RE Practicum dc | 10 |
| 11 | 12<br>1p<br>1p Review prep | 13 | 14<br>7:30a ULI Breakfast<br>9:30a [redacted]<br>11a [redacted]annua<br>3:30p Coffee with C | 15<br>3p FW: Farewell Ha | 16<br>11a call with [redacted]<br>11a U. Texas RE PE<br>1:30p Meeting with | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

# December 2016

Calendar

December 2016

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

January 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

## THURSDAY, DECEMBER 01, 2016

3:00p to 5:00p [redacted]etirement party
Location: Legacy Events room

## FRIDAY, DECEMBER 02, 2016

10:00a to 11:00a UT REFIC | Fall conference download and recap
Location: Call: 512-232-8670 Code: 6543207#
[redacted]

11:00a to 12:00p Practicum meeting
Location: [redacted] office

12:00p to 1:00p Lunch
Location: TBD
[redacted]

1:00p to 1:45p project review
Location: gsb 5.161
[redacted]

## WEDNESDAY, DECEMBER 07, 2016

11:00a to 1:00p ULI Hines Competition Prep Session
Location: CBA Events Room (CBA 3.304)
[redacted]

[redacted]

11:30a to 1:00p Lunch - [redacted]
Location: The Carillion
[redacted]

12:00p to 1:30p SPORTS SAFE Conucssion Appointment
Location: 1500 West 38th St., Suite 25, Austin, TX 78731
[redacted]

2:00p to 3:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## THURSDAY, DECEMBER 08, 2016

11:30a to 1:00p Lunch - [redacted]
Location: Takoba?
[redacted]

3:00p to 4:00p GRES Salary & Negotiations Workshop
Location: MSB Conference Room (CBA 6.420)
[redacted]

## FRIDAY, DECEMBER 09, 2016

1:00p to 2:00p [redacted] review
Location: [redacted] office
[redacted]

2:30p to 3:30p University of Texas - Private Equity Real Estate Fund Tax Call
Location: Dial In: 1-800-308-2601 Passcode: 2123186784 Mobile: (tel://1-800-308-2601,*,,2123186784#)
[redacted]

[redacted]

4:00p to 6:00p RE Practicum download
Location: Gabriel's

[redacted]

MONDAY, DECEMBER 12, 2016

1:00p to 2:00p

1:00p to 2:00p Review prep
Location: Greg's office

[redacted]

WEDNESDAY, DECEMBER 14, 2016

7:30a to 9:00a ULI Breakfast
Location: Headliner's club 5th and LaVaca/Colorado

[redacted]

9:30a to 10:30a [redacted]
Location: Annie's Cafe - 319 Congress

[redacted]

11:00a to 12:00p [redacted] annual review
Location: [redacted] office
[redacted]

3:30p to 4:00p Coffee with [redacted]
Location: Gabriels

THURSDAY, DECEMBER 15, 2016

3:00p to 5:00p FW: Farewell Happy Hour for [redacted]
Location: Gabriel's AT&T
[redacted]

[redacted]

[redacted]

FRIDAY, DECEMBER 16, 2016

11:00a to 12:00p call with [redacted] re REPE
Location: my office
[redacted]

11:00a to 11:30a U. Texas RE PE Fund Call
Location: Dial In: 1-800-308-2601 Passcode: 2123186784 Mobile: (tel://1-800-308-2601,*,,2123186784#)
[redacted]

[redacted]

1:30p to 2:00p Meeting with [redacted] re REIT fund
Location: GSB 5.161
[redacted]

# January 2017

Calendar

**January 2017**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**February 2017**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Jan 1 | 2 | 3 | 4 | 5 | 6<br>1:44p Flight Austin | 7 |
| 8<br>10:29a Flight Chica( | 9 | 10 | 11 | 12<br>9:30a [redacted] subp(<br>3p REFIC Team Mee | 13 | 14 |
| 15 | 16 | 17<br>First day of class | 18<br>12p Real Estate Spr | 19<br>7:30a Austin Home<br>3p REFIC Team Mee | 20<br>10a | 21 |
| 22 | 23<br>3p [redacted] | 24 | 25 | 26<br>3p REFIC Team Mee | 27<br>10:30a Branding St | 28 |
| 29 | 30 | 31 | Feb 1<br>4p Real Estate Care | 2<br>3p REFIC Team Mee | 3 | 4 |

