**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, On Behalf of Itself and all Others Similarly Situated, | ) | CIVIL ACTION NO. 4:08-CV-00160 |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY S. PISZEL AND EUGENE M. McQUADE, | ) | **AFFIDAVIT OF MUKESH BAJAJ, PH.D.** |
| Defendants. | ) | |

Mukesh Bajaj, being first duly sworn, deposes and states as follows:

1. I am over eighteen years of age and have personal knowledge of the facts set forth herein.

2. I am a Managing Director and the Global Head of the Securities and Finance Practice at Navigant Economics LLC, a consulting firm that applies economic and financial analysis to legal, regulatory and business matters. My curriculum vitae is attached as Appendix 1.

3. In 1988, I graduated from the University of California at Berkeley earning a Ph.D. in Business Administration with a specialty in finance. I was awarded an M.B.A. from the University of Texas at Austin in 1987. I was awarded a Bachelor of Technology degree in 1981 from the Indian Institute of Technology in Delhi, India.

4. As a financial economist, I specialize in the study of capital markets, including the valuation of stocks, bonds, warrants, restricted stock and other complex contingent securities, intellectual property, intangible assets, corporate hedging practices (through derivatives and other methods), conducting event studies to determine the significance of stock price reactions to

particular events, and analyzing market efficiency, materiality and loss causation issues related to securities class action claims.

5. Since 1996, I have been engaged as an expert on numerous matters involving valuation of firms and their securities, intangible assets and intellectual property. I have testified as an expert either in court or at deposition in 65 matters, including 28 matters concerning class certification, liability, and/or damages issues in securities fraud cases. In such securities fraud cases, I have testified on behalf of the U.S. Securities and Exchange Commission ("SEC") and the U.S. Attorney's Office, as well as on behalf of both plaintiffs and defendants in civil and criminal matters.

6. I have been asked on numerous occasions to examine the efficiency of the markets of various securities including equities, preferred securities and corporate bonds. The empirical methods I have considered in this context are consistent with the standards that financial economists use as well as the standards that courts use to determine the efficiency of the market of the specific security in question.

7. In addition to my work with Navigant, I am also a practicing academic with an active research program. I have taught graduate-level courses in corporate finance, investments and financial engineering as a visiting lecturer with the Haas School of Business ("Haas") at the University of California at Berkeley. At Haas, I served as a Graduate Student Instructor while earning my Ph.D. between 1983 and 1988. From 1988 to 1995, I was an Assistant Professor of Finance and Business Economics at the University of Southern California. I have taught the efficient markets hypothesis as part of my graduate-level courses.

8. I have authored or co-authored more than 25 publications and working papers in the field of financial economics. My research has frequently employed various statistical techniques, including event studies, to analyze the impact of new announcements and other events on companies' stock prices. My research has been published in *The Journal of Finance*, *The Journal of Financial Economics*, *The Journal of Financial Research*, *The Journal of Applied*

*Finance*, *International Economic Review*, *Research in Finance*, *The Journal of Corporation Law*, *The Journal of Derivatives* and *Research in Law and Economics.*

9. I am a member of the American Finance Association, the Western Finance Association and the European Finance Association, and I have lectured widely on a variety of issues in financial economics.

**Assignment and Conclusions**

10. I understand that Plaintiff is seeking to replace Dr. Greg Hallman with Dr. Steven Feinstein. Counsel for Freddie Mac asked me to review the claims relating to market efficiency that Dr. Feinstein has made in his December 16, 2016 declaration ("Feinstein Declaration").

11. Dr. Feinstein claims that since Dr. Hallman performed his market efficiency analysis in 2012, there have been "substantial developments" in the "legal, academic, and practitioner arenas concerning what needs to be proved regarding market efficiency, including what tests are appropriate."[1] Dr. Feinstein claims that "three things have changed since August 2012,"[2] and I address each of Dr. Feinstein's three claims below.

**A. Dr. Feinstein concedes that an event study is the "preeminent empirical test of market efficiency," and he cites no authority inconsistent with that view.**

12. Dr. Hallman previously conducted an event study in this case to support OPERS' contention that the stock of Freddie Mac was traded in an efficient market during the purported Class Period. I submitted a report that rebutted the opinions advanced by Dr. Hallman. There has been no change in the law or economics that would justify today jettisoning Dr. Hallman's event study on the ground that an event study is supposedly no longer an appropriate means to test for market efficiency.

13. The sole authority Dr. Feinstein cites to support his assertion that there has been a "substantial change" in the law or field of financial economics relating to event studies is an article by Alon Brav and J.B. Heaton ("Brav and Heaton").[3] That article does not stand for the

1 Feinstein Declaration, ¶29.
2 Feinstein Declaration, ¶18.
3 Alon Brav and J.B. Heaton, "Event Studies in Securities Litigation: Low Power, Confounding Effects, And Bias," Washington University Law Review, 30 March 2015.

proposition that an event study is an inappropriate analysis to use to demonstrate market efficiency.

14. To the contrary, the event study method remains the gold standard for market efficiency tests. Dr. Feinstein co-authored an Amici Curiae brief in *Halliburton II* (cited in the Feinstein Declaration), which states that "[e]vent study methodology is well-accepted in the professional and academic communities, and event studies are widely used" and that "[a]n event study can support an inference of informational efficiency." In his declaration in this case, he states (and I agree) that "[a]n event study is the preeminent empirical test of market efficiency," citing to Nobel Laureate Eugene Fama.[4]

15. Indeed, it is thus not surprising that Feinstein concedes that, if he were permitted to conduct his own analysis of market efficiency, he too would conduct an event study, just as Dr. Hallman already did. Expert Report of Dr. Greg Hallman, August 16, 2012, ¶¶15-29 ("Hallman Report"), attached to the Affidavit of Emily E. Renshaw, Esq.

