**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, *etc.*, | : | |
| | : | Civil Action No. 4:08-cv-160 |
| Plaintiff, | : | |
| | : | JUDGE BENITA Y. PEARSON |
| vs. | : | |
| | : | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *etc.*, *et al.*, | : | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| | : | |
| Defendants. | : | |

**LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS REPRESENTATIVE AND CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION……………………………………………………………...................1
II. USING THE CORRECT *LEGAL* STANDARD, MARKET EFFICIENCY IS ESTABLISHED………2
III. DEFENDANTS FAIL TO PROVE A LACK OF PRICE IMPACT……………………………….9
IV. *COMCAST'S* REQUIREMENTS ARE MET…………………………………………………..12
V. CONCLUSION……………………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........ 1, 10

*Aranaz v. Catalyst Pharm. Partners, Inc.*,
302 F.R.D. 657 (S.D. Fla. 2014) ........ 9, 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........ 10

*Burges v. Bancorpsouth, Inc.*,
No. 3-14-1564, 2016 WL 1701956 (M.D. Tenn. Apr. 28, 2016) ........ 10

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J 1989) ........ passim

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ........ passim

*City of Sterling Heights Gen. Emps. Ret. Sys v. Prudential Fin., Inc.*,
No. 12-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) ........ 9

*In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
250 F.R.D. 137 (S.D.N.Y. 2008) ........ 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011) ........ 10, 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 15-90038, 2015 WL 10714013 (5th Cir. Nov. 4, 2015) ........ 10

*Första AP-Fonden v. St. Jude Med., Inc.*,
312 F.R.D. 511 (D. Minn. 2015) ........ 6, 9

*Halliburton Co., v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ........ 5, 8, 9

*Hayes v. MagnaChip Semiconductor Corp.*,
No. 14-CV-01160-JST, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ........ 14

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................................ 9

*In re Barrick Gold Sec. Litig.*,
No. 12-cv-3851, 2016 WL 1213238 (S.D.N.Y. Mar. 23, 2016) ............................................. 13

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
No. 10 CIV. 3461 PAC, 2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015) ........................ 9, 11, 14

*In re Groupon, Inc. Sec. Litig.*,
No. 12 C 2450, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ................................................. 5, 7

*In re JPMorgan Chase & Co. Sec. Litig.*,
No. 12 CIV. 03852 (GBD), 2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ............................ 2

*In re NII Holdings, Inc. Sec. Litig.*,
311 F.R.D. 401 (E.D. Va. 2015) .................................................................... 13, 14, 15

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ...................................................................... 5, 6, 8, 14

*Kasper v. AAC Holdings, Inc.*,
No. 15-CV-00923-JPM-JSF, 2017 WL 3008510 (M.D. Tenn. July 14, 2017)........................ 13

*Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014)........................................................................................... 6

*Louisiana Mun. Police Emp. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2017 WL 3149424 (D. Vt. July 21, 2017) ................................................ 14

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015)............................................................................................. 15

*Lumen v. Anderson*,
280 F.R.D. 451 (W.D. Mo. 2012) .................................................................................... 5, 9

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F. Supp. 3d 415 (S.D.N.Y. 2014)................................................................................ 6, 8

*Montage Tech. Grp. Ltd. Sec. Litig.*,
No. 14-CV-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ..................................... 14

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013)............................................................... 3, 6, 8

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ............................................................................ 10

*Smilovits v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) ....................................................................... 3, 6, 7

*Strougo v. Barclays, PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) .............................................................................. 5

*Thorpe v. Walter Inv. Mgmt., Corp.*,
No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016)................................. 11

*Willis v. Big Lots, Inc.*,
242 F. Supp. 3d 634 (S.D. Ohio 2017)........................................................... 10, 11, 13

*Willis v. Big Lots, Inc.*,
No. 2:12-CV-604, 2017 WL 1074048 (S.D. Ohio Mar. 17, 2017)............................................ 7

**Rules**

FED R. CIV. P 23(a) ................................................................................................... 1

FED R. CIV. P 23(b) ................................................................................................... 1

**Other Authorities**

Brief of Testifying Economists as Amici Curiae in Support of Respondent, *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Feb. 5, 2014……………………………………8

