UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, *etc.*,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, *etc.*, *et al.*,<br><br>Defendants. | Civil Action No. 4:08-cv-160<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**
**<u>TO EXCLUDE THE EXPERT TESTIMONY OF DR. MUKESH BAJAJ</u>**

## I. INTRODUCTION AND BACKGROUND

Expert opinions that are based on erroneous legal standards must be excluded as irrelevant, unhelpful, confusing, and unfairly prejudicial. Fed. R. Evid. 702; *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). Such testimony is not only "superfluous" but "mischievous." *Nationwide*, 523 F.3d at 1059. The proffered expert testimony of Dr. Mukesh Bajaj is contrary to legal standards regarding (1) market efficiency and (2) price impact, and therefore should be excluded.

With respect to market efficiency, Dr. Bajaj espouses an *economic* standard that is decidedly contrary to the applicable *legal* standard. Under Dr. Bajaj's view, to prove market efficiency and thereby invoke the *Basic* presumption of reliance, 1) a plaintiff must prove the

market is semi-strong efficient; 2) *Cammer* factor 5 is necessary and dispositive; 3) an event study must be performed; 4) the event study must show that news causes a statistically significant stock price reaction on 80-90% of news days; and 5) market efficiency must be shown at a 95% confidence level. (Doc. 383-3 ("Bajaj Rpt."), ¶¶21-32, 93, and attached Declaration of W. B. Markovits, Exh. 1; Doc. 406-2 ("Bajaj Dep.") 15:14–18:15, 53:22–54:21, 148:22–149:10, and attached Declaration of W. B. Markovits, Exh. 2.) This economic analysis is irrelevant, unhelpful, confusing, and unfairly prejudicial because, under applicable *legal* standards discussed below, to invoke the *Basic* presumption, 1) only "general efficiency" is required; 2) *Cammer* Factor 5 is not dispositive; 3) an event study need not be performed; 4) event studies need not show that news causes a statistically significant stock price reaction on 80-90% of news days; and 5) market efficiency must be shown only by a preponderance of the evidence. To allow Dr. Bajaj to present his market efficiency opinion would confuse and mislead a jury. *See In re Initial Pub. Offering Sec. Litig*, 544 F. Supp. 2d 277, 297 (S.D.N.Y. 2008) ("Ultimately, whether the relevant markets were efficient is a question of fact to be resolved at trial."); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns,* 292 F.R.D. 515, 526 (N.D. Ohio 2013) (defendant can present evidence of market inefficiency at trial).

Dr. Bajaj's opinion regarding price impact fares no better. His opinion that there was no price impact is based on two purported findings: (1) that there was no price impact on the date of alleged misrepresentations; and (2) that there allegedly is no "link" between the 29% stock decrease on November 20, 2007 and OPERS's allegations. The first is legally "insignificant"; the second is, as discussed below, based upon a legally insufficient expert review and is, as Dr. Bajaj admits, incorrect. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10CIV. 3461 PAC, 2015 WL 5613150 at *6-7 (S.D.N.Y. Sept. 24, 2015) (lack of price impact on date of alleged

misrepresentations "insignificant"). Dr. Bajaj's price impact opinion does not meet the *Daubert* standard, and only serves to confuse and mislead.

## II. Legal Standard for Exclusion

The application of legally incorrect assumptions does not simply affect the *weight* of the proffered expert testimony, it affects the fundamental *admissibility* of the opinion in its entirety. Because Fed. R. Evid. 702 requires an expert opinion be helpful and reliable, expert testimony built on a faulty legal standard must be excluded. *Nationwide*, 523 F.3d at 1059; *In re Welding Fume Prod.*, No. 1:03-CV-17000, 2005 WL 1868046, at *7–8 (N.D. Ohio Aug. 8, 2005) (holding that expert testimony contrary to the applicable legal standard inadmissible); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 886 F. Supp. 2d 873, 879 (N.D. Ill. 2012) (same); *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107–08 (S.D. Cal. 2012) (holding that defense expert testimony on loss causation was inadmissible as contrary to legal standard).

