**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, On Behalf of Itself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, a/k/a FREDDIE MAC, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY S. PISZEL AND EUGENE M. McQUADE,<br><br>Defendants. | ) | CIVIL ACTION NO. 4:08-CV-00160<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |

**DEFENDANT FREDDIE MAC'S MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY MUKESH BAJAJ, Ph.D.**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ........ 1

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. DR. BAJAJ'S OPINIONS BEAR DIRECTLY ON THE ELEMENT OF RELIANCE ........ 3

II. THIS COURT SHOULD DENY OPERS'S MOTION TO EXCLUDE DR. BAJAJ'S OPINIONS ON MARKET EFFICIENCY. ........ 4

A. Dr. Bajaj's Opinions Regarding The Economic Evidence Necessary To Establish Market Efficiency Are Admissible. ........ 5

1. *Halliburton II* Did Not Change the Law. ........ 5

2. Semi-Strong Form Efficiency Is The Only Relevant Economic Standard. ........ 7

3. OPERS's Arguments Provide No Basis To Exclude Dr. Bajaj's Testimony. ........ 8

4. OPERS Can Cite No Precedent for the Relief It Seeks. ........ 9

B. Dr. Bajaj's Testimony On The Design And Importance Of Event Studies Is Admissible. ........ 10

C. Expert Testimony On Statistical Significance Is Admissible. ........ 11

III. THIS COURT SHOULD DENY OPERS'S MOTION TO EXCLUDE DR. BAJAJ'S OPINIONS ON PRICE IMPACT. ........ 12

A. Dr. Bajaj's Testimony Regarding the Lack Of Price Movement after the Twenty-Three Alleged Misstatements Is Admissible. ........ 12

B. Dr. Bajaj's Testimony Regarding The November 20, 2007 Price Decline Is Admissible. ........ 13

C. OPERS's Merits Arguments Are No Grounds to Exclude Dr. Bajaj's Testimony. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018)....................14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................... *passim*

*Bell v. Ascendant Sols., Inc.*,
No. CIV.A. 301CV0166N, 2004 WL 1490009 (N.D. Tex. July 1, 2004), *order aff'd and remanded*, 422 F.3d 307 (5th Cir. 2005)....................10

*Brown v. China Integrated Energy Inc.*,
No. 11-cv-02559, 2014 WL 12576643 (C.D. Cal. Aug. 4, 2014) ....................10

*Brown v. China Integrated Energy Inc.*,
No. 11-cv-02559, 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ....................7, 10

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ....................9

*Carpenters Pension Trust Fund v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ....................8

*In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
250 F.R.D. 137 (S.D.N.Y. 2008) ....................5

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011), abrogated on other grounds by *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)....................7

*Erica P. John Fund v. Halliburton Co.*,
309 F.R.D. 251 (N.D. Tex. 2015)....................15

*Första AP-Fonden v. St. Jude Med., Inc.*,
312 F.R.D. 511 (D. Minn. 2015)....................8, 9

*George v. China Auto. Sys., Inc.*,
No. 11-cv-7533, 2013 WL 3357170 (S.D.N.Y. July 3, 2013)....................5

*In re Goldman Sachs Group Inc. Securities Litigation*,
No. 10-cv-3461, 2015 WL 5613150 (S.D.N.Y. 2015) ....................14

*Gross v. Comm'r of Internal Revenue*,
272 F.3d 333 (6th Cir. 2001) ....................9, 12

**Page**

*In re Groupon, Inc. Sec. Litig.*,
No. 12-cv-2450, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ....................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014).................................... *passim*

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
No. 11-cv-4209, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)....................5

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ....................5

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ....................9

*Lumen v. Anderson*,
280 F.R.D. 451 (W.D. Mo. 2012)....................7

*McIntire v. China MediaExpress Holdings, Inc*.,
38 F. Supp. 3d 415 (S.D.N.Y. 2014)....................8

*In re Moody's Corp. Sec. Litig.*,
274 F.R.D. 480 (S.D.N.Y. 2011) ....................5, 15

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y 2016) ....................8

*Plumbers v. Pipefitters, Nat'l Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013)....................9, 10

*In re PolyMedica Corp. Sec. Litig.*,
453 F. Supp. 2d 260 (D. Mass. 2006) ....................5

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ....................15

*Smilovits v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) ....................9

*Sterling Heights Gen. Emps. Ret. Sys v. Prudential Fin., Inc*.,
No. 12-cv-5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) ....................15

