UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | : | Civil Action No. 4:08-cv-160 |
| Plaintiff, | : | (Judge Benita Y. Pearson) (Mag. Judge William H. Baughman, Jr.) |
| vs. | : | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*, | : | |
| Defendants. | : | |

**LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MUKESH BAJAJ**

## I. INTRODUCTION

Freddie Mac argues that Dr. Bajaj's standing as a defense financial economist should allow him to, *inter alia*:

- opine that to meet the *Basic* presumption for reliance one must show a semi-strong efficient market, which is directly contrary to the holding of the Supreme Court in *Halliburton II* that only a showing of "general efficiency" is required;

- opine that to show market efficiency, *Cammer* Factor 5 is both required and dispositive, which is contrary to all case law, including that within this Circuit;

- opine that "material" news for the purposes of demonstrating market efficiency means "news which is expected to result in a statistically significant stock price effect"—a fabricated definition that finds no support either in case law or economics, and is contrary to the legal definition and standard of materiality as set forth by the Supreme Court; and

- opine that there was no "price impact" on November 20, 2007, by placing the burden on OPERS to show price impact (contrary to the legal standard), and by the unreliable methodology of reviewing analyst reports, ignoring the evidence, and simply concluding that he saw no connection between the reports and OPERS's allegations.

Because Dr. Bajaj's opinion is contrary to the applicable legal standard in a number of ways, exclusion is warranted. *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107 (S.D. Cal. 2012) (citing *Daubert* and excluding entire defense economist testimony on loss causation where contrary to legal standard).

## II. *DAUBERT* AND RULE 702 APPLY TO DEFENSE ECONOMISTS.

Freddie Mac ignores the case law holding that expert testimony contrary to the applicable legal standard must be excluded. *See* Lead Plaintiff's Memorandum in Support of Motion to Exclude the Expert Testimony of Dr. Mukesh Bajaj (Doc. 438) ("Motion") at 2-3 (citing cases). This is a well-established proposition. Freddie Mac fails to distinguish these cases or cite a single case to the contrary. Defendant Freddie Mac's Memorandum of Law in Opposition to Lead Plaintiff's Motion to Exclude the Testimony of Mukesh Bajaj, Ph.D. (Doc. 455) ("Opposition").

Freddie Mac instead argues that Dr. Bajaj's opinion should not be excluded because OPERS has not addressed *Daubert* and its reliability standard. Opposition at 1 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). This argument suggests that Freddie Mac has not carefully read either the Motion or the cases cited therein. The Motion specifically notes that because an expert opinion must be *reliable* and helpful, expert testimony based upon a faulty legal standard must be excluded. Motion at 3 (citing cases).

The cases holding that opinions contrary to legal standards should be excluded are based upon *Daubert*, and the unreliable and unhelpful nature of the testimony. *See, e.g.*, *In re Welding Fume Prod.*, No. 1:03-CV-17000, 2005 WL 1868046, at *3-7 (N.D. Ohio Aug. 8, 2005) (citing *Daubert* standard and applying it to exclude testimony); *Novatel*, 846 F. Supp. 2d at 1107 (citing

*Daubert* and excluding defense economist testimony on loss causation); *see also Cave v. Saxon Mortg. Servs., Inc.*, No. 11-4586, 2015 WL 6153754, at *9 (E.D. Pa. Oct. 20, 2015) (holding that opinions contrary to established law are "*per se* unreliable and inadmissible under Daubert") (*citing United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012) (approving district court's exclusion of expert analysis that conflicted with the court's rulings and applicable law) and *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) (holding that expert opinions contrary to law cannot be said to be reliable or helpful)).

This is not an issue of the "weight" to be accorded testimony. As held in *Novatel*, this an issue of admissibility. *Novatel*, 846 F. Supp. 2d at 1108 (holding that if an expert's opinion is based on erroneous legal conclusions, the opinion is inadmissible).

