**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY S. PISZEL, and EUGENE M. McQUADE,<br><br>Defendants. | CIVIL ACTION NO. 4:08-cv-160<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |

**FREDDIE MAC'S OPPOSITION TO PLAINTIFF'S REQUEST FOR *SUA SPONTE* SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ........ 1

RELEVANT PRIOR PROCEEDINGS ........ 5

ARGUMENT ........ 6

I. OPERS CANNOT MANUFACTURE A FINAL JUDGMENT TO EXPEDITE APPEAL OF AN ORDER DENYING CLASS CERTIFICATION. ........ 6

A. *Baker* Bars Parties From Manufacturing Final Judgments To Expedite Class Certification Appeals ........ 6

B. OPERS's Request Is Barred By *Baker*. ........ 9

II. OPERS INCORRECTLY ARGUES THAT THIS COURT'S CLASS CERTIFICATION RULINGS ARE DISPOSITIVE OF ITS CLAIMS. ........ 10

A. This Court's Exclusion Of Dr. Feinstein's Testimony On Market Efficiency Does Not Dictate Its Decision On Loss Causation. ........ 10

B. This Court's Decision On Class Certification Does Not Require Entry Of Summary Judgment On Loss Causation. ........ 15

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Alaska Electrical Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....................18, 19

*Anderson Living Tr. v. WPX Energy Prod., LLC*,
904 F.3d 1135 (10th Cir. 2018) ....................8, 9

*Bd. of Trustees of Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 v. Humbert*,
884 F.3d 624 (6th Cir. 2018) ....................9

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ....................14

*Catlin v. United States*,
324 U.S. 229 (1945) ....................6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................14

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ....................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) .................... *passim*

*Fener v. Operating Engineers Constr. Indus. & Miscellaneous Pension Fund (LOCAL 66)*,
579 F.3d 401 (5th Cir. 2009) ....................18

*In re Finisar Corp. Sec. Litig.*,
No. 11-cv-01252, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ....................19

*Freeman v. Laventhol & Horwath*,
915 F.2d 193 (6th Cir. 1990) ....................16

*Himler v. Comprehensive Care Corp.*,
790 F. Supp. 114 (E.D. Va. 1992) ....................17

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
818 F.3d 775 (8th Cir. 2016) ....................19

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
912 F.3d 316 (6th Cir. 2018) ....................8

*Microsoft Corporation v. Baker*,
137 S. Ct. 1702 (2017) ........ *passim*

*In re Moody's Corp. Sec. Litig.*,
274 F.R.D. 480 (S.D.N.Y. 2011) ........ 19

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
487 F.3d 261 (5th Cir. 2007) ........ 18

*Raceway Properties, Inc. v. Emprise Corp.*,
613 F.2d 656 (6th Cir. 1980) ........ 8

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ........ 17

*United States v. Procter & Gamble Co.*,
356 U.S. 677 (1958) ........ 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 17

*Wells Fargo Bank, N.A. v. Allstate Ins. Co.*,
735 F. App'x 208 (6th Cir. 2018) ........ 9

*In re Williams Sec. Litig.*,
496 F. Supp. 2d 1195 (N.D. Okla. 2007) ........ 14

**Statutes & Other Authorities**

28 U.S.C. § 1291 ........ *passim*

28 U.S.C. § 1292(b) ........ 6, 7, 9

Fed. R. Civ. P. 23(c) ........ 17

Fed. R. Civ. P. 23(f) ........ *passim*

Fed. R. Civ. P. 56 ........ 16, 17

Having had its petition for interlocutory appeal of this Court's ruling on class certification summarily rejected by the Sixth Circuit, Plaintiff Ohio Public Employees Retirement System ("OPERS") now seeks to circumvent that appellate ruling and launch a second attempt at an interlocutory appeal, this time under the guise of a "Request" for *Sua Sponte* Summary Judgment (ECF No. 485) (hereinafter, "Request" or "Req."). OPERS's Request is contrary to express Supreme Court precedent barring manufactured appeals of this sort, and it is otherwise contrary to law. It should be denied.

## PRELIMINARY STATEMENT

In *Microsoft Corporation v. Baker*, 137 S. Ct. 1702 (2017), the Supreme Court unequivocally held that a party may not manufacture a final decision (and thus appellate jurisdiction) after the District Court denies class certification and the Circuit Court denies a petition for interlocutory appeal under Rule 23(f), as OPERS seeks to do here. In *Baker*, after the District Court denied class certification, the plaintiffs—like OPERS here—filed a Rule 23(f) petition for interlocutory appeal with the Circuit Court, which was denied. *Id*. at 1711. The *Baker* plaintiffs then sought to create an immediate right to appeal by filing a stipulated motion to dismiss, but reserved their right to revive their claims in the event the Circuit Court reversed the class certification ruling. *Id*.

