**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL HOME LOAN MORTGAGE CORPORATION, et al.**<br><br>Defendants. | Civil Action No. 4:08-cv-00160<br><br>Judge Benita Y. Pearson<br><br>Magistrate Judge Jennifer Dowdell Armstrong |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE THE REPORT AND TESTIMONY OF DR. CHUDOZIE OKONGWU**

## I. INTRODUCTION

OPERS' Motion to Strike and Exclude the Report and Testimony of Dr. Chudozie Okongwu (Doc. 521) ("Motion") establishes that Freddie Mac's purported expert should be stricken and excluded. Freddie Mac's brief in opposition (Doc. 530) is long on style and short on substance. It does not change the fact that Okongwu is a summary fact witness, without personal knowledge of the matters in question, and he does not express any actual opinions. Okongwu's proposed testimony recounting historical events, defining common terms, and comparing two dissimilar datasets to reach an irrelevant and unreliable conclusion is invalid as a matter of law. This is not changed by the fact that Okongwu and his firm charged $2.56 million to produce the testimony.[1] As a result, Okongwu's Report and testimony should be stricken and excluded.

## II. ARGUMENT

Freddie Mac has failed to meet its burden of establishing the admissibility of Okongwu's proposed testimony by the required "preponderance of proof." *Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244, 251 (6th Cir. 2001). As established in OPERS' Motion, Okongwu's Report includes a review of background facts about the mortgage and subprime market, which is nothing more than a factual narrative of undisputed facts that is invalid for a purported expert, irrelevant to any disputed issues in this case, and not based on a valid methodology. Okongwu's proposed testimony about Freddie Mac's public disclosures is invalid for the same reasons. Even if Okongwu had expertise about corporate disclosures, which he admits he does not, his presentation of undisputed facts is not relevant to any disputed issues in the case, and he applies no scientific methodology in deciding what documents to parrot and which ones to ignore. Okongwu's proposed testimony that

[1] Freddie Mac previously disclosed that as of February 23, 2024, Okongwu billed $199,436 and his firm AlixPartners, Freddie Mac's "consulting expert," billed $2,150,591 for their work in this case. Freddie Mac has since disclosed that Okongwu billed $55,968 more and AlixPartners billed an additional $159,211. The total for the work performed by Okonwgu and his firm AlixPartners is now $2.56 million—or over $16,000 every day since November 1, 2023.

the characteristics and performance of Freddie Mac's Caution Loans differed from the CoreLogic subprime loans should also be excluded based on irrelevance and unreliability. This comparison is irrelevant and unreliable because of the irreconcilable differences between the two datasets. And the performance of this one segment of Freddie Mac's loans ignores the other nontraditional loans in Freddie Mac's portfolio and does not excuse Freddie Mac's misleading and fraudulent statements to Plaintiff. Okongwu's Report and testimony should be excluded as a matter of law.

**A. Okongwu's proposed testimony about background facts of the mortgage and subprime markets is irrelevant and unreliable.**

As established in OPERS' Motion, the first two sections of Okongwu's Report, which present nothing more than a summary of definitions and historical events, is irrelevant, unreliable and not based on any underlying methodology. Ex. 2, Amended Report, pp.7–51.

Okongwu's background on the mortgage market, definitions, and history of the GSEs and Freddie Mac are not opinions appropriate for testimony of a purported expert witness. Ex. 2, pp.7–25, ¶¶ 14–42. Rather, they are statements of fact, but without the required personal knowledge. This testimony is "largely factual narrative," and such testimony, "which merely closely summarizes documentary evidence without applying any analysis, is inadmissible as expert testimony." *United States Sec. & Exch. Comm'n v. Mudd*, No. 11 CIV. 9202 (PAC), 2016 WL 2593980, at *5 (S.D.N.Y. May 4, 2016). Okongwu "cannot simply present his version of the facts in the guise of an expert opinion." *Id.* If Freddie Mac wishes to present background facts, it must do so with a fact witness with personal knowledge, not a professional expert. All Okongwu's testimony should therefore be excluded as irrelevant. *See id.* And this will be the second time that Okongwu's testimony is excluded on the basis of relevance. Ex. 3, Okongwu Deposition Transcript, p.62; Ex. 4, Decision in Case No. 18-cr-00681, pp.3–4.

