**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,**<br><br>Plaintiff,<br><br>v.<br><br>**FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.***<br><br>Defendants. | Civil Action No. 4:08-cv-00160<br><br>Judge Benita Y. Pearson<br><br>Magistrate Judge Jennifer Dowdell Armstrong |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION TO EXCLUDE EXPERT TESTIMONY OF PROF. JOHN COATES</u>**

## INTRODUCTION

In their opposition memorandum, Defendants pointedly, and critically, did not dispute three facts central to the outcome of Plaintiff's motion to exclude Professor Coates's opinions and testimony: (1) Coates failed to apply his articulated methodology to the two Freddie Mac disclosures on which his opinions are based; (2) Coates did not verify whether Freddie Mac employed its disclosure process with respect to a single "at-issue disclosure"[1] related to credit risk or underwriting during the Relevant Period; and (3) Coates declined to provide any information regarding, or even identifies of, the "large public companies" that make up the comparator group he claims employed disclosure practices consistent with Freddie Mac's during the Relevant Period.

Why are these undisputed facts central to the outcome of Plaintiff's motion? The first undisputed fact demonstrates the unreliability of Coates's opinions.[2] Coates would like to testify that "Freddie Mac's disclosure processes for the Information Statements and Earnings Releases containing the at-issue disclosures involved relevant departments and individuals and were consistent with the Company's general disclosure practices . . . ."[3] Coates, however, does not have a basis to offer that opinion because *Coates never bothered to determine whether the relevant departments and individuals participated in the actual disclosure process Coates himself identified*. The second undisputed fact demonstrates the unbridgeable "analytical gap between the

[1] "At-issue disclosures" is a term Coates uses repeatedly throughout his report when referencing the disclosures Plaintiff has cited in connection with its claims. *See, e.g.,* Expert Report of Prof. John Coates, at Section VI ("Analysis of Selected At-Issue Disclosures"), Section VI.B. ("Freddie Mac's Disclosure Process for the At-Issue Disclosures Involved Relevant Departments and Individuals…") ("Coates Report") (Doc. #519.2, Exhibit 1 to Plaintiff's Memorandum in Support of its Motion to Exclude Expert Testimony of Prof. John Coates).

[2] *See, e.g., In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 347 (6th Cir. 2024) (affirming that expert failed to "reliably appl[y]" otherwise-accepted methodology to the "facts of the case").

[3] Coates Report, at ¶24(b).

data and the opinion proffered."[4] Here, there is too great an analytical gap between Coates's "data" (*e.g.,* his incomplete review of one voluntary disclosure) and the extrapolated opinion proffered (*i.e.,* all "at-issue disclosures involved relevant departments and individuals and were consistent with the Company's general disclosure practices").[5] The third undisputed fact highlights the *ipse dixit*, or "black box," problems with Coates's refusal to offer any information regarding the "large public companies" comparator group that he claims employed disclosure practices "consistent with" Freddie Mac's.[6] Without identifying "these large public companies'" identities or disclosure practices, Coates cannot provide the Court or the jury the ability to test for themselves his opinion that Freddie Mac's disclosure practices were consistent with those of "large public companies." Each of these undisputed facts, therefore, present a separate legal basis for excluding Coates from providing opinions in this case.

This is not to say that Defendants did not challenge Plaintiff's motion; they certainly offered arguments in support of Coates in their opposition memorandum. They argue, for instance, that he has ample experience in the public disclosure field.[7] They argue that Coates reviewed enough documents and testimony regarding Freddie Mac's disclosure processes to support his opinions.[8] And they even argue that Coates didn't need to review more than two subprime-related disclosures to opine that Freddie Mac followed its processes with respect to the "at-issue" credit

