**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION a/k/a FREDDIE MAC, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY S. PISZEL, and EUGENE M. McQUADE,<br><br>Defendants. | CIVIL ACTION NO. 4:08-cv-160<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |

**REPLY IN SUPPORT OF FREDDIE MAC'S MOTION TO STRIKE REPORTS AND EXCLUDE TESTIMONY OF HOWARD S. SHAPIRO**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 5

I. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE IS NOT QUALIFIED TO OFFER HIS OPINIONS. ..... 5

II. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED AS UNRELIABLE. ..... 9

A. Shapiro's Opinions Are Not Based On Sufficient Facts. ..... 9

1. Shapiro's Unsupported Opinions On Falsity And Materiality. ..... 10

2. Shapiro's Unsupported Opinions On Loss Causation. ..... 14

B. Shapiro's Opinions Are Not The Product Of Reliable Principles Or Methods. ..... 14

1. Shapiro's Opinions On Falsity And Materiality Are Not The Product Of Reliable Principles Or Methods. ..... 15

2. Shapiro's Opinion On Loss Causation Is Not The Product Of Reliable Principles Or Methods. ..... 19

C. Shapiro Does Not Reliably Apply Any Principles Or Methods. ..... 20

1. Shapiro Failed To Reliably Apply Any Principles Or Methods In Opining On The Materiality Of Alleged Misrepresentations And Omissions. ..... 20

2. Shapiro Failed To Reliably Apply Any Principles Or Methods In Opining On Loss Causation. ..... 24

III. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE IMPERMISSIBLY OPINES ON ULTIMATE LIABILITY ISSUES. ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pegasus SPC by and through Sybersma v. Clear Skies Holding Co.*,
2016 WL 11710067 (N.D. Ga. Jan. 14, 2016) ....7

*Babb v. Maryville Anesthesiologists P.C.*,
942 F.3d 308 (6th Cir. 2019) ....25

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ....7

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) ....5, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....1, 3, 15

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ....14

*First Tenn. Bank Nat'l Ass'n v. Barreto*,
268 F.3d 319 (6th Cir. 2001) ....15

*Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*,
2023 WL 8113301 (C.D. Cal. Oct. 6, 2023) ....8

*Gates v. City of Memphis*,
210 F.3d 371, 2000 WL 377343 (6th Cir. Apr. 6, 2000) ....5, 7

*Greenwell v. Boatwright*,
184 F.3d 492 (6th Cir. 1999) ....10

*Guillory v. Domtar Indus., Inc.*,
95 F.3d 1320 (5th Cir. 1996) ....14, 17

*Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*,
845 F. App'x 376 (6th Cir. 2021) ....12

*Hayes v. MTD Prods., Inc.*,
518 F. Supp. 2d 898 (W.D. Ky. 2007) ....13

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ....8

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
474 F.3d 288 (6th Cir. 2007) ....................................................................................15

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..........................................................................................3, 15

*Madej v. Maiden*,
951 F.3d 364 (6th Cir. 2020) ....................................................................................19

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ..................................................................................17

*Navarro v. Proctor & Gamble Co.*,
501 F. Supp. 3d 482 (S.D. Ohio 2020) ........................................................................9

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
676 F.3d 521 (6th Cir. 2012) ....................................................................................10

*In re Onglyza & Kombiglyze Prod. Liab. Litig.*,
93 F.4th 339 (6th Cir. 2024) ............................................................................. *passim*

*Otkins v. Gilboy*,
2024 WL 1120204 (E.D. La. Mar. 14, 2024) ..............................................................15

*Shahid v. City of Detroit*,
889 F.2d 1543 (6th Cir. 1989) ..................................................................................25

*Smilovits v. First Solar, Inc.*,
2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ....................................................... *passim*

*United States v. Bolos*,
2021 WL 4928980 (E.D. Tenn. Oct. 21, 2021) ............................................................15

*Woods v. Lecureux*,
110 F.3d 1215 (6th Cir. 1997) ..................................................................................25

**Other Authorities**

29 Charles Alan Wright & Arthur R. Miller,
*Fed. Prac. and Procedure* § 6268 (2d ed. 2017) .................................................10, 11

Fed. R. Evid. 701 ........................................................................................................9

Fed. R. Evid. 702 ........................................................................................... *passim*

Mem. from Hon. Patrick J. Schiltz, Chair, Advisory Comm. On Evid. Rules to Hon.
John D. Bates, Chair, Comm. On Rules of Prac. & Proc. (May 15, 2022), *available at*
https://www.uscourts.gov/sites/default/files/evidence_rules_report_-_may_2022_0.pdf.........5

## GLOSSARY OF ABBREVIATED TERMS

| | |
|---|---|
| Mot. | Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Exclude H. Shapiro (ECF No. 522-1) |
| Opp. | Ohio Public Employees Retirement System's ("OPERS") Opposition to Freddie Mac's Motion to Exclude H. Shapiro (ECF No. 533) |
| Markovits Decl. | Declaration of W.B. Markovits In Support of Opposition (ECF No. 533-1) |
| Ex. 1 [Shapiro Rep.] | H. Shapiro Report (ECF No. 522-3) |
| Ex. 2 [Shapiro Rebuttal] | H. Shapiro Rebuttal Report (ECF No. 522-4) |
| Ex. 4 [Shapiro Tr.] | H. Shapiro 1/10/24 Transcript (ECF No. 522-6) |
| Ex. 6 [May 2007 Report] | May 2007 Single-Family Credit Portfolio Monitoring Report (ECF No. 522-8) |
| Ex. 8 [11/26/23 Email from Plaintiff's counsel] | 11/26/23 Email from Plaintiff's counsel (ECF No. 522-10) |
| Ex. 9 [11/28/23 Email from Plaintiff's counsel] | 11/28/23 Email from Plaintiff's counsel (ECF No. 522-11) |
| Ex. 11 [Coates Rep.] | J. Coates Report (ECF No. 522-13) |
| Ex. 19 [Okongwu Rep.] | C. Okongwu Report (ECF No. 522-21) |
| Reply Decl. | Declaration of J. Frank In Support of Reply (filed with this Reply Brief) |
| Ex. 20 [Straka Tr.] | Excerpts of J. Straka's 1/14/15 deposition transcript (filed with this Reply Brief) |
| Ex. 21 [2006 Annual Report] | Excerpts of Freddie Mac's 2006 Annual Report (filed with this Reply Brief) |
| Ex. 22 [2005 Annual Report] | Excerpts from Freddie Mac's Information Statement and Annual Report to Stockholders for the fiscal year ended December 31, 2005 (filed with this Reply Brief) |
| Ex. 23 [December 2006 SF Credit Portfolio Monitoring Report] | Excerpts from the December 2006 Single-Family Credit Portfolio Monitoring Report (filed with this Reply Brief) |
| Ex. 24 [February 2007 SF Credit Portfolio Monitoring Report] | Excerpts from the February 2007 Single-Family Credit Portfolio Monitoring Report (filed with this Reply Brief) |
| Ex. 25 [June 14, 2007 Call Tr.] | Excerpts from the transcript of Freddie Mac's First Quarter 2007 Financial Results Call (filed with this Reply Brief) |
| Ex. 26 [Mar. 2007 Bd. Of Dirs. Presentation] | Excerpts from March 2007 Board of Directors Presentation (filed with this Reply Brief) |
| Ex. 27 [Feb. 2007 SET Offsite Presentation] | Excerpts from February 2007 SET Offsite presentation (filed with this Reply Brief) |

## PRELIMINARY STATEMENT

OPERS's Opposition ignores Rule 702's requirements and Freddie Mac's actual arguments. In its "Legal Standard" section, OPERS does not even mention Rule 702. That omission is striking, given that Rule 702 is the basis of Freddie Mac's Motion and that OPERS has the burden to establish, by a preponderance of the evidence, that the opinions of its proposed expert, Howard Shapiro, comply with Rule 702's dictates. As Freddie Mac argued in its Motion, OPERS fails to carry that burden with respect to virtually all of the Rule 702 criteria. Unable to carry its burden, OPERS distorts Shapiro's opinions and Freddie Mac's arguments, and it impermissibly attempts to shift its burden to Freddie Mac. Whether by accident or design, OPERS's Opposition mischaracterizes the relevant law and obscures the pertinent issues.

