PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, | ) ) CASE NO. 4:08CV0160 |
| Plaintiff, | ) ) ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) ) |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *etc.*, *et al.*, | ) ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 521] |

Pending is Plaintiff Ohio Public Employees Retirement System's ("OPERS") Motion to Strike and Exclude the Report and Testimony of Dr. Chudozie Okongwu (ECF No. 521) in its entirety. Dr. Okongwu is a mortgage market expert proffered by Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") on the mortgage and subprime markets and the evolution of the credit crisis that occurred during August 1, 2006 through and including November 20, 2007 (the "Relevant Period"). Plaintiff moves the Court for the entry of an Order striking and excluding the report and testimony of Dr. Okongwu, as well as all evidence that is based upon, or directly or indirectly references, Dr. Okongwu's report, testimony or purported opinions. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.

(4:08CV0160)

For the reasons that follow, the motion is denied because Dr. Okongwu satisfies all core requirements for admissibility under Fed. R. Evid. 702 by a preponderance of the evidence.

**I.**

Dr. Okongwu is a Ph.D. economist and consultant with decades of experience in the areas of finance, economics, and valuation. *See* Amended Expert Report of Dr. Chudozie Okongwu (ECF No. 530-1)[1] at PageID #: 25787-88, § 1.1. He has expertise on the mortgage market and the evolution of the credit crisis that occurred during the Relevant Period. *See* Deposition of Chudozie Okongwu, Ph.D. *See* (ECF No. 521-4) at PageID #: 24026:2-7. Dr. Okongwu also has expertise on residential-mortgage products and mortgage-backed securities (including how they react to changes in housing prices and interest rates) and has significant experience using econometric models to analyze residential-mortgage products. *See* ECF No. 521-4 at PageID: 24029:1 - PageID #: 24031:5. Furthermore, he has been widely published in peer-reviewed journals on many of these topics. *See* ECF No. 530-1 at PageID #: 25787-88, § 1.1.

OPERS alleges that "[t]he primary fraud" in the case at bar "was Defendants' failure to disclose Freddie Mac's true subprime exposure," which reached "$206 billion" by September 30, 2007. Third Amended Complaint (ECF No. 166) at PageID #: 5571, ¶ 3. The case is about how "Freddie Mac concealed its overextension in the nontraditional mortgage market—generally composed of instruments known as subprime mortgages or low credit and high risk

---

[1] The Amended Report corrects a few typographical and referencing errors that Dr. Okongwu identified after filing his Initial Report (ECF No. 521-2). It also includes an additional sensitivity scenario. According to Dr. Okongwu, the edits and the results of the additional sensitivity scenario do not alter his conclusions. *See* ECF No. 530-1 at PageID #: 25790, ¶ 12.

2

(4:08CV0160)

instruments—and its materially deficient underwriting, risk management and fraud detection practices through misstatements and omissions to investors." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 379 (6th Cir. 2016); *see also* ECF No. 166 at PageID #: 5571, ¶ 2. According to OPERS, the question in the present case is not how to define subprime or whether Freddie Mac's loans performed better than other loans. Rather, it is whether Freddie Mac's public disclosures relating to its portfolio, underwriting, credit risk, and capital position were misleading and fraudulent. OPERS claims Freddie Mac was taking on more risk than it was disclosing. *See* Memorandum in Support (ECF No. 521-1) at PageID #: 23685 (citing ECF No. 166 at PageID #: 5571, ¶ 2).

Freddie Mac engaged Dr. Okongwu to provide economic and financial analysis about certain of OPERS' allegations. *See* ECF No. 530-1 at PageID #: 25789, ¶ 9. His main conclusions are set forth at ¶ 13 of the Report. ECF No. 530-1 at PageID #: 25791-92. Dr. Okongwu focuses on four overall topics: (1) "Background on the Mortgage Market," *see* ECF No. 530-1 at PageID #: 25793-811, § 2; (2) "Background on the Subprime Mortgage Market," *see* ECF No. 530-1 at PageID #: 25812-37, § 3; (3) "Freddie Mac Made Extensive Disclosures Warning Investors of Credit Risks During the Relevant Period," *see* ECF No. 530-1 at PageID #:

(4:08CV0160)

25837-49, § 4; and (4) "The Caution Loans² Differ from the CoreLogic Subprime Loans³ with Respect to their Characteristics and Performance," *see* ECF No. 530-1 at PageID #: 25849-72, § 5.

