PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, | ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. 4:08-CV-00160 |
| v. | ) ) ) | JUDGE BENITA Y. PEARSON |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 520] |

Pending is Plaintiff Ohio Public Employees Retirement System's ("OPERS") Motion to Strike Portions of the Report and Exclude Portions of the Expert Testimony of Dr. Mukesh Bajaj. *See* Mot. to Strike, ECF No. 520 *and* Am. Mem. in Supp., ECF No. 527. Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") responded in opposition. *See* Mem. of Law in Opp'n, ECF No. 531. OPERS replied. *See* Reply Mem., ECF No. 537. The Court has been advised, having reviewed the record, the parties' briefs, the applicable law. For the reasons below, the Court denies the motion.

**I.     Background**

Freddie Mac retained Dr. Bajaj to provide his opinion on materiality, loss causation, and damages. *See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25444. Freddie Mac states that "Dr. Bajaj offers the following primary opinions:

(1) The misrepresentations and omissions alleged in the Third Amended Complaint ("TAC") did not have a statistically significant stock price impact and did not cause losses to OPERS (*i.e.*, opinions

(4:08CV160)

> relevant to materiality and loss causation—two elements of OPERS's claims);
> (2) Dr. David Tabak, designated as an expert by OPERS, offers flawed analyses relating to materiality and loss causation;
> (3) Dr. Tabak fails to offer a damages calculation;
> (4) OPERS's proposed expert Mr. Shapiro's opinions are unreliable for many reasons; and
> (5) The Individual Defendants' trading in Freddie Mac stock [were] not unusual in timing or amount, and the value of their holdings in Freddie Mac declined substantially over the Relevant Period (*i.e.*, an opinion relevant to scienter)."

*See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25986 (quoting Dr. Bajaj's Expert Report, ECF No. 527-1).

OPERS moves the Court to exclude and strike:

> 1) Dr. Bajaj's proposed testimony about background surrounding the Relevant Period;
> 2) Dr. Bajaj's opinion based on his "stock recovery" analysis;
> 3) Dr. Bajaj's opinions regarding price impact and loss causation based upon his review of market disclosures on and shortly after November 20, 2007;
> 4) Dr. Bajaj's opinions regarding materialization of disclosed risks;
> 5) Dr. Bajaj's opinions addressing materiality or "economic materiality";
> 6) Dr. Bajaj's opinions regarding dispersion of [earnings-per-share], EPS, estimates prior to November 20, 2007; and
> 7) Dr. Bajaj's opinions regarding the individual defendants' stock trading, to the extent he attempts to use it to conclude "they did not benefit from the alleged fraud during the Relevant Period[ ]"

*see* Mot. to Strike, ECF No. 520 at PageID #: 23396 (formatting changed), as unreliable or contrary to the law.

## II. Legal Standard

The Federal Rules of Evidence, specifically Rule 702, "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 governs the admissibility of expert testimony and codifies the Supreme Court's holdings in

2

(4:08CV160)

*Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.  FED. R. EVID. 702.  In *United States v. Lang*, 717 F. App'x 523 (6th Cir. 2017), the Sixth Circuit held that an expert opinion is reliable when it rests on a "*sufficient*" factual basis and is not "plainly contradict[ed]" by the record.  *Id.* at 536 (emphasis in original).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards.  *See* FED. R. EVID. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10.  That expert testimony is not admissible "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting FED. R. EVID. 702 advisory committee's note (2000)).  That said, the Sixth Circuit "has recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 595.  Therefore, courts in the Sixth Circuit employ a four-prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect."  *United States v. Smithers*, 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

3

(4:08CV160)

### III. Analysis

A. *Qualifications*

OPERS challenges Dr. Bajaj's qualifications for the first time in its Reply Memorandum. *See* Reply Mem., ECF No. 537 at PageID #: 27910. "It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'" *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (citing *Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) for its collection of Sixth Circuit and district court cases discussing this principle). The Court will not consider OPERS' untimely arguments regarding Dr. Bajaj's qualifications.

