PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, | ) )  CASE NO. 4:08CV0160 |
| Plaintiff, | ) ) |
| v. | ) JUDGE BENITA Y. PEARSON ) ) |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, *etc.*, *et al.*, | ) ) **MEMORANDUM OF OPINION** ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No. 522] |

Pending is Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Strike Reports and Exclude the Testimony of Howard S. Shapiro (ECF No. 522). Shapiro is proffered by Plaintiff Ohio Public Employees Retirement System ("OPERS") as a putative non-scientific expert in the mortgage finance industry during August 1, 2006 through and including November 20, 2007 (the "Relevant Period"). Freddie Mac moves the Court to exclude any and all testimony from Shapiro, and to strike his Report (ECF No. 522-3) and Rebuttal Report (ECF No. 522-4), alleging that Shapiro is unqualified to offer his opinions, his opinions are unreliable, and therefore, do not meet the threshold of admissibility for expert evidence established by Rules 403 and 702 of the Federal Rules of Evidence. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the motion is granted in part and denied in part.

(4:08CV0160)

## I.

Shapiro was a chartered financial analyst who specialized in the mortgage finance industry for almost two decades. From early 2006 through December 2008, he was a Vice President and Analyst at Fox-Pitt Kelton, a sell-side firm that specializes in financial services. *See* ECF No. 522-3 at PageID #: 24233, ¶ 6. Shapiro specifically covered Freddie Mac as a Wall Street analyst during the Relevant Period. He gave seminars on the mortgage finance industry and published papers on the topic. He was sought out to speak at investor conferences on the subject of Freddie Mac's financial condition. Shapiro participated in television and print media discussions as an expert on Freddie Mac and the mortgage finance industry. His "area of expertise is in studying the operations of mortgage finance companies, studying the credit risk that they take, studying their underwriting and product practices, and studying their usage of capital." Jan. 10, 2024 Deposition of Howard Shapiro (ECF No. 522-6) at PageID #: 24388:19-24. From 2009 to the present, however, Shapiro has worked full-time as an art dealer and the owner of a fine art gallery. *See* EECF No. 522-3 at PageID #: 24255; ECF No. 522-6 at PageID #: 24379.

Shapiro's job as a financial analyst largely, and as an expert in the case at bar, was "[n]ot just comparing documents, but then understanding what the changes between the external and internal reporting meant to the company's financial health." ECF No. 522-6 at PageID #: 24416:10-14. Shapiro employed a multi-step analysis similar to the one he used as a financial analyst to assess Freddie Mac's financial health during the Relevant Period. *See* ECF No. 522-4 at PageID #: 24299, ¶ 27 ("As a financial analyst, I am charged with researching all aspects of a

2

(4:08CV0160)

company in an effort to understand and report on its financial condition. I did the same thing here."). During the Relevant Period, Mr. Shapiro's methodology for understanding Freddie Mac's financial condition included: (a) reviewing public disclosures; (b) developing, to the extent possible, earnings models to forecast future earnings and capital needs, *see* ECF No. 522-4 at PageID #: 24311, ¶ 50; (c) reviewing news articles and other analyses of Freddie Mac; (d) discussing relevant issues with Freddie Mac management; and, (e) visiting Freddie Mac to learn about the business, *see* ECF No. 522-4 at PageID #: 24311, ¶ 50. Shapiro followed that methodology in connection with his assignment relevant to this case.