# January 2017

Calendar

January 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

February 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |

## FRIDAY, JANUARY 06, 2017

1:44p to 4:44p Flight Austin to Chicago AA 1344
Location: Austin airport

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted] [redacted] [redacted]

[redacted]

## SUNDAY, JANUARY 08, 2017

10:29a to 1:29p Flight Chicago to Austin AA 1344
Location: O'Hare

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted] [redacted] [redacted]

[redacted]

[redacted]

## THURSDAY JANUARY 12 2017

9:30a to 3:30p [redacted] subpoena deposition
Location: Tuggey Rosenthal Pauerstein (755 E Mulberry Ave Ste 200, San Antonio, TX 78212, US)

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## TUESDAY, JANUARY 17, 2017

1/17/2017 (All day) First day of class

## WEDNESDAY, JANUARY 18, 2017

12:00p to 2:00p Real Estate Spring Kick-off Lunch
Location: GSB Events Room- 5.130

[redacted]

[redacted]

## THURSDAY, JANUARY 19, 2017

7:30a to 10:30a Austin Home Builders macro talk econ forecast (25 minutes)
Location: JW Marriott Ballroom

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## FRIDAY, JANUARY 20, 2017

10:00a to 10:30a
Location: legacy events room

[redacted]

[redacted]

## MONDAY, JANUARY 23, 2017

3:00p to 4:00p [redacted] - Austin connections
Location: [redacted] office (GSB 2.104)

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

THURSDAY, JANUARY 26, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

FRIDAY, JANUARY 27, 2017

10:30a to 11:30a Branding Study Focus Group with Sol Marketing
Location: Communications Conference Room GSB 5.144

[redacted]

[redacted]

[redacted]

# February 2017

Calendar

January 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

February 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | Feb 1<br>4p Real Estate Care | 2<br>3p REFIC Team Mee | 3 | 4 |
| 5 | 6 | 7 | 8 | 9<br>3p REFIC Team Mee | 10 | 11 |
| 12 | 13 | 14 | 15 | 16<br>UNC Development Challenge<br>3p REFIC Team Mee | 17<br>UNC Development Challenge<br>Dallas Trek | 18 |
| 19 | 20 | 21 | 22 | 23<br>3p REFIC Team Mee | 24 | 25 |
| 26 | 27 | 28 | Mar 1 | 2<br>3p REFIC Team Mee | 3 | 4 |

# February 2017

Calendar

January 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

February 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |

## WEDNESDAY, FEBRUARY 01, 2017

4:00p to 7:00p Real Estate Career Expo
Location: McCombs Atrium

[redacted]

[redacted]

## THURSDAY, FEBRUARY 02, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## THURSDAY, FEBRUARY 09, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## THURSDAY, FEBRUARY 16, 2017

2/16/2017 to 2/17/2017 UNC Development Challenge
Location: Chapel Hill, NC

[redacted]

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## FRIDAY, FEBRUARY 17, 2017

2/16/2017 to 2/17/2017 UNC Development Challenge
Location: Chapel Hill, NC
[redacted]

2/17/2017 (All day) Dallas Trek
[redacted]

## THURSDAY, FEBRUARY 23, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

[redacted]

# March 2017

Calendar

March 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

April 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | Mar 1 | 2<br>3p REFIC Team Mee | 3 | 4 |
| 5 | 6 | 7 | 8 | 9<br>3p REFIC Team Mee | 10 | 11 |
| 12 | 13 | 14 | 15 | 16<br>1p Anniversary<br>3p REFIC Team Mee | 17 | 18 |
| 19 | 20 | 21 | 22 | 23<br>3p REFIC Team Mee | 24 | 25 |
| 26 | 27 | 28 | 29 | 30<br>3p REFIC Team Mee | 31 | Apr 1 |

# March 2017

Calendar

March 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

April 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |

## THURSDAY, MARCH 02, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## THURSDAY, MARCH 09, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## THURSDAY, MARCH 16, 2017

1:00p to 2:00p Anniversary

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## THURSDAY, MARCH 23, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room
[redacted]

## THURSDAY, MARCH 30, 2017

3:00p to 4:00p REFIC Team Meeting

Location: Finance Conference Room

[redacted]

[redacted]