**B. *Halliburton II* had no effect on the definition of market efficiency or the methodologies used to test for market efficiency.**

16. Dr. Feinstein claims that the Supreme Court in *Halliburton II* "clarified that perfect market efficiency is not necessary in order to invoke the fraud on the market principle," but "[r]ather, what is necessary is the 'fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'"[5] Stating his contention another way, Dr. Feinstein claims that *Halliburton II* changed the law by only requiring a showing of informational efficiency rather than fundamental efficiency.[6] Dr. Feinstein's claim regarding *Halliburton II* is incorrect.

17. I have testified on issues of market efficiency both before and after *Halliburton II*, and I am not aware of any change in the definition of, or the standard applied to, market efficiency since *Halliburton II*. While Dr. Feinstein claims that this is a "substantial

[4] Feinstein Declaration, ¶16.

[5] Feinstein Declaration, ¶19 (quoting *Halliburton II*, which in turn quoted *Basic*, 485 U.S. at 248 n.28) (internal citation omitted).

[6] Feinstein Declaration, ¶20.

development" in the "legal, academic, and practitioner arenas," he does not cite a single case, treatise, or economic publication in support of this "substantial development," nor am I aware of any such authority.

18. I note that Dr. Feinstein's contention that *Halliburton II* changed the law is based on a single quote from the *Halliburton II* decision, *i.e.*, the sentence in *Halliburton II* stating that "what is necessary is the 'fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'"[7] *Compare Basic*, 485 U.S. at 248 n.28 *with Halliburton II* (quoting *Basic*, 485 U.S. at 248 n.28). The sentence to which Dr. Feinstein points is a direct quote from the Supreme Court's 1988 decision in *Basic*. *Basic*, 485 U.S. at 248 n.28. That sentence merely sets forth what the law respecting market efficiency has been since 1988. It does not evidence any change that the Supreme Court made in *Halliburton II* governing the evidentiary showing a plaintiff must make to establish market efficiency.

19. It was well understood, long before *Halliburton II*, that, for purposes of securities fraud cases, only informational efficiency is required to prove reliance.[8] As the *Polymedica* court explained in 2005: "[F]or purposes of establishing the fraud-on-the-market presumption of reliance, investors need only show that the market was informationally efficient."[9]

20. The *Polymedica* case, which pre-dates *Halliburton II* by nine years, clearly articulates the distinction between informational efficiency and fundamental efficiency. In an informationally efficient market, stock prices fully reflect all publicly available information quickly such that "'prices respond so quickly to new information that it is impossible for traders to make trading profits on the basis of that information.'"[10] In a fundamentally efficient market, stock prices fully reflect all publicly available information quickly and accurately, such that

---

[7] Feinstein Declaration, ¶19 (quoting *Halliburton II*, which in turn quoted *Basic*, 485 U.S. at 248 n.28).

[8] *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 16 (1st Cir. 2005).

[9] *In re Polymedica*, 432 F.3d at 16.

[10] *In re Polymedica*, 432 F.3d at 14 (*citing* Lynn A. Stout, The Mechanisms of Market Inefficiency: An Introduction to the New Finance, 28 J. Corp. L. 635, 651 (2003)).

"'market prices mirror the best possible estimates, in light of all available information, of the actual economic values of securities in terms of their expected risks and returns.'"[11]

21. As a matter of practice, Dr. Feinstein's interpretation of *Halliburton II* is demonstrably incorrect. If *Halliburton II* had changed the law relating to what securities plaintiffs needed to demonstrate to establish market efficiency, we would have expected to see a flurry of activity in the courts, where experts were required to submit revised reports and parties relitigated recently briefed or recently decided class certification matters. I observed no such flurry of activity.

22. Although *Halliburton II* was decided three years ago, I am unaware of any case in which, in the aftermath of that ruling, a plaintiff was granted leave to submit new or supplemental expert evidence on the market efficiency issue, based on the contention that *Halliburton II* altered the law governing the evidentiary showing a plaintiff must make to establish market efficiency. To the best of my knowledge, were the court in this case to issue such a ruling, it would be the first court to do so.

23. In short, Dr. Feinstein's interpretation of the implications of the *Halliburton II* decision is simply incorrect; "informational efficiency" was always the standard for proving reliance, and *Halliburton II* did not change the law governing the evidentiary showing a plaintiff must make to establish market efficiency in connection with a motion for class certification in a federal securities class action.

## C. Dr. Feinstein's proposed "additional tests" are neither new nor relevant.

24. Dr. Feinstein claims that "substantial developments" -- which, as I have discussed above, have not occurred -- "beckoned the application of new empirical tests."[12] "Accordingly," Dr. Feinstein claims, "new empirical tests" relating to market efficiency "have been created," which "[v]ery recently" "have been gaining more widespread use and acceptance by courts."[13]

[11] *In re Polymedica*, 432 F.3d at 16.
[12] Feinstein Declaration, ¶21.
[13] Feinstein Declaration, ¶21.

According to Dr. Feinstein, these tests include a "Z-test," "the Ansari-Bradley test, F-test, and Binomial test."[14]

25. Nothing in *Halliburton II* suggests the use of these tests to establish market efficiency, and in my opinion, these tests are not useful to "investigate whether available information affects observed stock prices," as Dr. Feinstein suggests.

26. More fundamentally, I note that, while Dr. Feinstein characterizes these tests as "new," he does not go so far as to state that these tests were unavailable to Dr. Hallman in 2012. In fact, these tests were available to Dr. Hallman in 2012, and Dr. Hallman could have tried to use any of these tests at the time he submitted his report.

27. Unable to identify any test that is actually new, Dr. Feinstein states that certain tests have, "**very recently**" been "gaining more widespread use and acceptance by courts," and that the "growing use of these tests," and "various court's acceptance of these tests **generally post-dates** Dr. Hallman's August 2012 submission in the current case."[15]

28. Dr. Feinstein fails to cite any authority for his claims about the supposedly increased use and acceptance of these tests after *Halliburton II* in connection with establishing market efficiency, and I am not aware of any.

29. The F-test is not new. An F-test was invented in the 1920s.[16] Dr. Hallman actually **did use** an F-test, and he discusses it in his original report. Hallman Report ¶28.