David Tabak, *What Should We Expect When Testing for Price Response to News in Securities Litigation?* NERA Economic Consulting Working Paper (2016), *http://www.nera.com/content/dam/nera/publications/2016/PUB_Testing_For_Price_ Response_0816.pdf* …...6

## I. INTRODUCTION

Defendants' opposition to OPERS's motion for class certification does not contest that the Rule 23(a) requirements of numerosity, commonality, typicality, adequacy and superiority are met. *See generally* Def.'s Mem. in Opp'n to Lead Pl.'s Renewed Mot. for Class Certification ("Opp."). Defendants do not contest the myriad common questions of fact and law supporting predominance under Rule 23(b) as set forth in OPERS's renewed motion. *Id.* They do not contest that Freddie Mac common stock traded during the Class Period on the New York Stock Exchange, creating a presumption of market efficiency under applicable case law and allowing the *Basic* presumption of reliance. *Id.* Nor do they contest that at least six of the eight *Cammer/Krogman* factors are clearly met in this case, which the vast majority of courts have again found establishes market efficiency. Defendants do not contest that on November 20, 2007, there was a statistically significant price decrease of Freddie Mac's stock price linked to credit losses, providing strong evidence of price impact. *Id.* And they do not contest that OPERS and its expert have proposed an out-of-pocket damage theory under Rule 10(b) that is both consistent with Rule 10(b) and has been applied in virtually every Rule 10(b) case on a classwide basis, satisfying *Comcast*. *Id.* On what is established and uncontested, therefore, OPERS is entitled to class certification.

Defendants base their opposition to class certification on three invalid arguments. *First*, Defendants ignore the applicable *legal* standard for market efficiency and instead argue for an *economic* standard that defense expert Dr. Bajaj believes should be applicable. Opp. at 5-13; Doc. 383-2 ("Bajaj Report.") at 9-75. *Second*, Defendants take Dr. Bajaj's 2012 materiality argument and repackage it as a "price impact" argument, claiming that this rebuts the presumption of reliance. Opp. at 13-14; Bajaj Report at 75-80. Materiality arguments are inappropriate at class certification, and renaming it as a "price impact" argument does not cure this deficiency. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). *Third*, Defendants argue through

Dr. Gompers that the Third Amended Complaint fails to satisfy *Comcast* because OPERS will be unable to prove damages on a classwide basis. Opp. at 15-20; Doc.383-3 ("Gompers Report.") at 3-44. Dr. Gompers has made the same argument in ten different courts since *Comcast* and it has been rejected in nine (the tenth case settled before an opinion was issued).

There is not the space to address every issue raised by Defendants' experts in the 126 combined pages of criticism directed primarily at Professor Feinstein's *Cammer* factor five analysis and his opinion that, once discovery is concluded, he will be able to use the standard economic tools to come up with a typical out-of-pocket damage analysis. Nor is it necessary. As one Court stated, such criticisms "distract[] from the central question: does the weight of evidence tip in favor of the finding that defendants' common stock was efficient during the Class Period? . . . the simple answer to that question is yes." *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 CIV. 03852 (GBD), 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015). And in this case, Dr. Gompers's incorrect *Comcast* analysis further distracts from the central question of whether OPERS's damage theory matches its theory of liability and can be applied classwide. As discussed below, the simple answer to both questions is yes. *Id.* If the Court is interested in reviewing the errors found in the defense experts' extensive critiques, however, they are addressed in Professor Feinstein's rebuttal report. *See generally,* Markovits Decl., Exh. 1, Feinstein Rebuttal Report.

## II. USING THE CORRECT *LEGAL* STANDARD, MARKET EFFICIENCY IS ESTABLISHED

Stocks trading on the NYSE are entitled to a presumption of efficiency, "making it incumbent upon Defendants to rebut the presumption." *See* Mem. in Support of Lead Pl.'s Renewed Mot. for Class Certification (Doc. 372-1) ("Motion") at 15. It is undisputed that Freddie Mac common stock traded on the NYSE during the entire Class Period. Defendants make no attempt to rebut this presumption of efficiency. While in prior cases defense expert Bajaj has run

tests such as put-call parity, serial correlation, or y-filter—all of which can provide evidence of an *inefficient* market—he made no effort to do so in this case. Markovits Decl., Exh. 2 ("Bajaj 2017 Dep.") at 184:17 – 188:21. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,* 310 F.R.D. 69, 91 (S.D.N.Y. 2015) ("[w]hile the significance of trading on the NYSE or other large markets can be undermined by direct evidence of inefficiency, defendants have not presented such evidence").