## III. Dr. Bajaj Uses an Economic Standard for Proof of Market Efficiency that is Contrary to the Applicable Legal Standard

Dr. Bajaj takes the same approach to market efficiency as Dr. Gompers, who has been repeatedly criticized by courts for imposing a standard of market efficiency that is "absolutist," "wrong[]", "rejected by the Supreme Court," "not legally relevant," and "different. . . than is used by the law." *See In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 371 (S.D.N.Y. 2016) ("The Supreme Court has rejected Gompers' absolutist view of market efficiency . . ."); *Carpenters*, 310 F.R.D. at 84, n. 98; *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015); *Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo. 2012). The distinctions between Dr. Bajaj's economic standard for market efficiency and the applicable legal standard are discussed below.

### A. Dr. Bajaj's requirement of "semi-strong" market efficiency is contrary to the "general efficiency" required under *Halliburton II.*

Prior to the Supreme Court's decision in *Halliburton Co., v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014) ("*Halliburton II*"), many courts held that establishing an efficient market required proof of the "semi-strong" form of market efficiency. *See, e.g., In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 177 (S.D.N.Y. 2012) ("The fraud on the market theory is based on the semi-strong form of market efficiency."). Dr. Bajaj's opinion that OPERS has failed to prove market efficiency is based on the premise that this semi-strong form of market efficiency is required. (Bajaj Rpt. at 15:14–16:4, 22:2-14**,** Declaration of W. B. Markovits, Exh. 1.)

The Supreme Court holds that no specific degree of efficiency is required, and "general efficiency" suffices. *Halliburton Co., v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014) ("*Halliburton II*"). The "generally efficient" standard is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.* Accordingly, "[d]ebates about the precise degree to which stock prices accurately reflect public information are . . . largely beside the point." *Id.* at 2410. Proof of a semi-strong efficient market is therefore unnecessary. *Strougo v. Barclays, PLC*, 312 F.R.D. 307, 315 (S.D.N.Y. 2016); *Carpenters*, 310 F.R.D. at 78. Because Dr. Bajaj's opinion regarding market efficiency is based upon an erroneous legal standard, it must be excluded.

### B. Dr. Bajaj treats *Cammer* Factor Five as necessary and dispositive, contrary to the applicable legal standards.

Dr. Bajaj's opinion regarding market efficiency is also based on the premise that—as a matter of financial economics—*Cammer* Factor Five (an empirical showing of cause-and-effect)

is both necessary and dispositive. (Bajaj Dep. at 149:24–150:23, Declaration of W. B. Markovits, Exh. 2.) Whether or not this is true as a matter of economics, it is untrue under applicable legal standards. No court has held that *Cammer* Factor 5 is dispositive, and many—including within this Circuit—have held to the contrary. *Carpenters*, 310 F.R.D. at 83, 86, 94; *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1256 (11th Cir. 2014); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015) ("A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors."); *Plumbers*, 967 F. Supp. 2d at 1161; *Smilovits*, 295 F.R.D. at 437. Dr. Bajaj's opinion regarding market efficiency must be excluded because it is based upon an erroneous legal standard regarding *Cammer* Factor Five.

### C. Dr. Bajaj's opinion that market efficiency cannot be proven without an event study is contrary to applicable legal standards.

Dr. Bajaj opines that the only way to satisfy what he views as the necessary and dispositive *Cammer* Factor Five, and therefore prove market efficiency, is through an event study. (Bajaj Dep. at 149:4-10, Declaration of W. B. Markovits, Exh. 2.) Again, while economists disagree on this issue, the courts do not, for two reasons. First, as discussed above *Cammer* Factor Five is not dispositive. It is only one factor among many, and market efficiency can be shown without *Cammer* Factor Five. Second, courts increasingly recognize that there are other tests apart from event studies that satisfy *Cammer* Factor Five. *See, e.g., Petrobras Sec. Litig.*, 312 F.R.D. at 371 (holding that z-test was direct evidence of market efficiency); *Första*, 312 F.R.D. at 521-22 (stating that to require an event study would "impose a burden on plaintiffs that the law does not mandate," and holding that news/non-news test can demonstrate *Cammer* Factor Five). Because it is based on an erroneous legal standard, Dr. Bajaj's opinion should be excluded.