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016) ....................8

*Thorpe v. Walter Inv. Mgmt., Corp*.,
No. 1:14-cv-20880, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ....................14

**Page**

*U.S. v. August*,
745 F.2d 400 (6th Cir. 1984) ....................................................................................11

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)......................................................................................13

*Warrillow v. Qualcomm, Inc.*,
268 F. App'x 561 (9th Cir. 2008) ..............................................................................11

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*,
858 F.3d 787 (3d Cir. 2017)......................................................................................11

**Other Authorities**

17 CFR 240.10b-5..........................................................................................................6

Allen Ferrell and Andrew Roper,
*Price Impact, Materiality, and Halliburton II*, 93 Wash. U. L. Rev. 553 (2015)......................7

Fed. R. Civ. P. 23(b) .......................................................................................................4

Fed. R. Evid. 702 .....................................................................................................2, 4, 14

## INTRODUCTION

Federal Home Loan Mortgage Corporation ("Freddie Mac") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Expert Testimony of Mukesh Bajaj, Ph.D. ("Motion to Exclude").

## PRELIMINARY STATEMENT

This Court should deny OPERS's Motion to Exclude the Expert Testimony of Dr. Bajaj because it sets set forth no cognizable basis to exclude Dr. Bajaj's testimony. Knowing that Freddie Mac would be filing a motion to exclude the testimony of OPERS's designated expert on *Daubert* grounds, OPERS filed competing motions seeking to exclude the testimony of Freddie Mac's two experts, Dr. Mukesh Bajaj and Dr. Paul Gompers.[1] OPERS does not, and could not, assert that the opinions of Dr. Bajaj are unreliable or otherwise subject to exclusion under *Daubert*. Rather, unable to challenge the ***reliability*** of Dr. Bajaj's expert testimony, OPERS instead argues that the Court should exclude his opinions because they are, supposedly, "based on erroneous legal standards." *See, e.g.*, OPERS Br. (ECF No. 438) at 1. OPERS is wrong. Dr. Bajaj's opinions are sound, relevant, and helpful in resolving two issues of fact central to the reliance element of OPERS's Section 10(b) claim.

First, Dr. Bajaj's testimony is relevant to OPERS's effort to invoke a rebuttable presumption of reliance. "Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2405 (2014) ("*Halliburton II*"). OPERS seeks to meet its burden "by invoking a rebuttable presumption of reliance, rather than providing direct reliance on a misrepresentation." *Id.* at 2408. To invoke

[1] In an opposition brief filed contemporaneously herewith, Freddie Mac addresses OPERS's motion to exclude Dr. Gompers's testimony, ECF No. 441, which is directly relevant to OPERS's ability to prove damages.

the presumption of reliance, a plaintiff must show, among other things, "that the stock traded in an efficient market." *Id*. Thus, if OPERS fails to demonstrate that Freddie Mac's stock "traded in an efficient market," this Court must deny OPERS's motion for class certification. *Id.* at 2404 ("[M]arket efficiency . . . must be proved before class certification."). In arguing that Freddie Mac's stock "traded in an efficient market," OPERS relies entirely on the testimony of Dr. Steven Feinstein. Freddie Mac showed in its recently-filed *Daubert* motion, and will further demonstrate at the upcoming *Daubert* hearing, that Dr. Feinstein's testimony is unreliable, under Rule 702 of the Federal Rules of Evidence. ECF No. 444. As Dr. Bajaj will testify, Dr. Feinstein's work on OPERS's behalf uses untested tests and newly-invented criteria to establish "an efficient market" and violates accepted principles of statistics and financial economics.

Unlike Dr. Feinstein's analysis, which purports to interpret the law, Dr. Bajaj's testimony is grounded in established principles of statistics and financial economics. OPERS tries to argue that those established principles are "unhelpful." OPERS Br. at 1. But courts have universally recognized that the exact same "economic standard[s]," *id.*, are highly relevant in determining whether securities class action plaintiffs have met their burden in invoking the presumption of reliance. Contrary to OPERS's contention, nothing in *Halliburton II* changed the definition of market efficiency previously recognized by the courts or reduced the utility of the economic standards to which Dr. Bajaj will testify. Further, OPERS's suggestion that experts cannot opine upon scientific standards unless those standards have been adopted as legal rules is spurious and contrary to established law.