Freddie Mac also suggests that because there are few cases where *Daubert* has been applied to defense economists in securities cases, it should not apply to Dr. Bajaj. Opposition at 5. Granted, *Daubert* challenges to defense experts in securities class actions are less common than challenges to plaintiff experts, and the usual practice is that the defense opinions providing misplaced standards are simply rejected by the courts and the class is certified. *See, e.g., In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 371 (S.D.N.Y. 2016), *vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (holding that "[t]he Supreme Court has rejected Gompers' absolutist view of market efficiency," and certifying class); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 84, n.98 (S.D.N.Y. 2015) (holding that defendants were wrong in contending that semi-strong efficiency is required, and certifying class); *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015) (holding that defendants relied on factors that were not legally relevant for market efficiency, and certifying class); *Lumen v. Anderson*, 280 F.R.D. 451, 460 (W.D. Mo.

2012) (same). But defense economists are not exempt from *Daubert*, and for that reason cannot provide opinions contrary to the applicable legal standard. Freddie Mac cites no case holding otherwise. *See* Opposition.

A good example of the application of *Daubert* in this context may be found in *Novatel.* In that case defense economist Dr. Cornell opined that to show loss causation corrective disclosures have to be made "'in such a way that a reasonable investor can reasonably infer that a fraud has occurred.'" *Novatel*, 846 F. Supp. 2d at 1107 (*quoting* Cornell report). The *Novatel* court granted the *Daubert* motion against Dr. Cornell and excluded his testimony because this contention was contrary to applicable "legal loss causation standards." *Id.* at 1108.

## III. DR. BAJAJ'S MARKET EFFICIENCY OPINIONS ARE CONTRARY TO APPLICABLE LEGAL STANDARDS.

### A. Semi-strong Efficiency is Not Required to Meet the *Basic* Presumption of Reliance.

Freddie Mac, contrary to law, supports Dr. Bajaj's opinion that semi-strong market efficiency is required to meet the *Basic* presumption and that *Halliburton II* made no change to this legal standard. Opposition at 7-8. This position ignores both the circumstances that led to *Halliburton II* and its holding.

Thirty years ago, the Supreme Court in *Basic* held that a securities class-action plaintiff was entitled to a presumption of reliance upon proof of an efficient market. *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). The *Basic* decision never used the term "semi-strong" to describe the level of market efficiency required. *Id.* Some courts assumed nevertheless that "semi-strong" efficiency was required to meet the *Basic* presumption. *See, e.g.*, *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 10 n.16 (1st Cir. 2005); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 612 (C.D. Cal. 2009).

An *amicus* brief in *Halliburton II* explained the reason why these courts' assumptions were incorrect. *See* Supplemental Declaration of W.B. Markovits in Support of Lead Plaintiff's Motion to Exclude the Expert Testimony of Dr. Mukesh Bajaj ("Markovits Supplemental Decl."), at ¶ 2, and Exh. 1 (Brief of Financial Economists as Amici Curiae in Support of Respondents. ("Financial Economists Brief")). The economists signing on to that brief included Eugene Fama, who is generally credited as the originator of the efficient market hypothesis. *See In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 118 (E.D. Va. 2012). The Financial Economists Brief noted that there is "widespread debate" about market efficiency. Financial Economists Brief at 3. The brief went on to state the "key point" that "while the proposition that market prices respond relatively promptly to material information about a stock is true if the SSEMH [semi-strong efficient market hypothesis] is true, *it does not depend on the SSEMH [semi-strong efficient market hypothesis] being true*." *Id.*

The Supreme Court agreed with the financial economists and held that all that need be proven is that the stock traded in a "generally efficient" market. *Halliburton II*, 134 S. Ct. at 2404. It stated that debates about the "precise *degree* to which stock prices accurately reflect public information are … largely beside the point." *Id* at 2410; *see also Carpenters*, 310 F.R.D. at 84, n.98 ("*Halliburton II* makes clear that no specific degree of efficiency is mandated to invoke the *Basic* presumption. . . . Despite this, Defendants wrongly contend that the semi-strong form of market efficiency is required under *Basic*."); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 315 (S.D.N.Y. 2016), *aff'd but criticized sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (noting above quotation from the Financial Economists Brief); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 7406418, at *7 (N.D. Cal. Dec. 22,

2016) (no specific form of market efficiency required beyond "general efficiency" articulated in *Halliburton II*).