The Supreme Court expressly rejected the plaintiffs' effort to manufacture appellate jurisdiction. Citing the federal law permitting appeals only from final judgments, the Supreme Court held that the voluntary dismissal did not qualify as an appealable, "final decision" under 28 U.S.C. § 1291:

> Plaintiffs in putative class actions cannot transform a tentative interlocutory order . . . into a final judgment within the meaning of § 1291 simply by dismissing their claims with prejudice—subject, no less, to the right to "revive" those claims if the denial of class certification is reversed on appeal . . . Were respondents'

> reasoning embraced by this Court, "Congress['] final decision rule would end up a pretty puny one." . . . Contrary to respondents' argument, **<u>§ 1291's firm final-judgment rule is not satisfied whenever a litigant persuades a district court to issue an order purporting to end the litigation.</u>**

*Id.* at 1715 (internal citations omitted) (emphasis added).

Like the plaintiffs in *Baker*, OPERS lost its motion for class certification, and the appellate court thereafter summarily rejected its Rule 23(f) Petition for interlocutory appeal. Also like the plaintiffs in *Baker*, OPERS now seeks, through procedural gamesmanship, to manufacture a supposedly "final" judgment. OPERS is doing so for the same reason that the plaintiffs in *Baker* did so: having lost its Rule 23(f) petition, OPERS is now attempting to use this contrived mechanism as yet another means for seeking an interlocutory appeal of this Court's class certification ruling that the appellate court just rejected. That is precisely what *Baker* bars.

OPERS admits it seeks a "Summary Judgment Determination" for the strict purpose of "Expedit[ing] Appellate Review" of the Court's class certification denial. Req. at 6. OPERS styles its filing as a "Request" for "*sua sponte*" relief, rather than a "motion," precisely because it knows that *Baker* is directly on point and precludes shenanigans of the type it now seeks—under a new label—to foist on this Court. The very title of OPERS's "Request for *Sua Sponte* Summary Judgment" shows that it is inappropriate and contrary to the Supreme Court's ruling in *Baker*. The term "*sua sponte*" means "without prompting or suggestion"—*i.e.*, not by request. *Sua Sponte*, BLACK'S LAW DICTIONARY (10th ed. 2014). An order resulting from a "request" by OPERS is clearly not "*sua sponte*." No matter how OPERS may package it, OPERS's gambit is precluded by *Baker*, and granting OPERS's Request for "*sua sponte*" summary judgment would only invite reversal for lack of appellate jurisdiction.

In addition, it is clear that OPERS is seeking to persuade this Court to enter a narrow judgment that OPERS believes is defective to increase its prospects on appeal. OPERS knows that

this Court previously dismissed OPERS's Complaint for failure sufficiently to plead loss causation and that the Sixth Circuit reversed that loss causation ruling. OPERS now seeks to convince the Court to enter an order granting summary judgment, again on the sole issue of loss causation. It is clear what OPERS will argue to the Sixth Circuit, as it already argued in its Rule 23(f) Petition as follows: "The district court's opinion regarding price impact is also an attempt to revive its prior holding that 'materialization of the risk' is not a viable loss causation theory, a holding this Court [*i.e.*, the Sixth Circuit] has rejected." ECF No. 479-1 ("Petition" or "Pet.") at 16. Putting aside the fact that OPERS's self-serving argument to the Sixth Circuit is wrong, *Baker* simply does not allow plaintiffs to manufacture final judgments in this way, and this Court should not countenance OPERS's effort to engage in piecemeal litigation. In short, this Court should not fall for OPERS's "inventive litigation ploy," to manufacture an appeal that *Baker* rejected. *Baker*, 137 S. Ct. at 1714.

Moreover, even if *Baker* did not bar OPERS's effort to manufacture appellate jurisdiction—and it does—OPERS would still not be entitled to the summary judgment order that it seeks. OPERS is wrong in contending that this Court's denial of class certification dictates the entry of summary judgment. Indeed, there is no valid ground for entering summary judgment on the merits of a federal securities law claim solely based on rulings that supported the denial of a motion for class certification. Furthermore, the Sixth Circuit has already rejected OPERS's argument in denying OPERS's petition for interlocutory appeal. *See* Pet. at 21-22 (arguing class certification order would be "likely dispositive of the litigation"); ECF No. 482 (Sixth Circuit's denial of Petition). In considering class certification, this Court considered different issues and applied different standards than it would have if Defendants filed a motion for summary judgment on loss causation or any other issue (which Defendants did not do). In addition, even if the issues

and standards on class certification and summary judgment motions were the same—and they plainly are not—a trial court's decision on class certification is not a decision on the merits for purposes of successive stages of an action.

OPERS is also wrong when it argues that this Court's decision excluding its expert's testimony on market efficiency is "dispositive" of OPERS's **individual** claims. Req. at 7. OPERS designated Dr. Steven Feinstein as an expert for purposes of class certification, and this Court excluded his testimony solely on the issue of market efficiency, which is relevant to whether the **entire class** would be entitled to a presumption of reliance, not whether OPERS individually could demonstrate reliance. As Dr. Feinstein repeatedly testified, he did not offer an opinion on price impact (apart from a critique of the opinion of Freddie Mac's expert, Dr. Mukesh Bajaj), and he did not offer an opinion on loss causation. In short, the exclusion of Dr. Feinstein's testimony on market efficiency does not prevent OPERS from pursuing its individual claims.