Freddie Mac responds by contending that Okongwu should be allowed to make a factual

presentation because he is really just "educat[ing] the factfinder on general principles," and offering "contextualizing testimony." Doc. 530, pp.4, 5. Applicable caselaw disagrees. *Jones v. Varsity Brands, LLC*, 2024 U.S. Dist. LEXIS 4629, *9 (W.D. Tenn. Jan. 9, 2024) (stating that "[a]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence," and holding that expert testimony on background information more appropriate for a fact witness was not relevant or necessary); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 546 F. Supp. 3d 666, 677 (S.D. Ohio 2021) ("A history without any expert analysis or other application of the expert's expertise is simply a factual narrative that 'should be presented to the jury directly.'").

Freddie Mac itself identifies another fatal flaw in its argument given that this Court has already asked the parties to prepare a glossary of terms. *Id.* at 5 (*citing* Doc. 310, ¶ 1). There is no need for another set of definitions when the requested glossaries have already been filed. Docs. 318, 320. And Freddie Mac further ignores that Okongwu is proposing to testify about facts of which he has no personal knowledge. *See Dorchy*, 584 F. Supp. 3d at 428 ("Lay witnesses may only testify to facts about which they have personal knowledge."). Freddie Mac's inability to secure a fact witness does not allow it to use an expert as a convenient substitute.

Freddie Mac also fails in claiming that Okongwu's background information, definitions, and history is not just a factual narrative. Freddie Mac offers no specifics to support this argument in relation to the first two sections of Okongwu's Report. Doc. 530, p.6. There is no "analysis" in these sections of Okongwu's Report. *See* Ex. 2, pp.7–25, ¶¶ 14–42. He is merely relaying facts about which he has no personal knowledge. This testimony should therefore be excluded.

Okongwu's testimony should also be excluded because there is no methodology in his regurgitation of definitions and history. *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768,

792 (6th Cir. 2002). Okongwu has no training or experience as a historian. *See* Ex. 1, Report, App'x I. The only work he performed himself on the history of Freddie Mac was to look at its website. Ex. 3, p.66. There is no "treatise, article, or paper that has applied" any method in how he chose to present his background facts. *Mudd*, 2016 WL 2592980, at *3. There is no methodology that is "peer reviewed; there is no known error rate; and it has not been generally accepted by the relevant scientific community." *Id.* Because a mere recitation of definitions and facts is not reliable or based on any methodology, Okongwu's proposed testimony should be excluded.

Freddie Mac responds by contending that Okongwu's methodology was "thoroughly explained," but it offers no support for this assertion other than a cite to nearly 50 pages of the Report, and it never points to any such explanation, because there is none. *See* Doc. 530, pp.10–11 (*citing* Ex. 2, pp.7–63, ¶¶ 14–111). Freddie Mac is further wrong in contending that Okongwu's Report was "reviewed by peers"—by those at AlixPartners who work for Okongwu and under his direction—so it must be "peer-reviewed." *Id.* at 11 (*citing* Ex. 3, p.28). This disingenuous assertion purposefully misconstrues the law. *Wilson v. Summit Treestands*, 2021 U.S. Dist. LEXIS 222698, at *5 (E.D. Tenn. June 21, 2021) (stating that "peer review" at minimum "requires anonymous review by experts in the field"); *United States v. Gissantaner*, 990 F.3d 457, 465 (6th Cir. 2021) ("Peer review contains its own independence, as it involves 'anonymously reviewing a given experimenter's methods, data, and conclusions on paper.'"). Okongwu admits that his Report was not peer reviewed. Ex. 3, pp.28–29. Freddie Mac has failed to meet its burden in demonstrating by a preponderance of proof that Okongwu employs any valid methodology in parroting others' background facts and definitions, and Okongwu's proposed testimony should be excluded.