---

[4] *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506 (6th Cir. 2014) (affirming exclusion of expert where there was too great an analytical gap between the data and the opinion proffered). *See also See Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (noting that "[r]ed flags" in expert reports include "anecdotal evidence, improper extrapolation, failure to consider other possible causes, and, significantly, a lack of testing").
[5] Coates Report, at ¶24(b).
[6] *See, e.g., Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *5-6 (N.D. Cal. Jan. 23, 2015).
[7] Doc. #532, Memorandum of Law in Opposition to OPERS's Motion to Exclude Expert Testimony of Prof. John Coates, at 3-5 ("Def. Memo.").
[8] *Id*. at 9-10.

risk and underwriting disclosures in this case.[9] But these arguments do not rebut the three undisputed facts above; rather, they are part of a sustained effort at shifting the focus away from these undisputed facts. Defendants themselves recognize that these three facts are not in dispute.

At bottom, Defendants have not rebutted the fact that Coates failed to adhere to his own methodology, rendering his opinions unreliable. Nor have they rebutted the fact that Coates offered that unreliable opinion for "at-issue disclosures" in this case that he never bothered to review. Nor have they rebutted the fact that Coates could not provide any documentary support for his opinion that Freddie Mac's disclosure processes were consistent with those of other "large public companies." These three undisputed facts, thus, offer three independent bases for excluding Coates's opinions here – any one of which would be enough under the relevant case law. For these reasons, and the reasons set forth below, Plaintiff respectfully requests this Court to exclude Coates' opinions and testimony from this case.

## LEGAL ARGUMENT

### I. COATES FAILED TO APPLY HIS ARTICULATED METHODOLOGY TO *ANY* OF THE DISCLOSURES ON WHICH HE PURPORTS TO OPINE.

Contrary to Defendants' characterizations (*e.g.*, "a scattershot approach," "throwing multiple, unrelated arguments against the proverbial wall," etc.),[10] Plaintiff's assertion in this context is straightforward: Coates's opinions and conclusions regarding Freddie Mac's disclosure processes should be excluded on the ground that he articulated a methodology for arriving at his opinions and conclusions and then failed to follow that methodology. Because Freddie Mac's voluntary and external disclosure processes are distinct, Plaintiff will address Coates's failures in this regard in two separate sections below.

---

[9] *Id*. at 13-14.
[10] *Id*. at 13.

***A. Coates failed to adhere to his articulated methodology with respect to his opinions on Freddie Mac's voluntary disclosures.***

In his report, Coates purports to analyze whether Freddie Mac followed its disclosure processes for one voluntary disclosure, the 2006 Earnings Release.[11] Coates explained in his report and deposition that Freddie Mac employed a four-step process for voluntary disclosures: **Step 1:** the investor relations group must "develop a good understanding as to what occurred in the quarter or period;" **Step 2:** investor relations must then "work the details with the business areas and finance and legal to put the documents into presentable form for the executive;" **Step 3:** investor relations will then "show the early process draft to the executive and get their comments;" **Step 4:** investor relations will "iterate those [comments] through the disclosure committee, through legal, through finance to make sure that the comments and the phrasing and the emphasis and the details provided by the executive conformed to the" Company's other public statements.[12] Coates testified that his methodology for arriving at his opinions was to review the relevant documents and testimony and make sure that Freddie Mac followed the process outlined above for the "at-issue disclosure" in question.[13] For Coates's opinions to be the product of a reliable methodology, therefore, Coates would have needed to verify that Freddie Mac followed this four-step process for any "at-issue" voluntary disclosure.

Coates failed in this regard. Coates admitted in his deposition that he did not verify that Freddie Mac engaged in Steps 1-3 of this voluntary disclosure process for the one voluntary

---

[11] *Id*. Coates Report, at ¶¶114-20.

[12] *Id*. at ¶91 (quoting Deposition of Daniel L. Smith, November 12, 2009, at 43:13-44:9). *See also* Coates Depo., at 143:18-144:9 (confirming that the Smith testimony he cited in his report at ¶91 is "consistent with [Coates's] understanding of the process that Freddie Mac used for its voluntary disclosures").