The correct analysis is straightforward. This Court serves the role of "gatekeep[er]," charged with the task of excluding expert testimony that is unreliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Under Rule 702, which incorporates *Daubert* and its progeny, OPERS has the burden to satisfy the Rule 702 reliability criteria: the expert must be qualified to offer his or her opinions (702); those opinions must be based on sufficient evidence (702(b)); they must be based on reliable principles or methods (702(c)); and those principles or methods must be reliably applied (702(d)). Fed. R. Evid. 702. As the most recent Sixth Circuit case on point explains, the proponent of expert testimony must satisfy these criteria by a preponderance of the evidence. *In re Onglyza & Kombiglyze Prod. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) ("*Onglyza*"); *see* Fed. R. Evid. 702. If a party fails to do so, then the testimony must be excluded as inadmissible. *See id.* In its Opposition, OPERS misapprehends every part of this analysis, causing its arguments to miss the mark.

With respect to qualifications, OPERS argues that Shapiro is "uniquely and singularly"

qualified because he was a financial analyst who followed Freddie Mac during the relevant period. Opp. at 6. But the issue is not whether Shapiro was qualified to be a financial analyst, or qualified to offer any opinions whatsoever on any subject. The issue is that he is not qualified **to offer the opinions he offers**. Mot. at 1, 5-9; *see infra* § 1. He claims to have conducted an "investigation" into whether Defendants' statements were false or misleading. Lacking any investigative or audit experience, or even experience within a public company with reporting obligations, Shapiro was not qualified to conduct such an investigation, and it shows: he considered insufficient facts, basing opinions on documents that did not support them; he used an unreliable approach, which ultimately just depended on his say-so; and he applied his methodology in an unreliable manner, repeatedly making choices that supported opinions that, without fail, favored his client. Shapiro also was not qualified to opine on the causes of Freddie Mac's $2 billion loss, and that shows too: he conducted no analysis, changed his opinion at deposition without otherwise altering his report, and also offered an opinion on what caused Freddie Mac's stock price decline and OPERS's losses.

Shapiro's lack of qualifications to offer his opinions is just the first of the reasons his opinions are unreliable. Rule 702(b) requires that expert opinions be based on sufficient facts. Shapiro's opinions are not. Characterizing Freddie Mac's arguments as "sufficiency of the evidence" arguments, OPERS tries to take Freddie Mac to task for not producing evidence that "contradicts" the "internal assessments" on which Shapiro relies. Opp. at 3-4, 19-20. OPERS misunderstands the relative burdens. It was not **Freddie Mac's** burden to come forward with contradictory evidence, but rather **OPERS's** burden to demonstrate that Shapiro's opinions are based on sufficient facts – a burden it completely fails to meet. Fed. R. Evid. 702 (expert testimony admissible "if the proponent demonstrates . . . that it is more likely than not that . . . the testimony is based on sufficient facts or data"). OPERS fails to carry that burden.

OPERS also mischaracterizes Freddie Mac's arguments. Freddie Mac did not challenge the facts on which Shapiro relied as either shaky or outweighed by other facts.[1] Rather, Freddie Mac argued that Shapiro failed to consider available facts relevant to his opinions, which undermines the reliability of those opinions. Freddie Mac also argued, as a few examples illustrate, that the facts he did review did not support his opinions. This too is a hallmark of unreliability.

OPERS also misunderstands the applicability of the next reliability criterion. In response to Freddie Mac's arguments under Rule 702(c), OPERS contends that Shapiro need not satisfy the *Daubert* factors because he offers non-scientific testimony. Opp. at 5, 21. *Daubert* and Rule 702 are not nearly so limited. Indeed, OPERS's argument would turn *Kumho* on its head. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In *Kumho*, far from excusing non-scientific experts from satisfying Rule 702(c), the Supreme Court emphasized that "the trial judge's general 'gatekeeping' obligation [] applies not only to testimony based on 'scientific' knowledge, **but also to** testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141[2]; *see* Rule 702, advisory committee note ("*Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science"). The *Kumho* Court also held that courts may consider the *Daubert* factors (*e.g.*, testability, peer review, error rate, and widespread acceptance) in assessing reliability. 526 U.S. at 141.

OPERS's understanding of Rule 702(d) is, if possible, even more flawed. Freddie Mac argued that the way Shapiro applied his approach to formulating his opinions was unreliable,

[1] Freddie Mac did argue that Shapiro improperly relied on the inadmissible allegations in the SEC's Non-Prosecution Agreement. Mot. at 14-15. OPERS's argument that it can support two of those allegations using evidence that Shapiro did not consider provides scant support for the reliability of his opinions that rest on those or other inadmissible allegations. *Cf.* Markovits Decl. ¶ 5 Exs. 10-14 *with* Ex. 1 [Shapiro Rep. Ex. 2]; Ex. 8 [11/26/23 Email from Plaintiff's counsel]; Ex. 9 [11/28/23 Email from Plaintiff's counsel]; Ex. 2 [Shapiro Rebuttal Ex. 1] (not citing these materials).

[2] All emphases added unless otherwise noted.

providing multiple examples of choices that Shapiro made that were biased in favor of his client. By way of example, he did not review any witness testimony, even testimony concerning documents on which he relied. Mot. at 23-24. As he testified, he allegedly relied on an at least 15-year-old financial model that he no longer had access to, did not produce, and did not recreate. He performed calculations on his phone rather than on a spreadsheet that could be shared with Freddie Mac to verify his work. He ignored facts in documents that contradicted his opinions, and he offered an opinion based on a document that he admitted did not support it. In a weak effort to wave away these fundamental flaws, OPERS characterizes these and other arguments as "sufficiency of the evidence" arguments, ignoring that the way in which an expert applies a stated approach may, as it does here, demonstrate unreliability.