  Dr. Okongwu performed an analysis to disprove OPERS' primary-fraud theory. He states that Freddie Mac's Caution Loans did not have "subprime risk" because "[t]he Caution Loans have different characteristics to the CoreLogic Subprime Loans and perform differently than the CoreLogic Subprime Loans. In particular, the serious delinquency rates of the Caution Loans were substantially lower than those of the CoreLogic Subprime Loans at both Q3 2007 and Q3 2008." ECF No. 530-1 at PageID #: 25849, ¶ 112.⁴ Dr. Okongwu concluded as follows regarding the Caution Loan and CoreLogic Subprime Loan comparisons:

> . . . Freddie Mac's Caution Loans differ from the CoreLogic Subprime Loans with respect to both their characteristics and their performance. I also conclude that,

---

² OPERS asserts that Freddie Mac's internal designation of loans as Caution Loans meant that they "were considered to be equivalent to subprime." ECF No. 166 at PageID #: 5586, ¶ 33. Because of this purported equivalence, OPERS alleges that many public statements of Freddie Mac and the other Defendants that Freddie Mac "had basically no subprime exposure in our [single-family] guarantee business" were false. *See, e.g.*, ECF No. 166 at PageID #: 5605-606, ¶ 84.

³ For subprime loans in the national mortgage market, Dr. Okongwu relied on data compiled by independent, third-party real estate and mortgage industry leader CoreLogic, "which maintains the largest, most comprehensive property databases in the United States." *Mass. Mut. Life Ins. Co. v. DB Structured Prod., Inc.*, No. 11-30039-MGM, 2015 WL 2130060, at *3 (D. Mass. May 7, 2015).

⁴ OPERS claims the result of the comparison is entirely predictable and expected, and it reveals no new or relevant information because the Federal Housing Finance Agency and the Financial Crisis Inquiry Commission recognized this same fact well over a decade ago in their 2010 and 2011 studies, which Dr. Okongwu specifically recognizes and mentions. *See* ECF No. 530-1 at PageID #: 25856-57, ¶¶ 123-124.

(4:08CV0160)

>through the end of Q3 2007, the serious delinquency rates of the Caution Loans were more similar to those of the CoreLogic Prime Loans than to those of the CoreLogic Subprime Loans. The results of these analyses are not consistent with the premise that the Caution Loans looked or performed like a portfolio of subprime loans.

ECF No. 530-1 at PageID #: 25872, ¶ 144. When the data excluded interest-only (IO) Caution Loans (which Freddie Mac had disclosed were expected to default at higher rates), Freddie Mac's remaining Caution Loans performed almost identically with the CoreLogic Prime Loans (*e.g.*, serious delinquency rates of 5.93% vs. 5.60% as of Q3 2008). *See* ECF No. 530-1 at PageID #: 25868, ¶ 136; PageID #: 25869, Figure 22. According to Freddie Mac, "OPERS did not even attempt any similar analysis despite long alleging that Freddie Mac Caution Loans are subprime loans." ECF No. 530 at PageID #: 25773; *see also* ECF No. 530 at PageID #: 25763; 25775.