That said, Dr. Bajaj has significant experience with "securities fraud, calculation of complex derivatives and intellectual property, insider trading, financial market microstructure, intangible assets, transfer pricing, interests in closely-held firms, warrants, restrict stock and other complex contingent securities, and purchase price allocation studies." *See* Dr. Bajaj's CV, ECF No. 527-1 at PageID #: 25556. He has experience testifying and offering expert opinions on topics, including financial misrepresentation, securities fraud in the subprime mortgage market, and loss calculations. ECF No. 527-1 at PageID ##: 25556–25564. While it is true that "[b]eing a professional testifying expert in the financial area does not give an individual the qualification to opine in every financial area as to every type of analysis, OPERS has presented no reason to disqualify Dr. Bajaj from testifying "to any and all subjects[,]" as its reply brief seems to suggest. ECF No. 537 at PageID #: 27910. OPERs may, however, use its concerns to cross examine Dr. Bajaj on the matters on which he opines.

4

(4:08CV160)

    B. *Reliability or Contrary to Law*

        1. <u>Background surrounding the Relevant Period- Section IV(A) and (B)</u>

OPERS argues that Sections IV(A) and (B) of Dr. Bajaj's report is unreliable and should be struck. OPERS argues that these sections of Dr. Bajaj's report are merely a "largely factual narrative" and "general background information" which "is not in dispute" and "must [be done] with a fact witness, not a purported expert." *See* Am. Mem. in Supp., ECF No. 527 at PageID ##: 2519–20 (citing *U.S. SEC v. Mudd*, No. 11-CIV. 9202 (PAC), 2016 WL 2593980, at *5 (S.D.N.Y. May 4, 2016)).

Freddie Mac argues that these sections are not narrative but "critical support for [Dr. Bajaj's] opinions." *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25994. Freddie Mac claims that Dr. Bajaj's analysis of "broader market conditions is central to understanding how the market evaluated information about Freddie Mac" and, therefore, "appropriate subject for expert testimony." ECF No. 531 at PageID #: 25995.

"The most important factor in determining whether expert testimony will 'help' is the jury's need for expert testimony to accurately determine the facts." 29 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 6256.2 (2d ed.). "Rule 702 allows an expert to 'testify in the form of an opinion or *otherwise*,' meaning 'that the expert may share . . . [his] special knowledge with the factfinder in areas that might extend beyond the information known to the average person.'" *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, Case No. 4:08CV0160, 2025 WL 885685, at *4 (N.D. Ohio Mar. 21, 2025) (citing *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 597 F. Supp. 3d 1114, 1119 (E.D. Mich. 2022)).

The specifics of the home mortgage market in 2006 to 2007, which set up the economic market for the timing of OPERS' claimed losses, is not information known to the average person

5

(4:08CV160)

sitting as a juror nearly two decades later. A jury would benefit from hearing expert testimony on this topic. Dr. Bajaj is not merely stating the background of the Relevant Period but including more specific details such as capitalization and risk announcements, disclosures, and broader market. Additionally, this is the background which informs Dr. Bajaj's opinions on the materiality of disclosures, loss causation, and damages. Thus, Section IV(A) and (B) of Dr. Bajaj's report are admissible.