Shapiro's first step was to review all of Freddie Mac's public disclosures from the Relevant Period. See ECF No. 522-6 at PageID #: 24401:2-7. Next, he reviewed other publicly available documents about Freddie Mac's activities during the Relevant Period. *See* Exhibit 2 to Report (ECF No. 522-3 at PageID #: 24258-59); ECF No. 522-6 at PageID #:24357:16 - PageID #: 24359:15. Shapiro then reviewed "other analyses of Freddie Mac;" only; in this case, he had access to Freddie Mac's own internal analyses. See ECF No. 522-4 at PageID #: 24308-309, ¶ 47. He reviewed more than 100 internal assessments (totaling more than 4,000 pages) related to Freddie Mac's credit risk and underwriting. *See* ECF No. 522-4 at PageID #: 24315, ¶ 57. According to Shapiro, "[t]he information publicly disclosed by Freddie Mac during the Relevant Period was inconsistent with and often directly contrary to Freddie Mac's internal assessments." ECF No. 522-3 at PageID #: 24232, ¶ 3(b); *see also* Exhibit 2 to Report (ECF No. 522-3 at PageID #: 24258-59); ECF No. 522-6 at PageID #: 24401:8 - PageID #: 24402:10. To graphically demonstrate this inconsistency, he prepared two exhibits. In one he compared

3

(4:08CV0160)

Freddie Mac's external statements about its credit risk with contemporaneous internal assessments of its credit risk, *see* Exhibit 3 to Report (ECF No. 522-3 at PageID #: 24261-73). In the other, he compared Freddie Mac's external statements about its underwriting with its contemporaneous internal assessments of its underwriting, *see* Exhibit 4 to Report (ECF No. 522-3 at PageID #: 24275-86).

Shapiro utilized the above methodology to reach his opinion that Freddie Mac was "externally reporting exposure to 'subprime' (broadly defined in its own disclosures) at a paltry 0.2% of the portfolio and internally recognizing that roughly 12% of the portfolio was behaving like subprime.." ECF No. 522-3 at PageID #: 24238, ¶ 31. Had he been made aware of Freddie Mac's internal credit risk and underwriting assessments during the Relevant Period, Shapiro opines that he "would have rated the stock as 'Underperform' and advised our clients to avoid purchasing it" during the Relevant Period. ECF No. 522-3 at PageID #: 24250, ¶ 59.

OPERS designated Shapiro as a fact witness pursuant to Fed. R. Evid. 701, *see* Oct. 12, 2023 Suppl. Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) (ECF No. 533-2 at PageID #: 26964-72), as well as an expert witness pursuant to Fed. R. Evid. 702. OPERS asked Shapiro to testify generally about the role of financial analysts, and to opine specifically about whether certain information would have altered his contemporaneous analysis of Freddie Mac's financial condition, had it been disclosed publicly during the Relevant Period. *See generally* ECF No. 522-3 at PageID #: 24232-33, ¶¶ 2-3; ECF No. 522-4 at PageID #: 24308-309, ¶¶ 46-47.

**II.**

Rule 702 of the Federal Rules of Evidence "assign to the trial judge the

4

(4:08CV0160)

task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards. *See In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (affirming the exclusion of plaintiffs' expert); Fed. R. Evid. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10. "Rule 702's recent amendments . . . were drafted to correct some court decisions incorrectly holding ''that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.' '' *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339 at 348 n. 7) (citing Fed. R. Evid. 702 advisory committee's note to 2023 amendments). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). The Sixth Circuit "has recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an

5

(4:08CV0160)

expert's line of scientific research or technical work, should be viewed with some caution." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. *Daubert*, 509 U.S. at 595. Therefore, courts in the Sixth Circuit employ a four prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect." *United States v. Smithers*, 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

### III.

### A.

Freddie Mac argues that Shapiro's testimony should be excluded because he is not qualified to offer his opinions. OPERS responds that Mr. Shapiro is qualified to offer the opinions he provides. The Court agrees.

Plaintiff has also designated Shapiro as a fact witness pursuant to Fed. R. Evid. 701. *See, e.g.*, *SEC v. Davis*, No. 2:20-cv-03271-SB-KS, 2022 WL 3575769, at *4 (C.D. Cal. June 23, 2022) (holding that financial analyst in securities case could testify about how concealed information would have changed analyst's reporting as "proper lay opinion testimony and probative of materiality"); *United States v. Ferguson*, No. 3:06CR137 (CFD), 2007 WL 4556625, at *3 (D. Conn. Dec. 20, 2007) (permitting financial analyst to testify on the issue of materiality as a lay witness because "'[o]pinion testimony about how the analysts' advice to investors would have been different in light of the previously withheld information will be

6

(4:08CV0160)

helpful to the jury in deciding whether that information was of substantial importance to a reasonable investor").