# April 2017

Calendar

April 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

May 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30<br>3p REFIC Team Mee | 31 | Apr 1 |
| 2 | 3 | 4 | 5 | 6<br>3p REFIC Team Mee | 7 | 8 |
| 9 | 10 | 11 | 12 | 13<br>3p REFIC Team Mee | 14 | 15 |
| 16 | 17 | 18 | 19 | 20<br>8a Spring Confer en<br>3p REFIC Team Mee | 21 | 22<br>11:30a London fina |
| 23 | 24 | 25 | 26 | 27<br>3p REFIC Team Mee | 28 | 29 |
| 30 | May 1 | 2 | 3 | 4<br>3p REFIC Team Mee | 5 | 6 |

# April 2017

Calendar

April 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

May 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

## THURSDAY, APRIL 06, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

## THURSDAY, APRIL 13, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

## THURSDAY, APRIL 20, 2017

8:00a to 3:00p Spring Conference
Location: AT&T

[redacted]

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

## SATURDAY, APRIL 22, 2017

11:30a to 1:30p London finance intro
Location: TBD

## THURSDAY, APRIL 27, 2017

3:00p to 4:00p REFIC Team Meeting

Location: Finance Conference Room

[redacted]

[redacted]

# May 2017

Calendar

May 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

June 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | May 1 | 2 | 3 | 4<br>3p REFIC Team Mee | 5 | 6 |
| 7 | 8 | 9 | 10 | 11<br>3p REFIC Team Mee | 12 | 13 |
| 14 | 15 | 16 | 17 | 18<br>3p REFIC Team Mee | 19 | 20 |
| 21 | 22 | 23 | 24 | 25<br>3p REFIC Team Mee | 26 | 27 |
| 28 | 29 | 30 | 31 | Jun 1 | 2 | 3 |

# May 2017

Calendar

May 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

June 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |

## THURSDAY, MAY 04, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## THURSDAY, MAY 11, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## THURSDAY, MAY 18, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

## THURSDAY, MAY 25, 2017

3:00p to 4:00p REFIC Team Meeting
Location: Finance Conference Room

[redacted]

[redacted]

Calendar

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | Jun 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | Jul 1 |

# July 2017

Calendar

July 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

August 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | Jul 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | Aug 1 | 2 | 3 | 4 | 5 |

# August 2017

Calendar

August 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

September 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | 31 | Aug 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | Sep 1 | 2 |

# September 2017

Calendar

September 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

October 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | Sep 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

# October 2017

Calendar

October 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

November 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Oct 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | Nov 1 | 2 | 3 | 4 |

# November 2017

Calendar

November 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

December 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | Nov 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | Dec 1 | 2 |

# December 2017

Calendar

December 2017

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

January 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | Dec 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | Jan 1 | 2 | 3 | 4 | 5 | 6 |

# January 2018

Calendar

January 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

February 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 31 | Jan 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15<br>9a SNL Contract Exp | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | Feb 1 | 2 | 3 |

# February 2018

Calendar

February 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | | | |

March 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | Feb 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | Mar 1 | 2 | 3 |

# March 2018

Calendar

March 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

April 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | Mar 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16<br>1p Anniversary | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

# April 2018

Calendar

April 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

May 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Apr 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | May 1 | 2 | 3 | 4 | 5 |

# May 2018

Calendar

May 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

June 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | May 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | Jun 1 | 2 |

# June 2018

Calendar

June 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

July 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | Jun 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

July 2018

Calendar

July 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

August 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Jul 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | Aug 1 | 2 | 3 | 4 |

# August 2018

Calendar

August 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

September 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | 31 | Aug 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | Sep 1 |

# September 2018

Calendar

September 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

October 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | Sep 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | Oct 1 | 2 | 3 | 4 | 5 | 6 |

# October 2018

Calendar

October 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

November 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | Oct 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | Nov 1 | 2 | 3 |

November 2018

Calendar

November 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

December 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | Nov 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | Dec 1 |

# December 2018

Calendar

December 2018

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

January 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 25 | 26 | 27 | 28 | 29 | 30 | Dec 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | Jan 1 | 2 | 3 | 4 | 5 |

# January 2019

Calendar

January 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 31 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

February 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | 31 | Jan 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | Feb 1 | 2 |

# February 2019

Calendar

February 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | | |

March 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | Feb 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | Mar 1 | 2 |

# March 2019

Calendar

March 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 24 | 25 | 26 | 27 | 28 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

April 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 24 | 25 | 26 | 27 | 28 | Mar 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16<br>1p Anniversary |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | Apr 1 | 2 | 3 | 4 | 5 | 6 |