30. The Z-test is not new. The Z-test is a test of the difference of proportions between two samples, a well-known basic test that is taught at the beginning of every university class in statistics and dates back decades before *Halliburton II.* Indeed, the use of the Z-test for market efficiency purposes was proposed in 2004, long before Dr. Hallman's reports in this matter.[17]

---

[14] Feinstein Declaration, ¶¶22, 23.

[15] Feinstein Declaration, ¶¶18, 24 (emphasis added).

[16] Lomax et al., Statistical Concepts: A Second Course, 4th ed. (2012).

[17] Paul A. Ferrillo, Frederick C. Dunbar, and David Tabak, "The 'Less Than' Efficient Capital Markets Hypothesis: Requiring More Proof from Plaintiffs in Fraud-on-the-Market Cases," 78 St. John's L. Rev. 81, 119-22 (2004).

31. In fact, the plaintiffs in a separate matter entitled *In re Freddie Mac Sec. Litig.*, 281 F.R.D. 174 (S.D.N.Y. 2012), decided before *Halliburton II*, sought to use the Z-test. The decision in that case, which discussed plaintiff's unsuccessful attempt to use the Z-test to establish market efficiency, issued five months prior to Dr. Hallman's report.[18]

32. The two other tests suggested by Dr. Feinstein, like the Z-test and F-test, predate *Halliburton II* by decades. The Ansari-Bradley test dates to 1960.[19] The Binomial test dates to at least 1945.[20]

33. To conclude, none of these tests are new, Dr. Hallman either used or could have used them in his report, and there has not been any increase in their use to test market efficiency in the aftermath of *Halliburton II*.

Signed under the pains and penalties of perjury this 17th day of January, 2017.

Mukesh Bajaj

Mukesh Bajaj Ph.D.

[18] *In re Freddie Mac Sec. Litig.*, 281 F.R.D. 174, 180 (S.D.N.Y. 2012).

[19] A. R. Ansari and R. A. Bradley, "Rank-Sum Tests for Dispersions," Ann. Math. Statist., Volume 31, Number 4 (1960), 1174-1189.

[20] M.J. Fryer, A Note on Barnard's Modification to Wald's Sequential Test for Double Dichotomies, *Journal of the Royal Statistical Society*, Series B (Methodological), Vol. 34, No. 1 (1972), 126-29.

# Appendix 1

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

1999 Harrison Street, Suite 2700, Oakland, CA 94612
685 Third Avenue, 14th Floor, New York, NY 10017
Office: 510.985.6736 Cell: 510.406.1657 Email: mukesh.bajaj@navigant.com


## Professional Summary

Dr. Mukesh Bajaj is a Managing Director and Global Head of the Securities & Finance Practice at Navigant Economics, LLC. Prior to joining Navigant Economics, Dr. Bajaj founded AFE Consulting and served as its President.

Dr. Bajaj advises clients in matters involving economic and financial issues, and has managed hundreds of consulting and litigation support assignments. Dr. Bajaj is an expert in matters relating to securities fraud, valuation of complex derivatives and intellectual property, insider trading, financial market microstructure, intangible assets, transfer pricing, interests in closely-held firms, warrants, restricted stock and other complex contingent securities, and purchase price allocation studies. He has also consulted on financial strategy and acquisition analysis.

Dr. Bajaj has testified in various Federal and State Courts, the Superior Court of California, the State Board of Equalization in California, the U.S. Tax Court, arbitrations, mediations and in IRS Appeals proceedings. He has also testified in Canadian and Australian courts, testified in JAMS arbitration and filed an expert report in the International Center for Settlement of Investment Disputes.

As a practicing academic, Dr. Bajaj has an active research program and he has taught corporate finance, investments, and financial engineering courses in the MBA and Masters in Financial Engineering programs at the Haas School of Business at the University of California at Berkeley. Prior to his consulting practice, Dr. Bajaj was an assistant professor of finance and business economics at the University of Southern California where he taught undergraduate and graduate courses in finance. Dr. Bajaj is the recipient of several teaching awards and scholastic honors and has published several articles in leading academic and applied journals, such as *The Journal of Finance*, *The Journal of Financial Economics*, *The Journal of Financial Research*, *The Journal of Applied Finance*, *International Economic Review*, *Research in Finance*, *The Journal of Corporation Law*, *The Journal of Derivatives* and *Research in Law and Economics*.

Dr. Bajaj holds a PhD in Finance from the University of California at Berkeley and an MBA from the University of Texas at Austin. He earned a Bachelor of Technology in Chemical Engineering from the Indian Institute of Technology, Delhi.

NAVIGANT

# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Professional Experience

**2012 – Present** **Navigant Economics**
Managing Director and Global Head of the Securities & Finance Practice

**1997 – 2014** **Haas School of Business, University of California, Berkeley**
Lecturer

**2011 – 2012** **AFE Consulting**
Founder and President

**1997 – 2011** **LECG LLC**
Senior Managing Director and Practice Leader (2007 – 2011)
Member – Executive Management Committee (2007 – 2011)
Member – Management Advisory Committee (2003 – 2007)
Member – Board of Directors (2001 – 2003)
Managing Director (1999 – 2007)
Director (1999)
Affiliate (1998)
Principal (1998)
Senior Economist (1997)

**1995 – 1997** **BVS Inc.**
Senior Associate

**1988 – 1995** **University of Southern California**
Assistant Professor – Finance and Business Economics

- Award from Faculty Research and Innovation Fund, University of Southern California, 1990

**1983 – 1988** **University of California, Berkeley**
Instructor
Graduate Student Instructor

- Graduate Fellowship, University of California, Berkeley (1988)
- Earl F. Cheit Award for Outstanding Teaching, Graduate School of Business, University of California, Berkeley (1986–1987)
- Outstanding Graduate Student Instructor Award, University of California, Berkeley (1986–1987)
- Outstanding Graduate Student Instructor Award, University of California, Berkeley (1985–1986)
- Award for Best Technical Paper published in Indian Chemical Engineer (1983)

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Education

### University of California, Berkeley
PhD in Business Administration (Finance)

### University of Texas at Austin
MA in Business Administration
* Sword Scholar (Dean's List), University of Texas at Austin

### Indian Institute of Technology, Delhi, India
Bachelor of Technology
* National Science Talent Scholar, National Council of Educational Research and Training, India

## Expert Testimony on Record

*In re Allergan, Inc. Proxy Violation Securities Litigation,* C.A. 14-cv-02004 (N.D. Cal 2014). Testified in deposition on whether the common stock of Allergan Inc. traded in an efficient market during the Class Period and whether damages in the action are subject to a common formula that can be applied Class-wide. Deposition in December 2016.