Each of the additional *Cammer/Krogman* factors further establish that Freddie Mac common stock traded in an efficient market. Motion at 15. Defendants do not challenge that six of the eight factors are met. Freddie Mac's average weekly trading volume of 3.0% is undisputed, meeting *Cammer* factor 1 and establishing a "strong presumption" of market efficiency. *Id.* at 16 (citing *Cammer*, 711 F. Supp. at 1286). It is undisputed that Freddie Mac had numerous analysts following its common stock, meeting *Cammer* factor 2. *Id.* Freddie Mac had market makers and arbitrageurs, satisfying *Cammer* factor 3. *Id.* at 16-17. Freddie Mac's market capitalization during the class period averaged $42.1 billion, substantially meeting *Krogman* factor 1. *Id.* at 18. The average bid-ask spread for Freddie Mac stock over the class period was 0.12%, indisputably meeting *Krogman* factor 2. *Id.* It is also undisputed that Freddie Mac's average float during the Class Period was 99.98% of shares outstanding, weighing heavily in favor of market efficiency. *Id.* Many courts have found market efficiency on similar evidence, and these factors alone warrant such a finding. *See, e.g.*, *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 437 (D. Ariz. 2013) (finding efficiency where third factor questionable and fifth factor a "standoff"); *Carpenters*, 310 F.R.D. at 94 (stating efficiency is found on record without *Cammer* 5); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns,* 967 F. Supp. 2d 1143, 1160-61 (N.D. Ohio 2013) (stating that courts can conclude

a market is efficient where "a plaintiff introduces evidence of high average weekly trading volumes, heavy analyst coverage, or the presence of numerous market makers").

Even defense expert Dr. Bajaj, in a report he authored in 2016 for a plaintiff's motion for class certification, applied the *Cammer/Krogman* factors stating:

> Intuitively, for a large capitalization stock like Allergan with many market analysts, high trading volume, active flow of information and listing on a well-developed public exchange such as the New York Stock Exchange ("NYSE"), it is reasonable to infer that the observed stock prices are determined in an efficient market.

*See* Markovits Decl., Exh. 3 ("Allergan Report"), at ¶18. Substituting "Freddie Mac" for "Allergan" does not change this conclusion. But in this case Defendants and Dr. Bajaj ignore his prior opinion and the presumption created by Freddie Mac common stock trading on the NYSE. They ignore that six of eight *Cammer/Krogman* factors are unquestionably met. Defendants invalidly base their entire opposition on *Cammer* factors 4 and 5.

As to *Cammer* factor 4, Defendants contend in a footnote that Professor Feinstein "admitted" Freddie Mac is not eligible to file Forms S-3 during the Class Period, misleadingly implying this is a failure to meet *Cammer* factor 4. Opp. at p. 7, n.3; Bajaj Report, ¶19, n.16. As set forth in OPERS' Motion, *Cammer* held that S-3 eligibility is not required to meet factor 4; rather, the question is the number of shares traded, the value of shares outstanding, and the minimum size requirements. *Cammer*, 711 F. Supp. at 1287. All those requirements are undisputedly met in this case. Doc. 372-3, ("Feinstein Report") ¶¶80, 83, 145.

Aside from the half-hearted attempt to challenge *Cammer* factor 4, Defendants spend the bulk of their brief and expert report attacking *Cammer* factor 5 and espousing an *economic* standard for market efficiency that is decidedly contrary to the applicable *legal* standard. Under Dr. Bajaj's view, to invoke the *Basic* presumption of reliance, 1) a plaintiff must prove the market is semi-strong efficient; 2) *Cammer* factor 5 is necessary and dispositive; 3) an event study must

be performed; 4) the event study must show that news causes a statistically significant stock price reaction on 80-90% of news days; and 5) market efficiency must be shown at a 95% confidence level. Bajaj Report ¶¶21-32, 93; Bajaj 2017 Dep. at 15:14 – 18:15, 53:22 – 54:21, 148:22 – 149:10.