**D. Dr. Bajaj's opinion regarding the necessity of an 80-90% stock price reaction is without basis and is misleading.**

Dr. Bajaj appears to opine that to demonstrate an efficient market one must show that news causes a statistically significant stock price reaction on 80–90% of news days. (Bajaj Rpt. at ¶ 93, Declaration of W. B. Markovits, Exh. 1.) Dr. Bajaj cites one unpublished and unpersuasive case—quoting him—for the proposition that "an economist may conclude that a market is efficient if it reacts to news 80 to 90% of the time . . . ." *In re Fed. Home Loan Mortg. Corp.*, No. 09 Civ. 832 (MGC) (S.D.N.Y. Mar. 27, 2012); (*id.*) But according to an economist that Dr. Bajaj himself cites, this view is without "some empirical or even sound theoretical basis." (Bajaj Rpt. at p. 100, Declaration of W. B. Markovits, Exh. 1) (*citing* David Tabak, *What Should We Expect When Testing for Price Response to News in Securities Litigation?* NERA Economic Consulting Working Paper (2016)) ("Yet, it is not clear if there is any case in which defendants have cited some empirical or even sound theoretical basis for an argument that there should be some minimum fraction of news days associated with statistically significant returns."). Many courts have rejected this same argument. *See, e.g.*, *Första*, 312 F.R.D. at 521–22 (D. Minn. 2015) (rejecting defense argument that reaction on 36.4% of news days was insufficient); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014) ("To require a stock to change on at least 50 percent of potentially material news days ignores that, in many circumstances, the absence of a price change on a potentially material news day is not inconsistent with an efficient market."). And for good reason: Dr. Tabak's empirical analysis showed, for example, that even on earnings announcement dates S&P 500 stocks reacted in a statistically significant manner only about 50% of the time. To require a showing of an 80–90% statistically significant reaction on *all* news days would be to set a standard few if any stocks could meet, making establishment of market efficiency a practical impossibility.

As it turns out, Dr. Bajaj's suggestion that stock prices should react in a statistically significant manner 80-90% of the time on news days is based on a Humpty Dumpty approach to language and circular reasoning. *See* Lewis Carroll (Charles L. Dodgson), *Through the Looking Glass,* chapter 6, p. 205 (1934) ("When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean – neither more nor less."). Dr. Bajaj baldly and with no analysis states that stock prices should react in a statistically significant manner 80–90% of the time on news days. (Bajaj Rpt. at ¶ 93, Declaration of W. B. Markovits, Exh. 1.) When pressed, he qualifies this statement to say that stock prices should react in a statistically significant manner 80–90% of the time on "material" news days. (Bajaj Dep. at 53:22–57:6, Declaration of W. B. Markovits, Exh. 2.) And when Dr. Bajaj uses the terms "material," he means "a news day in which one would expect a statistically significant stock price reaction." (*Id.*) Apart from the issue of circularity, Dr. Bajaj's unique *economic* definition of "materiality" is at odds with the well-accepted *legal* definition of "materiality" in the securities context: information is "material" if it would be considered significant by a reasonable investor. *Basic*, 485 U.S. at 231–32. To allow Dr. Bajaj to use a different definition when discussing "material" news days is to invite confusion. Because it is based on an erroneous legal standard, Dr. Bajaj's opinion should be excluded.

**E. Dr. Bajaj's opinion regarding the necessity of a 95% confidence level for proof of market efficiency is at odds with the legal standard.**

Dr. Bajaj next opines that to meet the standard of an economist, market efficiency must be shown to a 95% confidence level. (Bajaj Dep. at 17:2–21:25, Declaration of W. B. Markovits, Exh. 2.) But as previously stated, market efficiency is a question of fact for the jury. *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d at 297; *Plumbers & Pipefitters Nat. Pension Fund*, 292 F.R.D. at 526. And the applicable legal standard is that a jury will have to decide the issue of market

efficiency by a preponderance of the evidence—50.1%. *Smilovits*, 295 F.R.D. at 437; *Carpenters*, 310 F.R.D. at 94. Dr. Bajaj's erroneous opinion should be excluded.

### F. Dr. Bajaj's opinion rejects the legal standards set out in the *Cammer/Krogman* factors in favor of more stringent economic standards.