Second, even if OPERS could invoke the presumption of reliance, Freddie Mac is entitled to "rebut this presumption in a number of ways, including by showing that the alleged misrepresentation did not actually affect the stock's price—that is, that the misrepresentation had

no 'price impact.'" *Halliburton II*, 134 S. Ct. at 2405. Dr. Bajaj will testify that the misrepresentations alleged by OPERS did not, in fact, result in any "price impact," which independently dictates denial of class certification. *Halliburton II*, 134 S. Ct. at 2417. OPERS, which does not have any price impact evidence of its own, argues that Dr. Bajaj should not be able to testify about price impact because his testimony is "at odds with law and fact." OPERS Br. at 9. OPERS's interpretation of the law is unfounded and its take on the facts contested. In any event, OPERS's objections to Dr. Bajaj's testimony on price impact go entirely to its weight and provide no basis to question its admissibility.

## ARGUMENT

OPERS essentially concedes that Dr. Bajaj's opinions are reliable, asserting only that his opinions are not helpful because they are based on supposedly faulty legal premises. OPERS's argument is unfounded, and the case law it cites is inapposite. As discussed below, Dr. Bajaj's opinions are directly relevant to the reliance element of OPERS's claim, consistent with testimony routinely admitted in similar cases, and not subject to exclusion on any of the several grounds OPERS suggests.

### I. DR. BAJAJ'S OPINIONS BEAR DIRECTLY ON THE ELEMENT OF RELIANCE.

Dr. Bajaj has a Ph.D. in Business Administration from the University of California at Berkeley and an M.B.A. from the University of Texas at Austin, and he has co-authored over twenty-five publications in the field of financial economics.[2] ECF No. 383-2 (Bajaj Rpt.), ¶¶ 2, 6. OPERS has the burden of proving reliance at the class certification stage of this case and, ultimately, at trial. *Halliburton II*, 134 S. Ct. at 2405. In a putative securities class action,

[2] Dr. Bajaj's relevant experience in the field of financial economics includes, among other things, teaching graduate level courses at multiple universities and lecturing widely. He has testified as an expert in over 60 matters, including 30 securities cases. *Id.* ¶¶ 3-7.

plaintiff investors can satisfy this reliance requirement "by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation." *Id.* at 2408. To invoke the presumption of reliance, a plaintiff must show "that the stock traded in an efficient market." *Id.* If OPERS fails to demonstrate that Freddie Mac's stock traded in an efficient market, this Court must deny OPERS's motion for class certification. *Id.* at 2416 ("[M]arket efficiency . . . must be proved before class certification."). If plaintiffs had to prove direct reliance, individual issues (*i.e.*, proving reliance of each class member individually) would predominate over common issues. *See id.* at 2404; Fed. R. Civ. P. 23(b).

Because it bears the burden of proving market efficiency, OPERS retained a financial economist, Dr. Feinstein, to opine that Freddie Mac's stock traded in an efficient market. ECF No. 372. Using well-established principles of financial economics and statistics, Dr. Bajaj will testify that Dr. Feinstein's opinion is fatally flawed for numerous reasons. *See e.g.*, Bajaj Rpt. at ¶¶ 49, 99, 104-145. It is Dr. Feinstein's whose opinions should be excluded under Rule 702, because he flouted the scientific method and impermissibly opines on legal issues. ECF No. 444.

Dr. Bajaj's opinions are also relevant to a second fact issue, "price impact." Freddie Mac can defeat OPERS's motion for class certification by showing that the "alleged misrepresentation[s] did not actually affect the market price of the stock." *Halliburton II*, 134 S. Ct. at 2417. Dr. Bajaj will testify that there is no economic basis to find that the misstatements OPERS alleges "actually affect[ed] the market price of" Freddie Mac stock. Bajaj Rpt. at ¶¶ 162-71.

## II. THIS COURT SHOULD DENY OPERS'S MOTION TO EXCLUDE DR. BAJAJ'S OPINIONS ON MARKET EFFICIENCY.

OPERS's principal argument is that this Court should exclude Dr. Bajaj's testimony because the economic principles he employs are more stringent than the applicable legal

standards. OPERS distorts the applicable law, and its attacks on Dr. Bajaj's opinions lack merit.