Commentary following *Halliburton II* recognized this clarification regarding the degree of market efficiency required to meet the *Basic* presumption. *See, e.g.*, Donald C. Langevoort, *Judgment Day v. Fraud-on-the-Market: Reflections on Amgen and the Second Coming of Halliburton*, 47 ARIZ. L. REV. 37 (2015) ("most enlightening" aspect of *Halliburton II* relates to market efficiency, and Chief Justice Roberts' opinion which "stresses that the efficiency question is not to be particularly rigorous—'generalized' efficiency is sufficient . . . ."); Eric Alan Isaacson, *The Roberts Court and Securities Class Actions: Reaffirming Basic Principles*, 48 AKRON L. REV. 923, 925 (2015) ("[T]he degree of efficiency that plaintiffs must establish has been considerably relaxed from that which some lower courts had demanded."); Charles W. Murdock, *The Significance and Impact of Price Distortion and the Fraud-on-the-Market Theory after Halliburton II*, 46 LOY. U. CHI. L.J. 551 (2015) ("What conclusion can we draw from [*Halliburton II*]? This is a pretty low threshold for determining market efficiency. . . .").

In the face of the clear language of *Halliburton II*, as well as subsequent case law and commentary, Freddie Mac nevertheless argues that semi-strong efficiency is "the only relevant economic standard" even <u>after</u> *Halliburton II*. Opposition at 7. Freddie Mac's support for that argument consists of one law review article and one case cite. *Id.* The law review article notes in part that courts have used semi-strong efficiency, citing two cases that were pre-*Halliburton II*. Allen Ferrell and Andrew Roper, *Price Impact, Materiality, and Halliburton II*, 93 WASH. U. L. REV. 553, 557 n.13, (citing *Polymedica* (2005) and *Countrywide* (2009)). This obviously provides no support for the post-*Halliburton II* standard. And the one case cited by Freddie Mac is one in which the expert—prior to *Halliburton II*—opined that a market was semi-strong form

efficient. *Brown v. China Integrated Energy Inc.*, No. 11-cv-02559, 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015). The Court noted this expert opinion but gave no indication that a semi-strong form of market efficiency was *required*, as suggested by Freddie Mac. *Id*. Professor Feinstein also opines that the market for Freddie Mac common stock trades in a semi-strong efficient market, but this does not mean that either Professor Feinstein or OPERS believes that level of market efficiency is required under *Halliburton II.* Doc. 444-5 (Feinstein Dep.), at 575:5-8. Professor Feinstein is simply opining that the level of efficiency he found is more than enough to satisfy the "general efficiency" standard of *Halliburton II*. Doc. 444-3 (Feinstein Dep.), at 380:12–381:20 (*Cammer* 1-4 and *Krogman* findings enough to satisfy *Halliburton II* efficiency standard; *Cammer* 5 empirical tests are "icing on the cake").

Dr. Bajaj's opinion that the *Basic* presumption requires a finding of semi-strong market efficiency is contrary to legal standards established by the Supreme Court, and Dr. Bajaj's testimony should therefore be excluded under *Daubert* as unreliable and unhelpful.

### B. *Cammer* Factor 5 is Neither Required Nor Dispositive Under the Law.

Freddie Mac does not dispute that Dr. Bajaj's opinion regarding market efficiency is based upon his view that *Cammer* Factor 5 is necessary and dispositive, a view that is at odds with all case law including within the Sixth Circuit. *See, e.g., Strougo v. Barclays PLC*, 312 F.R.D. 307, 320 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017); *Carpenters*, 310 F.R.D. at 83, 94; *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp*., 762 F.3d 1248, 1256 (11th Cir. 2014); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 520 (D. Minn. 2015) ("A plaintiff's shortfall on the fifth *Cammer* factor alone does not outweigh, as here, showings on many other relevant factors."); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1161 (N.D. Ohio 2013). Freddie Mac's only attempt at response is to note that OPERS "cites no case where a