This Court should decline OPERS's invitation to litigate this case piecemeal. *Baker* does not permit it, and the Sixth Circuit would view OPERS's tactic as an impermissible attempt to sidestep its Rule 23(f) ruling. Not only is OPERS's Request improper, but granting it would prolong this case further. The Sixth Circuit would almost certainly reverse such a ruling for the reasons set forth herein, and remand the case to this Court again, but that process would likely take well over a year. Conversely, following the completion of discovery, Freddie Mac believes it will have grounds to file a motion for summary judgment on several dispositive grounds (including materiality and scienter). Were this Court to grant such a motion, such a ruling would be far more likely to be upheld on appeal, and thus bring this case to a more expeditious end.

## **RELEVANT PRIOR PROCEEDINGS**

OPERS filed its Renewed Motion for Class Certification on June 12, 2017. ECF No. 372. Defendants opposed the motion, the parties deposed each other's class certification witnesses, and both sides cross-moved to exclude each other's experts. On April 13, 2018, from 10:00 a.m. to 6:25 p.m., the Court held an evidentiary hearing on the motions to exclude. On August 14, 2018, the Court issued a comprehensive 41-page opinion granting Freddie Mac's motion to exclude the testimony of OPERS's expert (Dr. Steven Feinstein) on market efficiency and the portions of his report on that subject because they were unreliable and inadmissible under Rules 403 and 702 of the Federal Rules of Evidence. ECF No. 478 at 2-15, 41; *see* ECF No. 444-1 (Freddie Mac's Memorandum in Support of Motion to Exclude Testimony of Dr. Feinstein). The Court also denied OPERS's motion to exclude the testimony of Freddie Mac's experts (Dr. Mukesh Bajaj and Dr. Paul Gompers), and denied OPERS's motion for class certification. ECF No. 478 at 41.

The Court concluded that OPERS had failed to carry the burden necessary to invoke a rebuttable presumption of class-wide reliance. *Id.* at 28-41. Alternatively, the Court correctly concluded that Defendants' affirmative evidence rebutted any such presumption. *Id.* at 36-38. The Court also identified a third reason to deny class certification: OPERS failed to establish that damages are capable of measurement on a class-wide basis. *Id.* at 38-41.

On August 28, 2018, OPERS filed its Rule 23(f) Petition with the Sixth Circuit under , requesting that the Sixth Circuit permit OPERS the opportunity to appeal this Court's interlocutory denial of class certification on an expedited basis—*i.e.*, without awaiting a final judgment on OPERS's individual claims. *See* ECF No. 479-1. Following full briefing, the Sixth Circuit denied OPERS's Rule 23(f) Petition on January 23, 2019, "find[ing] that an interlocutory appeal is not warranted." ECF No. 482 at 2.

On May 9, 2019, OPERS submitted its instant Request, seeking to appeal the very same class certification decision to the very same appellate court under the guise of a request for "*sua sponte*" "summary judgment." ECF No. 485. As noted above and explained below, such an artifice is legally improper and ensures the very piecemeal litigation forbidden under 28 U.S.C. § 1291 and the Supreme Court's recent *Baker* decision.

**ARGUMENT**

**I. OPERS CANNOT MANUFACTURE A FINAL JUDGMENT TO EXPEDITE APPEAL OF AN ORDER DENYING CLASS CERTIFICATION.**

**A. *Baker* Bars Parties From Manufacturing Final Judgments To Expedite Class Certification Appeals.**

As noted above, the tactic OPERS attempts here—seeking to persuade the Court to enter a final judgment in order to create a premature appeal of the denial of class certification—was expressly prohibited by the Supreme Court in *Baker*.

In *Baker*, the Supreme Court held that such "inventive litigation ploys," in which a plaintiff "persuades a district court to issue an order purporting to end the litigation," violate the scheme for appeal of class certification orders mandated by Congress in 28 U.S.C. § 1291, 28 U.S.C. § 1292(b), and Rule 23(f). Section 1291 generally permits appeals only of "final decisions" of the District Courts, meaning decisions "which end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). As the Supreme Court ruled in *Coopers & Lybrand*: "[T]he fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering [the order] a 'final decision' within the meaning of § 1291." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 (1978). The "firm finality principle [is] designed to guard against piecemeal appeals." *Baker*, 137 S. Ct. at 1707.

There are few exceptions to the Section 1291 finality rule, and they are narrow. Section 1292(b) grants the District Courts discretion to certify for appeal interlocutory orders, such as denials of class certification, and grants the Circuit Courts discretion as to whether to hear such appeals. OPERS chose not to pursue this option. Federal Rule of Civil Procedure 23(f) permits a party to petition the Circuit Court directly (*i.e.*, without District Court certification as under § 1292(b)) for permission to appeal a class certification order, and similarly grants the Circuit Court discretion as to whether to hear the appeal. OPERS already sought such review here; the Sixth Circuit declined review and remanded the case to this Court for final resolution, prior to the filing of any appeal.