The same result applies because Okongwu's proposed testimony was prepared solely for purposes of litigation. His proposed testimony must therefore be viewed with caution. *Johnson*,

484 F.3d at 434. Freddie Mac's counter to this fact is incorrect because there is no support for its assertion that Okongwu's Report "grow[s] naturally and directly out of research [he] ha[s] conducted independent of [this] litigation.'" Doc. 530, p.11 (*quoting Johnson*, 484 F.3d at 434). Freddie Mac's cite does not support its assertion given that Okongwu is a professional witness, not a researcher, and his few published works and presentations do not flow from any of the topics of his Report. *See* Doc. 530, p.11 (*citing* Ex. 2, pp.1–2, ¶ 4); Ex. 2, App'x 1, at Papers and Presentations (Last 10 Years). Even if Freddie Mac's mischaracterization was true, which it is not, Okongwu is still the "quintessential expert for hire," and this demands that the *Daubert* factors be applied "with greater rigor." *Johnson*, 484 F.3d at 435. In this situation where Okongwu is only presenting facts, not opinions, and the entirety of his proposed testimony is irrelevant and unreliable, Okongwu's Report and testimony should be excluded.

**B. Okongwu's proposed testimony about the definition of subprime and declining housing prices is irrelevant and unreliable.**

Okongwu's improper factual presentation continues where he states that "there is no universally accepted definition of the term 'subprime,'" and, housing price declines in 2006 and 2007 resulted in a rise in delinquency rates and foreclosures. Ex. 2, pp.31, 46–51. These statements of undisputed facts, not opinions, should be excluded because they are improper expert testimony, irrelevant to OPERS' claims, and are not based on any reliable methodology.

Okongwu's statements of fact about no universally accepted definition of subprime and housing price declines are irrelevant. Just as occurred in the *Mudd* case, OPERS has never contended that Freddie Mac "had a duty to define subprime differently or that another subprime definition would have better captured the risks associated with subprime loans." *Mudd*, 2016 WL 2593980, at *4. OPERS has never disputed that there is no universally understood definition of subprime. Ex. 3, p.166. The historical fact that house prices declined and led to increased mortgage

delinquencies and foreclosures is also "not in dispute." *Id.* at *7; Ex. 3, p.167. Okongwu cannot present facts "in the guise of an expert opinion." *Mudd*, 2016 WL 2593980, at *4. Because these facts are not disputed and are not relevant to OPERS' actual claims, and because Okongwu is not a fact witness, his proposed testimony on these factual topics should be excluded as irrelevant and unhelpful. *Mudd*, 2016 WL 2593980, at *7.

Okongwu also has no methodology underlying his factual statements about the definition of subprime and housing price declines. He has not applied any theory, technique, or scientific method. *See* Ex. 2, pp.31–34. He simply cites sources that agree with him. *Id.* And he is merely conveying facts without any opinion. As a result, Okongwu's factual statements are not based on any scientifically valid or reliable foundation. *See Conwood Co.*, 290 F.3d at 792. Okongwu's proposed testimony about the lack of a universally accepted definition of subprime and declining housing prices should therefore be excluded.

Freddie Mac does not specifically address Okongwu's statements about no universally accepted definition of subprime and housing price declines. *See* Doc. 530. By declining to address these issues, Freddie Mac concedes that Okongwu's Report and testimony is improper and should be excluded as a matter of law. *See Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) (deeming perfunctory point lacking any supporting argumentation to be waived). Freddie Mac's only argument here is to generically claim that Okongwu's methodology was "thoroughly explained" and cite to nearly 50 pages of the Report, but without pointing to any succinct explanation, because none exists. *See* Doc. 530, pp.10–11 (*citing* Ex. 2, pp.7–63, ¶¶ 14–111). Because Okongwu's factual statements about housing price declines and no universal definition of subprime are not relevant or reliable, but instead are statements of undisputed facts with no expert analysis, his proposed testimony should be excluded.

### C. Okongwu's proposed testimony about Freddie Mac's disclosures is irrelevant and unreliable, and he is not qualified to testify on the topic.

Okongwu also proposes to testify that "Freddie Mac made extensive and detailed disclosures" on various topics. Ex. 2, p.52, ¶ 81. This too is improper because it is a one-sided factual presentation that is not relevant to any disputed issue in this case, and it is not based on any reliable methodology. Okongwu also admits that he has no expertise regarding corporate disclosure practices. His proposed testimony should therefore be excluded.