[13] Deposition of Professor John Coates, at 151:10-152:2 (February 20, 2024) ("Coates Depo.") (Doc. #519.3, Exhibit 2 to Plaintiff's Memorandum in Support of its Motion to Exclude Expert Testimony of Prof. John Coates).

disclosure he cited in his report.[14] Coates also conceded that he failed to verify that Freddie Mac undertook this "iterative step process for any [other] voluntary disclosures at issue in this case."[15] In his own words, then, Coates's methodology for opining on the voluntary disclosures at issue in this case is unreliable because Coates did nothing to confirm that Freddie Mac actually engaged in the four-step process Coates himself laid out in his report. And, moreover, Coates has no basis to opine that Freddie Mac's voluntary disclosure processes during the Relevant Period "involved relevant departments and individuals" when Coates never bothered to (a) actually determine whether the relevant departments and individuals participated in the process for the earnings release he cited; or (b) review any other voluntary disclosure beyond the earnings release he cited. Coates has no methodologically reliable basis for offering these opinions with respect to Freddie Mac's voluntary disclosures.

This lack of reliability has a compounding effect in the context of the "at-issue disclosures" in this case. Plaintiff's expert, Howard Shapiro, pointed to more than a dozen "at-issue" voluntary disclosures that contradicted Freddie Mac's internal credit risk and underwriting assessments during the Relevant Period.[16] For instance, Plaintiff's expert highlighted the following "at-issue [voluntary] disclosure" made by Defendant Syron in his report: "Thanks to our continued high asset quality, low risk exposures and improving operations, Freddie Mac is much better positioned for long-term profitability than a year ago."[17] Plaintiff's expert then identified more than twenty contemporaneous internal assessments in which Freddie Mac personnel recognized the opposite:

---

[14] Coates Depo., at 155:23-11.
[15] *Id*. at 162:5-10.
[16] *See, e.g.*, Expert Report of Howard Shapiro, at Exs. 3-4 (Nov. 17, 2023) ("Shapiro Report") (Doc.# 522.2, Ex. 1 to Declaration of W.B. Markovits in Support of Plaintiff's Memorandum in Opposition to Freddie Mac's Motion to Strike Reports and Exclude Testimony of Howard S. Shapiro).
[17] Shapiro Report, at Ex. 3.6 (internal citations omitted).

that Freddie Mac's credit quality and "ex ante profitability" was deteriorating quickly, "with higher forecasted credit losses."[18] Coates did not review any aspect of this "at issue disclosure;" yet, Coates is attempting to opine that "Freddie Mac's disclosure processes" for this and every other "at-issue disclosures involved relevant departments and individuals and were consistent with the Company's general disclosure practices . . . ."[19] Neither Coates's report nor his deposition testimony provides a basis to support such an opinion – especially given the fact that Coates couldn't even confirm that Freddie Mac followed its disclosure processes for the one voluntary disclosure he did cite. This is the basis for excluding Coates's opinions in this context; and the Sixth Circuit has repeatedly excluded expert opinions that stemmed from a methodology that was not reliably applied.[20]

Defendants' response to Plaintiff's basis for exclusion is telling – so telling, in fact, that it deserves reproduction in its entirety here:

> Finally, OPERS argues that Prof. Coates "failed to verify that Freddie Mac" took iterative steps for any voluntary disclosures besides those in the 2006 [voluntary disclosure]. Mot. at 14. As discussed above, Prof. Coates was not required to repeat his review for every voluntary disclosure Freddie Mac made during the multi-year period here. And OPERS has not cited any evidence that any of Freddie Mac's voluntary disclosures did ***not*** go through the very same disclosure process as that press release. OPERS's unsupported argument thus fails.[21]

---

[18] *Id*. (emphasis in original).

[19] Coates Report, at ¶24(b).