Where, as here, a proponent of expert opinion testimony fails to demonstrate that it is "more likely than not" that the opinions satisfy one or more prongs of Rule 702, those opinions are inadmissible. *See* Fed. R. Evid. 702. OPERS repeatedly argues that Freddie Mac's attacks on Shapiro's opinions' reliability go to the "weight" of his opinions and thus are properly the subject of cross-examination, not exclusion. *See* Opp. at 19, 20, 28. But OPERS is mistaken, and the cases on which it relies cannot support its argument. Decisions reflecting OPERS's argument were precisely the misguided jurisprudence that led to the recent amendments to Rule 702, which include the requirement that the proponent establish that expert testimony "more likely than not" satisfies each prong of Rule 702. As the then-chair of the Advisory Committee on Evidence Rules explained:

> [M]any courts have declared that the reliability requirements set forth in Rule 702(b) and (d)—that the expert has relied on sufficient facts or data and has reliably applied a reliable methodology—**are questions of weight and not admissibility**, . . . **These statements misstate Rule 702**, because its admissibility requirements must be established to a court by a preponderance of the evidence. The Committee concluded that in a fair number of cases, the courts have found expert testimony

> admissible even though the proponent has not satisfied the Rule 702(b) and (d) requirements by a preponderance of the evidence—essentially treating these questions as ones of weight rather than admissibility, which is **<u>contrary to the Supreme Court's holdings that under Rule 104(a), admissibility requirements are to be determined by court under the preponderance standard</u>**.

Mem. from Hon. Patrick J. Schiltz, Chair, Advisory Comm. On Evid. Rules to Hon. John D. Bates, Chair, Comm. On Rules of Prac. & Proc. (May 15, 2022), available at https://www.uscourts.gov/sites/default/files/evidence_rules_report_-_may_2022_0.pdf. The Sixth Circuit recently affirmed the exclusion of an expert, explaining the purpose of the rule change. *Onglyza*, 93 F.4th at 350 n.7. OPERS does not even cite *Onglyza*, let alone acknowledge its import, even though Freddie Mac relied on this controlling decision throughout its Motion. Mot., *passim*.

In sum, OPERS ignores the Court's gatekeeper role and the recent amendments to Rule 702. Courts are duty-bound to exclude expert opinion testimony where a party fails to establish reliability by a preponderance of the evidence. Because OPERS fails to satisfy its burden, this Court should exclude Shapiro's testimony.

## ARGUMENT

### I. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE IS NOT QUALIFIED TO OFFER HIS OPINIONS.

OPERS argues that Shapiro is qualified to opine on a host of issues based on his experience as a financial analyst. The issue, however, "is not the qualifications of a witness in the ***abstract***, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Courts thus properly focus on whether the expert is qualified to testify on the subject of his "***proposed opinion testimony***." *Gates v. City of Memphis*, 210 F.3d 371, (Table), 2000 WL 377343, at *3 (6th Cir. Apr. 6, 2000). Shapiro is not qualified to do so.

OPERS spends much of its Opposition rewriting Shapiro's supposed opinions to square

them with his qualifications and case law.[3] But Shapiro's reports and testimony reveal that those claims are inaccurate. Shapiro offers opinions on: (a) whether Defendants made false or misleading statements that (b) altered the "total mix of information" available to investors. He also opines on (c) the causes of Freddie Mac's reported loss and OPERS's losses. In sum, while OPERS takes pains to avoid the "buzzwords" of "falsity," "materiality," and "loss causation," as is crystal clear from his two reports and testimony, Shapiro actually seeks to opine on all three.

Shapiro claims that "information publicly disclosed by Freddie Mac during the Relevant Period was **inconsistent with** and often **directly contrary to** Freddie Mac's internal assessments." Ex. 1 [Shapiro Rep. ¶3(b)]. Shapiro confirmed at deposition that he has offered a "falsity" opinion. *See, e.g.*, Ex. 4 [Shapiro Tr. 623:19-624:2 ("Q. Did Freddie Mac make any statements about its capital adequacy that you believe were **false and misleading**? A. Actually, it did, **yes**. Q. And you're prepared to testify to that before a jury? A. I am."); 386:11-14 ("The answer is that I came to the determination myself that from A to Z, there were **false and misleading statements**.")].

Shapiro also offers the opinion that the information that he concluded was allegedly omitted or misrepresented was material. He confirmed at his deposition that he offers an opinion on materiality. *Id.* at 386:15-20 ("And those false and misleading statements would have changed my opinion of the stock from an outperform to an underperform, and I think **it would have changed the opinions of investors as well**."). His Rebuttal Report is also replete with his opinions that various information "would have altered the **total mix of information**" available, incorporating the definition of materiality. *Compare* Ex. 2 [Shapiro Rebuttal ¶¶ 11, 40, 43] *with*

[3] *See, e.g.*, Opp. at 8 (claiming that OPERS asked Shapiro to opine on "the Company's financial health and prospects"); *id.* at 6, 10 (claiming that "Plaintiff has asked Mr. Shapiro to testify generally about the role of financial analysts and specifically about whether certain information, had it been disclosed publicly during the Relevant Period, would have altered his view of the Company's financial condition."); *id.* at 10 (claiming that "securities fraud, falsity, materiality or loss causation" "are not subjects on which Mr. Shapiro has been called to opine").

*Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (information is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the **'total mix' of information** made available.").

Finally, Shapiro opines on loss causation, opining on the causes of losses to Freddie Mac and investors. *See, e.g.,* Ex. 1 [Shapiro Rep. ¶ 71 ("In my opinion, the issues I have identified and discussed above…were major factors contributing to the unexpected loss on November 20, 2007, **and the consequent drop in stock price.**")]. Shapiro confirmed as much at his deposition.[4]

Freddie Mac challenges Shapiro's qualifications to offer the foregoing opinions. Courts regularly exclude putative experts' opinions on subjects that are outside the scope of their actual experience. *See, e.g.*, *Berry*, 25 F.3d at 1348, 1351 (reversing verdict based on, *inter alia*, admission of opinion testimony from expert on "police policies and practices" who was not qualified to opine that failure to properly discipline officers was proximate cause of officer shooting victim); *Gates*, 2000 WL 377343, at *3-4 (affirming exclusion of opinion testimony from a crime scene reconstructionist who was not qualified to opine on trajectory analysis); *Am. Pegasus SPC by and through Sybersma v. Clear Skies Holding Co.*, 2016 WL 11710067, at *3 (N.D. Ga. Jan. 14, 2016) (holding putative expert with decades of experience in subprime auto loan industry not qualified to opine on value of subprime auto loan company).

Likewise, the mere fact that a person is a Chartered Financial Analyst ("CFA") or had experience following the financial performance of a company in the mortgage industry does not render him qualified to offer expert opinions on any and every subject related to securities, public

[4] Ex. 4 [Shapiro Tr. 387:23-388:7 ("Q. [Y]ou were asked by counsel for OPERS in connection with your expert testimony to determine whether any or all alleged misstatements or omissions **caused the decline in stock price** on November 20, 2007? A. **Yes**, I believe that was part of the mandate.")].

companies, or even the industry he followed. *See, e.g.*, *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *14 (S.D.N.Y. Oct. 29, 2013) (granting motion to exclude highly experienced financial analyst and CFA who did not have sufficient education or experience to opine on market efficiency); *see also Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, 2023 WL 8113301, at *3-5 (C.D. Cal. Oct. 6, 2023) (precluding financial analyst and CFA with substantial expertise in M&A transactions in the food and beverage industry from offering unreliable opinions on M&A transaction in food and beverage industry).