## II.

The Federal Rules of Evidence, specifically Rule 702, "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards. *See* Fed. R. Evid. 702 advisory committee's note (2000); *Daubert*, 509

(4:08CV0160)

U.S. at 592 n.10. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). The Sixth Circuit "has recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. *Daubert,* 509 U.S. at 595. Therefore, courts in the Sixth Circuit employ a four prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect." *United States v. Smithers,* 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

**III.**

OPERS claims that Dr. Okongwu's report, testimony, and purported opinions are irrelevant, unreliable, unhelpful, confusing, unfairly prejudicial, and do not meet the threshold of admissibility for expert evidence. According to OPERS, the first two (2) topics in Dr. Okongwu's Amended Expert Report – "Background on the Mortgage Market," *see* ECF No. 530-1 at PageID #: 25793-811, § 2, and "Background on the Subprime Mortgage Market," *see* ECF No. 530-1 at PageID #: 25812-37, § 3 – present nothing more than a factual narrative of undisputed facts that is invalid for a purported expert. For example, OPERS maintains that Dr. Okongwu provides proposed testimony as to "undisputed definitions" of terms relating to the

6

(4:08CV0160)

mortgage market. ECF No. 521-1 at PageID #: 23682. But when the Court previouly requested a glossary of those terms, *see* Order (ECF No. 310), the parties responded with competing definitions, which are very much in dispute. *Compare* OPERS' Glossary of Terms (ECF No. 318) with Defendants' Glossary of Terms (ECF No. 320). OPERS also argues this proposed testimony is irrelevant to any disputed issues and is not based on a valid methodology.

Next, OPERS maintains the proposed testimony in the third topic – "Freddie Mac Made Extensive Disclosures Warning Investors of Credit Risks During the Relevant Period," *see* ECF No. 530-1 at PageID #: 25837-49, § 4 – is also irrelevant and undisputed general background information in which Dr. Okongwu applies no scientific methodology. OPERS contends Dr. Okongwu's choice of which Freddie Mac documents to parrot and which to exclude is not based on any scientifically valid or reliable foundation, and does not lead to any opinions that will assist the jury. *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (assessment of relevance and reliability "involves a preliminary inquiry as to whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"). And Dr. Okongwu admittedly has no expertise on the topic of corporate disclosure practices. *See* ECF No. 521-4 at PageID #: 24036:10-13 (Q. Okay. Are you an expert in corporate disclosures? A. No. I wouldn't put myself forth as an expert on corporate disclosure practices.). But he is not opining on corporate disclosure practices generally or the accuracy of Freddie Mac's extensive disclosures. *See* ECF No. 521-4 at PageID #: 24121:23 - PageID #: 24122:2. Instead, he opines on "the meaning and relevance of certain Freddie Mac disclosures relating to the credit risk of its

7

(4:08CV0160)

mortgage portfolio." ECF No. 530-1 at PageID #: 25790, ¶ 9; *see also* ECF No. 521-4 at PageID #: 24176:1-15.

According to OPERS, the proposed testimony in the fourth topic in Dr. Okongwu's Amended Expert Report – "The Caution Loans Differ from the CoreLogic Subprime Loans with Respect to their Characteristics and Performance," *see* ECF No. 530-1 at PageID #: 25849-72, § 5 – should be excluded based on irrelevance and unreliability given the irreconcilable differences between the two datasets. OPERS asserts the performance of this one portion of Freddie Mac's loans is irrelevant because it does not excuse Freddie Mac's misleading statements to it as an investor. In addition, OPERS claims the comparison between the Caution Loans and CoreLogic subprime loans is not the private domain of an expert – the jury could do the same thing.

**A.**

OPERS argues that the entirety of Dr. Okongwu's proposed testimony on the first two topics in his Amended Expert Report about background facts of the mortgage and subprime markets is irrelevant and unreliable. OPERS points to *United States v. Boustani*, No. 1:18-CR-681 (E.D.N.Y. filed Dec. 19, 2018), a prior case involving Dr. Okongwu, and contends that his "testimony was excluded on the basis of relevance." *See* ECF No. 521-1 at PageID #: 23683. *See United States v. Boustani*, No. 1:18-CR-681, slip op. (E.D.N.Y. Nov. 15, 2019). (ECF No. 521-5). But OPERS overstates *Boustani*. There, the trial court excluded only a portion of Dr. Okongwu's trial testimony—about 12 slides from at least a 49-slide PowerPoint presentation. And earlier, the *Boustani* court denied the government's request to exclude Dr.