      2. "Stock Recovery" analysis

OPERS argues that Dr. Bajaj's opinions on "stock recovery" analysis are contrary to law and unreliable, claiming that the Private Securities Litigation Reform Act ("PSLRA") governs this action and the PSLRA "provides a 90-day 'look-back' or 'bounce-back' provision" in measuring damages." *See* Am. Mem. in Supp., ECF No. 527 at PageID #: 25420 (citing *Abrams v. MiMedx Grp.*, 37 F. Supp. 3d 1271, 1276 (N.D. Ga. 2014)). According to OPERS, Dr. Bajaj's 10-day look-back period is contrary to law and should be excluded. OPERS also argues that this analysis is "a classic case of a litigation-oriented, results-based analysis that fails the mandates of *Daubert* and Rule 702." ECF No. 527 at PageID #: 25420. OPERS specifically argues that the analysis is unreliable because (1) Dr. Bajaj opines, "contrary to evidence" that the drop in stock price was "solely related" to capital issues, (2) Dr. Bajaj's opined excess return is "statistically insignificant," and (3) Dr. Bajaj "cherry-picks dates" and "excluded dates" which included "statistically significant excess returns." ECF No. 527 at PageID ##: 25421–22.

Freddie Mac responds that OPERS is misconstruing Dr. Bajaj's report and conclusions. Freddie Mac explains that Dr. Bajaj conducted an event study which used methodology supported by economic literature. *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25995. Freddie Mac also explains that Dr. Bajaj made supported and reasonable decisions in the

6

(4:08CV160)

selection of the dates he used in the data and that the argument OPERS presents is its attempt to "use legal briefing to counter expert testimony without any support from its own experts." ECF No. 531 at PageID #: 25996.

At the threshold, the PSLRA provides a 90-day look-back or bounce-back period, but that section of the law places a limit on the damages a plaintiff seeks to establish. 15 U.S.C. § 78u-4(e)(1). OPERS mischaracterizes both Dr. Bajaj's 10-day analysis and the law when claiming that Dr. Bajaj's analysis is contrary to law because of the time period analyzed. Dr. Bajaj uses the 10-day period to reflect his conclusion that the decline was "economically insignificant" based on the recovery, rather than the premise that OPERS' damages should be calculated only from that 10-day period. *See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25509, ¶ 150. OPERS may attack the analysis for not covering a 90-day period as the statute may permit, but that is an issue that can be addressed through contrary evidence and cross-examination.

OPERS' arguments that Dr. Bajaj's opinions are (1) contrary to evidence to state a "sole" cause and (2) statistically insignificant, challenge the credibility of Dr. Bajaj's opinions rather than their admissibility. Dr. Bajaj's opinion that the drop in stock price is "solely" or largely related to capital issues is one he supports with analyst and news reviews as well as "subsequent analysis of stock price rebound on capital raise dates." *See* Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25744, 215:3–215:4. If Dr. Bajaj's reached the "wrong" conclusion as OPERS implies by arguing it is contrary to the evidence, that is an issue OPERS can address through its presentation of contrary evidence or cross-examination of Dr. Bajaj's conclusion. OPERS' argument regarding statistical insignificance is also properly addressed by cross-examination or with contrary evidence, not by excluding Dr. Bajaj's report and testimony. "Because the factual

7

(4:08CV160)

underpinnings of the expert's testimony are sound, his testimony is admissible." *Lang*, 717 F. App'x at 535 (quoting *Greenwell v, Boatwright*, 184 F.3d 492, 497–98 (6th Cir. 1999)).

   Finally, OPERS alleges that Dr. Bajaj's analysis is unreliable because it "cherry-picks" the dates he uses for his analysis. "Although Rule 702 does not require an expert to consider *all* the facts and data available, it does require the factual basis of his opinion to be *sufficient*." *Id.* at 536 (noting that "cherry picking data is just as bad as omitting it or making it up altogether). The issue before the Court is not "cherry-picking[,]" but rather reasoned selection by Dr. Bajaj. As he explains in his report, he used dates "when the market learned details about Freddie Mac's capital raise." *See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25513, ¶ 155. In that same vein, Dr. Bajaj ended the analysis on November 30 because "that is the date that Freddie Mac formally announced its successful capital raise." *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25996. Because Dr. Bajaj chose the dates on which he relied in a reasoned manner rather than arbitrarily for the purpose of results, his opinion on stock recovery is admissible. OPERS may challenge Dr. Bajaj's analysis and selection of dates through cross-examination and the presentation of contrary evidence.