**B.**

Next, Freddie Mac contends Shapiro's testimony should be excluded as unreliable. Freddie Mac claims that Shapiro's testimony is unreliable for three (3) reasons. First, his opinions are not based on sufficient facts. Second, Shapiro's opinions are not the product of reliable principles or methods. Third, he does not reliably apply any principles or methods.

**1.**

According to Freddie Mac, Shapiro's opinions are not based on sufficient facts. But Freddie Mac's argument that Shapiro should have looked at more and/or different evidence is not a basis on which to exclude him. Fed. R. Evid. 702 states, in relevant part, that expert testimony must be "based on sufficient facts or data," Rule 702, including "facts or data in the case that the expert has been made aware of or personally observed," Fed. R. Evid. 703. Shapiro's testimony is "based on sufficient facts or data." Rule 702(b). "Moreover, these challenges ultimately go to the weight, not the admissibility, of [an expert's] testimony." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp.3d 724, 736 (N.D. Ohio 2014) (citing *Daubert*, 509 U.S. at 596). In *Smilovits v. First Solar, Inc.*, No. CV12-00555-PHX-DGC, 2019 WL 6875492 (D. Ariz. Dec. 17, 2019), the defendants challenged the reliability of a former securities analyst expert's methodology. Id. at *4. As *Smilovits* noted in this context, "criticism of an expert's decision to base an opinion on some facts but not others should be challenged through the traditional means at trial, not through a *Daubert* motion." Id. at *5.

7

(4:08CV0160)

And Freddie Mac can confront Shapiro on cross-examination with the one sentence from the internal Freddie Mac May 2007 SF Credit Portfolio Monitoring Report, *see* ECF No. 548-84 at PageID #: 31693 ("Currently no sub-prime loans are within the SF portfolio") and the several lines of testimony from the deposition of Doug Levy, a Freddie Mac employee, *see* ECF No. at PageID #: 522-12, that it cites to support the contention that Shapiro's opinions are not based on sufficient facts.  Furthermore, Shapiro contrasted the May 2007 internal assessment "with what Defendant Syron said the following month about credit risk:  'Thanks to our continued high asset quality, low risk exposures and improving operations, Freddie Mac is much better positioned for long-term profitability than a year ago.' " ECF No. 522-4 at PageID #: 24318, ¶ 65 (quoting ECF No. 559-34 at PageID #: 39021).  According to OPERS, "[t]hrough this lens, the May 2007 report 'perfectly encapsulates the distance between Freddie Mac's public disclosures and its internal assessments.' " ECF No. 533 at PageID #: 26461 (quoting ECF No. 522-4 at PageID #: 24318, ¶ 65.

**2.**

Freddie Mac maintains that Shapiro's opinions are not the product of reliable principles or methods because he failed to follow the *Daubert* factors, *i.e.*, testability; peer review; error rate; and general acceptance in the relevant scientific community.  See *Williams v. Syphan*, No. 22-3222, 2023 WL 1305084, at *2 (6th Cir. Jan. 31, 2023) (citing *Daubert*, 509 U.S. at 593-94). The Court sees it differently.  The Sixth Circuit has explained that the trial court's gatekeeping analysis with respect to an expert's methodology is "very flexible" and " 'must be tied to the facts of a particular case,' depending on 'the nature of the issue, the expert's particular expertise,

8

(4:08CV0160)

and the subject of his testimony.' " *Johnson*, 484 F.3d at 430 (quoting *Kumho*, 526 U.S. 150). Particularly with respect to non-scientific experts, like Shapiro, "the relevant reliability concerns may focus upon personal knowledge or experience." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho*, 526 U.S. 150). In *Wood v. Wal-Mart Stores East, LP*, 576 Fed.Appx. 470 (6th Cir. 2014), for example, the Sixth Circuit affirmed the trial court's admission of expert testimony by "a non-scientific witness whose expertise came primarily from personal knowledge and experience." *Id.* at 472; *see also First Tenn. Bank*, 268 F.3d at 335 (allowing "expert testimony derived largely from [the expert's] own practical experiences throughout forty years in the . . . industry). This is precisely what Shapiro did in the present case.