# April 2019

Calendar

April 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

May 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 31 | Apr 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | May 1 | 2 | 3 | 4 |

# May 2019

Calendar

May 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

June 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | May 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | Jun 1 |

# June 2019

Calendar

June 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

July 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | 29 | 30 | 31 | Jun 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | Jul 1 | 2 | 3 | 4 | 5 | 6 |

# July 2019

Calendar

July 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

August 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 30 | Jul 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | Aug 1 | 2 | 3 |

# August 2019

Calendar

August 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

September 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 28 | 29 | 30 | 31 | Aug 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

# September 2019

Calendar

September 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

October 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Sep 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | Oct 1 | 2 | 3 | 4 | 5 |

# October 2019

Calendar

October 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 29 | 30 | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

November 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 29 | 30 | Oct 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | Nov 1 | 2 |

# November 2019

Calendar

November 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

December 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 27 | 28 | 29 | 30 | 31 | Nov 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

# December 2019

Calendar

December 2019

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

January 2020

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | 1 |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| Dec 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | Jan 1 | 2 | 3 | 4 |

# Exhibit H



3rd

# Greg Hallman

Senior Lecturer in Finance at University of Texas at Austin

McCombs School of Business, University of Texas at Austin • The University of Texas at Austin - Red McCombs School of I

Austin, Texas Area • 500+

InMail Connect

Graduated University of Texas with a PhD in Finance in 1996. Then worked in consulting in the Bay Area at Putnam, Hayes & Bartlett, and InteCap until 2002. In 2002 joined the faculty at The University of Texas McCombs Graduate School of Business in the finance department. I have been teaching MBA finance and real estate finance courses here at UT since 2002. In additional to my teaching I also serve as the Director of the McCombs REIT Investment Fund and Director of McCombs Master of Science in Finance (MSF) program. While teaching I have continued my consulting practice in litigation consulting and expert testimony.

Specialties: Financial analysis and valuation; real estate finance; mortgage backed securities; litigation consulting and expert testimony in commercial damages and securities See less

## Experience

**Senior Lecturer in Finance and Real Estate Finance**
McCombs School of Business, University of Texas at Austin
2002 – Present • 15 yrs • Austin, Texas

Teach graduate and undergraduate classes in valuation, corporate finance, real estate finance, and structured debt products (mortgage backed securities). Serve as the Director of the McCombs REIT Fund, a student-managed investment fund invested 100% in US Equity REITs. Also serve as the Director of the McCombs MSF program, a one-year Masters program in finance.

See less

**Senior Consultant**
Charles River Associates
May 2007 – Mar 2013 • 5 yrs 11 mos

See description

**Visiting Professor of Finance**
IE (Instituto de Empresa) Business School
2006 – 2008 • 2 yrs • Madrid, Spain

See description

**Managing Director**
InteCap
1999 – 2002 • 3 yrs • Palo Alto, CA

See description

**Contact and Personal Info**
Greg's Profile
See more




**People Also Viewed**



**Jay Hartzell** • 3rd
Dean, McCombs School of Busir



**Sanford Leeds** • 3rd
Distinguished Senior Lecturer a University of Texas at Austin



**Joe Hahn** • 3rd
Clinical Associate Professor of F and Director of Master of Scienc Finance (MSF) Program

**Rachel Allen** • 3rd
Program Director - Real Estate F & Investment Center

**John C. Butler** • 3rd
Clinical Associate Professor at T University of Texas

**Renée de Lota** • 3rd
Texas MS Programs Manager at McCombs School of Business, T University of Texas at Austin

**Ken Wiles, PhD, CFA** • 3rd
Clinical Associate Prof. of Finan Associate Dir. Hicks, Muse, Tate Private Equity Center

**Scott Lauger** • 3rd
Graduate Program Administrato McCombs School of Business

**Mandy Pope, PLA, LEED AP**
Managing Director | Real Estate at UT McCombs School of Busin

Search

1996 – 1999 • 3 yrs • Palo Alto, CA

## Education

**The University of Texas at Austin - Red McCombs School of Business**
PhD, Finance
1990 – 1996

**Tulane University - A.B. Freeman School of Business**
MBA, Finance
1986 – 1988

**University of Virginia**
BA, Chemistry
1981 – 1985
Activities and Societies: Phi Kappi Psi

LinkedIn

About
Careers
Advertising
Mobile

Talent Solutions
Marketing Solutions
Sales Solutions
Small Business

Community Guidelines
Privacy & Terms
Send feedback

Questions?
Visit our Help Center.