*OpenGate Capital, LLC, et al., v. Thermo Fisher Scientific Inc.*, Civil No. 13-475-GMS in the United States District Court for the District of Delaware. Testified in deposition regarding damages allegedly caused by claims of fraudulent misrepresentation in connection with the purchase of a division of Thermo Fisher by OpenGate. Deposition in November 2015.

*Continental Industries Group, Inc. v. FTS International Services, LLC, et al.*, Case Nos. 12-CV-05599 and 12-CV-06966 in the United States District Court, Southern District of New York. Testified in deposition and trial on economic damages resulting from the alleged breaches of two supply agreements between the Plaintiff and Defendants. Deposition in October 2014. Trial in October 2015.

*In re: UBS Financial Services, Inc. of Puerto Rico Securities Litigation*, Civil Case No.: 3:12-cv-01663-CCC, United States District Court for the District of Puerto Rico. Testified in deposition on economic issues related to certain Puerto Rico closed-end funds for class certification purposes. Deposition in September 2015.

*In the Matter of the Arbitration between Offshore Exploration and Production LLC, Claimant/Seller, v. Korea National Oil Corporation and Ecopetrol, S.A., Respondents/Purchasers*, ICDR Case No. 50 198 T 00825 1 in the International Centre for Dispute Resolution. Testified in arbitration proceedings on the calculation of prejudgment interest related to payments Claimant/Seller asserted should have been made pursuant to an escrow agreement between Claimant/Seller and Respondents/Purchasers. Arbitration in February 2014.

NAVIGANT

**Mukesh Bajaj, Ph.D.**
**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Expert Testimony on Record (Continued)

*Sekisui America Corporation and Sekisui Medical Co., Ltd. v. Richard and Mary Louise Trudel-Hart*, Case No. 12-CIV-03479 in the United States District Court, Southern District of New York. Testified in deposition on damages in an action alleging breach of contract arising out of the sale of a medical diagnostics company. Deposition in September 2013.

*Securities and Exchange Commission v. Manouchehr Moshayedi*, Case No. 12CV-01179-JVS-JPR in the United States District Court for the Central District of California. Testified in deposition regarding allegations by the SEC of insider trading against the founder and former CEO of STEC, a maker of custom memory solutions. Deposition in August 2013.

*In re American International Group, Inc. 2008 Securities Litigation*, Master File No. 08-CV-4772-LTS in the United States District Court, Southern District of New York. Testified in depositions and in an evidentiary hearing on market efficiency at class certification stage in a securities fraud class action alleging that Defendants materially misstated the extent to which AIG had accumulated exposure to the subprime mortgage market through its securities lending program and its credit default swap ("CDS") portfolio. Depositions in November 2011 and March 2012. Evidentiary Hearing in April 2013.

*Securities and Exchange Commission v. Fabrice Tourre*, Case No. 10-CV-3229 (KBF) in the United States District Court, Southern District of New York. Testified in deposition on the economic materiality of the nondisclosure of certain hedge fund positions with respect to a particular synthetic ABS CDO. Deposition in February 2013.

*Ohio Public Employees Retirement System, On Behalf of Itself and all Others Similarly Situated, v. Federal Home Loan Mortgage Corporation a/k/a Freddie Mac, Richard F. Syron, Patricia L. Cook, Anthony S. Pizel, and Eugene M. McQuade*, Civil Action No. 4:08-cv-160 in the United States District Court for the Northern District of Ohio, Eastern Division (Youngstown). Testified in deposition concerning the efficiency of the market for Freddie Mac's common stock and the economic evidence as it related to the Plaintiff's allegations that alleged misrepresentations and omissions were material. Deposition in January 2013.

*Cora E. Bennett v. Sprint Nextel Corporation, Gary D. Forsee, Paul N. Saleh and William G. Arendt*, Case No. 09-CV-2122 EFM/KMH in the United States District Court for the District of Kansas. In the class-certification stage of a securities fraud class action, testified in deposition regarding the economic evidence supporting the claim that Sprint bonds traded in efficient markets throughout the Class Period. Deposition in June 2012.

*State of New Jersey, Department of Treasury, Division of Investment, on behalf of Common Pension Fund A. v. Merrill Lynch & Co. and Bank of America Corp.*, Case No. L-3855-09 in the Superior Court of New Jersey. Testified in deposition on the materiality of accounting allegations, loss causation and damages calculations in connection with transactions involving the purchase and subsequent conversion of a convertible preferred security to common stock. Deposition in May 2012.

NAVIGANT

**Mukesh Bajaj, Ph.D.**
**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Expert Testimony on Record (Continued)

*In re Richard Kirby v Centro Properties Ltd & Ors* (VID 326 of 2008), *Richard Kirby v Centro Retail Ltd & Ors* (VID 327 of 2008), and *Nicholas Stott v Pricewaterhouse Securities Ltd* (VID 1028 of 2010), in the Federal Court of Australia. In a pair of securities class action disputes in Australia, testified at trial on alleged disclosure deficiencies of two Australian REITs in connection with certain short-term and long-term debts and the effect of those disclosures on the prices of the REITs' two stapled securities, as well as on the condition of the global credit market during the class period. Trial in May 2012.

*In re Lehman Brothers Securities and ERISA Litigation*, Case No. 09-MD-2017 (LAK) in United States District Court, Southern District of New York. Testified in deposition on the market for structured products and the market's general awareness of credit risks associated with structured finance products in the class-certification stage of a securities fraud class action alleging materially false and misleading statements and omissions in the offering documents of principal-protected notes. Deposition in April 2012.