This economic analysis is unhelpful because under applicable *legal* standards to invoke the *Basic* presumption, 1) only "general efficiency" is required; 2) *Cammer* Factor 5 is not dispositive; 3) an event study need not be performed; 4) event studies need not show that news causes a statistically significant stock price reaction on 80-90% of news days; and 5) market efficiency must be shown only by a preponderance of the evidence. Dr. Bajaj takes the same approach to market efficiency as Dr. Gompers, who has been repeatedly criticized by courts for imposing a standard of market efficiency that is "absolutist," "wrong[]", "rejected by the Supreme Court," "not legally relevant," and "different. . . than is used by the law." *See In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 371 (S.D.N.Y. 2016) ("The Supreme Court has rejected Gompers' absolutist view of market efficiency . . ."); *Carpenters*, 310 F.R.D. at 84, n. 98; *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015); *Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo. 2012). OPERS will briefly address each of these points below.

First, the Supreme Court holds that no specific degree of efficiency is required, and "general efficiency" suffices. *See Halliburton Co., v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014) ("*Halliburton II*"). The "generally efficient" standard is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.* Accordingly, "[d]ebates about the precise degree to which stock prices accurately reflect public information are . . . largely beside the point." *Id.* at 2410. Proof of a semi-strong efficient market is therefore unnecessary. *Strougo v. Barclays, PLC*, 312 F.R.D. 307, 315 (S.D.N.Y. 2016); *Carpenters*, 310 F.R.D. at 78.

Second, no court has held that *Cammer* Factor 5 is dispositive, and many have held to the contrary. *Carpenters*, 310 F.R.D. at 83, 94; *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1256 (11th Cir. 2014); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015) ("A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors."); *Plumbers*, 967 F. Supp. 2d at 1161; *Smilovits*, 295 F.R.D. at 437.

Third, an event study is not required. *Petrobras Sec. Litig.*, 312 F.R.D. at 371 (holding that z-test was direct evidence of market efficiency); *Carpenters*, 310 F.R.D. at 86 ("In the usual case of common or other highly traded and analyzed stock, there is no reason to burden the court with review of an event study and the opposing expert's attack on it."); *Första*, 312 F.R.D. at 521-22 (to require an event study would "impose a burden on plaintiffs that the law does not mandate," and news/non-news test can demonstrate fifth *Cammer* factor).

Fourth, Dr. Bajaj's notion that proving *Cammer* factor 5 requires that news cause a statistically significant stock price reaction on 80-90% of news days is, according to an economist Dr. Bajaj himself cites, without "some empirical or even sound theoretical basis . . ." Bajaj Report, Doc. 383-2, at p. 100, *citing* David Tabak, *What Should We Expect When Testing for Price Response to News in Securities Litigation?* NERA Economic Consulting Working Paper (2016). Many courts have rejected similar arguments. *See, e.g., Första*, 312 F.R.D. at 521–22 (D. Minn. 2015) (rejecting defense argument that reaction on 36.4% of news days was insufficient); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014) ("To require a stock to change on at least 50 percent of potentially material news days ignores that, in many circumstances, the absence of a price change on a potentially material news day is not inconsistent with an efficient market.").

Fifth, while Dr. Bajaj may only be satisfied by 95% proof, preponderance of the evidence—50.1%—is the legal standard. *Smilovits*, 295 F.R.D. at 437; *Carpenters*, 310 F.R.D. at 94.

Dr. Bajaj disputes the *economic* relevance of the *Cammer/Krogman* factors apart from *Cammer* factor 5. In 2013, Dr. Bajaj opined that factors other than *Cammer* factor 5, such as factor 1, had "no probative value." Doc. 220-5 (Bajaj 2013 Dep.) at 113:18 – 114:3. He has backtracked from that only slightly. In his 2016 report supporting certification in the *Allergan* case he opined that the *Cammer* factors, including factor 1, indicated an efficient market. Allergan Report. In other words, his opinions on the *Cammer* factors' relevance appear to depend on who has retained him for those opinions. He attempts to square his *Allergan* opinion with his current opinion by claiming that while factor 5 is necessary and dispositive, some other factors may have "marginal relevance." Bajaj 2017 Dep. at 150:24 – 151:11.