Dr. Bajaj disputes the *economic* relevance of the *Cammer/Krogman* factors apart from *Cammer* Factor Five. In 2013, Dr. Bajaj opined that factors other than *Cammer* Factor Five, such as Factor One, have "no probative value." (Doc. 220-5 ("Bajaj 2013 Dep."), 113:18–114:3, and attached Declaration of W. B. Markovits, Exh. 3.) He has backtracked from that only slightly, out of necessity. In a 2016 report supporting certification in the *Allergan* case he opined that the *Cammer* factors, including factor 1, indicated an efficient market. (Doc. 406-3 ("Allergan Rpt."), ¶¶ 20–31, and attached Declaration of W. B. Markovits, Exh. 4.) Following his opinion in *Allergan* Dr. Bajaj could no longer take the position that these factors had "no" probative value. Dr. Bajaj attempts to square his *Allergan* opinion with his current opinion by claiming that while Factor Five is necessary and dispositive, some other factors may have "marginal relevance." (Bajaj Dep. at 150:24–151:11, Declaration of W. B. Markovits, Exh. 2.)

As one court recently stated in response to similar defense arguments, "It may be that many financial economists, including Dr. Gompers, dispute the relevancy of the first four *Cammer* factors to a determination of market efficiency, but the *Cammer* factors nonetheless reflect the *legal* standard for market efficiency and have been considered by the Sixth Circuit in such determinations." *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1074048, at *4 (S.D. Ohio Mar. 17, 2017). As another court put it, "Defendants rely on factors that are not legally relevant. This does not mean Defendants (or their expert, Paul Gompers) are incorrect in what they say—it means Defendants (and their expert) often describe a different conception of an efficient market than is used by the law." *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at * 11. Because it

rejects the relevance of the *Cammer/Krogman* factors, which comprise the appropriate legal standard, Dr. Bajaj's opinion should be excluded.

## IV. DR. BAJAJ'S PRICE IMPACT OPINION IS CONTRARY TO THE APPLICABLE LEGAL STANDARD AND SHOULD BE EXCLUDED.

Defendants may be able to negate the presumption of reliance by proving a lack of price impact through direct evidence. *Halliburton II*, 134 S. Ct. at 2415–16. However, it is "incumbent upon the defendant to show the absence of price impact," and "in practice, the so-called 'rebuttable presumption' is largely irrebuttable." *Id.* at 2417, 2424 (Ginsburg, J., concurring, and Thomas, J., dissenting); *see also Aranaz v. Catalyst Pharm. Partners, Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014) (stating that the defendants' burden to prove absence of price impact is "daunting"); *City of Sterling Heights Gen. Emps. Ret. Sys v. Prudential Fin., Inc.*, No. 12-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015) (same).

Defendants attempt to meet this daunting burden through the testimony of Dr. Bajaj, but Dr. Bajaj's opinion in this regard is at odds with law and fact and should be excluded. Dr. Bajaj's opinion that there was no price impact is based on two assumptions: 1) that there was no price impact on the date of alleged misrepresentations; and 2) that there allegedly is no "link" between the 29% stock decrease on November 20, 2007 and OPERS's allegations. (Bajaj Rpt. at ¶¶ 162–71, Declaration of W. B. Markovits, Exh. 1.) Neither assumption provides a basis for a finding of lack of price impact under appropriate legal standards, and therefore the opinion of Dr. Bajaj regarding lack of price impact should be excluded.

Dr. Bajaj opines that there is a lack of price impact in part because OPERS has failed to show price impact on the dates of the alleged misrepresentations. (Bajaj Rpt. at ¶¶163–67, Declaration of W. B. Markovits, Exh. 1.) But, as numerous courts have held, the fact there may have been no price impact on the dates of the alleged misrepresentations is "insignificant." *In re*

*Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2015 WL 5613150, at *6–7 (S.D.N.Y. Sept. 24, 2015); *Carpenters*, 2015 WL 5000849, at *11 ("[A] material misstatement can impact a stock's value either by improperly causing the value to increase or by improperly maintaining the existing stock price."); *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 658–59 (S.D. Ohio 2017) (recognizing price maintenance); *Burges v. Bancorpsouth, Inc.*, No. 3-14-1564, 2016 WL 1701956, at *3 (M.D. Tenn. Apr. 28, 2016) (same).