### A. Dr. Bajaj's Opinions Regarding The Economic Evidence Necessary To Establish Market Efficiency Are Admissible.

Citing inapposite caselaw, OPERS urges the Court to exclude Dr. Bajaj's testimony because he proposes to use "economic definition[s]" and standards, rather than "legal definition[s]" and standards as the foundation of his testimony. OPERS Br. at 7; *see also id.* at 5 (asking Court to exclude Dr. Bajaj's testimony because "[w]hether or not this is true as a matter of economics" it does not purport to mimic "legal standards").

As explained below, OPERS's argument misstates the applicable law. OPERS also ignores the fact that expert testimony based on economic principles in a securities putative class action is routinely considered and accepted by the courts, including the courts OPERS relies upon in seeking to exclude Dr. Bajaj. *See e.g.*, *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 153 (N.D. Tex. 2014); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209, 2013 WL 5815472, at *21 (S.D.N.Y. Oct. 29, 2013); *George v. China Auto. Sys., Inc.*, No. 11-cv-7533, 2013 WL 3357170, at *1 (S.D.N.Y. July 3, 2013); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011); *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137, 144 (S.D.N.Y. 2008); *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 269 (D. Mass. 2006). Dr. Bajaj's testimony is based on the same economic principles that dictated the denial of the motions for class certification in these cases.

#### 1. ***Halliburton II* Did Not Change the Law.**

OPERS's effort to divert this Court from both precedent and fundamental principles of economics is based on a faulty premise—that *Halliburton II* changed the law by lowering the bar for plaintiffs at the class certification stage. That is not so. In 1988, the Supreme Court held in *Basic* that "securities fraud plaintiffs can in certain circumstances satisfy the reliance element of

a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation." *Halliburton II*, 134 S. Ct. at 2408 (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). The presumption of reliance was premised on the "efficient capital markets hypothesis," which holds that "the market price of shares traded on well-developed markets reflects all publicly available information." *Id.* at 2408-09 (citing *Basic*, 485 U.S. at 246). Twenty-eight years later, the Supreme Court in *Halliburton II* confirmed that *Basic* is still the law:

> [E]ven though the efficient capital markets hypothesis may have "garnered substantial criticism since *Basic*," [defendant] has not identified the kind of fundamental shift in economic theory that could justify overruling a precedent on the ground that it misunderstood, or has since been overtaken by, economic realities.

*Id.* at 2410. *Halliburton II* thus reiterated the law in *Basic*, and it did not lower the bar a plaintiff must clear on market efficiency, as OPERS contends.

What *Halliburton II* did do, and what it is widely cited for, was hold that if a plaintiff successfully establishes market efficiency, a defendant can seek to rebut the presumption of reliance by introducing evidence of lack of price impact. *See id.* at 2415-17. In other words, *Halliburton II* added a tool for defendants, not plaintiffs, to use at the class certification stage.

OPERS relies on one sentence from *Halliburton II* in support of its assertion that *Halliburton II* somehow changed the judicial meaning of market efficiency. In fact, that sentence is a direct quote from *Basic*, not a change to that earlier law. OPERS engages in sleight of hand to support its assertion, omitting the first portion of the relevant sentence from *Halliburton II*, emphasized here: "**<u>The [Basic] Court instead based the presumption</u>** on the fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'" *See* OPERS Br. at 4 (selectively quoting *Halliburton II*, 134 S. Ct. at 2410 (quoting *Basic*, 485 U.S. at 247 n.24)).

In short, one solitary sentence in *Halliburton II* that, literally, quotes law that the Supreme Court set forth twenty-eight years ago in *Basic*, cannot effect a change in the law.

### 2. Semi-Strong Form Efficiency Is **<u>The Only Relevant Economic Standard.</u>**

*Halliburton II* also did not change the relevance of economic expert testimony on semi-strong form market efficiency in a securities class action. In fact, semi-strong form efficiency is the only recognized form of market efficiency with any relevance to class certification.