court excludes expert testimony on the grounds that the expert placed too much weight on *Cammer* Factor 5." Opposition at 9. But this is not a question of "weight"—Dr. Bajaj contends that *Cammer* Factor 5 is necessary and dispositive, and this is both an important aspect of his opinion and directly contrary to legal standards. The fact that no case has excluded an expert on this basis is irrelevant, and likely the result of the fact that the legal standard is so clear that defense experts generally do not make the argument. Moreover, Freddie Mac cites no case where an expert opining that *Cammer* Factor 5 is dispositive has survived a *Daubert* challenge on that basis. *See* Opposition.

Dr. Bajaj's opinion that *Cammer* Factor 5 is dispositive when determining market efficiency is contrary to established legal standards, and Dr. Bajaj's testimony should therefore be excluded under *Daubert* as unreliable and unhelpful.

**C. Dr. Bajaj's Definition of "Material" is Fabricated and Contrary to Law.**

Under applicable legal standards, the question of market efficiency is tied to how stock prices react to "material" news. *Carpenters*, 310 F.R.D. at 89. As stated in OPERS's Motion, the well-accepted legal definition of "material" in the securities context is information that would be considered significant by a reasonable investor. Motion at 7 (*citing Basic*, 485 U.S. at 231-32). Dr. Bajaj, in opining on the subject of reaction to material news in the context of a market efficiency determination, defines "material" news as "a news day in which one would expect a statistically significant stock price reaction." *Id.* (citing Bajaj Dep.). Dr. Bajaj provides no economic basis or support for his fabricated definition, which is in any case contrary to the legal definition used in the securities context. Freddie Mac provides no argument justifying Dr. Bajaj's confusing misuse of "material," other than noting Dr. Bajaj's statement that a market is efficient if it reacts to material news. Opposition at 8, n.4; *see also United States v. Smith*, 70 F. App'x

804, 809 (6th Cir. 2003) (if terms used by witness have separate meaning in the law, exclusion is appropriate).

Dr. Bajaj's opinion is based on a definition of "material" that is contrary to the legal standard established by the Supreme Court and should be excluded on that basis.

### D. Dr. Bajaj's Opinions Have Other Faults Warranting Exclusion.

The issues above are a sufficient basis for exclusion of Dr. Bajaj's opinion and testimony. There were other issues addressed in the Motion, perhaps less glaring, that provide additional bases for exclusion. Dr. Bajaj ignores *Cammer* factors 1-4, and the *Krogman* factors, contrary to the legal standard. *Plumbers*, 967 F. Supp. 2d at 1161. Dr. Bajaj would require an event study to prove market efficiency, contrary to the legal standard. *Första*, 312 F.R.D. at 521. Dr. Bajaj would require a statistically significant stock price reaction on 80-90% of news days, contrary to legal standard. *Id.* And Dr. Bajaj would require that market efficiency be proven to a 95% confidence level, while the legal standard is a preponderance of the evidence. Motion at 7-8; *see also United States v. Hatfield*, 795 F. Supp. 2d 219, 234-35 (E.D.N.Y. 2011) (recognizing 95% confidence interval as typical threshold used by economists but noting, "Preponderance of the evidence does not anywhere near require 95% certainty" and holding that economic study was improper on this basis).

## IV. DR. BAJAJ'S PRICE IMPACT OPINION SWITCHES THE BURDEN OF PROOF, AND IS BASED UPON AN UNRELIABLE METHODOLOGY.

OPERS raised three primary reasons why Dr. Bajaj's opinion regarding price impact should be excluded, (1) Dr. Bajaj seeks to place the burden of proving price impact on Professor Feinstein, when at class certification the burden of proving a *lack* of price impact is squarely on Freddie Mac, (2) Dr. Bajaj's "methodology" of analyzing market commentary is unreliable and violates *Daubert* standards, and (3) Dr. Bajaj's opinion that there was no price impact on

November 20, 2007, is based solely on his *ipse dixit*, again in violation of *Daubert* standards. Motion at 9-11. Freddie Mac's Opposition fails to sufficiently address any of these points.