As the *Baker* Court held, the tactic of persuading the District Court to enter a putative "final" judgment, following the denial of a plaintiff's Rule 23(f) petition would "undermine § 1291's firm finality principle, designed to guard against piecemeal appeals, and subvert the balanced solution Rule 23(f) put in place for immediate review of class-action orders." *Baker*, 137 S. Ct. at 1707. "Final" judgments manufactured for the sole purpose of expediting appeal "undercut[] Rule 23(f)'s discretionary regime" by permitting a plaintiff to appeal a denial of class certification as of right whenever it persuades a court to enter a "final decision" at the plaintiff's request. *Id.* at 1714.

*Baker* set forth unequivocally the limits of what a plaintiff may properly do following denial of its class certification motion and denial of a Rule 23(f) petition, and none of these options include inducing the district court to enter a pretextual "final" judgment. As Justice Ginsburg wrote, such plaintiffs may: (a) "settle[] their individual claims;" (b) "petition[] the District Court, pursuant to [28 U.S.C.] § 1292(b), to certify the interlocutory order for appeal;" or (c) "litigate[]

the[ir] [individual] case to final judgment and then appeal[]." *Id.* at 1711; *see also Anderson Living Tr. v. WPX Energy Prod., LLC*, 904 F.3d 1135, 1144-45 (10th Cir. 2018) (relying on *Baker*).

Ignoring the Supreme Court's recent, specific directive in *Baker*, OPERS cites the Sixth Circuit's 1980 decision in *Raceway Properties, Inc. v. Emprise Corp.* and argues that "solicitation of [a] formal dismissal . . . designed only to expedite [appellate] review" is sometimes appropriate. Req. at 6 (citing *Raceway*, 613 F.2d 656, 657 (6th Cir. 1980)). OPERS's reliance on *Raceway* is misplaced and directly contrary to recent Sixth Circuit precedent. First, *Raceway* only applies in instances where the trial court has issued an "order which in effect dismissed [the party's] case." *Id*. at 681. As discussed below, that is not the case here. Second, *Raceway* does not apply where, as here, a party seeks to employ a dismissal tactic to expedite appellate review of a class certification ruling. *Raceway* was based on *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), which *Baker* specifically distinguished on the grounds that it "involved neither class-action certification nor the sort of dismissal tactic at issue here." *See Baker*, 137 S. Ct. at 1715 n.11; *Raceway*, 613 F.2d at 657 (citing *Procter & Gamble*). The Sixth Circuit has held that *Baker*'s distinction of *Procter & Gamble* "limited *Raceway*'s scope," excluding from its coverage cases akin to *Baker*. *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 330 (6th Cir. 2018). Third, as *Innovation Ventures* makes clear, a party cannot preserve the ability to litigate again the claims that it has solicited the trial court to dismiss for purposes of expediting an appeal (of other issues) under *Raceway*. *Id*. at 329-32. That is precisely what OPERS is seeking impermissibly to do here, *i.e.*, to preserve its ability to prosecute (upon future remand) its federal securities law claims, which are the very claims that it is soliciting this Court to dismiss.

Notably, following *Baker*, the Courts of Appeals, including the Sixth Circuit, have declined to take jurisdiction over appeals resulting from judgments manufactured strictly for the purpose of

expediting appellate review of interlocutory matters. *See, e.g.*, *Bd. of Trustees of Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 v. Humbert*, 884 F.3d 624, 626 (6th Cir. 2018) (relying on *Baker* and holding that a "stipulated judgment order" was not "final," "circumvent[ed] the limitations that § 1292(b) and the Civil Rules placed upon interlocutory appeals," and raised the "potential for piecemeal litigation"); *Anderson*, 904 F.3d at 1145 (relying on *Baker* and holding that stipulated judgment dismissing named plaintiffs' individual claims not "final" judgment for purposes of appeal of denial of class certification motion); *Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 735 F. App'x 208, 209 (6th Cir. 2018) (relying on *Baker*, discouraging "piecemeal appeals," and holding that summary judgment order, even where styled as "final," was not final for purposes of § 1291 because district court had not determined all merits issues). As explained below, OPERS's Request runs afoul of *Baker* and its Sixth Circuit progeny. Even if this Court were to acquiesce to OPERS's Request to manufacture a judgment for the purpose of expediting an appeal of the class certification ruling, the Sixth Circuit would hold that it lacked appellate jurisdiction.

### B. OPERS's Request Is Barred By *Baker*.

As in *Baker*, OPERS seeks to persuade this Court to enter a final judgment so as to expedite its appeal of this Court's class certification order. Req. at 6. OPERS seeks to distinguish itself from the *Baker* plaintiffs by opting not to seek voluntary dismissal in favor of a request that the Court dismiss the case for it by entering a "*sua sponte*" summary judgment for Defendants.