As with his other factual statements, Okongwu's general background information about what Freddie Mac disclosed "is not in dispute, nor is an expert necessary to explain those topics." *Mudd*, 2016 WL 2593980, at *5. This "largely factual narrative," should be excluded as a matter of law because Okongwu "cannot simply present his version of the facts in the guise of an expert opinion." *Id.* This proposed testimony is further irrelevant because Freddie Mac's disclosures "were materially false or misleading." *Mudd*, 2016 WL 2593980, at *6. Such testimony is "likely to confuse and mislead the jury on the issue of materiality, a distinct legal concept with a distinct legal definition." *Id.* at *7 (*citing Basic Inc.*, 485 U.S. at 231–32). If Freddie Mac wishes to present evidence about what it disclosed, it should do so with the documents and first-hand testimony from a lay witness. *See id.* Any attempt to use Okongwu to present facts about which he has no personal knowledge or a disguised legal opinion should not be allowed by the Court. *OPERS*, 2018 U.S. Dist. LEXIS 137229, at *17. Okongwu's prepared-for-litigation presentation of facts about Freddie Mac's disclosures should be excluded as a matter of law based on this lack of relevance. *See Mudd*, 2016 WL 2593980, at *5; *Johnson*, 484 F.3d at 434; *Dorchy*, 584 F. Supp. 3d at 428 ("Lay witnesses may only testify to facts about which they have personal knowledge.").

Freddie Mac argues in response that Okongwu's factual narrative is really "an independent analysis of voluminous materials addressing specialized topics." Doc. 530, p.7. But there is no

"analysis" anywhere within Okongwu's presentation about Freddie Mac's disclosures. Ex. 2, pp.51–63. Okongwu merely states what Freddie Mac disclosed with long quotes of various documents. *Id.* And he does not express any opinions about Freddie Mac's disclosures. *Id.* Freddie Mac's baseless assertion about Okongwu's supposed "analysis" is incorrect and invalid.

In addition, Freddie Mac's only cited case here proves it wrong by confirming that an expert's narrative is inadmissible where it provides "only 'simple inferences drawn from uncomplicated facts.'" *In re Welding Fune Prods. Lib. Litig.*, 2010 WL 7699456, at *41 (N.D. Ohio June 4, 2010). Okongwu does not even provide inferences—he merely regurgitates information from Freddie Mac's disclosures, and ignores conflicting internal documents, to create the false impression that the disclosures were somehow sufficient. Ex. 2, pp.51–63, ¶¶ 81–111.

Freddie Mac's contention about whether Freddie Mac's disclosures are undisputed also bears no weight. Doc. 530, p.8. Okongwu's narrative consists of nothing more than quotes from various Freddie Mac documents. Ex. 2, pp.51–63, ¶¶ 81–111. So there is no dispute about what the documents state, and no one can deny that "Freddie Mac made extensive and detailed disclosures." *Id.* at p.51, ¶ 81. But the issue is whether those disclosures were false and misleading, not whether they were extensive and detailed. Freddie Mac's relevance arguments are incorrect, and Okongwu's proposed testimony should be excluded based on this lack of relevance.

The crux of Okongwu's testimony here appears to be that the disclosures were "extensive," not the content of the disclosures, which is apparent on their face. Freddie Mac's response is replete with characterizations of the disclosures being "extensive." *See* Doc. 530. But, Okongwu did nothing to compare the volume of Freddie Mac's disclosures to others in the market. Ex. 3, pp.147–48. Okongwu did not even review the disclosures of Fannie Mae, the other major player in this market. Ex. 3, p.147. He has offered no support to characterize the disclosures as "extensive."

Okongwu's factual presentation about Freddie Mac's disclosures should also be excluded because it lacks any reliable methodology. Okongwu never explains why he quotes Freddie Mac's disclosures but not the internal documents revealing that those disclosures were misleading, false, and incomplete. *See* Ex. 3, p.70. This makes it clear that Okongwu's choice of which Freddie Mac documents to parrot and which to ignore is not based on any scientifically valid or reliable foundation. *See Conwood Co.*, 290 F.3d at 792. And his long quotes from Freddie Mac documents, which he never attempted to test for accuracy, Ex. 3, pp.150, 152, is not the product of any theory, technique, or scientific method. *See* Ex. 2, pp.51–63; *see also Mudd*, 2016 WL 2592980, at *3, n.3. Freddie Mac has no response here other than to complain about OPERS' expert, Howard Shapiro, as if that could ever make Okongwu's testimony legally valid. Doc. 530, p.11. Because his recitation of facts about Freddie Mac's disclosures is not reliable or based on any valid methodology, Okongwu's proposed testimony should be excluded.