[20] *See, e.g., In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 347 (6th Cir. 2024) (affirming that expert failed to "reliably appl[y]" otherwise-accepted methodology to the "facts of the case"); *Pride v. BIC Corp.*, 218 F.3d 566, 678 (6th Cir. 2000) (affirming exclusion of expert who conceded that he failed to follow his stated methodology); *Dow v. Rheem Mfg. Co.*, 527 *Fed. App'x* 434, 436 (6th Cir. 2013) (affirming exclusion of expert who "fail[ed] to conduct testing on a critical factor of his analysis"); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252-53 (6th Cir. 2001) (affirming exclusion of expert for, among other things, setting out a methodology but failing to address confounding factors inherent in the stated methodology); *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023) (excluding expert opinion where expert failed to demonstrate "that this opinion stemmed from a reliable methodology that he reliably applied").

[21] Def. Memo., at 15.

What Defendants have not disputed, as evidenced above, is the fact that Coates failed to verify that Freddie Mac actually took the iterative steps in connection with *any* "at-issue" voluntary disclosure in this case. Instead, Defendants make two equally unconvincing arguments for letting Coates's failure in this context slide. First, they claim that Coates didn't need to review the iterative process for every voluntary disclosure during the Relevant Period.[22] Second, they note that Plaintiff didn't cite any evidence that Freddie Mac's voluntary disclosures did not go through the same process.[23] Neither of these rebuttals, however, get to the actual merits of Plaintiff's argument.

As to their first rebuttal argument, Coates and Defendants are trying to have it both ways. Coates is purporting to opine that "Freddie Mac's processes ***during the Relevant Period*** for . . . the at-issue disclosures involved relevant departments and individuals and were consistent with the Company's general disclosure practices" based, in part, on his review of one voluntary disclosure.[24] Defendants cannot, on the one hand, claim that Coates need not review the iterative process for every at-issue voluntary disclosure, while, on the other, claiming that Coates may extrapolate his (flawed, incomplete) findings with respect to one Freddie Mac voluntary disclosure to every "at-issue" Freddie Mac voluntary disclosure – even disclosures that he admittedly never reviewed.

As to Defendants' second rebuttal argument, it is not Plaintiff's job to cite evidence that Freddie Mac's voluntary disclosures did not follow the proper disclosure process. This is Defendants' expert. If Defendants wish to proffer an expert opinion that Freddie Mac followed its disclosure processes for the "at-issue" voluntary disclosures during the Relevant Period,

---

[22] *Id.*
[23] *Id.*
[24] Coates Report, at ¶¶24(a), (b) (emphasis added).

Defendants bear the burden of demonstrating this by a preponderance of the evidence.[25] Defendants have failed in this regard. As discussed above, Defendants do not dispute that (a) Coates did not confirm that Freddie Mac followed three of the four steps in its voluntary disclosure process for the 2006 Earnings Release he cited, and (b) Coates did not review any other "at-issue" voluntary disclosure in this case to determine whether Freddie Mac followed this four-step disclosure process. For these reasons, Coates should be barred from opining that Freddie Mac followed its disclosure practices with respect to the "at-issue" voluntary disclosures in this case.

***B. Coates failed to follow his articulated methodology with respect to his opinions on Freddie Mac's external disclosures.***

Coates made the same mistakes in the context of his external disclosure-related opinions. In this context, Coates identified a ten-step process that Freddie Mac used for preparing its external disclosures (*e.g.*, the Information Statement).[26] Plaintiff has reproduced this ten-step process in its initial memorandum[27] – a process that Defendants do not dispute in their opposition. In his report, Coates implied that he applied this ten-step process to a single subprime-related external disclosure.[28] Coates admitted, however, that he failed to confirm that Freddie Mac followed several steps of this disclosure process as well. For instance, Coates testified that he did not review any of the business area discussions leading up to the critical attestation or "sub-certification" process (Step 10).[29] Nor did he review or confirm whether the business areas were reporting potentially material information on a timely basis to the VP-Legal for evaluation of the possible need for