Revealingly, OPERS's qualification argument does not emphasize Sixth Circuit law, but instead leans on the out-of-circuit, unpublished decision in *Smilovits v. First Solar, Inc.*, 2019 WL 6875492 (D. Ariz. Dec. 17, 2019). See Opp. at 10-11. In *Smilovits*, the expert's education included a business degree and a master's degree in accounting, which the court credited in admitting her testimony. 2019 WL 6875492 at *3. Here, OPERS does not even try to argue that Shapiro is qualified by his education—nor could it, given that Shapiro studied religion and literature and never obtained an advanced degree, let alone in an area relevant to his opinions.

In *Smilovits*, unlike here, the witness's professional experience matched her proposed testimony. She had experience not just as an equity analyst, but an accountant and a chief financial officer, qualifying her to opine on financial-statement fraud relating to accounting principles. 2019 WL 687492 at *1. Here by contrast, Shapiro's experience does not square with his proposed opinions. He purports to compare Freddie Mac's internal and external assessments, yet admits that he lacks "experience investigating fraud," an area in which he is "not an expert." Ex. 4 [Shapiro Tr. 330:15-331:12, 331:10-12]. Shapiro opines on what Freddie Mac should have disclosed, but he does not know what disclosure the securities laws actually require. Ex. 4 [Shapiro Tr. 474:21-475:05] (testifying Freddie Mac should have disclosed "as much information as they could disclose

without putting themselves at any competitive risk," despite longstanding securities law to the contrary). *See* Mot. at 7. He has no experience relevant to assessing loss causation. *Smilovits* does not help OPERS.

Indeed, OPERS does not even attempt to explain how Shapiro is qualified to offer an opinion on the causes of Freddie Mac's losses or the decline in Freddie Mac's stock price. As described in Freddie Mac's Motion (at 8-9), demonstrating loss causation in a securities fraud case generally requires an event study by an economist. Shapiro is not an economist and has never even heard of an event study. *Id.* He is eminently **un**qualified to opine on loss causation.

Grasping at straws, OPERS argues that Shapiro's "expert" opinions should be admitted because he will be allowed to offer lay opinions anyway. *See* Opp. at 6 n.19. This argument again reflects OPERS's fundamental misunderstanding of Rule 702 and the Court's gatekeeper role. Freddie Mac's Motion seeks to prevent Shapiro from offering unqualified and unreliable expert testimony. Because the imprimatur of a supposed "expert" is likely to give the testimony additional weight before a jury, courts must take extra care in preventing lay witnesses from being cloaked as experts. *See Navarro v. Proctor & Gamble Co.*, 501 F. Supp. 3d 482, 489 (S.D. Ohio 2020).[5] In sum, Shapiro is not qualified to testify to the opinions he offers here, and this Court should not be the first court to find him so qualified.

## II. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED AS UNRELIABLE.

### A. Shapiro's Opinions Are Not Based On Sufficient Facts.

Though OPERS does not even cite Rule 702(b) or its standard, it is OPERS's burden to demonstrate that Shapiro's "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b).

[5] While the issue is not before the Court at this juncture, it is far from clear that Shapiro would be permitted to offer lay opinions based on information that he did not perceive first-hand. *See* Fed. R. Evid. 701(a).

A court must confirm that "the factual underpinnings of the expert's opinion [are] sound." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999). The Sixth Circuit regularly affirms the exclusion of expert opinions that are not based on sufficient facts, including the failure to consider large categories of information "without an adequate explanation." *See, e.g.*, *Onglyza*, 93 F.4th at 346 (affirming exclusion under, *inter alia*, Rule 702(b)); *Newell Rubbermaid, Inc. v. Raymond Corp*., 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing...."); *see also* 29 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Procedure* § 6268 (2d ed. 2017) ("Included in the analysis under Rule 702(b) should be whether the expert ignored a significant portion of seemingly important data.").

Trying to skirt the issue, OPERS argues that Freddie Mac challenges only the "weight" of Shapiro's opinions. Following the amendments to Rule 702, that argument no longer holds water. *Onglyza*, 93 F.4th at 350 n.7; *see supra* 5.[6] OPERS fails to establish it is "more likely than not" that Shapiro's opinions are based on sufficient facts or data. Fed. R. Evid. 702(b).

**1. Shapiro's Unsupported Opinions On Falsity And Materiality.**

As an initial matter, OPERS does not even try to argue that Shapiro's opinions on falsity and materiality are based on any "data." Nor can it. Neither Shapiro nor any other OPERS expert made any attempt to analyze ***any*** loans in Freddie Mac's Single-Family portfolio, even though a Freddie Mac expert did exactly that.[7] Because Shapiro did not review any of Freddie Mac's loan portfolio data or compare such data to that of the subprime market, he lacks sufficient facts to offer

[6] The cases OPERS's cites in its footnote 90 are inapposite either because, in those cases, the proponent of the expert testimony established reliability by a preponderance of the evidence and/or they were decided prior to the clarifying 2023 amendments to Rule 702. *See supra* 4-5.

[7] Shapiro opines that the "methodology" of Freddie Mac's expert's analysis was "flawed," but he is not qualified to offer that opinion and offers no reliable basis for it. Ex. 2 [Shapiro Rebuttal ¶ 79].

his bold opinion that "[a]s of June 30, 2007, the percent of these 'subprime' or 'subprime-like' loans would make up at least 12% of the single family guarantee portfolio" and this part of the portfolio "**was behaving like subprime**." Ex. 1 [Shapiro Rep. at ¶¶ 27, 31]. But an expert cannot just invent facts. If one wanted to determine whether a portion of a portfolio is "behaving like subprime" one would have to analyze the data. A failure to do so is a failure to satisfy the Rule 702(b) standard. *See supra* § II(A).

Though Shapiro did not review or analyze any actual loan data, OPERS argues that his opinions are sufficiently reliable because he reviewed "over 100" internal Freddie Mac documents – out of the tens of millions of pages produced in this case – to arrive at his conclusions that "these internal assessments" were "inconsistent with and often directly contrary" to statements OPERS's challenges. Opp. at 14. This argument misses the mark in two ways.

First, the fact that Shapiro reviewed a relatively small set of documents hand-picked for him by OPERS's counsel, and then further cherry-picked statements from that set is not evidence that his opinions are based on "sufficient facts" under Rule 702(b). Wright & Miller, *Fed. Prac. & Procedure*, § 6268 ("If an expert 'cherry picks' favorable data'" and "ignores a significant quantity of other important facts, the trial court would be justified in concluding that the expert's testimony is not based on sufficient facts or data."). Likewise, his failure to review any transcripts of testimony also suggests that his opinions do not rest on a sufficient fact base. *See id.* While OPERS now suggests that his failure to review deposition transcripts was just one of his "evidentiary preferences" (Opp. at 28), at deposition Shapiro admitted that he was not even aware that transcripts of testimony existed. Ex. 4 [Shapiro Tr. 616:19–23].

Second, even considering the limited universe of facts he reviewed, Shapiro's opinions are not based on sufficient facts. As even a cursory examination of his work shows, there is a large

analytical gap between Shapiro's opinions and the facts on which they purportedly rest. *See Onglyza,* 93 F.4th at 346; *Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, 845 F. App'x 376, 383-84 (6th Cir. 2021) (expert excluded when there was too great "an analytical gap [that] exists between the data the expert relies on and the conclusions he draws.") (citation omitted). This distance between his opinions and the facts he cites also renders his opinions unreliable under 702(b).[8]

For example, in Paragraph 31 of his Report, relying on a May 2007 report, Shapiro claimed that "Freddie Mac internally reported that [Caution and EA] loans ***were defaulting more quickly and in greater numbers than even regular subprime loans***." Ex. 1 [Shapiro Rep. ¶ 31]. When Shapiro was confronted with the actual report at his deposition, he admitted that it did not support his claim. Ex. 4 [Shapiro Tr. 533:10-15].