8

(4:08CV0160)

Okongwu's testimony, concluding that it was relevant and "provides background information for purposes of assisting the jury." *See* United States v. Boustani, No. 1:18-CR-681, slip op. at 10 (E.D.N.Y. Oct. 10, 2019).

Expert testimony is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The relevancy bar is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (internal quotation marks and citation omitted). The Court finds that Dr. Okongwu offers relevant testimony on the first three topics in his Amended Expert Report.

OPERS' key argument – that Dr. Okongwu's opinions on the first two topics are not proper topics of expert testimony – is lacking in merit. Nothing in Rule 702 or its amendments altered "the venerable practice of using expert testimony to educate the factfinder on general principles." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 597 F. Supp.3d 1114, 1119 (E.D. Mich. 2022) (denying *Daubert* challenge) (citing Fed. R. Evid. 702 advisory committee's note (2000). Rule 702 allows an expert to "testify in the form of an opinion or *otherwise*," meaning "that the expert may share . . . her special knowledge with the factfinder in areas that might extend beyond the information known to the average person." *Id.* (emphasis in original) (collecting cases). Dr. Okongwu's contextualizing testimony is admissible under this standard. *See, e.g.*, *In re E.I. Du Pont de Nemours & Co.*, 345 F. Supp.3d 920, 927 (S.D. Ohio 2015) (allowing expert in analytical chemistry "to contextualize the case specific facts against general developments in analytical methods"). This proposed testimony addresses specialized topics

9

(4:08CV0160)

regarding events in the mortgage market during the financial crisis and OPERS' allegation that Freddie Mac failed to disclose its exposure to subprime loans, which details are not within the knowledge or experience of the average juror. Even if the jury has some knowledge of some of these topics, it is likely limited, and "expert testimony helps if it advances the jury's understanding to any degree," thus "expert testimony meets the requirements of Rule 702(a) even where the jury has some familiarity with the subject, but that familiarity is incomplete or inaccurate." 29 Charles A. Wright et al., Federal Practice and Procedure § 6265.2 (2d ed.).

     Dr. Okongwu offers reliable testimony on the first two topics in his Amended Expert Report. The Court "operates with wide latitude in deciding how to test an expert's reliability," and thus has "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *LaVictor*, 848 F.3d at 443 (ellipsis in original; internal quotation marks and citation omitted). Dr. Okongwu's methodology was comprehensively explained and he identifies the basis for all his proffered definitions. *See* ECF No. 530-1 at PageID #: 25793-837, §§ 2-3. Dr. Okongwu also has expertise on residential-mortgage products and mortgage-backed securities (including how they react to changes in housing prices and interest rates) and has significant experience using econometric models to analyze residential-mortgage products. *See* ECF No. 521-4 at PageID #: 24029:1 – PageID #: 24031:5. The report was also reviewed by Dr. Okongwu's peers at AlixPartners, his employer. *See* ECF No. 521-4 at PageID #: 24004:10-22.

(4:08CV0160)

## B.

In the third topic of the Amended Expert Report, Dr. Okongwu analyzes key aspects of Freddie Mac's extensive disclosures to investors warning of credit risks in the run-up to the financial crisis. It states, in relevant part, that "[p]rior to and during the Relevant Period, Freddie Mac made extensive and detailed disclosures with regards to potential credit risk" on various topics. ECF No. 530-1 at PageID #: 25837, ¶ 81. That includes "disclosures relating to the potential impact of a decline in home price appreciation, characteristics of loans in the [Single Family] Guarantee Portfolio relevant to credit risk, and additional risks that it was taking, including purchases of higher risk loans, exposure to subprime loans, and risk associated with the use of alternative automated underwriting systems." ECF No. 530-1 at PageID #: 25837, ¶ 81; *see also* ECF No. 530-1 at PageID #: 25837-49, § 4. OPERS' case is premised on the allegation that these disclosures were inadequate. According to OPERS, Dr. Okongwu's prepared-solely-for-litigation proposed testimony about what Freddie Mac disclosed between 2005 and 2008 is irrelevant and unreliable, and he is not qualified to testify on the topic.