   3. <u>Price impact and loss causation based on review of market disclosures</u>

  OPERS argues that Dr. Bajaj's opinion that the market was not "reacting" and, therefore, Dr. Bajaj's conclusion that there was "neither price impact nor loss causation" is "illogical, contrary to law, contrived, biased, non-replicable and based solely on the *ipse dixit* of Dr. Bajaj." *See* Am. Mem. in Supp., ECF No. 527 at PageID #: 25422. OPERS claims that Dr. Bajaj does not have a sound or replicable methodology supporting his judgment of the lack of reaction which is made clear because (1) he does not have a criterion which he based his article selection

8

(4:08CV160)

off, and (2) he excluded two on-topic and relevant articles which were contrary to his conclusions. ECF No. 527 at PageID #: 25423.

Freddie Mac argues Dr. Bajaj's criteria were news articles which were pertinent and non-duplicative, and the noted news articles were excluded because they were "repetitive of information already publicly available." See Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25997.

The Court finds Dr. Bajaj's methodology reliable. Dr. Bajaj explains that he selected articles by "pick[ing] news articles that pertain to the topics we were discussing that seem[ed] to be non-duplicative." See Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID ##: 25730–31, 160:22–161:2. He explained that some articles would be saying the same things while some would have multiple versions. Therefore, he "avoided dumping into the record articles that did not incrementally provide new information, and [ ] tried to be comprehensive in covering articles that talked about the topics that were being discussed in the report." See Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25731, 161:9–161:14. Dr. Bajaj had criterion on which he based his article selection. As for the articles OPERS argues were excluded for being contrary to his conclusions, Dr. Bajaj explained that the articles, based on his holistic review, were duplicative, of known facts, or did not contain significant information. See Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25731, 25732, 163:1–163:4, 167:8–167:13. Dr. Bajaj's clarified why he did not find the articles to be "contrary" or "new" as OPERS was alleging. See e.g., Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25732, 168:9–168:18 ("It appears to me, Mr. Piszel is talking about the vicious cycle that industrywide underwriting standards declined.") and 169:1–169:5 ("And what you ignore is the second and third paragraph in this article, which says, how many of these loans, namely loans held by Freddie Mac, were subprime? It says none, but that does not

9

(4:08CV160)

make loses any less real."). Because Dr. Bajaj's methodology for review of market disclosures was reliable, OPERS motion to exclude or strike based on that methodology are denied.

4. Materialization of disclosed risks

OPERS argues that Dr. Bajaj's opinion on the materialization of disclosed risks is contrary to the law and unreliable. OPERS claims that "discussions about the extent of disclosures are irrelevant, given the allegation that those disclosures were 'materially false or misleading.'" *See* Am. Mem. in Supp., ECF No. 527 at PageID #: 25425 (citing *Mudd*, No. 11 Civ 9202 (PAC), 2016 WL 2593980, at *7). OPERS relies on the Sixth Circuit's ruling, in saying that, if "it would take a financial analyst to spot the tension between [true] and [deceptive], whatever is misleading will remain materially so, and liability should follow." ECF No. 527 at PageID #: 25425 (citing *Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 386). OPERS also claims that Dr. Bajaj has no analysis about the data underlying the disclosures that justify his opinion on the sufficiency of Freddie Mac's credit risk and underwriting disclosures. ECF No. 527 at PageID ##: 25426–27.

Freddie Mac responds that Dr. Bajaj is "entitled to review, consider, and testify regarding those disclosures as a basis for and to contextualize his opinion on price impact and loss causation." *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25991.