The Sixth Circuit has often held that "the fact that [a non-scientific expert's] opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not render them unreliable and inadmissible." *First Tenn. Bank*, 268 F.3d at 335. Similarly, in *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997), the Sixth Circuit recognized that the four specific *Daubert* factors Freddie Mac cites as a basis for Shapiro's exclusion may be of limited utility in the context of non-scientific expert testimony. *Id.* at 1158; *see also Kush Enters., LLC v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2021 WL 3007263, at *7 (E.D. Tenn. July 15, 2021) (finding that the reliability factors in *Daubert* were not helpful because the "expert testimony [was] derived largely from his practical experiences" (citing *First Tenn. Bank*, 268 F.3d at 335).

9

(4:08CV0160)

Next, Freddie Mac claims that Shapiro failed to analyze whether the internal assessments he cited would have changed the "total mix" of information available from Freddie Mac's public disclosures. *See* Memorandum in Support (ECF No. 522-1) at PageID #: 24213. To the contrary, Shapiro documented in his Rebuttal Report with regard to Freddie Mac's underwriting that he "found repeated internal discussions, statements and conclusions stretching across the entire Relevant Period pointing to a significant, and multi-faceted, problem within the Company related to underwriting. [He] cite[s] to more than forty of those internal statements in [his] report (and [] could have cited to forty more)." ECF No. 522-4 at PageID #: 24300, ¶ 28. In his opinion as a financial analyst whom covered Freddie Mac during the Relevant Period, Shapiro also asserted at paragraph 34 of his Rebuttal Report that:

> . . . it cannot reasonably be argued that a reasonable investor would not consider it important that Freddie Mac knew, during the Relevant Period, that (a) its underwriting standards and quality control processes were insufficient to protect the SF Portfolio from taking on "bad" loans; or (b) it had virtually no ability to effectively underwrite the nontraditional mortgage products that were making up an increasing portion of the Single Family Portfolio; or (c) it had essentially abandoned its underwriting standards altogether over the Relevant Period – effectively outsourcing the job to Fannie Mae and other third parties whose underwriting standards were far less stringent than Freddie Mac's; or (d) it was consciously subverting its underwriting standards by overemploying what it termed "credit policy exceptions."

ECF No. 522-4 at PageID #: 24303 (footnotes omitted). He then specifically addresses Freddie Mac's "total mix of information" argument:

> . . . I cannot conceive of a good faith argument that disclosure of these omitted facts – facts that Mr. Coates does not dispute – would not have significantly altered the "total mix" of information available. Why? I answer that very question in my report: "the information withheld demonstrates that the Company did not have the tools to adequately understand the relative risk associated with the loans coming into the SF Portfolio; and if the Company's own risk

10

(4:08CV0160)

> management team could not accurately model the relative risk associated with these loans, then neither the Company nor the public had any meaningful way of assessing the SF Portfolio's credit risk."

ECF No. 522-4 at PageID #: 24303, at ¶35 (citing ECF No. 522-3 at PageID #: 24250, at ¶ 58 (collecting documentary examples)). Shapiro states: "In my report, I cited to well over 100 internal statements by Freddie Mac personnel that would have been viewed collectively by the reasonable investor as having significantly altered the 'total mix' of information available to the reasonable investor during the Relevant Period." ECF No. 522-4 at PageID #: 24304, at ¶ 37.