Manage your account and privacy.
Go to your Settings.

Search

# Exhibit I

**From:** Greg Hallman <Greg.Hallman@mccombs.utexas.edu>
**Sent:** Friday, December 23, 2016 10:56 AM
**To:** Hershman, Jordan D.
**Cc:** Frank, Jason D.; Renshaw, Emily E.; Harb, William R.
**Subject:** Re: OPERS -- Subpoena

Dear Mr Hershman,

Subpoena received, no need for professional service. I see that the document request is due by the 6th. I would prefer to have any deposition the week of the 9th. I am working with students on a ULI real estate case competition that week but could get downtown most anytime that week you guys want to talk.

Happy holidays.

Dr. Hallman

Sent from my iPad

On Dec 23, 2016, at 10:42 AM, Hershman, Jordan D. <jordan.hershman@morganlewis.com> wrote:

> Professor Hallman: From an email I received this morning from Bill Markovitz, I understand you are now on notice of our interest in obtaining some documents from you through a subpoena. The subpoena for documents is attached. Can you please confirm email response, asap today, that agree to accept service of this subpoena? Should you not agree to do so, we will need to hire a process server to serve you personally these same papers today or over the holidays, which we would think you would want to avoid, but the decision is yours. Please let us know, asap this morning, your preference.
>
> In addition, we understand from Bill Markovitz that you are available to be deposed between December 30 and January 17. Could you please confirm that is the case, and also let us know on what specific days you are available to be deposed?
>
> Thanks very much and happy holidays.
>
> Jordan D. Hershman
> Leader – Securities Litigation
> Morgan, Lewis & Bockius LLP
> One Federal Street | Boston, MA 02110
> Direct: +1.617.951.8455 | Mobile: +1.617.875.7807 | Fax: +1.617.951.8736
> jordan.hershman@morganlewis.com | www.morganlewis.com
> Assistant: Brenda A. Kelly
> Direct: +1.617.951.8041 | Main: +1.617.951.8000 | Fax: +1.617.951.8736
> brenda.kelly@morganlewis.com | www.morganlewis.com
>
> ---
>
> **From**: Frank, Jason D.
> **Sent**: Thursday, December 22, 2016 07:39 PM Eastern Standard Time
> **To**: bmarkovits@msdlegal.com <bmarkovits@msdlegal.com>; Chris Stock (CStock@msdlegal.com) <CStock@msdlegal.com>
> **Cc**: Volpe, Frank R. <fvolpe@sidley.com>; Adam Fotiades (afotiades@zuckerman.com) <afotiades@zuckerman.com>; Carl Kravitz <ckravitz@zuckerman.com>; Caroline E. Reynolds

(creynolds@zuckerman.com) <creynolds@zuckerman.com>; Sasha W. Miller (smiller@zuckerman.com) <smiller@zuckerman.com>; Hershman, Jordan D.; Harb, William R.; Renshaw, Emily E.; James Goldfarb <jgoldfarb@mmlawus.com>; Jonathan Bashi (jonathan.bashi@mmlawus.com) <jonathan.bashi@mmlawus.com>; Joseph McFarlane (joseph.mcfarlane@dechert.com) <joseph.mcfarlane@dechert.com>; Michael Doluisio <michael.doluisio@dechert.com>; Michael V. Rella Esq. (michael.rella@mmlawus.com) <michael.rella@mmlawus.com>
**Subject**: OPERS -- Subpoena

Bill and Chris:

Attached are the following documents:

1. Freddie Mac's Subpoena Duces Tecum directed to Dr. Hallman, along with Exhibit A attached thereto; and

2. a Notice of Subpoena Duces Tecum regarding the subpoena to Dr. Hallman.

As set forth in Jordy's email of earlier today, please let us know as soon as possible if you will accept service of the subpoena on behalf of Dr. Hallman.

Best regards,

Jason

**Jason Frank**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110
Direct: 617.951.8153 | Main: 617.951.8000 | Fax: 617.951.8736
jason.frank@morganlewis.com | www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

<2016.12.22 Subpoena Duces Tecum to Dr. Greg Hallman.pdf>

<2016.12.22 Notice of Subpoena Duces Tecum to Dr. Greg Hallman.pdf>