*In re International Textile Group Merger Litigation*, C.A. No. 2009-CP-23-3346 in the Court of Common Pleas for the State of South Carolina, County of Greenville. Testified in deposition on damages and loss causation for class action and derivatives suits arising from a merger. Deposition in April 2012.

*Bank of America National Association, and Banc of America Securities LLC v. Bear Stearns Asset Management Inc., Ralph Cioffi, Matthew Tannin, and Raymond McGarrigal*, Case No. 1:08-cv-0265-AJN in the United States District Court, Southern District of New York. Testified in deposition on damages related to a securitization transaction and the Defendants' alleged failure to disclose the financial condition of their hedge funds. Deposition in March 2012.

*Between: Howard Green and Anne Bell, and Canadian Imperial Bank of Commerce, Gerald McCaughey, Tom Woods, Brian G. Shaw, And Ken Kilgour*, No. CV-08-00359335-0000, Ontario Superior Court of Justice. Testified in deposition on loss causation in proceedings under the Class Proceedings Act, 1992 alleging that Defendants made various misrepresentations regarding CIBC's CDO exposure and the extent of impairment of CIBC's CDO positions. Deposition in December 2011.

*In re Tronox Inc. Securities Litigation*, No. 09 Civ. 06220 (SAS), United States District Court, Southern District of New York. Testified in deposition on market efficiency at class certification stage in a securities fraud class action alleging that Defendants materially misstated the extent of legacy environmental liabilities. Deposition in December 2011.

*In re Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation*, Case No. 1:09-MD-2072 in the United States District Court, Southern District of New York. (Appeal denied by United States Court of Appeals for the Second Circuit, May 31, 2012.) Testified in deposition and hearing before the Court on market efficiency at class certification stage in a securities fraud class action alleging misrepresentations concerning Freddie Mac's capitalization and credit risk exposure. Depositions in August 2011 and November 2011. Court hearing in November and December 2011.

*Estate of John F. Koons, III v. Commissioner of Internal Revenue*, Docket Nos. 19771-09 and 19772-09, in the United States Tax Court. Testified at trial regarding the valuation of certain membership interests in a limited corporation. March 2011.

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Expert Testimony on Record (Continued)

*In Re Altria Group, Inc. v. United States of America*, Case No. 1:06-cv-09430-RJH in the United States District Court, Southern District of New York. Testified in deposition and at trial regarding economic issues affecting tax treatment of certain leveraged lease transactions. Deposition in December 2007. Trial in June-July 2009.

*Madison Tyler Holdings, LLC, et al., Claimants v. Financial Asset Trading & Technology of California, LLC, et al., Respondents*; *Financial Asset Trading & Technology of California, et al., Cross-Claimants, v. Madison Tyler Holdings, LLC, et al., Cross-Respondents*; and related arbitration *Madison Tyler Holdings, a Delaware Limited Liability Company, et al., Counter-Claimants and Respondents v. Rajashree Karwa, an individual, Counter-Respondent and Claimant*. Arbitration Before JAMS, JAMS Ref. No. 1220038462. Testified in deposition on economic analysis of source of value creation in algorithmic trading strategies. June 2009.

*Lawrence E. Jaffe Pension Plan, On Behalf of Itself and All Others Similarly Situated, v. Household International, Inc., et al.*, Case No. 02-C-5893 in the United States District Court, Northern District of Illinois, Eastern Division. Testified in deposition and at trial on loss causation and damages in a securities class action alleging securities fraud arising from purported accounting irregularities and predatory lending practices to subprime borrowers. Deposition in March 2008. Trial in May 2009.

*Guerrero Family Trust, Carmen De Leon Guerrero, Jose T. Tenorio Trust, Estate of Santiago C. Tenorio, Juan T. Guerrero, Jesus T. Guerrero, and AJT Trust, v. Kinki Nippon Tourist Co. LTD, Saipan Hotel Corporation, Pacific Development Inc., Pedro J.L. Igitol, in his official capacity of Secretary of Saipan Hotel Corporation, Morgan Stanley Japan Limited, Marianas Holdings, LLC, and K.K. ING Karuizawa Training Institute*, Civil Action No. 04-0574D in the Superior Court of the Commonwealth of the Northern Mariana Islands. Testified in deposition on damages arising from alleged abuse of fiduciary duty and dilution of minority shareholders' stock holding. July 2008.

*In the Matter of David A. Finnerty, et al., Administrative Proceeding*, File No. 3-11893, Before the Securities and Exchange Commission. Testified in trial regarding the trading patterns of certain NYSE specialists in connection with alleged violations of priority rules and securities laws. February and March 2008.

*In Re NYSE Specialists Securities Litigation*, Master File No. 03 Civ. 8264 (RWS) in the United States District Court, Southern District of New York. Testified in deposition on class certification issues relating to alleged trading-rule violations by New York Stock Exchange specialist firms. November 2007.

*Theo Bullmore and Phillip S. Stenger, as Joint Official Liquidators of Beacon Hill Master Ltd. (In Official Liquidation), Plaintiffs v. Ernst & Young Cayman Islands, Ernst & Young LLP, Beacon Hill, Asset Management, LLC, John D. Barry, Thomas Daniels, John Irwin, Mark Miszkiewicz, and ATC Fund Services (Cayman) Limited f/k/a ATC Fund Administrators (Cayman) Limited, Defendants*, Index No.: 104314/05 in the Supreme Court of the State of New York, County of New York. Testified in deposition on the causation and alleged damages experienced by the Beacon Hill Master Fund caused by an alleged improper audit by Ernst & Young Cayman Islands. September 2007.

NAVIGANT

**Mukesh Bajaj, Ph.D.**
**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Expert Testimony on Record (Continued)

*Sterling Savings Association and Sterling Financial Corporation v. United States of America, Defendant*, Case No. 95-829C in the United States Court of Federal Claims. Testified in deposition and at trial on damages due to alleged breach of contract as a result of Financial Institutions Reform and Recovery Act of 1989. Depositions in June 2002 and May 2004. Trial in July 2007.