As one court recently stated in response to similar defense arguments:

> It may be that many financial economists, including Dr. Gompers, dispute the relevancy of the first four *Cammer* factors to a determination of market efficiency, but the *Cammer* factors nonetheless reflect the *legal* standard for market efficiency and have been considered by the Sixth Circuit in such determinations.

*Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1074048, at *4 (S.D. Ohio Mar. 17, 2017). Or as another court put it, "Defendants rely on factors that are not legally relevant. This does not mean Defendants (or their expert, Paul Gompers) are incorrect in what they say—it means Defendants (and their expert) often describe a different conception of an efficient market than is used by the law." *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at * 11. Had Dr. Bajaj applied the correct standard, and interpreted the *Cammer* factors as they are prescribed instead of inventing his own "standard" for market efficiency, he would have no choice but to admit that the "modest premise" of general efficiency is easily satisfied here.

In addition to applying an incorrect legal standard, Dr. Bajaj launches a number of baseless attacks on Professor Feinstein's *Cammer* factor 5 analysis. In his rebuttal report, Professor Feinstein illustrates how each of these attacks does not withstand scrutiny. *See* Feinstein Rebuttal. A few examples will provide the general tenor.

Dr. Bajaj criticizes Professor Feinstein's event study for using one event date, arguing that this proves at most that the market was acting efficiently on that day. Bajaj 2017 Dep. at 58:21 – 59:16. But Dr. Bajaj took a similar approach in *Allergan*, using two event dates. Allergan Report, ¶¶54-55, 61. *See also Plumbers*, 967 F. Supp. 2d 1143, 1157 (N.D. Ohio 2013) (two events). In any case, as Professor Feinstein made clear, the other *Cammer/Krogman* factors were present and demonstrate market efficiency throughout the Class Period. Feinstein Report, ¶148; Doc. 383-1 ("Feinstein Dep.") at 178:7 – 179:23; Feinstein Rebuttal Report, ¶¶41-43.

Dr. Bajaj also criticizes Professor Feinstein's z-test as failing to provide evidence of market efficiency. Economic literature and Section 10(b) jurisprudence hold otherwise. No fewer than eight economic professors advanced this comparative approach for testing market efficiency in an amicus brief submitted to the Supreme Court in 2013. *See* Brief of Testifying Economists as Amici Curiae in Support of Respondent, *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Feb. 5, 2014. Such comparative analyses have repeatedly been accepted and relied on. *Petrobas*, 312 F.R.D. at 369; *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (holding that expert conclusion that "it was six times more likely for CCME's share price to change on News Days than on Non-News Days" sufficient to satisfy fifth *Cammer* factor); *In re Alstom S.A. Sec. Litig.*, 253 F.R.D 266, 280 (S.D.N.Y. 2008) (finding sufficient showing of market efficiency where plaintiffs' expert concluded that "Alstom was over 6 times more likely to have a statistically significant stock return on a day with news than on a day with no news.");

*Lumen*, 280 F.R.D. 451, 461 (W.D. Mo. 2012) (applying news/no-news day test*). Första*, 312 F.R.D. at 521 (same).

Dr. Bajaj's critiques should not distract from the primary point: regardless of *Cammer* 5 (which is met but contested), it is uncontested that Freddie Mac common stock traded on the NYSE and met seven of the eight *Cammer/Krogman* factors, and this is more than sufficient to sustain a finding of market efficiency. This is particularly so where, as here, Defendants have failed to introduce any evidence of market inefficiency.

## III. DEFENDANTS FAIL TO PROVE A LACK OF PRICE IMPACT

Defendants can negate the presumption of reliance by proving a lack of price impact through direct evidence. *Halliburton II*, 134 S. Ct. at 2415-16. However, it is "incumbent upon the defendant to show the absence of price impact," and "in practice, the so-called 'rebuttable presumption' is largely irrebuttable." *Id.* at 2417, 2424 (Ginsburg, J., concurring, and Thomas, J., dissenting); *see also Aranaz v. Catalyst Pharm. Partners, Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014) (stating the defendants' burden to prove absence of price impact is "daunting"); *City of Sterling Heights Gen. Emps. Ret. Sys v. Prudential Fin., Inc.*, No. 12-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015) (same).