Dr. Bajaj's opinion on the supposed lack of price impact is also based on his prior materiality arguments (rendered moot by *Amgen*, in which the Supreme Court held that materiality was not an appropriate issue at class certification) and similarly inappropriate "truth-on-the-market" arguments, which are regurgitated as "price impact" arguments. (*Compare* Bajaj 2013 Dep. at 277:11–278:7, Declaration of W. B. Markovits, Exh. 3 (no materiality based on review of release and earnings transcript, because no correction), *and* Doc. 214 ("Bajaj 2012 Rpt."), ¶¶15, 65–71, 154–93, and attached Declaration of W. B. Markovits, Exh. 5 (raising materiality and truth-on-the-market), *with* Bajaj Rpt. at ¶¶12, 169–71, Declaration of W. B. Markovits, Exh. 1 (no price impact based on review of release and earnings transcript because no correction, and raising truth-on-the-market issues).) This type of end run will not fly. Dr. Bajaj's materiality and truth-on-the-market arguments are moot at class certification. *Amgen*, 568 U.S. at 455 (2013); *Basic Inc. v. Levinson*, 485 U.S. 224, 248–49 (1988); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 15-90038, 2015 WL 10714013, at *1–2 (5th Cir. Nov. 4, 2015) ("To require a showing that a corrective disclosure is linked to the alleged misrepresentation is to require a showing of loss causation in contravention of *Halliburton I.*").

Dr. Bajaj's price impact opinion is also based on nothing other than the *ipse dixit* of Dr. Bajaj that there was no price impact on November 20, 2007. But Dr. Bajaj's approach of reviewing

news and commentary and blithely opining, "I don't see any link," will not legally suffice. *In re Goldman Sachs*, 2015 WL 5613150 at *6–7 (holding that analysis of market commentary insufficient to negate price impact); *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at *14 (S.D. Fla. Mar. 16, 2016) (same).

Defendants cannot prove that there was no statistically significant stock price decrease on November 20, 2007. That fact is not in dispute. (Bajaj Dep. at 93:25–94:4, Declaration of W. B. Markovits, Exh. 2.) And Dr. Bajaj has failed to prove that *none* of the huge 29% stock decrease on that day was linked to OPERS's allegations. Dr. Bajaj's opinion is an exercise in willful blindness. Dr. Bajaj is *not* opining that the alleged misrepresentations and omissions had no price impact on November 20, 2007. (Bajaj Dep. at 92:23–93:11, Declaration of W. B. Markovits, Exh. 2.) And he is *not* opining that no part of the losses and writedowns resulted from exposure to nontraditional loans. (*Id.* at 116:14–117:3.) His analysis was in response to Professor Feinstein, who did not "point to any evidence other than the large price drop on that day." (*Id*. at 97:25–98:13.) But the burden is not on Professor Feinstein to prove price impact; the burden is on Dr. Bajaj to prove its absence. *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017); *Aranaz*, 302 F.R.D. at 672 (stating that "Defendants have the burden of showing an absence of price impact, they must show that price impact is *inconsistent* with the results of their analysis," and that "an absence of price impact is consistent with their analysis is insufficient"); *In re Goldman Sachs*, 2015 WL 5613150 at *7 (same). Dr. Bajaj's opinion does not even attempt to meet this burden, and must be excluded.

## V. CONCLUSION

For the foregoing reasons, OPERS's motion to exclude the purported expert testimony of Mukesh Bajaj should be granted.

Dated: February 12, 2018

Respectfully submitted,

OHIO ATTORNEY GENERAL
MICHAEL DeWINE
Attorney General of Ohio
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Telephone: (614) 387-5600
Facsimile: (614) 387-6697

*<u>/s/ W.B. Markovits</u>*
W.B. Markovits (0018514)
Joseph T. Deters (0012084)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: cstock@msdlegal.com
E-mail: tcoates@msdlegal.com

*Special Counsel to the Attorney General of the State of Ohio and Lead Counsel for Lead Plaintiff*

*<u>/s/ Richard S. Wayne</u>*
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Stephen E. Schilling (0086897)
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com
E-mail: seschilling@strausstroy.com

*Special Counsel to the Attorney General of the State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2018, a copy of the foregoing "LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MUKESH BAJAJ" was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)