Financial economics recognizes exactly three types of market efficiency: weak-form efficiency, semi-strong form efficiency, and strong-form efficiency. *See Halliburton II*, 134 S. Ct. at 2421 n.4 (Thomas, J., dissenting) (citing Dunbar & Heller, *Fraud on the Market Meets Behavioral Finance*, 31 Del. J. Corp. L. 455, 463–464 (2006)). "Courts have generally agreed that the relevant form of the efficient market hypothesis is semi-strong form efficiency." Allen Ferrell and Andrew Roper, *Price Impact, Materiality, and Halliburton II*, 93 Wash. U. L. Rev. 553, 557 n.13 (2015) (collecting cases). That is as true after *Halliburton II* as it was before. *See Brown v. China Integrated Energy Inc.*, No. 11-cv-02559, 2015 WL 12720322, at *17 (C.D. Cal. Feb. 17, 2015) (applying *Basic* presumption based on evidence presented that the market "during the class period was semi-strong form efficient").[3]

Indeed, the statements in *Halliburton II* and *Basic* that a "generally efficient" market is one where "market professionals generally consider **<u>most</u>** publicly announced material statements about companies, thereby affecting stock market prices" (OPERS Br. at 4 (citing *Halliburton II*, 134 S. Ct. at 2410)) are entirely in harmony with Dr. Bajaj's description of the

[3] *See also In re DVI, Inc. Sec. Litig*., 639 F.3d 623, 631 n.11 (3d Cir. 2011), abrogated on other grounds by *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) (recognizing semi-strong form efficiency as the relevant economic definition); *Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo. 2012) (relied upon by OPERS, OPERS Br. at 3) (same).

economic definition of semi-strong form efficiency, as relied upon by the district court in *Kreysar*: "an economist may conclude that a market is efficient if it reacts to news 80 to 90% of the time." OPERS Br. at 6 (citing *In re Fed. Home Loan Mortg. Corp.*, No. 09 Civ. 832 (MGC) (S.D.N.Y. Mar. 27, 2012) ("*Kreysar*")).

OPERS relies heavily upon *Strougo v. Barclays PLC*, 312 F.R.D. 307, 315 (S.D.N.Y. 2016), *Carpenters Pension Trust Fund v. Barclays PLC*, 310 F.R.D. 69, 78 (S.D.N.Y. 2015), and *In re Petrobras Securities Litigation*, 312 F.R.D. 354 (S.D.N.Y 2016), in support of its argument that Dr. Bajaj's testimony regarding semi-strong form efficiency is not legally relevant. But those cases do not establish that expert testimony on semi-strong form market efficiency should be excluded. For example, in *Strougo*, the district court held that, in order to invoke the *Basic* presumption, a plaintiff must show at class certification that "most information [was] assimilated reasonably promptly" into the market price. 312 F.R.D. at 315. While lawyers could quibble—and always have—as to whether the Supreme Court's use of the word "most" makes for a legal standard for market efficiency that is *exactly* the same as the economic standard of "80 to 90% of the time," such a dispute goes to the weight of Dr. Bajaj's testimony, not its relevance.[4]

### 3. OPERS's Arguments Provide No <u>Basis To Exclude Dr. Bajaj's Testimony.</u>

Even if OPERS's contentions about *Halliburton II* had merit—and they do not—arguments that expert evidence may not ultimately be dispositive, or that the party offering the

[4] OPERS argues that Dr. Bajaj interprets semi-strong efficiency too stringently because he testified that an "event study must show that news causes a statistically significant stock price reaction on 80-90% of news days" to prove semi-strong form efficiency. OPERS Br. at 2. As Dr. Bajaj explains, an economist may conclude that a market is efficient if it reacts to <u>**material**</u> news 80-90% of the time, even if there is no reaction to immaterial news. *See e.g.*, Bajaj Rpt. ¶¶ 26, 93. OPERS's reliance on *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014) and *Första* is misplaced for this reason as well. *See Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 521 (D. Minn. 2015).

testimony might not prevail, have never been grounds to exclude expert evidence. *See, e.g.*, *Gross v. Comm'r of Internal Revenue*, 272 F.3d 333, 340 (6th Cir. 2001) (affirming denial of motion to exclude testimony, explaining that "[appellants'] *Daubert* claim is misguided, for they are attacking the correctness of that ultimate valuation more than the reliability of the expert's methods"). OPERS's arguments that this Court should not be persuaded by Dr. Bajaj's opinions are an untimely reiteration of class certification arguments, not legitimate grounds to exclude expert testimony.[5]

**4. <u>OPERS Can Cite No Precedent for the Relief It Seeks.</u>**

OPERS is unable to muster a single case where a court has excluded an expert economist's proffered testimony based on the arguments that OPERS advances here. Indeed:

- OPERS cites no case where a court excludes expert testimony on the grounds that the expert relied on an economic definition of "efficient market" inconsistent with the legal definition of an "efficient market."
- OPERS cites no case where a court excludes expert testimony that an efficient market responds to material news "most" or "80-90% of the time."
- OPERS cites no case where a court excludes expert testimony on the grounds that the expert placed too much weight on *Cammer* Factor Five or too little weight on other *Cammer/Krogman* factors.[6]
- OPERS cites no case where a court excludes expert evidence on statistical significance—on any issue at all—on the grounds that statistical methods for determining significance differ from the "preponderance of the evidence" legal standard.