Price impact can be proven either by showing stock price movement in response to misrepresentations or stock price movement at the time of a corrective disclosure or materialization. *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017). Because, as in this case, misrepresentations are often confirmatory in nature and thus would not be expected to result in stock price movement, price impact often focuses on stock price movement on the day of disclosure or materialization. *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at *13 (S.D. Fla. Mar. 16, 2016). To rebut the presumption of reliance, a defendant must show the *lack* of price impact, which means that it must show no relevant stock price movement either at the time of the misrepresentations, or at the time of disclosure or materialization. For the purposes of rebutting the presumption, a showing of no stock price impact at the time of misrepresentations is insufficient. *Willis*, 242 F. Supp. 3d at 657. Whether or not there was price impact in response to misrepresentations, Dr. Bajaj does not provide a reliable opinion that there was no price impact on November 20, 2017. He must do so, or his opinion regarding a *lack* of price impact is worthless and should be excluded.

First, as set forth in the Motion, Dr. Bajaj answered "no" when asked whether he was opining that the alleged misrepresentations and omissions had no price impact on November 20, 2007. Motion at 11. He indicated that his analysis was in response to Professor Feinstein, who Dr. Bajaj believes failed to point to evidence of price impact. *Id.* This misapplies the legal standard; the burden is on Dr. Bajaj to prove a lack of price impact. *Halliburton II*, 134 S. Ct. at 2415-16. Freddie Mac's Opposition ignores this point.

Second, Dr. Bajaj's opinion regarding whether there was price impact on November 20, 2007, is based on his review of analyst reports following that day—a "methodology" that for this purpose is unreliable and cannot survive a *Daubert* challenge. Motion at 11. Freddie Mac argues that the *Goldman* case cited in the Motion on this point was reversed by the Second Circuit. Opposition at 14 (*citing Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 486 (2d Cir. 2018)). The Second Circuit's decision with respect to this issue was based on what it said was the failure of the district court to distinguish between "truth on the market" and "price impact." *Id.* at 485-86. It did not suggest that analyst review was an appropriate methodology, and other courts have found it is not. *See Thorpe v. Walter Inv. Mgmt., Corp*., No. 1:14-CV-20880-UU, 2016 WL 4006661, at *13 (S.D. Fla. Mar. 16, 2016).

Third, Dr. Bajaj's opinion is based simply upon his *ipse dixit* that he saw no connection between the analyst reports and the allegation. This is not a reliable methodology. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). This is particularly so given that Dr. Bajaj admits that there was a statistically significant price decline on November 20, 2007, and that he is *not* opining that this decline was unrelated to the losses and write-downs arising from exposure to nontraditional loans. Motion at 11 (citing Bajaj deposition). He must give the latter opinion to prove lack of price impact. If the stock decline on November 20, 2007, *was* related to the losses and write-downs arising from exposure to nontraditional loans—one of OPERS's allegations—then price impact is not rebutted. *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. CIV.A. 12-5275, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015) ("Merely pointing to other potential causes for a stock price change following a corrective disclosure is therefore not enough to rebut the *Basic* presumption.").

## V. CONCLUSION

For the foregoing reasons, OPERS's respectfully requests that its motion to exclude the purported expert testimony of Dr. Mukesh Bajaj be granted.

Dated: March 9, 2018

Respectfully submitted,

OHIO ATTORNEY GENERAL
MICHAEL DeWINE
Attorney General of Ohio
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Telephone: (614) 387-5600
Facsimile: (614) 387-6697

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Joseph T. Deters (0012084)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: jdeters@msdlegal.com
E-mail: cstock@msdlegal.com
E-mail: tcoates@msdlegal.com

*Special Counsel to the Attorney General of the State of Ohio and Lead Counsel for Lead Plaintiff*

*/s/ Richard S. Wayne*
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
Stephen E. Schilling (0086897)
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com

E-mail: seschilling@strausstroy.com

*Special Counsel to the Attorney General of the State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, a copy of the foregoing "LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MUKESH BAJAJ" was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)