This is a distinction without a difference. The *Baker* Court's holding plainly applies to any case in which a plaintiff attempts to "persuade[] a district court to issue an order purporting to end the litigation" in violation of the scheme for appeal of class certification orders established by 28 U.S.C. § 1291, 28 U.S.C. § 1292(b), and Rule 23(f). Regardless of whether OPERS styles its filing as a stipulated dismissal or a motion for the Court to enter summary judgment *against it*,

OPERS is seeking to enlist this Court in the manufacture of a pretextual final decision to expedite its appeal of this Court's class certification rulings. Worse still, OPERS is doing this after the Sixth Circuit has already rejected its Rule 23(f) Petition. That is precisely what *Baker* forbids.

Indeed, in rejecting OPERS's Rule 23(f) Petition, the Sixth Circuit rejected the very same arguments OPERS now advances to support of its "*sua sponte*" summary judgment request. As it does here, OPERS argued to the Sixth Circuit that this Court's rulings on class certification were dispositive of this litigation. *See* Pet. at 21-22. Specifically, it argued that the Court's ruling on price impact was "likely dispositive of the litigation." *Id.* at 21. Indeed, it expounded upon this point in its reply brief, devoting an entire section to it. Reply in Support of Pet. (No. 18-310, ECF No. 17) at 9-10. OPERS also argued that it must prove market efficiency at summary judgment and trial to establish reliance, which it cannot do given the exclusion of its expert. Pet. at 21-22. Nonetheless, the Sixth Circuit denied OPERS's Petition. That is likely because, as discussed below, OPERS's arguments are incorrect.

## II. OPERS INCORRECTLY ARGUES THAT THIS COURT'S CLASS CERTIFICATION RULINGS ARE DISPOSITIVE OF ITS CLAIMS.

OPERS argues that this Court's exclusion of certain testimony of Dr. Feinstein, OPERS's class certification expert, and aspects of its ruling denying class certification dictate entry of summary judgment. OPERS is wrong on both points. This Court's exclusion of Dr. Feinstein's testimony on market efficiency does not dictate its decision on loss causation, nor does the Court's decision on class certification require entry of summary judgment on loss causation.

### A. This Court's Exclusion Of Dr. Feinstein's Testimony On Market Efficiency Does Not Dictate Its Decision On Loss Causation.

OPERS asserts that, without Dr. Feinstein's testimony, it cannot survive summary judgment. Req. at 8-9. This argument is as disingenuous as it is wrong, as it ignores the actual

subjects of Dr. Feinstein's testimony, the testimony of Dr. Feinstein that was actually excluded, as well as the phase of the case at which the Court's ruling was made. This Court's exclusion of Dr. Feinstein's market efficiency testimony, and its finding that Freddie Mac sufficiently rebutted the presumption of reliance has no bearing on OPERS's live, pending **individual** claims.

As Dr. Feinstein testified on April 13, 2018 in this Court, he was retained to offer opinions on two discrete issues relating only to class certification: market efficiency and damages methodology. ECF No. 468 (*Daubert* Hearing Tr.) at 29:3-12. That role expanded to include a critique of Dr. Bajaj's price impact opinion. *Id.* at 29:13-30:1. Freddie Mac filed a motion to exclude Dr. Feinstein's testimony on market efficiency, and this Court granted that motion. ECF No. 478 at 41.

Notably, as he repeatedly testified during his deposition, Dr. Feinstein never offered an opinion on whether the alleged misrepresentations and omissions in this case had a price impact, and he never offered an opinion on loss causation. More specifically, he testified at his deposition:

> Q. It's your view that the alleged misrepresentations in this case impacted the price of Freddie Mac's stock?
>
> A. No, that's not my view. No. **I haven't done a loss causation analysis yet** or a damages analysis. So I haven't arrived at that – an opinion on that topic one way or another.

S. Feinstein Depo. Tr. at 280:23-281:6 (emphasis added) (attached as Exhibit A).

Dr. Feinstein further testified at his deposition that his only opinion relating to price impact was a critique of Dr. Bajaj's opinion on that subject:

> Q. And so, to be clear, your opinion with respect to the price impact issues in the case is solely that Dr. Bajaj has failed to establish a lack of price impact. Is that correct?
>
> A. Right.
>
> Q. You are not –

A. Well, no, no. And that he failed to address direct evidence of price impact appropriately.

Q. Okay. **<u>But you are not offering an opinion that the alleged misrepresentations or omissions in this case actually resulted in price impact. Is that right?</u>**

A. **<u>That's a loss causation argument, a loss causation analysis which I have not yet conducted.</u>**

Q. You're not opining that the alleged misrepresentations or omissions caused price impact. Right? At this stage.

A. You said concluding – I have not – **<u>I am not offering a conclusion at this stage, right, at this stage, that there was loss, that there was price impact. What I am concluding is that he did not prove no price impact.</u>** He looked at some areas related to price impact but simply wasn't comprehensive enough to rule it out. And he didn't deal appropriately with the direct evidence of price impact.