Okongwu also admits that he has no expertise on the topic of corporate disclosure practices. Ex. 3, p.60, 75, 79. His lack of qualifications therefore does not provide a foundation for him to answer any specific questions about Freddie Mac's disclosures. *See Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010). Because Okongwu has no expertise about whether "Freddie Mac made extensive and detailed disclosures," Ex. 2, p.52, ¶ 81, especially given that he ignores the facts and documents proving that those disclosures were false and misleading, Okongwu's proposed testimony on this topic should be excluded.

Freddie Mac's only response to Okongwu's lack of qualifications is to contend that Okongwu is not opining on corporate disclosure practices, but is instead opining on "the meaning and relevance of certain Freddie Mac disclosures relating to the credit risk of its mortgage portfolio." Doc. 530, p.3 (*quoting* Ex. 2, p.4, ¶ 9). This assertion is false given that Freddie Mac is

not quoting any part of Okongwu's actual conclusions. *Id.* In other words, Freddie Mac's assertion of Okongwu's opinions is different from Okongwu's. *Compare* Doc. 530, p.3, *with* Ex. 2 at pp.5–6, ¶ 13. Freddie Mac's argument is also immaterial given that it focuses on "credit risk" while ignoring the actual topic of corporate disclosures, and the numerous other topics of disclosures that Okongwu's actually quotes. Ex. 2, p.51, ¶ 81. Okongwu's "expertise on the mortgage and subprime mortgage markets," as Freddie Mac puts it, does not give him any expertise on the numerous corporate disclosures he covers, as Okongwu himself admits. Ex. 3, p.60, 75, 79. Because he is not qualified, and because it is irrelevant and unreliable, Okongwu's Report and proposed testimony about Freddie Mac's disclosures should be excluded.

**D. Okongwu's proposed testimony about Freddie Mac's Caution Loans being different from the CoreLogic Subprime Loans is irrelevant and unreliable.**

The final section of Okongwu's Report states that Freddie Mac's Caution Loans did not have "subprime risk" because they had different characteristics and performance than CoreLogic Subprime Loans. Ex. 2, p.64. Just as with the rest of Okongwu's Report, these are factual statements, not an expert's opinion. Any juror could come to the same conclusion, but doing so would be pointless because comparing one dissimilar dataset to another just to declare them different, which has been an established fact for well over a decade, has no relevance to the claims or issues in this case. Okongwu's proposed testimony about Freddie Mac's Caution Loans should be excluded as irrelevant and unreliable.

The first problem with Okongwu's comparison is that he knows shockingly little about the CoreLogic LLMA Data. He never verified from where the data was collected. Ex. 3, p.82. He did not know whether the contributors were thorough in providing all their loan data or just a small slice. *Id.* at p.86. He did not test whether the data was a faithful representative sample. *Id.* at p.90. He did nothing to determine if the subprime loans within the data were a representative sample.

*Id.* at pp.91, 92. He had no way to determine how different contributors defined whether a loan was prime or subprime. Ex. 2, p.65, ¶ 114; Ex. 3, p.99. He had no way of testing whether the contributors did so in a reasonable manner. Ex. 3, p.102. There were at least five subprime characteristics in the LLMA Data that that Okongwu did not even consider. *Id.* at pp.109–11. And Okongwu was not sure how he identified delinquent loans or how those loans were impacted by loan modifications at Freddie Mac compared to any other lender. *Id.* at pp.143, 181. So from the very start, Okongwu's conclusions are invalid and not based on a reliable methodology because of his lack of knowledge about the data. Freddie Mac's response brief has nothing substantive to say about these matters. *See* Doc. 530, p.14.

Okongwu's comparison is further invalid because Freddie Mac's Caution Loans came from the Loan Prospector automated underwriting system, Doc. 166, ¶¶ 28–30, which applied higher underwriting standards than other channels from which Freddie Mac purchased loans, *id.* at ¶¶ 73–75; *see* Ex. 3, p.115. Okongwu is therefore not comparing the totality of Freddie Mac's subprime-like loans. He is only comparing the highest quality of those loans. And he further ignores the fact that Freddie Mac's C1 Caution Loans, while highly risky in their own right, had better credit quality than C2, which were at even greater risk of default than the C1 loans. Doc. 166, ¶¶ 31–36. So again, Okongwu's comparison is unreliable.