---

[25] *See, e.g.*, *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).
[26] Coates Report, at ¶¶79-85.
[27] Doc. #519.1, Plaintiff's Memorandum in Support of its Motion to Exclude Expert Testimony of Prof. John Coates Plaintiff's Memo., at 8-9 ("Plaintiff's Memo.").
[28] Coates Report, at ¶¶100-13.
[29] *See, e.g.,* Coates Depo., at 83:20-86:3 (failing to follow Step 10 in the process).

public disclosure) for any of the external disclosures (Step 4).[30] Like his approach to voluntary disclosures, Coates began and ended his analysis of the subprime-related disclosure with the disclosure committee – and, curiously, declined to review any of the business area disclosure processes from which the critical credit risk and underwriting warnings were emanating.[31] As discussed above, this methodology is unreliable; at the very least, Coates should have verified that Freddie Mac followed each of the ten steps in Freddie Mac's external disclosure process. He failed to do that with respect to the subprime-related disclosure.

More important, Coates conceded – and Defendants do not dispute in their opposition – that he did not verify that Freddie Mac followed this "iterative process" for any external disclosures related to Freddie Mac's credit risk exposure or underwriting standards during the Relevant Period.[32] Defendants again attempt to sidestep this deficiency by shifting the burden of proof to Plaintiff to prove that "Freddie Mac followed a different process for any external disclosure or statement within its external disclosure."[33] Again, that is not Plaintiff's job; if Defendants wish to proffer an opinion that Freddie Mac followed its disclosure processes for its external disclosures during the Relevant Period, Defendants bear the burden of demonstrating such by a preponderance of the evidence.[34] Implicitly recognizing that this burden remains with them, Defendants assert that Plaintiff "ignores the vast information Prof. Coates did consult in confirming that Freddie Mac's processes"[35] were sufficient. But this is a red herring. Unlike Defendants in their motion to

---

[30] *Id.* at 68:8-71:16 (failing to follow Step 4 in the process).
[31] *See, e.g.,* Coates Depo., at 116:7-17; 121:16-122:5; 125:6-16. *See also* Shapiro Report, at ¶¶35-38, 50-53 (discussing credit risk and underwriting warnings); Coates Report, at ¶79; Coates Depo., at 60:14-61:18.
[32] *Id.* at 88:8-16; 128:8-131:22.
[33] Def. Memo., at 13.
[34] *See, e.g., Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 251 (6th Cir. 2001).
[35] Def. Memo., at 10.

exclude Plaintiff's expert, Plaintiff is not arguing that Coates should have looked at more or different information in arriving at his opinions; rather, Plaintiff notes simply that Coates did not actually employ his stated methodology to ensure that Freddie Mac followed its disclosure processes for the "at-issue" disclosures in this case.

At bottom, Coates's own words demonstrate his purported opinions' lack of reliability. Coates testified that the methodology supporting his opinion that Freddie Mac's was to make certain that Freddie Mac followed the 10-step external disclosure process he outlined in his report. He failed to do this for the subprime-related disclosure he cited in his report. As discussed above, Defendants do not dispute that (a) Coates did not confirm that Freddie Mac followed several critical steps in the external disclosure process for the subprime-related disclosure he cited, and (b) Coates did not review any other "at-issue" external disclosure in this case to determine whether Freddie Mac followed this ten-step external disclosure process. For these reasons, Coates should be barred from opining that Freddie Mac followed its disclosure practices with respect to the "at-issue" external disclosures in this case.

## II. COATES'S "TRUST ME" APPROACH WARRANTS EXCLUSION OF HIS OPINIONS COMPARING FREDDIE MAC'S DISCLOSURES TO THOSE OF OTHER "LARGE PUBLIC COMPANIES."