After his deposition, Shapiro asserted in his Rebuttal Report that the reason the document he cited did not support his opinion was because he had "mistyped" "May 2007," when he intended to type "September 2006." Ex. 2 [Shapiro Rebuttal ¶ 64]. Even overlooking the palpable absurdity of this claim, the September 2006 report likewise does not support the conclusion that Caution loans "were defaulting more quickly and in greater numbers than even regular subprime loans." Mot. at 13. Rather, the substitute September report stated that "Subprime loans are assumed to have 8 times the expected default costs and 8 times the RBK of the benchmark loan and can be roughly proxied by 80 LTV/600 FICO loans using the subprime version of DEFCAP."[9] Mot. at

[8] *Smilovits* is no help to OPERS. In a phrase OPERS omits from its brief, that court required "enough accurate factual information to provide a reasonable factual foundation." *Smilovits*, at *5; *compare* Opp. at 19 n.86. That the expert there relied on sufficient facts does not establish that Shapiro did here.

[9] If Shapiro had bothered to read any deposition testimony related to this subject, then he would have learned that, in the guarantee portfolio at issue here, the subprime DEFCAP model was applied solely to the disclosed structured securities (T-deals) that comprised less than 0.1% of Freddie Mac's portfolio.

13. This sentence in no way supports the proposition that any portion of Freddie Mac's portfolio, let alone 12%, was "defaulting more quickly and in greater numbers" than subprime loans.

Instead of admitting defeat on this point, OPERS again boldly claims that Freddie Mac internally recognized that "roughly 12% of the portfolio **was behaving like subprime**." Opp. at 18. In support of this proposition, OPERS first cites Paragraph 31 of Shapiro's report—the very paragraph that has no support in the record. OPERS finds itself stuck in a circular argument relying on Shapiro who relied on a document that in no way supports his claim.[10] Under OPERS's view of the world, an expert can base opinions on facts he makes up out of whole cloth. That is not the law. Fed. R. Evid. 702(b). And OPERS's citations to facts that Shapiro neither considered nor relied upon does not save Shapiro. *Compare* Opp. at 18 n.76 (citing internal documents) *with* Ex. 1 [Shapiro Rep. Ex. 2, Materials Considered]. The foregoing discussion is just one, albeit important, example of an opinion that Shapiro bases on insufficient facts.

At bottom, Shapiro's opinions rest on insufficient facts, rendering those opinions unreliable. Instead of retaining an expert to evaluate how Freddie Mac's portfolio actually performed, OPERS is trying to put a witness on the stand, call him an expert, and have him interpret emails and reports he has no familiarity with to parrot OPERS's theory of the case to the jury while ignoring witness testimony and the wide swath of information that contradicts OPERS's case. This it cannot do. *See Hayes v. MTD Prods., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007) (expert's report excluded when it "reads less like an expert's unbiased assessment and more like

---

Declaration of J. Frank ISO Reply ("Reply Decl.") ¶ 3, Ex. 20 [Straka Tr. 190:4-191:4]; ¶ 4, Ex. 21 [2006 Annual Report at 69-70]. This is a prime example of Shapiro basing an opinion on insufficient facts.

[10] OPERS does not dispute that the NPA allegations are inadmissible. Opp. at 17. But OPERS essentially relies on them anyway, claiming that the "NPA allegations . . . are supported by the factual evidence in the record." Opp. at 17. This is a red-herring. There is no factual evidence that 12% of the portfolio behaved like subprime loans. The uncontested evidence is that Freddie Mac's Caution Loans performed like "prime loans" and not "subprime loans." *See, e.g.*, Ex. 19 [Okongwu Rep. Figure 22].

counsel's closing argument"); *see also Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Expert evidence based on a fictious set of facts is just as unreliable as evidence based upon no research at all.").

**2. Shapiro's Unsupported Opinions On Loss Causation.**

As noted in Freddie Mac's opening brief, Shapiro's failure to consider sufficient facts also renders his loss-causation opinion unreliable. Mot. at 15-16. In response to this argument, OPERS offers two wild claims: (1) Shapiro will not offer a "loss causation opinion in this case"; and (2) Freddie Mac's argument goes to the "sufficiency of the evidence." Opp. at 18-19.

First, OPERS cannot square the statement that Shapiro "will not offer[] a loss causation opinion in this case" with the very next sentence of their brief that he will testify about the factors that he thinks were "largely responsible for the stock decline on November 20, 2007." Opp. at 18. Testifying to the factors that were "responsible for" the stock price decline on November 20, 2007 is the very definition of loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338 (2005) ("loss causation" is "a causal connection between the material misrepresentation and the loss…").

Second, as discussed above, OPERS's "sufficiency of the evidence" argument ignores OPERS's burden under Rule 702(b). It is not Freddie Mac's burden to come forth with "contradictory evidence." Opp. at 19; *see supra* 2, 9-10. Because Shapiro did not base his causation opinions relating to "future losses and capital insufficiency" or the stock price decline on sufficient facts or data, Shapiro should be barred from offering opinions on these matters. Mot. at 16.

**B. Shapiro's Opinions Are Not The Product Of Reliable Principles Or Methods.**

This Court also should exclude Shapiro's testimony under Rule 702(c). Unable to demonstrate that Shapiro employed "reliable principles or methods," OPERS argues that "non-scientific expert testimony" is admissible if it is based on a putative expert's "observing relevant evidence and applying specialized knowledge gained from the expert's educational and practical

experience." Opp. at 5. Not surprisingly, that is not the law, as it would allow an unqualified layperson to offer "expert" opinions – exactly the scenario that Rule 702 is intended to prevent.

Rather, OPERS "bears the burden of showing by a preponderance of the evidence that the expert satisfies Rule 702." *Onglyza*, 93 F.4th at 345.[11] Even "non-scientific experts" need to satisfy Rule 702, offering only opinions that are reliable. *Kumho*, 526 U.S. at 141-42; *Otkins v. Gilboy*, 2024 WL 1120204, at *3 (E.D. La. Mar. 14, 2024) ("Whether or not an expert's opinion is labelled as a 'scientific' opinion or one based on his or her 'specialized knowledge' does not change the Rule 702/*Daubert* analysis; all expert opinions must still be reliable and relevant.") (citation omitted). As one court explained:

> [N]onscientific evidence does not get a free pass. The expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

*United States v. Bolos*, 2021 WL 4928980, at *5 (E.D. Tenn. Oct. 21, 2021) (quoting Fed. R. Evid. 702, adv. comm. notes).[12] Here, too, Shapiro "does not get a free pass": he must explain the basis of his opinions, not merely declare that, based on his experience, it is his opinion that one statement is inconsistent with others or that certain factors caused specified losses.