What OPERS characterizes as mere factual narrative, *see* ECF No. 521-1 at PageID #: 23687, is actually an independent analysis of voluminous materials addressing specialized topics. Accordingly, jurors, who will need to be educated on issues of mortgage-credit risk faced by market participants like Freddie Mac, will not have to review thousands of pages of disclosures. *See In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *41 (N.D. Ohio June 4, 2010) (declining to exclude expert based on "narrative" argument, noting that the materials that the expert "reviewed and compared are complicated").

11

(4:08CV0160)

Dr. Okongwu has published widely on the topics informing his proposed testimony in the case at bar. *See* ECF No. 530-1 at PageID #: 25787, ¶ 4; PageID #: 25874-81, Appendix I. This demonstrates that Dr. Okongwu is "proposing to testify about matters growing naturally and directly out of research [he] ha[s] conducted independent of the litigation." *Johnson*, 484 F.3d at 434 (quoting *Daubert v. Merrell Dow Pharm. Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) ("*Daubert II*")). Dr. Okongwu is not attempting to introduce questionable methodologies or unsubstantiated knowledge. Rather, he is offering expert testimony on "the meaning and relevance of certain Freddie Mac disclosures relating to the credit risk of its mortgage portfolio." ECF No. 530-1 at PageID #: 25790, ¶ 9; *see also* ECF No. 521-4 at PageID #: 24176:1-15.

The Court finds that Dr. Okongwu also offers reliable testimony on Freddie Mac's extensive disclosures. Based on his expertise, Dr. Okongwu reviewed and analyzed disclosures regarding Freddie Mac's credit risks in the context of the market at that time. *See* ECF No. 530-1 at PageID #: 25837-49, § 4.

## C.

Finally, OPERS asserts Dr. Okongwu's proposed testimony about Freddie Mac's Caution Loans being different from the CoreLogic Subprime Loans is irrelevant and unreliable. Dr. Okongwu conducted an empirical investigation using specialized analytical techniques to compare millions of these two types of loans, and concluded that OPERS' "primary fraud" theory, *see* ECF No. 166 at PageID #: 5571-72, ¶ 3, is incorrect. *See* ECF No. 530-1 at PageID #: 25871-72, ¶ 140-44. Specifically, Dr. Okongwu "conducted an analysis of single-family mortgage loan originations in 2005, 2006, and 2007 that compares loan-level data (from Freddie

12

(4:08CV0160)

Mac) for the Caution Loans to loan-level data (from CoreLogic) for subprime loans" with CoreLogic being the leading repository for mortgage data, including data on millions of subprime loans in the national mortgage market. ECF No. 530-1 at PageID #: 25792, ¶ 13; PageID #: 25790, ¶ 9 (defining Caution Loans). Contrary to OPERS' repeated allegations, *see* ECF No. 166 at PageID #: 5586, ¶ 33; PageID #: 5605-606, ¶ 84, Dr. Okongwu determined that Caution Loans and subprime loans were not equivalent – Freddie Mac's Caution Loans performed substantially better. *See* ECF No. 530-1 at PageID #: 25849, ¶ 112. Dr. Okongwu's analysis of Caution Loans and subprime loans is admissible, relevant, and will assist the trier of fact in understanding and resolving OPERS' primary-fraud theory. *See Sec. & Exch. Comm'n v. Mudd*, No. 11 Civ. 9202 (PAC), 2016 WL 2593980, at *6 (S.D.N.Y. May 4, 2016) (although the court excluded the reports and testimony of four of six experts, it expressly held that testimony on the performance of two types of Alt-A loans – which compared different loans and found that one type "performed substantially better" – was both "relevant and admissible").