OPERS bears the burden of showing that the disclosures relied on by Dr. Bajaj were materially false or misleading. To meet that burden, OPERS relies on case law which either assumed the truth of the allegations or had a finding that the statements were materially false or misleading. *See Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 379 (drawing the facts from the Third Amended Complaint as the matter was an appeal of a motion to dismiss); *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091 (1991) (interpreting the jury verdict as "finding that the

10

(4:08CV160)

directors' statements of belief and opinion were made with knowledge that the directors did not hold the beliefs or opinions expressed"). Those cases are not similarly situated to the posture of the instant case. In the other relied upon case law, an expert report was excluded was because the expert opined on the "usefulness" of the disclosures which were irrelevant when the allegations were on whether the disclosures were "materially false or misleading." *Mudd*, No. 11 Civ 9202 (PAC), 2016 WL 2593980, at *7. OPERS has not shown Dr. Bajaj's opinion on the disclosures to be irrelevant or admissible.

The Court disagrees with OPERS' argument about Dr. Bajaj's lack of methodology. Dr. Bajaj's analysis of the disclosures offered by Freddie Mac during the Relevant Period is in the "Economic Background" section of his report. *See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25436. The "methodology" was an independent analysis of voluminous materials addressing specialized topics and thousands of pages of disclosures; all of this helped inform the context in which Dr. Bajaj reached his opinions. Additionally, jurors, who will need to be educated on issues of mortgage-credit risk faced by market participants like Freddie Mac, will not be able to review thousands of pages of disclosures. *See In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *41 (N.D. Ohio June 4, 2010) (declining to exclude expert based on "narrative" argument, noting that the materials that the expert "reviewed and compared are complicated"). Dr. Bajaj's opinions on the disclosures are admissible.

     5.   Materiality or "economic materiality"

OPERS argues that Dr. Bajaj improperly offers opinions on whether something is "material" or "not material" which infringes into the role of the trier of fact. *See* Am. Mem. in Supp., ECF No. 527 at PageID #: 25427. OPERS moves the Court to "preclude[ ] Dr. Bajaj

11

(4:08CV160)

from providing an opinion or testimony as to whether something does or does not demonstrate 'materiality.'" ECF No. 527 at PageID #: 25428.

Dr. Bajaj's is offering his opinion of "materiality from an economic perspective . . . [and] not provid[ing] an opinion on ultimate conclusion on materiality which is the province of the trier of fact." *See* Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25746, 224:5–224:10. In so doing, Dr. Bajaj is offering his expert opinion about what has "economic significance" to assist the trier of fact, as is acceptable for an expert. Dr. Bajaj's opinions are not inadmissible on these grounds. To the extent that there are concerns, the Court finds it will be addressed through limiting instructions to the jury, if needed.

6. Dispersion of EPS estimates

OPERS argues that Dr. Bajaj's opinion on market uncertainty and volatility using the dispersion of EPS estimates should be excluded as unreliable. OPERS argues that Dr. Bajaj's chart, titled Dispersion of Freddie Mac Analyst EPS Estimates as of One Trading Date Prior to Each Earnings Announcement (Q4 2006 to Q3 2007), is misleading due to not being the EPS estimates from one trading day prior, different analysts being used for different quarters, and different measures being used for the points in the chart. *See* Am. Mem. of Law in Supp., ECF No. 527 at PageID #: 25428–29.

Freddie Mac responds that Dr. Bajaj's chart is not misleading and its data source is undisputed on its reliability. *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 25999. Freddie Mac also retorts that OPERS' argument about the different measures being used is irrelevant because "Dr. Bajaj specifically considered that issue and concluded that even removing the estimates . . . 'does not change the conclusions drawn from the figure.'" ECF No. 531 at PageID #: 26000.

12

(4:08CV160)

The Court finds Dr. Bajaj's methodology was reliable in forming his opinion using EPS estimates. In response to OPERS' first concern that the dates were "not in fact one trading day prior to the end of the quarter," Dr. Bajaj states that taking the "last available EPS estimate" is "common in these kind of estimates" and the underlying data was provided to OPERS for its own review. See Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25749, 233:6–233:14, 234:7–234:13. Next, OPERS' concern that the chart "suggests" that the same analysts' estimates were being used because of "overlapping dots" is something that goes to the weight of the evidence and can be addressed in cross-examination. Finally, OPERS' concern that the dots use "different measures" because some reflect GAAP estimates while others do not is unfounded. While OPERS points to Mr. Shapiro's statement that "[t]he use of GAAP or non-GAAP can dramatically affect an estimate," Dr. Bajaj stated that he "looked at what happens if we exclude those three analysts, and the range did not change" and those analysts are "not represented by red dots in Figure 3." See Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25749, 235:4–235:18. Because Dr. Bajaj offers explanations to OPERS' concerns of discrepancies and appears able to explain the methodology behind the data used, the analysis is reliable and admissible.