According to Freddie Mac, Shapiro's opinions rest on a "faulty legal premise," namely that Freddie Mac was obligated to disclose "as much information as they could disclose without putting themselves at any competitive risk." ECF No. 522-1 at PageID #: 24216 (quoting ECF No. 522-6 at PageID #: 24530:2-5). Shapiro directly responded to this contention in his Rebuttal Report:

> To support his assertion, [Dr.] Coates[1] cites deposition testimony in which I was asked several times what information I believed Freddie Mac had a duty to disclose. *See* Coates Report, at fn. 225. I repeatedly testified that I took no position on Freddie Mac's disclosure duties, but, when pressed, I stated my view as financial analyst that I would have preferred Freddie Mac (and, indeed, all the companies I covered) to provide "as much information as they could disclose without putting themselves at any competitive risk." Shapiro Dep., at 474:21-475:5. I am not an attorney; I have no opinion on what a publicly traded company's legal duties are regarding disclosures. I was testifying in my capacity as a financial analyst attempting to assess the financial condition of a company I was covering.

ECF No. 522-4 at PageID #: 24291 n. 13.

---

[1] A corporate disclosure practices expert proffered by Freddie Mac.

11

(4:08CV0160)

In addition, Freddie Mac criticizes Shapiro for not updating the earnings model he used during the Relevant Period in connection with his opinions in the present case because "another expert cannot replicate it." ECF No. 522-1 at PageID #: 24216. As Shapiro testified repeatedly in his deposition, however, there was no need for him to update his 20-year-old financial model that he no longer had access to for him to "opine that the more than 4,000 pages of internal assessments [he] reviewed would have changed the total mix of information available to the investing public had they been disclosed." ECF No. 522-4 at PageID #: 24309, ¶ 48. He then provided two examples – one in the credit risk context and the other in the underwriting context – to support his opinion. ECF No. 522-4 at PageID #: 24309-310, ¶ 48. *See Jones*, 107 F.3d at 1158 (discussing methodological reliability in the non-scientific expert context).

Freddie Mac also complains that Shapiro offered no support for selecting credit risk, underwriting, and economic capital as "three of the primary categories of Freddie Mac information that were important to [him] as a financial analyst in assessing Freddie Mac's financial health during the Relevant Period." ECF No. 522-1 at PageID #: 24216-17 (quoting ECF No. 522-3 at PageID #: 24232, ¶ 3(a)). But Shapiro did. *See* ECF No. 522-3 at PageID #: 24235, ¶ 18 (credit risk); PageID #: 24243, ¶ 43 (underwriting); PageID #: 24250, ¶ 62 (economic capital).

**a.**

Freddie Mac argues that Shapiro's opinions on falsity and materiality are not the product of reliable principles or methods. OPERS responds that Shapiro has not been called to opine on the subjects of falsity and materiality. *See* Memorandum in Opposition (ECF No. 533) at PageID

12

(4:08CV0160)

#: 26441; *see also* ECF No. 533 at PageID #: 26435; PageID #: 26463 ("Mr. Shapiro is not attempting to instruct the jury on a legal test for falsity or materiality and is not applying any such test to the facts of the case."). Shapiro explicitly testified that he was not offering opinions on either of these issues. *See* ECF No. 522-6 at PageID #: 24408:14-19; PageID #: 24441:21 - PageID #: 24442:3.

**b.**

Freddie Mac contends Shapiro's opinion on loss causation[2] is not the product of reliable principles or methods. According to Freddie Mac, Shapiro offers "an opinion that certain factors contributed to Freddie Mac's 'reported loss' of $2 billion, announced on November 20, 2007, 'and the consequent drop in stock price' (*i.e.*, an attempt to opine on the element of loss causation)." Memorandum in Support (ECF No. 522-1) at PageID #: 24197 (quoting ECF No. 522-3 at PageID #: 24233, ¶3; PageID #: 24252, ¶ 71). OPERS responds that Shapiro did not form, and will not offer, a loss causation opinion in the case at bar. Rather, he "will testify that capital insufficiency and unexpected future losses due to credit risk were, in his view, largely

---

[2] Price impact is the consideration of "whether the alleged misrepresentations affected the market price in the first place." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 814 (2011) ("*Halliburton I*"). Loss causation in turn is a showing that the price impact was caused by "the correction to a prior misleading statement" and "that the subsequent loss could not otherwise be explained by some additional factors revealed then to the market." *Id.* at 812.