*Adelphia Communications Corp., Plaintiff v. Deloitte & Touche LLP, (Defendant) v. John Rigas, Timothy Rigas, Michael Rigas and James Rigas (Additional Defendants)*, in the Court of Common Pleas, Philadelphia County. Testified in deposition on loss causation and damages issues related to alleged improper conduct by auditor. May 2007.

*David S. and Malia A. Litman v. United States of America*, Case No. 05-956T; *Robert B. and Michelle S. Diener v. United States of America*, Case No. 05-971T; *Hotels.com Inc. and Subsidiaries (f/k/a Hotel Reservations Network, Inc.) v. United States of America*, Case No. 06-285T. Judge Christine O.C. Miller in the United States Court of Federal Claims. Testified in deposition and at trial on valuation of 9.9 million shares of stock issued to certain former officers of Hotels.com for tax purposes. Deposition in July 2006. Trial in May 2007

*Jane Z. Astleford, Donor, Petitioner v. Commissioner of the Internal Revenue, Respondent*, Docket No 4342-06 in the U.S. Tax Court. Testified at trial on value of certain interests in a limited partnership. March 2007.

*United States of America v. Sanjay Kumar and Stephen Richards*, 04-CR-0846 (ILG), in the United States District Court, Eastern District of New York. Testified at trial on loss causation and damages issues in criminal securities fraud matter in which defendants pleaded guilty to improper revenue recognition related accounting irregularities. October 2006.

*The Procter and Gamble Company and Subsidiaries & Proctor and Gamble FSC (Barbados) vs. The United States of America*, Case number 1:05cv355 in United States District Court for the Southern District of Ohio, Western Division. Testified in deposition on fair market value of certain technologies donated by Proctor and Gamble to various entities in connection with a tax dispute. September 2006.

*United States of America v. Richard Volpe*, Indictment S1 05 Cr. 390 (SHS) in the United States District Court, Southern District of New York. Testified at trial on liability issues in criminal securities fraud matter alleging illegal trading by certain New York Stock Exchange specialists. August 2006.

*United States of America v. Robert Scavone*, Indictment S1 05 Cr. 390 (SHS) in the United States District Court, Southern District of New York. Testified at trial on liability issues in criminal securities fraud matter alleging illegal trading by certain New York Stock Exchange specialists. July 2006.

*United States of America v. Michael Hayward and Michael Stern*, Indictment S1 05 Cr. 390 (SHS) in the United States District Court, Southern District of New York. Testified at trial on liability issues in criminal securities fraud matter alleging illegal trading by certain New York Stock Exchange specialists. July 2006.

NAVIGANT

**Mukesh Bajaj, Ph.D.**
**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Expert Testimony on Record (Continued)

*Commonwealth Holdings, Inc., Profit Sharing Plan & Trust, James T. Waddill, IV et al. v. Salomon Smith Barney, Inc. and John Henry Spatz*, in a hearing before NASD. Testified on loss causation and damages aspects of Plaintiffs' claims arising from alleged securities fraud. September 2005.

*Messrs. Robert, Charles and John Switzer et al. v. Deutsche Bank et al.*, in a hearing before NASD. Testified on liability and damages aspects of Plaintiffs' damage claims arising from alleged unsuitable investments in certain leveraged debt obligations. June 2005.

*IDT Corp. v Telfonica S.A. et al.*, Case No. 01 CV 471 in the United States District Court for New Jersey. Testified in deposition on liability and loss causation aspects in a claim of alleged securities fraud. April 2005.

*Sherewin I. Ray et al. v. Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney, Inc., Citigroup, Inc. and John Henry Spatz*, Case No. 03C3157 in the United States District Court for the Northern District of Illinois, Eastern Division. Testified in deposition on liability and loss causation in a claim of alleged securities fraud. March 2005.

*American National Bank and Trust Company of Chicago, as Trustee f/b/o Emerald Investments LP, and Emerald Investments LP, an Illinois Partnership v. Allmerica Financial Life Insurance and Annuity Company*. Testified in deposition on certain liability aspects in a breach of contracts claim involving certain mutual fund trading strategies. January 2005.

*In re WorldCom, Inc. ERISA Litigation*, Master File No. 02 Civ. 4816 (DLC) in the United States District Court, Southern District of New York. Testified in deposition on liability aspects of Plaintiffs' damage claims in an ERISA class action. January 2005.

*Xilinx Inc. and Subsidiaries v. Commissioner of Internal Revenue Service*, Docket Nos. 004142-01 and 00702-03. Testified in U.S. Tax Court on whether grant date value, or certain spread upon exercise, of employee stock options should be considered part of cost sharing pool in a cost sharing arrangement between Xilinx, Inc. and its Irish affiliate. Trial in July 2004. Submitted affidavit in connection with motion to dismiss in June 2002.

*Maxtor Corporation v. Koninklijke Philips Electronics N.V., Philips Semiconductors B.V., Philips Semiconductor International B.V., Philips Electronics North America Corporation, Philips Semiconductors, Inc., Philips Semiconductor Manufacturing, Inc., Philips France, Philips Japan, Ltd., and Does 1 through 25*, Case No. CV 808650 in the Superior Court of the State of California, County of Santa Clara. Testified in deposition on damages analysis in connection with alleged design failure of a chip used in manufacturing computer hard drives. March 2004.

*Mid-Continent Federal Savings Bank v. United States of America, Defendant*, Case No. 95-472C in the United States Court of Federal Claims. Testified in deposition and at trial in Court of Federal Claims on damages due to alleged breach of contract as a result of Financial Institutions Reform and Recovery Act of 1989. Deposition in April 2002. Trial in July 2003.

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Expert Testimony on Record (Continued)

*Robert F. Flood v. Bessemer Trust Company, N.A.*; *Robert G. Vanneman; and Does 1-25 and Stephen Gorosh v. same defendants*. Testified in deposition on alleged damages due to failure to diversify. November 2002.

*Christine P. Rales, Plaintiff v. Steven M. Rales, Defendant*, Civil Action No. 02DR166-D in the Superior Court of District of Columbia. Testified in deposition on the fair market value of a block of 19.67 million shares of common stock of Danaher Corporation held by Stephen M. Rales. February 2002.

*American National Bank and Trust Company of Chicago, as Trustee f/b/o Emerald Investments LP, and Emerald Investments LP, an Illinois Partnership v. AXA Client Solutions, LLC, The Equitable Life Assurance Society of the United States, and AXA Financial, Inc.*, Case No. 00 C 6786. Testified in deposition on damages due to alleged breach of contract involving certain mutual fund trading strategies. May 2002.

*Statewide Savings Bank, S.L.A., Plaintiff v. United States of America, Defendant*, Case No. 95-779C in the United States Court of Federal Claims. Testified in deposition on damages due to alleged breach of contract as a result of Financial Institutions Reform and Recovery Act of 1989. February 2002.

*Charles T. McCord and Mary S. McCord, Donors, Petitioners v. Commissioner of Internal Revenue, Respondent*, Docket No 7048-00 in the U.S. Tax Court. Testified at trial on value of several interests in a limited partnership. May 2001.

*Estate of Elma Middleton Dailey, Deceased, K. Robert Dailey, II, Executor, Petitioner v. Commissioner of Internal Revenue, Respondent*, Docket Nos 6251-00 and 6262-00 in the U.S. Tax Court. Testified at trial on value of several interests in a limited partnership. May 2001.

*John G. Balletto v. Xoom.com, Inc.*, Case No. 306798 in the Superior Court of California, San Francisco County. Testified in deposition and at trial relating to damages due to alleged breach of contract. January 2001. Deposition in January 2001. Trial in March 2001.

*Edison International (1585456), Mission First Financial (1431482), Edison Capital (1417993), Edison Funding Company (1417994), Renewable Energy Capital Company (0715920), Mission Funding Epsilon (1426267) v. California Franchise Tax Board*. Testified before the State Board of Equalization on whether Mission First Financial and its parent company SCEcorp formed a unitary business for tax purposes during 1988 to 1990. December 2000.

*Framatome Connectors USA Holdings, Inc. and Subsidiaries, et al. v. Commissioner of Internal Revenue Service*, Docket No. 5030-98, 9160-99, 118 T.C. 32 (2002), aff'd, 108 Fed. Appx. 683, (2004). Testified in trial on whether Burndy Japan was a controlled foreign corporation of the petitioner for the years 1988, 1989 and 1992 under section 957(a) (2) of the Internal Revenue Code. October 2000.

*Barry G. Hittner, Receiver of American Universal Insurance Company v. Sequa Corporation, et al.*, M.D.L. No. 972, C.A. No. 1:92-512. Testified in deposition on the value of a $50 million note backed by certain real estate. June 2000.

NAVIGANT

**Mukesh Bajaj, Ph.D.**
**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**

## Expert Testimony on Record (Continued)

*Estate of Richie C. Heck, Deceased, Gary Heck, Special Administrator, Plaintiff v. Commissioner of Internal Revenue Service, Defendant*. Docket No. 11619-99 in the U.S. Tax Court. Testified at trial on the valuation of a minority interest in F. Korbel & Bros., Inc. June 2000.

*American Heritage Bancorp, Plaintiff v. United States of America, Defendant*; *Federal Deposit Insurance Corporation, as successor to the rights of Home Federal Savings Bank, Plaintiff Intervenor v. United States of America, Defendant*. Case No. 90-3982C. Testified in deposition on damages due to alleged breach of contract as a result of Financial Institutions Reform and Recovery Act of 1989. May 2000.

*Estate of Robert H. Lurie, deceased, Ann Lurie, Executor v. Commissioner of Internal Revenue*, Docket No. 22639-94 in the U.S. Tax Court. Testified at trial on whether certain trusts accumulated assets from investments without transfers for inadequate consideration by the deceased. February 1999.

*Joseph K. Mitchell, et al., v. Central Investment Corporation*, Case No. A9700035, Special Proceedings in the Court of Common Pleas, Hamilton County, Ohio. Testified in deposition regarding fair cash value of a minority position in stock of a Pepsi-Cola bottling company in connection with a freeze-out merger. March 1998.

*Walter L. Gross, Jr. & Barbara H. Gross, Petitioners v. Commissioner of Internal Revenue Service, Respondent*, No. 4460-97; Calvin C. Linnemann & Patricia G. Linnemann, Petitioners v. Commissioner of Internal Revenue Service, Respondent, No. 4469-97. Testified at trial regarding the fair market value of a minority interest in a Pepsi-Cola bottling company, which Petitioners had claimed as a gift-tax liability. November 1997.

*R. J. R. Nabisco Inc. and Subsidiaries v. Commissioner*, Docket No. 3796-95 in the U.S. Tax Court. Testified at trial regarding the nature and useful economic life of cigarette package design for federal income taxation purposes. February 1997.

*Clinton, Inc. & Subsidiaries, Petitioner v. Commissioner of Internal Revenue, Respondent*, Docket No. 9885-95 in the U.S. Tax Court. Testified in deposition regarding reasonable executive compensation pursuant to Internal Revenue Code Section 162 (a) (1). August 1996.

*Fullers Jewelry, Inc., Plaintiff v. Dallas Central Appraisal District, Defendant*, Case No. 94-09169-B, District Court, Dallas County, Texas, 44th Judicial District. Testified in deposition regarding the value of merchandise inventory of a retail jewelry chain for purposes of ad valorem taxation. July 1996.

*American Marazzi, Inc., Plaintiff v. Dallas Central Appraisal District, Defendant*, Cause number 95-07028-B, District Court, Dallas County, Texas, 44th Judicial District. Testified in deposition regarding the value of merchandise inventory of a manufacturer and distributor of ceramic tiles for purposes of ad valorem taxation. June 1996.

*Terence Dean, et al. v. Dean Security, Inc. et al.* Testified in binding arbitration regarding damages due to breach of contract for the sale of a security company. March 1996.

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Expert Testimony on Record (Continued)

*Advertiser's Dynamic Services, Co., Inc., Plaintiff v. United States of America, Defendant*, Case No. 3-94-CV-2079-G, District Court, North Dallas, Texas. Testified at trial regarding the nature of contracts between a publisher and salespersons for payroll tax purposes. February 1996.

## Publications / Working Papers

### Publications

"Economic Consequences: The Real Cost of U.S. Securities Class Action Litigation," 2014, with Nikolai Caswell, Anand Goel, Sumon C. Mazumdar and Rahul Surana, issued by Institute for Legal Reform, U.S. Chamber of Commerce.

"Assessing Market Efficiency for Reliance on the Fraud-on-the-Market Doctrine after *Wal-Mart* and *Amgen*," with Sumon C. Mazumdar and Daniel A. McLaughlin, 2014, in James Langenfeld Ed., *Research in Law and Economics,* Volume 26, 161-207.

"The NUA Benefit and Optimal Investment in Company Stock in 401(K) Accounts," with Sumon C. Mazumdar, Vikram Nanda and Rahul Surana, 2009, in A. H. Chen Ed., *Research in Finance,* Volume 25, 203–227.

"Competition in IPO Underwriting: Time Series Evidence," with Andrew H. Chen and Sumon C. Mazumdar, 2008, in A. H. Chen Ed., *Research in Finance*, Volume 24, 1–25.

"A Matrix-Based Lattice Model to Value Employee Stock Options," with Sumon C. Mazumdar, Rahul Surana and Sanjay Unni, 2006, *Journal of Derivatives* 14, 9–26.

"Mean Reversion in Earnings and the Use of E/P Multiples in Corporate Valuation," with David Denis and Atulya Sarin, 2004, *Journal of Applied Finance* 14, 4–10.

"Securities Class Action Settlements: An Empirical Analysis," with Sumon C. Mazumdar and Atulya Sarin, 2003, *Santa Clara Law Review* 43, 1001–1033.

"Ownership Structure, Agency Costs and Dividend Policy," with Anand M. Vijh and Randolph W. Westerfield, 2002, in A. H. Chen Ed., *Research in Finance*, Volume 19, 1–28.

"The Cost of Raising Preferred Equity Capital," with Sumon C. Mazumdar and Atulya Sarin, 2002, *Journal of Financial Research* 25, 577–592.

"Firm Value and Marketability Discounts," with David J. Denis, Stephen P. Ferris and Atulya Sarin, 2001, *Journal of Corporation Law* 27, 89–115.

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Publications / Working Papers (Continued)

### Publications (Continued)

"Transfer Pricing and Foreign Exchange Risk," with Brian Becker and Jonathan Neuberger, *Transfer Pricing Report*, July 1999.

"Dividend Omissions and Forecasts of Future Earnings: Some Positive Evidence on Information Content of Dividends," 1999, in A. H. Chen Ed., *Research in Finance*, Volume 17, 13–39.

"The Relationship Between Ownership, Financing Decisions and Firm Performance: A Signaling Model," with Sudipto Dasgupta and Yuk-She Chan, 1998, *International Economic Review* 39, 723–744.

"Valuation for Smaller Capitalization Companies," with Scott D. Hakala, 1998, in *Financial Valuation: Business and Business Interests* – 1998 update, Warren, Gorham & Lamant.

"Trading Behavior and the Unbiasedness of the Market Reaction to Dividend Announcements," with Anand M. Vijh, 1995, *Journal of Finance* 50. (Abstract reprinted in *Financial Management Collection*, 1996.)

"Beyond Mere Compliance," with Anita S. Agarwal, *Mortgage Banking*, April 1993, 57–61.

"Dividend Clienteles and the Information Content of Dividend Changes," with Anand M. Vijh, 1990, *Journal of Financial Economics* 26, 193–219.

"The Efficient and Inefficient Media for Political Campaign Advertising," with Roland T. Rust and George T. Haley, 1984, *Journal of Advertising* 13, 45–49.

"Modeling of Non-Ideal Residence Time Distribution in a Continuous Flow Stirred Tank Reactor at Zero RPM," with D. Prasanna Rao, 1983, *Indian Chemical Engineer*, 24–27.

"Alternate Criteria for the Comparison of Regression Models," with Roland T. Rust, presented in *Proceedings of the Southwestern Marketing Association*, Spring 1983.

### Working Papers

"ESO Expensing Under the Revised FAS 123: A Practitioner's Guide," with Sumon C. Mazumdar, Sanjay Unni, and Anand Vijh, September 2005.

"Investment in Company Stock in 401(k) Accounts," with Sumon C. Mazumdar, May 2005.

"The New Accounting Rules for ESO Expensing: Not Quite As Easy As 123," with Sumon C. Mazumdar and Sanjay Unni, March 2005.

"Competition in IPO Underwriting: Time Series Evidence," with Andrew H. Chen, Sumon C. Mazumdar and Atulya Sarin, March 2003.

NAVIGANT


# Mukesh Bajaj, Ph.D.

**Managing Director and Global Head of the Securities & Finance Practice**
**Navigant Economics, LLC**


## Publications / Working Papers (Continued)

### Working Papers (Continued)

"Auditor Compensation and Audit Failure: An Empirical Analysis," February 2003.

"The Offer Yield of Preferred Stock," with Sumon C. Mazumdar and Atulya Sarin, March 2002.

"Signaling, Agency Costs and Ownership Structure: Theory and Empirical Implications," with Sudipto Dasgupta and Yuk–Shee Chan, mimeo, Hong Kong University of Science and Technology, 1997.

"Is it Appropriate to Use a Higher Discount Rate to Value Small Firms?" with Martin Hanan, Rick Knoll, and Mark Mitchell.

"Turnover in Equity Ownership, Risk and Return," September 1995.

## Professional Affiliations

Member, American Finance Association
Member, Western Finance Association
Member, Financial Management Association
Member, European Finance Association