Defendants attempt to meet this heavy burden in part by showing there was no price impact on the dates of the alleged misrepresentations. Opp. at 14; Bajaj Report at ¶¶163-167. But, as numerous courts have held, the fact there may have been no price impact on the dates of the alleged misrepresentations is "insignificant." *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2015 WL 5613150, at *6–7 (S.D.N.Y. Sept. 24, 2015); *Carpenters*, 2015 WL 5000849, at * 11 ("[A] material misstatement can impact a stock's value either by improperly causing the value to increase or by improperly maintaining the existing stock price."); *Willis v. Big Lots, Inc.*, 242

F. Supp. 3d 634, 658–59 (S.D. Ohio 2017) (recognizing price maintenance); *Burges v. Bancorpsouth, Inc.*, No. 3-14-1564, 2016 WL 1701956, at *3 (M.D. Tenn. Apr. 28, 2016) (same). Defendants cite *Credit Suisse First Boston Corp. (Lantronix Inc.) Analyst Sec. Litig*., 250 F.R.D. 137, 145 (S.D.N.Y. 2008) to suggest that a price maintenance theory cannot be argued, but as more recent decisions have pointed out *Credit Suisse* was based on a failure to prove loss causation at class certification, a requirement *Erica P. John Fund, Inc. v. Halliburton Co*., 131 S. Ct. 2179 (2011) ("*Halliburton I*") later explicitly rejected. *City of Livonia Emp.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 183 (S.D.N.Y. 2012). Defendants' misrepresentations were confirmatory in nature and the price impact in this case occurred on November 20, 2007. Feinstein Rebuttal, ¶¶37, 113, 115.

Defendants have also attempted to meet their burden by taking their prior materiality arguments (rendered moot by *Amgen*) and similarly inappropriate "truth-on-the-market" arguments and regurgitating them as "price impact" arguments. *Cf.* Bajaj 2013 Dep. at 277:11-278:7 (no materiality based on review of release and earnings transcript, because no correction), Doc. 214, Bajaj 2012 Report, ¶¶15, 65-71, 154-193 (raising materiality and truth-on-the-market) and Bajaj Report, ¶¶12, 169-171 (no price impact based on review of release and earnings transcript because no correction, and raising truth-on-the-market issues). This type of end run will not fly. Defendants' materiality and truth-on-the-market arguments are moot at class certification. *Amgen*, 568 U.S. 455 (2013); *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988). *See also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 15-90038, 2015 WL 10714013, at *1–2 (5th Cir. Nov. 4, 2015) ("To require a showing that a corrective disclosure is linked to the alleged misrepresentation is to require a showing of loss causation in contravention of *Halliburton I*.").

Defendants offer no proof of lack of price impact other than the *ipse dixit* of Dr. Bajaj. Defendants cannot prove that there was no statistically significant stock price decrease on November 20, 2007. That fact is not in dispute. Bajaj 2017 Dep. at 93:25 – 94:4. Defendants have failed to prove that *none* of the huge 29% stock decrease on that day was linked to OPERS's allegations. Dr. Bajaj's approach of reviewing news and commentary and blithely opining "I don't see any link" will not suffice. *In re Goldman Sachs*, 2015 WL 5613150 at *6–7 (holding that analysis of market commentary insufficient to negate price impact); *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at *14 (S.D. Fla. Mar. 16, 2016) (same).

Dr. Bajaj is *not* opining that the alleged misrepresentations and omissions had no price impact on November 20, 2007. Bajaj. 2017 Dep. at 98:23-93:11. And he is *not* opining that no part of the losses and writedowns resulted from exposure to nontraditional loans. *Id.* at 116:14 – 117:3. His analysis was in response to Professor Feinstein, "who didn't point to any evidence other than the large price drop on that day." *Id.* at 97:25-98:13. But the burden is not on Professor Feinstein to prove price impact—the burden is on Defendants to prove its absence. *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017); *Aranaz*, 302 F.R.D. at 672 (stating that "Defendants have the burden of showing an absence of price impact, they must show that price impact is *inconsistent* with the results of their analysis," and that "an absence of price impact is consistent with their analysis is insufficient"); *In re Goldman Sachs*, 2015 WL 5613150 at *7 (same).

Defendants do not even attempt to meet this burden. Defendants have not proven—as they must to negate price impact—that even if OPERS's allegations are true there is no connection between those allegations and the stock decrease on November 20, 2007. And even if OPERS somehow retained this burden, there is strong evidence of price impact. One of OPERS' primary allegations is that Defendants misrepresented Freddie Mac's exposure to credit risk from

nontraditional mortgages. Doc. 166, Third Amended Complaint, ¶2. One of the primary disclosures on November 20, 2007 was losses arising from an unexpected magnitude of exposure to credit risk arising from nontraditional mortgages. Feinstein Rebuttal, ¶¶130-133. This link alone is evidence of price impact. Articles and analyst reports immediately following Freddie Mac's November 20th disclosures also discussed relaxed underwriting standards and capital impairment—two of the other primary topics alleged to be the subject of misrepresentations and omissions in the TAC—providing additional price impact links. *Id.* at ¶¶132-133. Dr. Bajaj's opinion also ignores materialization of the risk. If Freddie Mac misrepresented its underwriting standards, and this caused an unexpected $2 billion loss, this would likely cause a statistically significant price decrease. This is price impact, regardless of whether there is a corrective disclosure. *Id.* at ¶¶137-140. Defendants have not met their burden of rebutting price impact under applicable legal standards.

## IV. *COMCAST'S* REQUIREMENTS ARE MET

Courts, including those within the Sixth Circuit, hold that *Comcast* requires only that a plaintiff show that damages can be determined on a classwide basis consistent with the theory of liability. Motion at 10-11. Consistent with OPERS's theory of the case and using a repeatedly approved approach, Professor Feinstein explained that damages under Section 10(b) for investors who purchased Freddie Mac common stock during the Class Period can be calculated using an "out-of-pocket" method that is common to the class, and he discussed generally the methods applied to do so once discovery is complete. Feinstein Report, ¶¶149-157; Feinstein Dep. at 287:10-361:10 (Doc. No. 383-1). This satisfies the "minimal scrutiny" required by *Comcast. Carpenters*, 310 F.R.D. at 99. The overwhelming majority of courts, including those within the Sixth Circuit, agree. Motion at 10-11; *see, e.g., Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 652

(S.D. Ohio 2017); *In re Barrick Gold Sec. Litig*., No. 12-cv-3851, 2016 WL 1213238, at *10 (S.D.N.Y. Mar. 23, 2016) ("plaintiff's actual theory of damages (out-of-pocket damages) is entirely consistent with their theory of Section 10(b) liability and would be measurable on a class-wide basis"); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413 (E.D. Va. 2015) (accepting out-of-pocket method proffered by expert because it "is widely accepted as the traditional measure of damages for Rule 10b-5 actions"). Dr. Bajaj took exactly this approach as a plaintiff's expert in the *Allergan* case, where the class was certified. Allergan Report at ¶¶68-69.

Defendants attack Professor Feinstein's approach as inconsistent with the requirements of *Comcast.* Opp. at 15-20; Gompers Report. Dr. Gompers alleges that Professor Feinstein's opinion is insufficient because he fails to specify how he will deal with damage and loss causation issues arising from confounding factors such as varying inflation, changing market conditions, materialization of known risks, and differing misrepresentations. Doc. 383-3, Gompers Report, at ¶¶47-62, 69-97. He suggests that there is some theoretical inconsistency arising from the use of materialization of the risk as part of loss causation. *Id.* at ¶¶63-68.

Since the decision in *Comcast*, Dr. Gompers has raised nearly identical arguments in ten cases. Markovits Decl., Exh. 4 (Gompers's report excerpts). These opinions have been rejected in nine of the ten cases, including two within the Sixth Circuit, with certification of the class in each case generally based upon *Comcast* opinions similar to Professor Feinstein's. *See Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 652 (S.D. Ohio 2017); *Kasper v. AAC Holdings, Inc.*, No. 15-CV-00923-JPM-JSF, 2017 WL 3008510, at *14 (M.D. Tenn. July 14, 2017); *In re NII Holdings, Inc. Sec. Litig*., 311 F.R.D. 401, 413–14 (E.D. Va. 2015) (rejecting arguments of complex damages, inconsistent theory based on materialization of the risk); *Louisiana Mun. Police Emp. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2017 WL 3149424, at *7 (D. Vt. July

21, 2017); *Carpenters*, 310 F.R.D. at 99; *In re Goldman Sachs*, 2015 WL 5613150 at *7–8; *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413–14 (E.D. Va. 2015); *Petrobas*, 312 F.R.D. at 372; *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-CV-00722-SI, 2016 WL 1598666, at *13 (N.D. Cal. Apr. 21, 2016); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 7406418, at *9–10 (N.D. Cal. Dec. 22, 2016). The eleventh case settled for $33 million before an opinion on the issue was rendered. *City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC (S.D.N.Y.). *No* case has accepted Dr. Gompers arguments about supposed *Comcast* requirements.

Factually, Dr. Gompers's opinion boils down to the claim that this case is somehow the sole exception to the legions of courts that have approved an out-of-pocket damages methodology in Section 10(b) cases. Legally, his is a thinly disguised "loss causation" argument that is inappropriate at class certification. *Erica P. John Fund, Inc. v. Halliburton Co*., 131 S. Ct. 2179 (2011) ("*Halliburton I*") (proof of loss causation not required at class certification).

As in prior cases, Defendants and Dr. Gompers try to shoehorn the alleged difficulties in damage calculation into some inconsistency between theory and damages. For example, Dr. Gompers argues that Professor Feinstein's approach "compensates investors for the *entire* stock price decline due to the release of *all* firm specific information on the alleged materialization date (which is inconsistent with Plaintiff's theory of liability)." Gompers Report, ¶11. This is incorrect. Both in his initial report and in his deposition testimony, Professor Feinstein made clear that the damage analysis would control for non-fraud-related information. Feinstein Report, ¶152; Feinstein Dep. at 287:10-361:10. This is not, moreover, an inconsistency between theory and damages.

Defendants cite *Ludlow* for the proposition that there is some inconsistency in seeking classwide damages in a materialization of the risk case. Opp. at 19-20, *citing Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015). But *Ludlow* is inapposite. The Fifth Circuit in *Ludlow* affirmed that a "pre-spill" subclass could not be certified because plaintiffs were seeking *consequential* damages, which requires individualized determinations of whether each plaintiff would have purchased BP stock at all were it not for the misrepresentations. *Id.*, 800 F.3d at 689-91. The Fifth Circuit specifically noted "The question here is not whether the "materialization of the risk" theory can provide a viable measure of damages for a Rule 10b-5 case." *Ludlow*, 800 F.3d at 689-90. And the "post-spill" subclass, which sought the typical out-of-pocket damage measure for a 10(b) violation—the damage theory applied here—was certified. *Id.* at 683-689. Other courts have certified cases involving materialization of the risk where they seek out-of-pocket damages, as here. Markovits Dec., Exh. 4 (Gompers report in NII); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413-14 (E.D. Va. 2015). And as a matter of economics, there is no inconsistency in "theory" between a materialization of the risk case and out-of-pocket damages. *Id*.; Feinstein Rebuttal, ¶¶137-140.

Defendants assert that "numerous" courts have applied *Comcast* to deny class certification. Opp. at 15. But none of the cases cited were denials of class certification in a 10(b) case involving out-of-pocket damages. OPERS, on the other hand, has cited many and could cite dozens of cases where classes were certified consistent with *Comcast* based upon opinions nearly identical to those set forth by Professor Feinstein in this case.

## V. CONCLUSION

For the foregoing reasons, OPERS respectfully requests that its Motion be granted.

Dated: October 16, 2017

Respectfully submitted,

OHIO ATTORNEY GENERAL
MICHAEL DeWINE
Attorney General of Ohio
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Telephone: (614) 387-5600
Facsimile: (614) 387-6697

*<u>/s/ W.B. Markovits</u>*
W.B. Markovits (0018514)
Joseph T. Deters (0012084)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: cstock@msdlegal.com
E-mail: tcoates@msdlegal.com

*Special Counsel to the Attorney General of the State of Ohio and Lead Counsel for Lead Plaintiff*

*<u>/s/ Richard S. Wayne</u>*
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Stephen E. Schilling (0086897)
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com
E-mail: seschilling@strausstroy.com

*Special Counsel to the Attorney General of the State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2017, a copy of the foregoing "LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS REPRESENTATIVE AND CLASS COUNSEL" was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)