---

[5] For this reason, none of the cases OPERS cites on page 5 of its brief supports its argument. None of the cited cases says—or even suggests—that *Cammer* factor 5 is irrelevant or that expert testimony regarding a plaintiff's failure to satisfy *Cammer* factor 5 is unhelpful. *See* OPERS Br. at 5, citing *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1256 (11th Cir. 2014); *Första*, 312 F.R.D. at 520; *Plumbers v. Pipefitters, Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1161 (N.D. Ohio 2013); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 437 (D. Ariz. 2013).

[6] *See Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989); *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001).

Yet OPERS insists the Court exclude Dr. Bajaj's testimony on these very grounds.

**B. Dr. Bajaj's Testimony On The Design And <u>Importance Of Event Studies Is Admissible.</u>**

From a financial economics perspective, proof of a stock's market efficiency generally requires an event study. *See* OPERS Br. at 5 (citing Bajaj Dep. at 149:4-10). Even OPERS's own expert, Dr. Feinstein, concedes that an event study is the "preeminent empirical test of market efficiency." ECF No. 355-5 (Feinstein Decl.) ¶ 16; *see also* ECF No. 444 (Feinstein Rpt.) ¶ 103 (discussing how the event study methodology is "commonly accepted and widely used"). Notably, courts in securities class actions regularly recognize event studies as the most powerful evidence on market efficiency. *See, e.g., Plumbers*, 967 F. Supp. 2d at 1156 (admitting and discussing expert evidence on standards for event studies).[7] OPERS nonetheless seeks to exclude Dr. Bajaj's testimony on the importance of event studies on the ground that in rare instances courts have certified classes without relying on event studies. But even in the cases OPERS relies upon, courts have admitted expert evidence on event studies and recognized that evidence as highly relevant (even if not ultimately dispositive). *See* OPERS Br. at 8 (citing *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1074048, at *6-*7 (S.D. Ohio Mar. 17, 2017) (weighing competing expert testimony, including testimony regarding event studies); *In re Groupon, Inc. Sec. Litig.*, No. 12-cv- 2450, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015) (same). Indeed, in addition to citing no case excluding expert testimony on the importance of event studies in proving market efficiency, OPERS offers no authority actually suggesting that such exclusion would be permissible.

[7] *See Brown*, 2015 WL 12720322, at *7 (C.D. Cal. Feb. 17, 2015) (same); *Brown v. China Integrated Energy Inc.*, No. 11-cv-02559, 2014 WL 12576643, at *7-8 (C.D. Cal. Aug. 4, 2014) (same); *Bell v. Ascendant Sols., Inc.*, No. CIV.A. 301CV0166N, 2004 WL 1490009, at *3 (N.D. Tex. July 1, 2004), *order aff'd and remanded*, 422 F.3d 307 (5th Cir. 2005) (same).

### C. Expert Testimony On Statistical Significance Is Admissible.

Dr. Bajaj will also show that Dr. Feinstein's work for OPERS is inconsistent with basic principles of statistical significance. OPERS argues that the Court should exclude Dr. Bajaj's opinions about statistical significance because the evidentiary standard in a civil case is "preponderance of the evidence," not "statistically significant." OPERS Br. at 7-8. The argument defies law, and logic. If OPERS were correct, expert evidence on statistical significance could never be admitted in any case, civil or criminal. Of course, expert scientific testimony at the statistical significance level is admitted **all the time**, and the rare challenge to expert evidence on statistical significance has been unsuccessful. Statistical significance is essential to give meaning to statistical evidence, and OPERS is absurd to suggest otherwise. As courts have recognized, absent statistical significance, correlation is meaningless. Although courts shy away from ascribing talismanic powers to statistical significance, "it remains an important metric to distinguish between results supporting a true association and those resulting from mere chance." *See, e.g., In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 793 (3d Cir. 2017); *accord Warrillow v. Qualcomm, Inc.*, 268 F. App'x 561, 563 (9th Cir. 2008) ("allowing [defendant's] statistical expert to testify that there was no statistically significant evidence . . . assisted the jury to 'understand the evidence or determine a fact in issue'"); *U.S. v. August*, 745 F.2d 400, 407 (6th Cir. 1984) ("[E]xpert testimony was highly probative and appropriate to assist the jury in interpreting the statistical significance of the distribution."). OPERS's suggestion that *Halliburton II* carved statistical significance out of securities fraud cases on the issue of market efficiency is as implausible as it is insupportable.

## III. THIS COURT SHOULD DENY OPERS'S MOTION TO EXCLUDE DR. BAJAJ'S OPINIONS ON PRICE IMPACT.

OPERS's efforts to exclude Dr. Bajaj's testimony on the impact of the alleged

misrepresentations on Freddie Mac's stock price are also meritless. OPERS acknowledges that under *Halliburton II* a defendant may defeat the *Basic* presumption "at the class certification stage through evidence that the misrepresentation did not in fact affect the stock price." *Halliburton II*, 134 S. Ct. at 2414. The evidence here shows just that. As Dr. Bajaj will testify, from the perspective of financial economics, there is no evidence that the misrepresentations alleged in this case had any "price impact" on Freddie Mac stock. Dr. Bajaj's proposed testimony on price impact has two components. First, Dr. Bajaj has analyzed whether there was statistically-significant movement in the price of Freddie Mac stock on any of the twenty-three dates of alleged inflationary misrepresentations ("front-end price movement") and has found none. *See e.g.*, Bajaj Rpt. ¶ 163. Second, Dr. Bajaj has analyzed the November 20, 2007 decline in Freddie Mac's stock price and has found no ground upon which a financial economist could conclude that the price decline on that date ("back-end price movement") was connected to any statement at issue in this case. *Id.* at ¶¶ 169-71. OPERS offers no legally-sound basis to exclude Dr. Bajaj's testimony on either point.

**A. Dr. Bajaj's Testimony Regarding the Lack Of Price Movement after the Twenty-Three Alleged Misstatements Is Admissible.**

OPERS argues that Dr. Bajaj's testimony regarding the twenty-three alleged misstatement dates should be excluded based on its argument that it does not need to prove price impact on those dates. OPERS's contention violates the rule against premising a *Daubert* motion on merits arguments. *See Gross*, 272 F.3d at 340. Relying on district court cases embracing the "price maintenance" theory, OPERS argues that the Court should certify a class in this case even if it does not find any statistically-significant, front-end price movement following the alleged misstatements and further that Dr. Bajaj should not be allowed to testify about front-end price movement. *See* OPERS Br. at 10. OPERS's argument is without merit. Even if the

price maintenance theory had been adopted in the Sixth Circuit—and it has not been (*see* Mem. of Law in Opp'n to Lead Plaintiffs Renewed Mot. for Class Certification, ECF No. 383, at 13-14)—that theory does not render Dr. Bajaj's testimony irrelevant or inadmissible.

Whether the "alleged misrepresentation did not actually affect the market price of the stock" is a question of fact, to be judged based on all the evidence. *Halliburton II*, 134 S. Ct. at 2417. In making such a determination, the Court (and, at trial, the jury) should certainly find it relevant, even if not dispositive, that none of the twenty-three alleged misstatements caused any statistically significant change in Freddie Mac's stock price at the time they were made.

For these reasons, even courts that have accepted the price maintenance theory have admitted and considered expert testimony on the lack of front-end price impact. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). Indeed, both the district court and the court of appeals in *Vivendi* considered expert testimony very similar to that which Dr. Bajaj submits here. *Id.* at 260. If OPERS is right, that evidence should have been excluded. Yet neither the district court nor the court of appeals express any reservation about admitting it.

### B. Dr. Bajaj's Testimony Regarding <u>The November 20, 2007 Price Decline Is Admissible.</u>

OPERS also would have the Court exclude Dr. Bajaj's testimony that the substantial decline in Freddie Mac's stock price on November 20, 2007 had no economic relationship to the twenty-three alleged misstatements. Bajaj Rpt. ¶ 171. OPERS calls this testimony impermissible, (OPERS Br. at 11-12), but the express holding of *Halliburton II* is that defendants are allowed to rebut the presumption of reliance by coming forward with economic evidence of a lack of price impact. Here, where Freddie Mac has done just that through the testimony of Dr. Bajaj, OPERS cannot credibly argue that his testimony is not helpful to the Court.

The cases OPERS cites do not aid its argument. For example, in *In re Goldman Sachs Group Inc. Securities Litigation*, No. 10-cv-3461, 2015 WL 5613150, *6-*7 (S.D.N.Y. 2015), the district court *admitted* expert testimony on price impact and then discounted its import.[8] OPERS also fails to mention the Second Circuit's holding that the district court committed reversible error in *Goldman Sachs*. *See Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 486 (2d Cir. 2018). The Second Circuit held that "the District Court erred in declining to consider" the defendant's evidence that supposedly corrective disclosures were not economically-linked to a decline in the defendant's stock price. *Ark. Teachers*, 879 F.3d at 486. In the same decision, the Second Circuit also expressly rejected the argument OPERS makes here that expert evidence on the lack of linkage between supposedly corrective disclosures and price declines goes to materiality, rather than to price impact. *Compare* OPERS Br. at 10 ("Dr. Bajaj's materiality and truth-on-the-market arguments are moot at class certification.") *with Ark. Teachers*, 879 F.3d at 485-86 ("Contrary to the District Court's characterization of their evidence, defendants did not present a 'truth on the market' defense."). In short, the Second Circuit recognized that expert testimony on back-end price impact is admissible and directly relevant at the class certification stage.

### C. OPERS's Merits Arguments Are No Grounds to Exclude Dr. Bajaj's Testimony.

Finally, OPERS argues that Freddie Mac has failed to rebut the fraud-on-the-market presumption, notwithstanding Dr. Bajaj's price impact opinion. *See* OPERS Br. at 10-11. Those arguments are not based on any of the Rule 702 or *Daubert* criteria. Instead, they go entirely to

---

[8] OPERS also cites *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880, 2016 WL 4006661, at *14 (S.D. Fla. Mar. 16, 2016) for the proposition "[t]hat market commentary did not mention the corrective disclosure does not by itself mean that the corrective disclosure had no price impact." But the *Thorpe* court based that language entirely on the holding in *Goldman Sachs* that the Second Circuit has reversed.

the weight of the evidence and provide no reason to exclude the testimony. *See, e.g., In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531-32 (6th Cir. 2008) (holding that challenge to usefulness of expert analysis was correctly directed towards "cross-examination and . . . criticism by [an opposing] expert," rather than by excluding the testimony altogether).

OPERS is quick to point out that two district courts have called the defendant's burden on price impact "daunting." OPERS Br. at 9, citing *Aranaz v. Catalyst Pharm. Partners, Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014); *Sterling Heights Gen. Emps. Ret. Sys v. Prudential Fin., Inc.*, No. 12-cv-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015). But the relevance of that observation is unclear. In neither case—nor in any other cited by OPERS—did the court exclude expert testimony on price impact, which is what OPERS asks of this Court. Further, securities class action defendants have defeated class certification motions by showing a lack of price impact. *See, e.g., In re Moody's*, 274 F.R.D. at 493; *see also Erica P. John Fund v. Halliburton Co.*, 309 F.R.D. 251, 279-80 (N.D. Tex. 2015) (following remand from Supreme Court, limiting class on basis of lack of price impact). As in those cases, Dr. Bajaj's testimony will show, Freddie Mac has met its burden to show a lack of price impact here.

## CONCLUSION

The Court should deny OPERS's Motion to Exclude the Expert Testimony of Dr. Bajaj.

Respectfully submitted,

Defendant,

**FREDDIE MAC,**

By its attorneys,

*/s/ Hugh E. McKay*
Hugh E. McKay (0023017)
**PORTER WRIGHT MORRIS & ARTHUR LLP**
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115-1483
Tel: (216) 443-2580
Fax: (216) 443-9011
E-mail: hmckay@porterwright.com
Attorneys for Defendant Freddie Mac

**MORGAN LEWIS & BOCKIUS LLP**
Jordan D. Hershman
Jason D. Frank
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8455
Fax: (617) 951-8736
E-mail: jordan.hershman@morganlewis.com
E-mail: jason.frank@morganlewis.com
Attorneys for Defendant Freddie Mac

Dated: March 2, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2018, a copy of the foregoing "DEFENDANT FREDDIE MAC'S MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF MUKESH BAJAJ, PH.D." was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ Hugh E. McKay*
Hugh E. McKay