*Id.* at 712:9-713:15.

Dr. Feinstein testified that he did not offer an opinion as to whether there was price impact because that was not plaintiff's burden at the class certification stage and it was beyond the scope of his engagement:

Q. Now, did you reach a conclusion that there was evidence of – that the misrepresentations and omissions affirmatively caused price impact?

A. Assuming the truth?

Q. I'm not asking you about assumptions. I'm asking about conclusions.

A. Well, I reached a conclusion there was direct evidence of price impact, but **<u>I didn't draw the conclusion that there was price impact</u>** –

Q. Now –

A. – **<u>because it wasn't within the scope of – that wasn't my burden. It wasn't in the scope of my engagement.</u>**

*Id.* at 731:15-732:5 (emphasis added).

Further, he explained that he did not need to offer an opinion on the issue of loss causation, because such an opinion is premature at the class certification stage:

> Q. Are you providing any opinion as to whether or not plaintiffs are correct in their allegations of misrepresentations and omissions?
>
> A. No.
>
> Q. Why not?
>
> A. It wasn't necessary for the work that I did. What was the necessary with respect to the price impact was that I assume that, in fact, there are those misrepresentations and omissions. So it wasn't necessary, **and with respect to loss causation, it's premature**.

*Id.* at 790:9-21 (emphasis added).

As Dr. Feinstein's testimony makes clear, he did not offer an opinion on whether there was price impact. Nor did he offer an opinion on loss causation. This Court did not exclude Dr. Feinstein's testimony criticizing Dr. Bajaj's opinion on price impact, and OPERS's conclusory statement that the Court "held that Dr. Feinstein's opinions on price impact were incorrect" does not somehow justify entry of summary judgment that would allow OPERS to make an end run around *Baker*. *See* Req. at 8 (citing ECF No. 478 at 36). At summary judgment and, if necessary, trial, OPERS can come forward with evidence of price impact and loss causation— and even offer opinions on those subjects from Dr. Feinstein himself if it wishes. The Court did not exclude testimony (from Dr. Feinstein) that he never gave (and indeed, expressly disavowed providing). OPERS cannot now credibly argue that this Court has predetermined those issues.

Further, the Court's exclusion of Dr. Feinstein's opinion on market efficiency does not prevent OPERS from pursuing its own, individual claims. And, the two cases OPERS cites for the proposition that the exclusion of its expert's testimony means that OPERS's individual claims "cannot survive summary judgment," Req. at 8-9, are distinguishable, as they do not involve what

OPERS seeks to achieve here—transforming class certification rulings on reliance into a summary judgment ruling on loss causation. *See Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014) (affirming summary judgment following exclusion of expert testimony on issue of loss causation); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1290-95 (N.D. Okla. 2007) (granting summary judgment based on plaintiff's "fail[ure] to provide admissible expert or lay evidence" on issue of loss causation).

Moreover, as an individual plaintiff, OPERS does not need to prove market efficiency to prove reliance: it may instead attempt to prove direct reliance on the alleged misrepresentations and omissions. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ("*Halliburton I*") (individual litigants may follow "[t]he traditional (and most direct) way" of establishing reliance: "by showing that [the plaintiff] was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation"). Contrary to OPERS's baseless assertions, the exclusion of Dr. Feinstein's opinion on market efficiency does not doom the only claims remaining at this point—OPERS's individual claims.

Likewise, this Court's ruling on OPERS's failure to articulate sufficiently a class-wide methodology for the proof of damages does not impact its individual claims. The damages methodology that Dr. Feinstein was retained to articulate is mandated by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). In *Comcast*, the Supreme Court held that, to obtain class certification, a plaintiff must identify a common methodology for calculating class-wide damages consistent with the plaintiff's theory of liability. Now that class certification has been denied, OPERS can retain an expert (Dr. Feinstein or someone else) to opine on its own damages, if any, and, like any other individual plaintiff, it does not need to establish a common methodology for calculating class-wide damages.

The deadline to designate merits and damages experts has not passed. OPERS has failed to identify any reason why the exclusion of Dr. Feinstein's testimony on market efficiency will prevent it from designating experts and offering expert testimony on the issues relevant to its individual claims, including but not limited to the issue of loss causation. Indeed, if it wants to, OPERS can designate Dr. Feinstein to now offer opinions on those issues. This Court should not enter summary judgment based on the fact that it has excluded the market efficiency testimony of OPERS's class certification expert, which was relevant solely to whether a class should be certified, and irrelevant to OPERS's remaining, individual claims.

### B. This Court's Decision On Class Certification Does <u>Not Require Entry Of Summary Judgment On Loss Causation.</u>

OPERS's argument that this Court's class certification ruling supports entry of summary judgment on the issue of loss causation is also incorrect. In ruling on OPERS's motion for class certification, this Court was considering a completely different issue—reliance, not loss causation—and it was applying a standard that is very different from the standard applicable to summary judgment. In addition, the cases make clear that the Court's decisions on issues that arise during class certification are not decisions on the merits for the purposes of successive stages of the matter, including summary judgment or trial.

Specifically, OPERS argues that the Court's ruling that Defendants rebutted the presumption of class-wide reliance by demonstrating a lack of price impact prevents OPERS from demonstrating loss causation on its individual claims. Req. at 8-9. OPERS is incorrect as a matter of law. This Court held that OPERS was not entitled to a presumption of reliance because OPERS failed to demonstrate that Freddie Mac's common stock traded in an efficient market. ECF No. 478 at 2-15, 41. But even if OPERS had carried its burden, the Court correctly concluded that Freddie Mac's affirmative evidence of a lack of price impact rebutted any presumption of class-

wide reliance. *Id.* at 36-38. As Dr. Feinstein admitted, he did not even offer an opinion on whether the alleged misrepresentations and omissions caused a price impact. *See supra* at 11-12. Further, the Court did not examine the issue of price impact through the lens of the summary judgment standard: whether there was a genuine issue of material fact. Fed. R. Civ. P. 56.

In addition, the Court did not, and it was not asked to, consider the issue of loss causation at the class certification stage, and Dr. Feinstein testified that he did not offer an opinion on loss causation. *See supra* at 11-13. Nor did any expert of Defendants offer any opinion on loss causation. Indeed, it would not have been appropriate for the Court to consider the issue of loss causation at the class certification stage. *See Halliburton I*, 563 U.S. at 810 (holding a plaintiff does not need to prove loss causation to obtain class certification).

Rather, this Court was considering issues of reliance because, to maintain a securities **class action**, the lead plaintiff must establish a class-wide "**presumption** of reliance" through the fraud-on-the-market theory. *Id.* at 810-11. To benefit from the fraud-on-the-market presumption, a lead plaintiff must at least show that the defendant made misrepresentations that impacted the price of a security that is actively traded on an efficient market, *i.e.*, that the market price for the defendant's stock rapidly reflected all public material information throughout the Class Period. *See Freeman v. Laventhol & Horwath*, 915 F.2d 193, 197 (6th Cir. 1990). The question of whether Defendants, through their proffered expert, Dr. Bajaj, had sufficiently rebutted any **presumption** of reliance for purposes of sustaining a **class action** is one of the questions the Court answered in denying OPERS's Motion for Class Certification.

The Court's class certification decision did not need to, and did not, address the reliance question relevant to OPERS's pursuit of its **individual** claims: did OPERS actually, individually, rely on misstatements or omissions by Defendants? *See Halliburton I*, 563 U.S. at 810. Nor did

it reach any conclusion on the issue of loss causation. The Court did not foreclose OPERS from pursuing its individual claims, and it did not resolve, as it would have to on a motion for summary judgment under Rule 56, whether there are genuine issues of material fact as to either reliance or loss causation on OPERS's individual claims.

OPERS's Request is also based on the incorrect premise that those merits-related issues addressed in the Court's denial of class certification are **final** for the purpose of its individual case. Once again, that is not the law.

Although a class certification decision may involve a limited consideration of the merits of the matter, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), a decision on class certification is **not** a decision on the merits for the purposes of successive stages of the matter, including summary judgment or trial. *See, e.g.*, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ("the 'manner and degree of evidence required' at the preliminary class certification stage is **not the same** as 'at the successive stages of the litigation'—i.e., at trial") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis added); *Himler v. Comprehensive Care Corp.*, 790 F. Supp. 114, 116 (E.D. Va. 1992) ("[D]enial of a motion for class certification **does not** affect the merits or the level of proof required" and, therefore, "[t]he voluntary dismissal with prejudice sought by plaintiffs in this case is not appealable") (emphasis added). Indeed, Rule 23 itself states that "[a]n order that grants or denies class certification **may be altered or amended** before final judgment." Fed. R. Civ. P. 23(c)(1)(C) (emphasis added); *see also Baker*, 137 S. Ct. at 1711 (holding that, following denial of class certification, plaintiffs could continue to litigate the case, hoping to develop additional evidence requiring certification of class).

Several decisions from the Fifth Circuit illustrate this point. Prior to the Supreme Court's ruling in *Halliburton I*, it was the law in the Fifth Circuit that plaintiffs must establish loss causation to obtain class certification. *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261, 262 (5th Cir. 2007). In several decisions, the Fifth Circuit firmly rejected the notion that a district court's **finding of a lack of loss causation at the class certification stage dictated the immediate entry of summary judgment**. In *Alaska Electrical Pension Fund v. Flowserve Corp.*, for instance, the Fifth Circuit **reversed** the district court's entry of summary judgment, based on the plaintiff's failure to prove loss causation at the class certification stage. 572 F.3d 221, 233-34 (5th Cir. 2009). As the Fifth Circuit explained, "[t]he denial of class certification does not prevent a plaintiff from proceeding individually. And the court's determination for class certification purposes **may be revised (or wholly rejected)** by the ultimate factfinder." *Id.* at 228-29 (emphasis added; citation omitted). *See also Fener v. Operating Engineers Constr. Indus. & Miscellaneous Pension Fund (LOCAL 66)*, 579 F.3d 401, 407 (5th Cir. 2009) (affirming denial of class certification based on plaintiff's failure to demonstrate loss causation; noting, however, that loss causation may be reexamined at summary judgment or trial); *Oscar*, 487 F.3d at 269 n.40 (vacating certification of class for failure to establish loss causation and noting that "loss causation, as an element of a 10b-5 claim, can[ ] be reexamined at summary judgment").

A simple thought experiment illustrates the point: What would happen if a defendant, after prevailing on class certification based on a showing of a lack of price impact, argued that summary judgment should enter *a fortiori* on the issue of loss causation? Surely a plaintiff (who was not seeking to manufacture an immediate appeal) would protest. That plaintiff would reasonably argue that a class certification decision was not the same as summary judgment. It would argue

that it was not plaintiff's burden to prove loss causation at class certification under *Halliburton I*, that the plaintiff did not have an opportunity to advance at class certification all of the evidence that it could advance on summary judgment and at trial on the issues of price impact or loss causation, and that the issues examined and standards applied are different at class certification than at summary judgment. A ruling granting a defendant's summary judgment motion on loss causation, based solely on rulings a court made in an Order denying class certification, would be subject to reversal, just as the Fifth Circuit reversed the grant of summary judgment in *Alaska Electrical*.

Notably, other courts have held that defendants rebutted the presumptions of reliance by demonstrating a lack of price impact. *See IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (applying *Halliburton II*, holding that defendant had successfully rebutted the presumption at the class certification stage by showing that alleged misstatements did not have any impact on the company's stock price at the time they were made); *In re Finisar Corp. Sec. Litig.*, No. 11-cv-01252, 2017 WL 6026244, at *7-8 (N.D. Cal. Dec. 5, 2017) (denying class certification where defendants demonstrated that no alleged misrepresentation caused a statistically significant increase in stock price), *reconsideration denied*, 2018 WL 3472334 (N.D. Cal. Jan. 18, 2018), *leave to appeal denied sub nom. Oklahoma Firefighters Pension & Ret. Sys. v. Finisar Corp.*, 2018 WL 3472714 (9th Cir. July 13, 2018); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011) (same). But to the best of counsel's knowledge, not one court, ever, has transformed that rebuttal into a *sua sponte* summary judgment on loss causation.

In sum, there is no rule or law preventing OPERS from presenting evidence during the merits phase of its case on the issues of reliance or loss causation, or on any other element of its individual claims. Nor does the exclusion of Dr. Feinstein's testimony on market efficiency

prevent OPERS's from offering competent expert witness testimony on any of the elements of its individual claims, including loss causation. Contrary to OPERS's suggestion, Freddie Mac is not declining to seek summary judgment at this stage for "tactical reasons." Req. at 9. On the contrary, as outlined above, it is OPERS who has advanced an "inventive litigation ploy" to obtain the equivalent of an interlocutory appeal.

Freddie Mac desires to bring this case to an end for once and for all. Freddie Mac favors the grant of summary judgment, but only in a ruling that the Sixth Circuit is likely to uphold on appeal. There are multiple issues and defenses to be developed in completing discovery. Once fact and expert discovery close and a complete record has been developed, Freddie Mac intends to move for summary judgment on several issues, not just the sole issue OPERS has cherry picked. The Court will then have an opportunity to resolve, in the context of a single motion, **<u>all</u>** issues that Freddie Mac believes will support the grant of summary judgment. If OPERS is not satisfied with the results of this Court's genuinely final ruling, on summary judgment, it can then file an appeal from that final judgment. *Baker* and the legislative regime of Section 1291 and Rule 23(f) do not permit any other course, and certainly not the artifice OPERS proposes in its Request.

## **<u>CONCLUSION</u>**

For all of the reasons set forth above, this Court should deny OPERS's Request in its entirety.

Dated: June 13, 2019

**FEDERAL HOME LOAN MORTGAGE CORPORATION**

By its attorneys,

*/s/ Hugh E. McKay*
Hugh E. McKay (0023017)
PORTER WRIGHT MORRIS & ARTHUR LLP
950 Main Avenue, Suite 500
Cleveland, OH 44113
Tel: (216) 443-2580
Fax: (216) 443-9011
E-mail: hmckay@porterwright.com

Jordan D. Hershman (*pro hac vice*)
Jason D. Frank (*pro hac vice*)
Emily E. Renshaw (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8455
Fax: (617) 951-8736
E-mail: jordan.hershman@morganlewis.com
E-mail: jason.frank@morganlewis.com
E-mail: emily.renshaw@morganlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2019, a copy of the foregoing "FREDDIE MAC'S OPPOSITION TO PLAINTIFF'S REQUEST FOR *SUA SPONTE* SUMMARY JUDGMENT" was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

*/s/ Hugh E. McKay*
Hugh E. McKay