Freddie Mac tries to dispute these facts with an obviously false assertion. Freddie Mac suggests that its Caution Loans coming from the Loan Prospector automatic underwriting system did not actually apply higher underwriting standards than other channels from which Freddie Mac purchased loans because Freddie Mac evaluated those loans after they were purchased with an emulator model. Doc. 530, p.13 (*citing* Doc. 521-1, p.13). This assertion is false given that this emulator was run after the fact—after Freddie Mac purchased the loans—so the emulator had no

effect on the quality of the loans purchased. Doc. 166, ¶ 74. As OPERS stated, Okongwu's entire comparison is invalid because it compares Freddie Mac's highest-quality Caution Loans to the market's subprime loans in general, so of course, the comparison will make Freddie Mac's Caution Loans look good by comparison. And this same conclusion applies to Freddie Mac's immaterial assertion about C1 and C2 Caution Loans. Doc. 530, p.13. Comparing two profoundly dissimilar datasets then declaring them to be different is not a reliable methodology.

The result of Okongwu's comparison is entirely predictable and expected, and it reveals no new or relevant information: "the serious delinquency rates of the Caution Loans were substantially lower than those of the CoreLogic Subprime Loans at both Q3 2007 and Q3 2008." Ex. 2, pp.73, 77, 78, 80, 82, 84, 86, 87, 89, ¶¶ 123, 127, 130, 131, 132, 135, 136, 137, 139. The Federal Housing Finance Agency and the Financial Crisis Inquiry Commission recognized this same fact well over a decade ago in their 2010 and 2011 studies. Ex. 2, pp.70, 71, ¶¶ 123, 124. As a result, "this is a classic example of 'data snooping,' which violates the axiom that research should not be 'motivated by the successes and failures of past investigations.'" *OPERS*, 2018 WL 3861840, at *7. Okongwu merely "found" something that he was already aware of, and he only parrots undisputed facts that were determined long ago.

Freddie Mac tries to attack this fact by claiming that Okongwu's choice of dissimilar datasets was driven by OPERS' own allegations. Doc. 530, p.14. This assertion is incorrect given that OPERS never alleges that Freddie Mac's Caution Loans had the same characteristics and performance as CoreLogic subprime loans or even subprime loans in the market generally, as Okongwu concludes. *See* Doc. 166; Ex. 2, p.63, ¶ 112. Instead, OPERS alleges that "[i]nternally at Freddie Mac, Caution Loans were considered to be equivalent to subprime." Doc. 166, ¶ 33. And Freddie Mac's false argument does not change the fact that Okongwu engaged in data

snooping because he "found" exactly what he knew was already within the data based on the 2010 and 2011 Federal Housing Finance Agency and the Financial Crisis Inquiry Commission studies. Those studies both concluded that Freddie Mac loans had substantially lower serious delinquency rates than those securitized by private-label issuers. Ex. 2, pp.70, 71, ¶¶ 123, 124.

What Okongwu "found" with his comparison is irrelevant because whether Freddie Mac's loans performed better than other loans has nothing to do with OPERS' fraud claims. Even where Okongwu concludes that his stated facts "are not consistent with the premise that the Caution Loans looked or performed like a portfolio of subprime loans," that is entirely irrelevant. Ex. 2, p.90, ¶ 144. This conclusion appears nowhere within Okongwu's lengthy summary of his opinions, Ex. 2, pp.5–6, so Freddie Mac cannot rely on it as a supposed expert opinion. And the comparison is irrelevant because OPERS' claims do not rise or fall on whether Freddie Mac's Caution Loans looked or performed like subprime loans. *See* Doc. 166. No such related allegation appears within OPERS' Complaint. *See* Doc. 166, ¶¶ 31, 33, 34, 37, 74. And the ultimate performance of certain Freddie Mac loans does not excuse Freddie Mac's materially false and misleading public statements on numerous different topics, only one of which relates to Freddie Mac's exposure to subprime loans. *Id.* at ¶¶ 1, 2. The result is that Okongwu's prepared-solely-for-litigation comparison must be excluded as irrelevant and unreliable. *Mudd*, 2016 WL 2593980, at *5.

Freddie Mac responds by curiously arguing that Okongwu's proposed testimony about Freddie Mac's Caution Loans "cannot be described as a 'narrative.'" Doc. 530, p.6. But OPERS never describes this part of Okongwu's Report as a narrative. Doc. 521 pp.12–15. Freddie Mac has no response to OPERS' actual arguments, so it builds a straw man, which it then knocks down in a mock display of importance. Freddie Mac's remaining arguments are equally invalid.

Freddie Mac argues relevance by contending that Okongwu's comparison "had never been conducted before (in this case or otherwise)," implying that it therefore must be important for some reason. Doc. 530, p.9. But the reason it has never been done is because it is not relevant to OPERS' claims, as established in OPERS' Motion and as reiterated above. Freddie Mac recognizes OPERS' pleading that the "primary fraud" in this case was "Defendants' failure to disclose Freddie Mac's true subprime exposure." Doc. 166, ¶ 3. But Freddie Mac is trying to mislead by claiming that OPERS is "alleging that Freddie Mac Caution Loans are subprime loans." Doc. 530, p.12. This assertion is wrong. *See* Doc. 166, ¶¶ 31, 33, 34, 37, 74 (only mention of Caution Loans). Instead, OPERS alleges that "[i]nternally at Freddie Mac, Caution Loans were considered to be equivalent to subprime." Doc. 166, ¶ 33. Comparing these Caution Loans to other subprime loans cannot erase the fact of Freddie Mac's own internal conclusions about Caution Loans given the Freddie Mac internal documents that establish it. And this goes to the heart of OPERS' actual allegations: that Freddie Mac committed fraud by not disclosing what it internally knew to be true about its increasing credit risk and unraveling underwriting abilities. *Id.* at ¶ 3.

Freddie Mac's arguments about relevance also fail to acknowledge the evidence proving that Freddie Mac did not disclose that its actual exposure to subprime reached $206 billion, and 13% of its entire single family guarantee portfolio, not the miniscule $2 to $6 billion and between 0.1% and 0.2% that Freddie Mac represented at the time. Doc. 166, ¶ 3. Okongwu's statements about how some of Freddie Mac's loans compared to the market's subprime loans does not erase these misstatements, Freddie Mac's fraud, or any of the resulting damage. Instead, Okongwu is trying to create a backwards justification, contending that Freddie Mac's fraud was really harmless because Freddie Mac's undisclosed and intentionally hidden risks were not as bad as other subprime risk within the market generally. *See* Ex. 2, p.90, ¶ 144. But the truth is that Freddie

Mac's undisclosed and intentionally hidden risks caused billions of dollars in losses when Freddie Mac's stock price crashed after the disclosure on November 20, 2007. In the face of these undeniable facts, Okongwu's comparison is not relevant to any part of this case.

This result is confirmed by Freddie Mac's erroneous argument about the *Mudd* case, which is curious given Freddie Mac's prior contention that this "out-of-circuit decision" "does not inform this analysis." Doc. 530, p.6. Regardless, Freddie Mac's reliance on one part of *Mudd* is inapplicable to Okongwu because the expert report at issue in *Mudd* had nothing to do with subprime mortgages, instead dealing with two types of Alt-A loans. 2016 WL 2593980 at *6. Freddie Mac's reliance on *Mudd* here does not save the Report. Because Okongwu's proposed testimony about Freddie Mac's Caution Loans being different from the CoreLogic subprime loans is irrelevant and unreliable, Okongwu's Report and testimony should be stricken and excluded.

## III. CONCLUSION

For the foregoing reasons, OPERS respectfully requests an Order of this Court granting OPERS' Motion to Strike and Exclude the Report and Testimony of Dr. Chudozie Okongwu.

Dated: April 5, 2024

Respectfully submitted,

**OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM**

By its attorneys,
OHIO ATTORNEY GENERAL
DAVE YOST

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

E-mail: bmarkovits@msdlegal.com
E-mail: cstock@msdlegal.com
E-mail: tcoates@msdlegal.com

*Special Counsel to the Attorney General of the State of Ohio and Lead Counsel for Plaintiff*

Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
Stephen E. Schilling (0086897)
**STRAUSS TROY CO., LPA**
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com
E-mail: rrsparks@strausstroy.com
E-mail: seschilling@strausstroy.com

*Special Counsel to the Attorney General of the State of Ohio and Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, a copy of the foregoing was served upon counsel of record for all parties by being filed with the Court's electronic-filing system, in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ W.B. Markovits*
W.B. Markovits (0018514)