As explained in Plaintiff's initial memorandum, Coates's opinion that Freddie Mac's disclosure processes during the Relevant Period "were consistent with disclosure customs and practices in large public companies'" is unreliably incomplete because he fails to identify even a single comparator company that he purportedly relied upon in reaching his conclusion.[36] Indeed, Coates testified that he specifically refrained from choosing any particular "large public

[36] Plaintiff's Memo., at 4-6.

companies" against which to "benchmark" Freddie Mac's disclosures practices.[37] Moreover, Coates admits that he did not follow any methodology in selecting a comparator set and did not seek any additional public data for his analysis; he merely relied on purported experience in working with unnamed, unidentified "large public companies."[38] In other words, Coates is unable to provide ***any information whatsoever*** regarding the comparator companies he purportedly relied on in conducting his analysis, requiring Plaintiff, the Court, and potentially the jury to simply take his word for it based on his "experience." This glaring lack of information regarding the purported basis for Coates's opinion warrants exclusion.[39]

The court's opinion in *Open Text S.A. v. Box, Inc.*, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) is instructive here. Like Coates, the expert in that case failed to provide sufficient detail "spelling out the steps she took" in reaching her conclusions, citing instead to "her 'experience' – an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-examination."[40] The *Open Text* court found that the proffered expert's "method is a 'black box into which data is fed at one end and from which an answer emerges at the other,' and the jury cannot see how the pieces fit together or how the data drives the conclusion."[41] Noting that "[c]ross-examination cannot fix that problem," the court excluded her opinion.[42] The same result is warranted here; Coates failed to provide sufficient information to

---

[37] Coates Depo., at 40:24-41:1 ("what I'm saying is I'm not picking out a single company to benchmark. This is a general process….").
[38] *Id*. at 41:5-42:4.
[39] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").
[40] *Open Text,* 2015 WL 349197, at *5-6.
[41] *Id*.
[42] *Id*.

assess – through cross-examination or other means – the reliability of his "large public companies" opinions.[43]

Defendants do not dispute that Coates failed to provide information sufficient to assess his conclusion that Freddie Mac's disclosures are consistent with those of other "large public companies." Instead, they essentially claim that Coates's experience in advising on other companies' disclosure practices and reviewing public filings was enough to excuse him from actually developing and identifying a "large public company" comparator group for the exercise.[44] This is exactly what the *Open Text* court warned about; without an identified group of "large public companies" against which to compare Freddie Mac's disclosure practices, "the jury cannot see how the pieces fit together."[45] Because this alleged "large public companies" comparator group is a quintessential "black box," this Court should exclude Coates from opining that Freddie Mac's disclosure practices are consistent with those of other "large public companies."

## III. COATES'S TESTIMONY REGARDING FREDDIE MAC'S PURPORTED DISCLOSURE PRACTICES IS IRRELEVANT AND LIKELY TO CONFUSE THE JURY.

Coates's testimony about the purpose and import of Freddie Mac's disclosure practices is irrelevant because this case does not concern the adequacy of Freddie Mac's disclosure practices

---

[43] *See also See Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (noting that "[r]ed flags" in expert reports include "anecdotal evidence, improper extrapolation, failure to consider other possible causes, and, significantly, a lack of testing"); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 680 (6th Cir. 2011) (affirming exclusion when expert could not explain methodology underlying calculations); *Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005) (affirming exclusion of expert's testimony and finding that expert's "failure to empirically test his theories ... undermined the reliability of his testimony"); *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023) (excluding expert opinion on the basis that expert's opinion was based on no more than "equal parts extrapolation and speculation"); *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting GMBH*, No. 1:05-CV-702-TSH, 2010 WL 11538131, at *5 (S.D. Ohio Jan. 22, 2010) (excluding expert testimony where expert's proffered opinion "is not tied to any data or grounded in any valid comparative studies").

[44] Def. Memo., at 12.

[45] *Id.*

– only whether the statements Defendants actually made to investors were false and misleading.[46] As Coates himself acknowledged, the process employed by a company to make disclosures is ***not*** determinative of whether the disclosures actually made are false or misleading.[47] As such, Coates's testimony will not "assist the trier of fact to understand or determine a fact in issue."[48] Defendants contend that Coates's opinion is relevant to the question of whether the "Individual Defendants acted with the requisite scienter to support OPERS's securities fraud claims."[49] This assertion is unconvincing given Coates's acknowledgement that "'there are times in which companies will, despite a good process, produce hypothetically noncompliant outcomes.'"[50] Given this tenuous connection, any arguable relevancy that Coates's testimony bears to the Individual Defendants' state of mind is substantially outweighed by the risk that the jury will be misled or confused by testimony from a Professor that Defendants' disclosure process was designed to ensure that the disclosures during the Relevant Period "were accurate and sufficient."[51]

Accordingly, Coates's opinions regarding Freddie Mac's disclosure practices should be excluded on both relevance and Rule 403 grounds.[52]

---

[46] Plaintiff's Memo., at 2-3.

[47] *See id.* at note 5.

[48] *See, e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 546 F.Supp.3d 666 S.D. Ohio 2021) (opinion by expert based on review manufacturer's internal documents that manufacturer knew of fact or made decision for particular reason would not assist jury); *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 529 (6th Cir. 2008).

[49] Def. Memo., at 6.

[50] Coates Depo., at 200:17-21. *See also id.* at 196:4-24 ("Q. Professor Coates, you would agree that it would still be possible for a company to make false and misleading disclosures, notwithstanding the presence of processes that were designed to ensure accurate . . . disclosures, correct? A. I do think that it is possible that a company could have a customary and good disclosure process and still make disclosure mistakes or even intentional misstatements."

[51] *See, e.g.,* Coates Report, at ¶87.

[52] *See* Fed. R. Evid. 403 (even if relevant, evidence should be excluded "if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury"). *See also Kumho Tire*, 526 U.S. at 152 (explaining that the objective of the *Daubert* gatekeeping requirement is to "ensure the reliability and relevancy of expert testimony"); *United States v.*

## CONCLUSION

For the reasons set forth above, and the reasons set forth in Plaintiff's initial memorandum in support of its motion to exclude, Plaintiff respectfully requests this Court to exclude testimony from Professor John Coates regarding Freddie Mac's disclosure practices.

Dated: April 5, 2024

**OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM**

By its attorneys,
OHIO ATTORNEY GENERAL
DAVE YOST

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
E-mail: bmarkovits@msdlegal.com
E-mail: cstock@msdlegal.com
E-mail: tcoates@msdlegal.com

*Special Counsel to the Attorney General of the State of Ohio and Lead Counsel for Plaintiff*

Richard S. Wayne (0022390)
William K. Flynn (0029536)
Robert R. Sparks (0073573)
Stephen E. Schilling (0086897)
**STRAUSS TROY CO., LPA**
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120

*Norwood*, 16 F. Supp. 3d 848, 865 (E.D. Mich. 2014) (excluding expert opinion on relevance grounds because the expert testimony had no bearing on the legal elements underlying the case and noting that, even if such "testimony was somehow relevant, the Court alternatively his testimony under Federal Rule of Evidence 403 because of the risk his testimony would confuse or mislead the jury").

Facsimile: (513) 629-9426
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com
E-mail: rrsparks@strausstroy.com
E-mail: seschilling@strausstroy.com

*Special Counsel to the Attorney General of the State of Ohio and Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, a copy of the foregoing document was filed electronically with the Court's CM/ECF system, making service on all Parties indicated on the electronic filing receipt in accordance with Fed. R. Civ. P. 5(b)(2)(E). This filing may be accessed through the Court's CM/ECF system.

*/s/ W. B. Markovits*
W. B. Markovits