### 1. Shapiro's Opinions On Falsity And Materiality Are Not The Product Of Reliable Principles Or Methods.

Shapiro proposes to offer the opinion that Freddie Mac made numerous public statements that were "inconsistent" with "the Company's internal assessments and concerns regarding the

[11] Rule 702 "incorporated" the "maxims" of *Daubert*, 509 U.S. at 597 and *Kumho*, 526 U.S. at 148. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294–95 (6th Cir. 2007).

[12] Plaintiff's cases (Opp. at 5 n.16 and Opp. at 11 n.47) stand for the unremarkable proposition that non-scientific expert opinions may be based on an expert's experience. But those cases do not support the proposition that an expert's opinions are exempted from Rule 702's reliability requirements. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333-34 (6th Cir. 2001) (acknowledging that non-scientific expert must be qualified to offer his opinions, which must be "both relevant and reliable").

same." Ex. 1 [Shapiro Rep. ¶ 16]. Indeed, Shapiro attached to his report two separate charts that list the statements – copied from the TAC – that he believes were inconsistent with Freddie Mac's internal documents. *Id*. at Exhibits 3 and 4. But Shapiro did not apply any reliable principles or methods to arrive at his conclusions as required under Rule 702(c).

To arrive at his opinions, Shapiro merely looked at several dozen documents that were spoon fed to him by OPERS's counsel. At his deposition, Shapiro claimed that his method was to treat "all contemporaneous internal assessments" as true. Ex. 4 [Shapiro Tr. 497:22-25]. But this was demonstrably false, as was quickly apparent when Shapiro was confronted with contemporaneous internal documents that contradicted his opinions. *See, e.g*., Mot. at 13-14. In his Rebuttal Report, Shapiro abandoned his previously stated method and claimed that his method was the same he used as a financial analyst. Ex. 2 [Shapiro Rebuttal ¶ 47]. But Shapiro did not even follow this method, which is not a reliable method to form the opinions he now offers.

First, Shapiro did not produce his model in this case. He admits he no longer has it, though he claimed at deposition to have had performed calculations on his phone that supported his opinions. Ex. 4 [Shapiro Tr. 366:5-368:8]. Not having shared his model, or even his phone calculations, it is impossible to test whether his model does what he says it does. OPERS tries to defend Shapiro's failure to recreate and produce his model by citing to his Rebuttal Report. Opp. at 25-26. But Shapiro's Rebuttal Report on this point is nothing but *ipse dixit* and does not save his faulty opinion. For example, Shapiro claims that he "learned" that "Freddie Mac internally understood during the Relevant Period that almost 30% of the loans in its portfolio were reduced documentation loans (which defaulted at much higher rates than traditional loans) while its public disclosures suggested that this number was more like 8%." Opp. at 25. Astonishingly, Shapiro does not cite a single Freddie Mac document supporting the proposition that Freddie Mac

"internally understood" that "almost 30% of the loans in its portfolio were reduced documentation loans." Thus, Shapiro (a) did not produce his model; and (b) resorts to making up facts to support the failure to produce it. *Guillory*, 95 F.3d at 1331 ("Expert evidence based on a fictious set of facts is just as unreliable as evidence based upon no research at all.").

Second, Shapiro did not discuss any of the conclusions in his report with Freddie Mac senior management. He claims that reviewing internal documents is similar to this step. Ex. 2 [Shapiro Rebuttal at ¶ 22]. But he is wrong. As discussed above, Shapiro misunderstood the import of many documents he reviewed. *See supra* 12-13. If he had wanted to find out what senior management thought of the issues, he could have reviewed transcripts of testimony from those individuals. His failure to review even a single transcript underscores the unreliability of his approach.

Third, his stated methodology as a financial analyst is different than what an expert in court does. A financial analyst gives an opinion about the prospects of a company and is not limited on what they may say in their analyst reports by rules of procedure. By contrast, an expert in court is limited by the legal theories at issue in the case. *See* Fed. R. Evid. 702(a) (expert opinion inadmissible unless it "help[s] the trier of fact to understand the evidence or to determine a fact in issue"); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) (affirming exclusion of expert testimony, noting that "a district court may exclude evidence relating to erroneous or inapplicable legal theories" including expert opinions reliant on inaccurate legal theories). Here, Shapiro did not adapt his supposed methodology to try to determine what information would have changed the "total mix" of information available from Freddie Mac's public disclosures. Rather, he simply claims he would have wanted to know everything that would not put Freddie Mac at a "competitive risk." Ex. 4 [Shapiro Tr. 474:21-475:5]. But this is not the

legal standard for when a duty to disclose arises. *See* Mot. at 7. Upon learning the legal standard for materiality (*i.e*. the "total mix" of available information) after his deposition, he seized upon that legal terminology and proceeded to offer multiple opinions on how internal information at Freddie Mac would have altered the "total mix of information" available to investors. Ex. 2 [Shapiro Rebuttal ¶¶ 11, 13, 17(a), 28, 43]. That is not a reliable methodology.

OPERS responds only by parroting points from Shapiro's Rebuttal Report. Opp. at 23-24. But Shapiro and OPERS fail to explain, for example, how Shapiro's conclusions regarding internal statements about underwriting compare to what Freddie Mac publicly disclosed on the subject. A side-by-side comparison of Shapiro's hyperbolic claim about Freddie Mac having no underwriting capability with Freddie Mac's public disclosure demonstrates this point.

| **Shapiro's Hyperbolic Claim** | **Freddie Mac's Disclosure on Underwriting** |
|---|---|
| Freddie Mac "had virtually no ability to effectively underwrite the nontraditional mortgage products that were making up an increasing portion of the Single Family Portfolio."<br><br>Freddie Mac had "effectively outsourc[ed] the job to Fannie Mae and other third parties whose underwriting standards were far less stringent than Freddie Mac's."<br><br>Ex. 2 [Shapiro Rebuttal ¶ 34]. | "***We may allow seller/servicers to underwrite mortgages for sale to using other automated underwriting systems and agreed-upon underwriting standards that differ from our normal standards***. The percentage of our single-family mortgage purchase volume evaluated using Loan Prospector prior to purchase has been declining over the last three years . . . ***We have been expanding the share of mortgages that were underwritten and originated using alternative automated underwriting systems, which could increase our credit risk***."<br><br>Reply Decl. ¶ 5, Ex. 22 [2005 Annual Report at 63-64]. |

Had Shapiro considered the "total mix of information" available to investors, he would have appreciated that Freddie Mac disclosed that it was increasingly relying upon the underwriting of others, which could increase its credit risk.

Likewise, Shapiro opines that Freddie Mac's former CEO falsely stated that "As we

discussed in the past, at the end of 2006, Freddie had basically no subprime exposure in our guarantee business." Ex. 1 [Shapiro Rep. Ex. 3 at 3.5]. Freddie Mac previously explained how this statement was true and could have been verified by Shapiro had he bothered to read the testimony of Doug Levy. Mot. at 14. In any event, the Doug Levy email Shapiro cites to claim that the CEO's statement was false specifically states: "Look back at the subprime language in annual report and use that as a guide as what to say. Basically, we said we don't have a definition of subprime and we don't acquire loans from subprime lenders." Ex. 1 [Shapiro Rep. Ex. 3 at 3.5]. Shapiro's opinion does not acknowledge that both Syron's statement and the email reference a prior public disclosure on the subject. Thus, he fails to consider the "total mix of information" in rendering his opinions, rendering them irrelevant and unreliable. Ex. 11 [Coates Rep. ¶¶ 26(b), 129, 131-133]. Simply put, OPERS fails to establish by a preponderance of the evidence that Shapiro's hyperbolic opinions are reliable, given Freddie Mac's disclosures on these topics.

**2. Shapiro's Opinion On Loss Causation Is Not The Product Of Reliable Principles Or Methods.**

Lacking any methodology, Shapiro speculates on what caused Freddie Mac's announcements and why Freddie Mac's stock price fell on November 20, 2007. For this reason alone, his causation opinions should be excluded. *See Madej v. Maiden*, 951 F.3d 364, 375 (6th Cir. 2020) ("Courts have repeatedly found opinions unreliable when they were based more on an expert's 'subjective belief' than on an objective method that can be tested.") (collecting cases).

OPERS again claims that Shapiro "is not providing opinions or testimony on loss causation." Opp. at 27. But Shapiro's reports and testimony belie this contention. *See supra* 7. In any event, if OPERS does not intend to call Shapiro to provide any opinions on loss causation, then it should have no objection to this Court excluding Shapiro from testifying to the matters in Paragraph 3.c. and section B of his Report, including paragraphs 70 to 77.

### C. Shapiro Does Not Reliably Apply Any Principles Or Methods.

As with the other subsections of Rule 702, OPERS wishes to read Rule 702(d) out of the law. Under Rule 702(d), the Court should exclude expert testimony where the putative expert does not apply her chosen method or principles in a reliable way. This is not just a matter of "weight" or the "sufficiency of the evidence," but rather a threshold requirement that OPERS must satisfy to offer expert opinion testimony. Indeed, OPERS itself has cited case law standing for this very proposition. *See* Opp. at 19, 28 (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 724, 739 (N.D. Ohio 2014) (holding that "wholesale exclusion" is required where a proposed expert's opinion is rampant with flaws which bias results in favor of their client)). That law squarely applies here.

#### 1. Shapiro Failed To Reliably Apply Any Principles Or Methods In Opining On The Materiality Of Alleged Misrepresentations And Omissions.

In its Motion, Freddie Mac has detailed numerous ways in which Shapiro did not apply his approach to opining on falsity and materiality reliably. Mot. at 23-26. None of OPERS's responsive bullet points (Opp. at 28-29) support an argument that OPERS has established, by a preponderance of the evidence, that Shapiro reliably applied his approach. Rather, each is an exercise in evasion and misdirection:

- Shapiro failed to consider deposition testimony, which adds context and meaning to documents he was considering. Mot. at § II(B)(1). OPERS now labels Shapiro's failure an "evidentiary preference[]." Opp. at 28. Whatever OPERS calls it, ignoring relevant evidence demonstrates unreliability.
- To justify his failure to review testimony, Shapiro dismissed all testimony as unreliable. Mot. at § II(B)(1). For example, Shapiro opined that Syron's statement that "we basically have no subprime loans" was "inconsistent" with an email Doug Levy had sent. Ex. 1 [Shapiro Rep. Ex. 3 at 4]. At deposition, when asked about that email, Levy testified that Syron's statement was true and his email was not suggesting otherwise. Ex. 10 [Levy Tr. 209:25-210:20]. OPERS chooses to ignore the obvious import of testimony that contradicts Shapiro's conclusions. Opp. at 28.

  - Another simple example is Shapiro's reliance in his Rebuttal Report on the November 2006 credit monitoring report. Had he reviewed deposition testimony, he would have understood that the "subprime DEFCAP model" referenced in that report was applied solely to the structured securities that comprised less than 0.1 percent of the guarantee portfolio. *See supra* n.9.

- Shapiro sometimes contrasted external statements with internal assessments that did not even address the same subject of the external statements, let alone contradict them. Mot. at 24-25. Even though OPERS has the burden to prove reliability, OPERS declined to respond to this charge. On their face, Exhibits 3 and 4 of Shapiro's Report include many internal statements that do not even relate to the corresponding external statement. Opp. at 29.

- Though Shapiro claimed to be contrasting public statements with "contemporaneous" internal assessments, such statements and assessments were many months and sometimes years apart. OPERS argues that the statements needed "context" but offers no answer to the specific examples Freddie Mac provided (Mot. at 24), where the external statement was made long **before** the internal document (which could therefore not provide any context for the earlier external statement). Opp. at 29.

- Shapiro reached conclusions that are not supported by the evidence he cites. *See* Mot. at § II(A)(1). For example, he cited a May 2007 report for the proposition that Caution loans defaulted at greater rates than subprime loans. As discussed in the Motion and above, that May report does not support that proposition, as he admitted at deposition. Ex. 4 [Shapiro Tr. 533:10-15]. In his Rebuttal Report, he claimed to intend to rely on a September 2006 report. Ex. 2 [Shapiro Rebuttal ¶ 64]. That September report also does not support that proposition. *See supra* 12-13. OPERS offers no response. Opp. at 29.

- Shapiro testified that he assumed all contemporaneous internal assessments were true, but abandoned that assumption at times in a way that favored OPERS. *See* Mot. at § II(A)(1). OPERS now argues that Shapiro did not always assume that internal statements were true. Opp. at 29. If anything, that admission only underscores his lack of reliability.

- Shapiro's opinions are not consistent with his own contemporaneous analyst reports and questions during earnings calls during the Relevant Period. OPERS does not dispute that he generally did not write about or ask about credit risk or underwriting. Opp. at 29.

- Shapiro ignored or otherwise did not properly account for Freddie Mac's risk disclosures, including the risks associated with market-wide home price declines. OPERS just cites testimony from Shapiro acknowledging that home price declines contributed to losses, but it has no response to the argument that he ignored Freddie Mac's disclosures. Opp. at 29.

In its Opposition, OPERS argues that the two examples Freddie Mac used to demonstrate the unreliability of Shapiro's approach somehow support his opinions. Opp. at 29. They do not. Turning first to the May 2007 report, OPERS has no answer to the fact that Shapiro cited it for a proposition that it does not support. Mot. at 12-13; Opp. at 29. OPERS also has no answer to the fact that Shapiro ignored that it states on its face that "Currently, no sub-prime loans are within the

[Single Family] portfolio," which is inconsistent with Shapiro's opinions. Ex. 6 [May 2007 SF Credit Portfolio Monitoring Rep. (FMAC-SEC 040067497)]. He purports to have considered but ignored other similar reports too. Frank Decl. ¶ 6, Ex. 23 [December 2006 SF Credit Portfolio Monitoring Report (FMAC-SEC 060955113)]; Frank Decl. ¶ 7, Ex. 24 [February 2007 SF Credit Portfolio Monitoring Report (FMAC-SEC 040049958)]. OPERS—like Shapiro—doubles down, arguing that the May 2007 report supports Shapiro's opinion in another way. Shapiro opines that statements in the report that evidence increasing credit risk during the second quarter of 2007 were "dramatically different" from a public statement made by Syron about the first quarter of 2007. Opp. at 29; Ex. 2 [Shapiro Rebuttal ¶ 65]. But Shapiro's opinion is based on an effort to mislead: he focuses on Syron's italicized statements below concerning long-term prospects, omitting Syron's statements about how the company's results was "affected" by the "very challenging" first quarter of 2007 and the fact that "[m]ortgage credit tightened." Syron stated:

> **The first quarter of '07 was a very challenging period in the U.S. housing and mortgage markets.** Housing prices declined. **Mortgage credit tightened.** Credit spreads and OAS spreads widened. As you can see in our GAAP and fair value results, **we were affected by these changes.**
>
> Yet despite these headwinds, Freddie Mac gained ground last quarter, and I think that's *thanks to our high asset quality, low risk exposures and improving operations. Freddie Mac is much better positioned for long-term profitability than we were a year ago.*

Reply Decl. ¶ 8, Ex. 25 [June 14, 2007 Call Tr. (FMOPERS00169045)]. Shapiro's continued reliance on the May 2007 report shows how he applies his approach unreliably and he is merely a willing conduit for OPERS to advance its legal theories.

OPERS's defense of Shapiro's reliance on the March 2007 PowerPoint presentation to Freddie Mac's Board of Directors fares no better. Opp. at 30. It is clear from multiple slides in that presentation that Freddie Mac's management was discussing both its existing franchise (i.e., fixed

rate prime loans) and "adjacent" markets, including the subprime market, that "To Date We Have Lacked The Capability For Deeper Involvement." Reply Decl. ¶ 9, Ex. 26 [Mar. 2007 Bd. of Dirs. Presentation (FMAC-SEC 047450808)]. In that strategy document from 2007, it was considering entering the subprime market, which it had "missed." *Id.* at 047450806. As the presentation evidences, Freddie Mac's "involvement to date ha[d] been buying AAA tranches of others securitizations," and "We Participate in Subprime Through AAA Bonds Held in the Retained Portfolio." *Id.* at 047450781, 047450785. It explained: "We decided to purchase subprime only where we could lay off the credit risk – buying AAA bonds of others' securitizations instead of whole loans." *Id.* at 047450785. OPERS's argument (Opp. at 31) that one of these slides relating to AAA bonds was referring to the retained portfolio, while true, entirely misses the point. The presentation evidences that Freddie Mac was not purchasing subprime loans in its guarantee portfolio, which directly contradicts the "primary fraud" alleged in OPERS's Third Amended Complaint. TAC, ¶ 3. Shapiro's cherry-picking and distortion of a single slide from this presentation to repeat his client's allegations while ignoring evidence contradicting his opinions is not indicia of reliability, but **un**reliability. *See Onglyza*, 93 F.4th at 347 (affirming exclusion under Rule 702(d) where expert "cherry-picked data to bolster his case," "a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion.") (citation omitted).

Further underscoring Shapiro's lack of reliability in this regard is the fact that, when confronted with these slides, he baselessly suggested that management attempted to mislead the Board. Ex. 4 [Shapiro Tr. 511:17-20]. That meritless accusation is easily disproven. Shapiro quotes from an earlier presentation that was made to management (not to the Board) in February 2007. Ex. 1 [Shapiro Rep. Ex. 3 at 3.3]; Reply Decl. ¶ 10, Ex. 27 [Feb. 2007 SET Offsite Presentation].

That presentation includes slides of the same import, which show that Freddie Mac was not purchasing whole subprime loans in its guarantee portfolio. Ex. 27.

### 2. Shapiro Failed To Reliably Apply Any Principles Or Methods In Opining On Loss Causation.

OPERS's only response to the argument that Shapiro did not reliably apply any principles or methods to opine on loss causation is that he is not offering such an opinion. *See* Opp. at 18. As discussed above, he indisputably is. *Supra* 7. His method was no more than his *ipse dixit*, which this Court should not accept as sufficient to satisfy OPERS's burden. Mot. at 21, 26.

## III. SHAPIRO'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE IMPERMISSIBLY OPINES ON ULTIMATE LIABILITY ISSUES.

Having found a single case where a financial analyst far more qualified than Shapiro was allowed to offer an expert opinion, OPERS seeks to recast the opinions Shapiro offers here as if they are the same the expert offered there. *See* Opp. at 31-32 (quoting *Smilovits* 2019 WL 6875492, at *5-6). Copying and pasting what the expert was asked in *Smilovits*, OPERS now argues that it asked Shapiro "to testify generally about the role of financial analysts and specifically about whether certain information, had it been disclosed publicly during the Relevant Period, would have altered his contemporaneous analysis of the Company's financial condition." Opp. at 6, 10. That is not what OPERS asked him to do (see Shapiro Rep. ¶ 2), and it is not his proposed testimony (*see* Shapiro Rep, *passim* and Exs. 3 & 4); *see, e.g.*, Ex. 4 [Shapiro Tr. 386:11-14, 387:17-388:7].

In fact, Shapiro's Report and deposition testimony is rife with his opinions on falsity and materiality. OPERS claims he is not offering testimony on these points. Opp. at 31-32. That argument is apparently based on the position that ultimate issues are permitted unless the expert uses precise legal terms.[13] In many instances, Shapiro **does** use the applicable legal terms. *See*

[13] The Sixth Circuit does not hold, as OPERS implies, that an expert may be excluded from testifying to ultimate issues **only** if the expert uses legal buzzwords. *See* Opp. at 32 n.153. An expert will be excluded

*supra*, 6-7. And, in any event, it is clear from his Report, Rebuttal Report, and testimony that he offers opinions on whether statements are false or misleading and on whether information is material, i.e., would alter the total mix of information available to investors. *See supra* § I. These are ultimate issues in the case and Shapiro should be precluded from offering those opinions.

**CONCLUSION**

This Court should exclude Howard Shapiro's testimony and strike his reports.

---

for testifying to the ultimate issues if she "opines on the ultimate question of liability," or "frames her opinion in the 'specialized' language" of the law. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). Here, Shapiro does both, and should be excluded. *See Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (expert testimony that "does little more than tell the jury what result to reach" should be excluded); *cf. Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) (affirming exclusion of expert testimony that went to "ultimate issue on facts that were for the jury to determine.").

April 5, 2024

Respectfully submitted,

*s/ Hugh E. McKay*

Hugh E. McKay (Ohio Bar #0023017)
PORTER WRIGHT MORRIS & ARTHUR LLP
950 Main Avenue, Suite 500
Cleveland, OH 44113
Tel: (216) 443-2580
Fax: (216) 443-9011
E-mail: hmckay@porterwright.com

Jason D. Frank (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
Andrew M. Buttaro
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8455
Fax: (617) 951-8736
E-mail: jason.frank@morganlewis.com
E-mail: emily.renshaw@morganlewis.com
E-mail: andrew.buttaro@morganlewis.com

Frederick L. Block (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: (202) 739-5125
Fax: (202) 739-3001
Email: fred.block@morganlewis.com

*Counsel for Federal Home Loan Mortgage Corporation*

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.1(f), I certify that the page limitations applying to this memorandum have been modified by order of the Court. S*ee* non-document Order (Apr. 3, 2024) (granting Freddie Mac's motion to exceed page limitations for anticipated reply memorandum, "allowing a filing of up to 25 pages"). This memorandum complies with those modifications.

April 5, 2024

*s/ Hugh E. McKay*
Hugh E. McKay

## CERTIFICATE OF SERVICE

I hereby certify that, on the date listed below, I caused a copy of the foregoing document to be filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. This filing may be accessed through the Court's CM/ECF system.

April 5, 2024

*s/ Hugh E. McKay*
Hugh E. McKay