The Court finds that Dr. Okongwu offers reliable testimony in analyzing Freddie Mac Caution Loans and comparing them to the CoreLogic Subprime Loans. According to Freddie Mac, Dr. Okongwu's investigation of the mortgage data "required months of analysis of millions of loans." Memorandum in Opposition (ECF No. 530) at PageID #: 25767. Freddie Mac argues the work was based on sound data and a reliable application of reliable principles and methods.

OPERS claims, however, that Dr. Okongwu did not compare "the totality of Freddie Mac's subprime-like loans" because the Caution Loans he compared were from the "Loan Prospector automated underwriting system . . ., which applied higher underwriting standards than

13

(4:08CV0160)

other channels from which Freddie Mac purchased loans. . . ." ECF No. 521-1 at PageID #: 23690 (citations omitted). OPERS also contends that Dr. Okongwu further ignores the fact that Freddie Mac's Caution Loans fell into two grades. C1 Caution Loans, while highly risky in their own right, had better credit quality than C2, which were closer to subprime and at even greater risk of default than the C1 loans. ECF No. 521-1 at PageID #: 23690-91. Freddie Mac responds that when it acquired loans from "other channels," it evaluated those loans using an emulator model that utilized Loan Prospector's same underwriting scores, including Caution scores. *See* ECF No. 530 at PageID #: 25774 (citing ECF No. 530-1 at PageID #: 25810, ¶ 41; PageID #: 25900-903, Appendix IV (showing that Dr. Okongwu examined Freddie Mac Caution Loans regardless of whether they came directly through Loan Prospector or other channels). OPERS replies that Freddie Mac's assertion about the emulator model "is false given that this emulator was run after the fact—after Freddie Mac purchased the loans—so the emulator had no effect on the quality of the loans purchased." Reply Memorandum (ECF No. 535) at PageID #: 27887-88.

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 529-30. "[When] the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' " *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp.3d 746, 752 (S.D. Ohio 2015)

14

(4:08CV0160)

(quoting *Daubert*, 509 U.S. at 596).  Dr. Okongwu's proposed testimony about Freddie Mac's Caution Loans being different from the CoreLogic Subprime Loans is an appropriate subject for exploration during direct and cross-examination, but it is not a basis to exclude the proposed testimony.  Moreover, "[a]dmissibility under Rule 702 does not require perfect methodology." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir. 2009).  In *Best*, the Sixth Circuit reversed the district court's exclusion of expert testimony because the defendant's "attacks on [his opinion] amount[ed] to factual disputes suitable for cross-examination." *Id.* at 180 (citing *Daubert*, 509 U.S. at 596).  And Rules 401 and 403 "strongly favor admissibility." *United States v. Lang*, 717 Fed.Appx. 523, 538 (6th Cir. 2017).  There is no unfair prejudice from the proposed expert testimony addressing OPERS' primary-fraud theory.

OPERS also argues that – as the Court previously found for Dr. Steven P. Feinstein (an expert proffered by OPERS) – the fourth topic in Dr. Okongwu's Amended Expert Report "is a classic example of 'data snooping,' which violates the axiom that research should not be 'motivated by the successes and failures of past investigations.' " *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,  No. 4:08CV0160, 2018 WL 3861840, at *7 (N.D. Ohio Aug. 14, 2018) (citation omitted), *rev'd and remanded on other grounds*, 64 F.4th 731 (6th Cir. 2023).  This concept is inapplicable here because Dr. Okongwu's choice of datasets was driven by OPERS' own "primary fraud" allegation.  ECF No. 166 at PageID #: 5571, ¶ 3.

15

(4:08CV0160)

## IV.

For the foregoing reasons and those that have been articulated in the memorandum of the points and authorities on which Freddie Mac relies, OPERS' Motion to Strike and Exclude the Report and Testimony of Dr. Chudozie Okongwu ([ECF No. 521](#)) is denied.

IT IS SO ORDERED.

   March 21, 2025                                             */s/ Benita Y. Pearson*
Date                                                     Benita Y. Pearson
                                                                 United States District Judge