    7. <u>Individual Defendants' stock trading "did not benefit from the alleged fraud"</u>

OPERS argues that Section IX of Dr. Bajaj's report, which reflects Dr. Bajaj's opinion on whether the "individual Defendants' trading in Freddie Mac stock [were] not unusual in timing or amount," is "questionable." See Am. Mem. in Supp., ECF No. 527 at PageID #: 25429. OPERS volunteers that it can address such questions during cross-examination with the exception of ¶ 264 of Dr. Bajaj's report in which Dr. Bajaj states "[the Individual Defendants] did not benefit from the alleged fraud during the Relevant Period." ECF No. 527 at PageID #: 25430 (citing Dr. Bajaj's expert report). OPERS claims this is "an unwarranted analytical leap."

13

(4:08CV160)

Freddie Mac responds that this goes to the weight, not reliability of Dr. Bajaj's opinion. Freddie Mac argues that the conclusion challenged is based on proper and appropriate analysis of the Individual Defendants overall stock trading records and that such a conclusion may assist the trier of fact in determining scienter.  *See* Mem. of Law in Opp'n, ECF No. 531 at PageID #: 2600 (citing *Maldonado v. Dominguez*, 137 F.3d 1, 12 n.9 (1st Cir. 1998)).

The full paragraph states:

> In summary, I do not find any evidence that the individual Defendants engaged in trading in Freddie Mac securities that was unusual or suspicious in timing or amount.  They did not benefit from the alleged fraud during the Relevant Period.  Rather, their holdings in Freddie Mac stock declined substantially over the course of the Relevant Period.

*See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25555, ¶ 264.  Dr. Bajaj's opinion that the "[Individual Defendants] did not benefit from the alleged fraud during the Relevant Period" is drawn from his analysis of those Defendants and their "voluntary sales" of Freddie Mac securities.  Dr. Bajaj categorically looks at the individual Defendants and discusses the sales that they had, if any, and specifies what sort of trade was considered.  *See* Dr. Bajaj's Expert Report, ECF No. 527-1 at PageID #: 25553–55 (explaining that he did not consider as a "sale" the "involuntary, automatic forfeiture of shares" for taxes or those "automatically retained by Freddie Mac to cover taxes").  Thus, Dr. Bajaj has laid out his reasoning, criteria, and methodology for reaching the conclusion that there was no evidence of "unusual or suspicious" trading which led to his conclusion that the Individual Defendants "did not benefit." Furthermore, Dr. Bajaj states that his opinion is "limited to [his] analysis of stock trades during the relevant period."  *See* Dr. Bajaj's Dep. Tr., ECF No. 527-1 at PageID #: 25748, 231:13–231:15.  OPERS' challenge goes to the accuracy of the conclusion which bears on the weight of

14

(4:08CV160)

the evidence rather than its admissibility; the statement is an opinion with "reasonable factual basis" and thus admissible. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530.

    C. *Relevance*

Dr. Bajaj's report and opinion is relevant, as indicated above.

### IV.    Conclusion

Accordingly, the Motion to Strike Portions of the Report and Exclude Portions of the Expert Testimony of Dr. Mukesh Bajaj (ECF No. 520) is denied.[1]

IT IS SO ORDERED.

| | |
|---|---|
| March 28, 2025 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[1] OPERS request for relief from briefing restrictions is denied as moot, having been addressed separately.

15