"OPERS has made its intention known that, while it does not agree with the substance of the Court's [prior] decision regarding price impact, it recognizes that it precludes OPERS from going forward individually with its securities claims on the dispositive element of loss causation." ECF No. 496 at PageID #: 22964; *see also* April 30, 2024 Letter from Attorney Markovits to Attorney Frank (ECF No. 548-152) at PageID #: 33015.

13

(4:08CV0160)

responsible for the stock decline on November 20, 2007." ECF No. 533 at PageID #: 26449; *see e.g.*, ECF No. 522-6 at PageID #: 24367:4-12; PageID #: 24369:7-11; PageID #: 24421:22 - PageID #: 24425:17.  Indeed, Shapiro has not been called to opine on the subject of loss causation.  *See* ECF No. 533 at PageID #: 26441.

### 3.

Freddie Mac asserts that Shapiro does not reliably apply any principles or methods.

### a.

Freddie Mac claims that Shapiro failed to reliably apply any principles or methods in opining on the materiality of alleged misrepresentations and omissions.  Freddie Mac's bullet point arguments at PageID #: 24219-20 of the Memorandum in Support (ECF No. 522-1) "ultimately go to the weight, not the admissibility, of [an expert's] testimony."  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp.3d at 736 (citing *Daubert*, 509 U.S. at 596).

### b.

According to Freddie Mac, Shapiro failed to reliably apply any principles or methods in opining on loss causation.  As stated above, OPERS responds that Shapiro has not been called to opine on the subject of loss causation.  *See* ECF No. 533 at PageID #: 26441; *see also* ECF No. 533 at PageID #: 26459 ("Shapiro is not providing opinions or testimony on loss causation.").

(4:08CV0160)

### C.

Finally, Freddie Mac asserts Shapiro's testimony should be excluded because he impermissibly opines on ultimate liability issues by offering legal conclusions on falsity and materiality.  *See* ECF No. 522-1 at PageID #: 24222-23 (citing ECF No. 522-3 at PageID #: 24232-33, ¶ 3; ECF No. 522-4 at PageID #: 24289, ¶ 2.  OPERS responds that Mr. Shapiro's opinions do not touch on ultimate liability issues.

The *Smilovits* court rejected similar contentions noting that the former securities analyst in that case – who would opine on "[w]hether and how the allegedly concealed information would have materially altered analysts' ability to assess the Company's value" – was not attempting "to instruct the jury on a legal test for materiality or apply any such test to the facts of the case."  *Smilovits*, 2019 WL 6875492, at *5-6 (brackets in original).  Shapiro's opinions in the present case are very similar to the analyst's opinions in *Smilovits*.  *See, e.g.*, ECF No. 522-3 at PageID #: 24232-33, ¶¶ 2-3.  The Sixth Circuit analyzes the "ultimate issue" question in the same way.  *See, e.g.*, *Baab v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (citing *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)).  Like the securities analyst in *Smilovits*, Shapiro is not attempting to instruct the jury on a legal test for falsity or materiality and is not applying any such test to the facts of the case.  Therefore, the same result is justified in the case at bar.

### IV.

For the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which OPERS relies, Freddie Mac's Motion to Strike Reports and

(4:08CV0160)

Exclude the Testimony of Howard S. Shapiro (ECF No. 522) is granted in part and denied in part.  Shapiro will not be allowed to opine as an expert on securities fraud, falsity, materiality or loss causation.

      IT IS SO ORDERED.

|    March 28, 2025    |    */s/ Benita Y. Pearson*    |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |